Carl Roger Davis and Jo Elaine Davis
c/o PO Box 6207
Branson, Missouri [65615]
Ph. (417) 334-1320

Plaintiffs, in *pro se*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Carl Roger Davis and Jo Elaine Davis, | ) | **Case No. 1:07-CV-01749-RMU** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES, a Federal corporation; | ) | **FIRST AMENDED** |
| DEPARTMENT OF THE TREASURY; the | ) | **VERIFIED COMPLAINT** |
| INTERNAL REVENUE SERVICE; the | ) | |
| DEPARTMENT OF JUSTICE; Title 26 U.S.C. § | ) | |
| 7201; Title 26 U.S.C. §7203; Title 26 U.S.C. § | ) | |
| 7851; JAMES "TONY" STROTHER, in his | ) | |
| official capacity; TIMOTHY E. NOONAN; in his | ) | |
| official capacity; and DOES 1 through 5 | ) | **JURY TRIAL DEMANDED** |
| inclusively, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW; Carl Roger Davis and Jo Elaine Davis, Plaintiffs, proceeding on their own

behalf, filing this First Amended Verified Complaint invoking the Constitution pursuant to 28

U.S.C. § 1331 *et seq.* to cede the jurisdiction of this Court, vesting it to act as an Article III Court

under the Constitution for the United States of America to dispose of cases and controversy that

fall within its constitutional ambit, since Article III *"serves to identify those disputes which are*

*appropriately resolved through the judicial process." Whitmore v. Arkansas*, 495 U.S. 149, 155

(1990). It is well established that the "*Federal courts of limited jurisdiction are empowered to*

*hear only those cases that the Constitution and Congress grant them authority to consider*."

See *Finley v. United States*, 490 U.S. 545 (1989).

FIRST AMENDED
VERIFIED COMPLAINT                    1 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                                Notary page 44, Exhibits: 139 pages

The territorial authority of the United States is cited in *Balzac v. Porto Rico*, 258 U.S. 298 (1922). ***"The United States District Court is not a true United States court established under Article III of the Constitution to administer the judicial power of the United States therein conveyed. It is created by virtue of the sovereign congressional faculty, granted under Article IV, § 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States.*** *The resemblance of its jurisdiction to that of true United States courts in offering an opportunity to nonresidents of resorting to a tribunal not subject to local influence, does not change its character as a mere territorial court."* ***"It is a well established principal of law that the federal legislation applies only with the territorial jurisdiction of the United States unless a contrary intent appears."*** *Foley Brothers v. Filardo*, 336, U.S. 281 (1948). ***"Once challenged, jurisdiction cannot be 'assumed', it must be proved to exist."*** *Stuck v. Medical Examiners*, 94 Ca2d 751.211 P2s 389. ***"... Federal jurisdiction cannot be assumed, but must be clearly shown."*** *Brooks v. Yawkey*, 200 F. 2d 633.

Plaintiffs have standing by virtue of the fact that Defendants' acts, commissions, and omissions have caused Plaintiffs to suffer an injury – an invasion of a legally-protected interest which is: (a) concrete and particularized (*Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740-741, n.16 (1972)) and (b) actual or imminent (Whitmore, supra, at 155 quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); secondly, there is a causal connection between the injury and the conduct complained of traceable to the challenged action of the Defendants (*Simon v. Eastern K. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)); and thirdly, it is likely that the injury will be redressed by a favorable decision, id. at 38, 43. "*In order to maintain a cause of action based on an allegation of constitution violations, a*

*plaintiff must show that the actions complained of are 'fairly attributable' to the government.*"

(*Rendell-Baker v. Kohn,* 457 U.S. 830, 838 (1982).

Plaintiffs are at all times mentioned herein, proceeding in the capacity and standing as Living, Breathing, Conscious, Thinking, Flesh and Blood Sentient Human Beings. Plaintiffs are NOT appearing as a subclass statutory persons, citizens, collective entities, creatures of statute or otherwise, but of a superior class and authority not enjoyed by the Defendants – corporate entities void of conscience – given life and existence by their officials, officers, agents and employees (see *Brasswell v. United States*, 487, U.S. 99 (1988) quoting *United States v. White*, 322 U.S. 694 (1944)).

The First, Fourth, Fifth, and Fourteenth Amendments to the Constitution secure Due Process to the American people in the course of the Common Law, which necessarily includes the right to trial by jury. See *Wayman v. Southard*, 23 U.S. 1; 6 L. Ed. 253; 10 Wheat 1(1825). The United States Supreme Court established: "*The Constitution is to be interpreted according to the Common Law Rules.*" *Schick v. United States*, 195 U.S. 65; 24 S. Ct. 826; 49 L. Ed.99. The Supreme Court stated further: "*It [U.S. Constitution] must be interpreted in the light of Common Law, the principles and history of which are familiarly known to the framers of the Constitution. The language of the Constitution could not be understood without reference to the Common Law.*" *United States v. Wong Kim Ark*, 169 US 649; 18 S.Ct. 456. Therefore, this Court is hereby provided with notice that, as a precaution, Plaintiffs are invoking the saving to suitors clause at 28 U.S.C. § 1333(1) in order to secure and proceed in the course of the Common Law in the event of controversy within special maritime and territorial jurisdiction of the United States – which exists in this instant case.

FIRST AMENDED
VERIFIED COMPLAINT                          3 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                            Notary page 44, Exhibits: 139 pages

This is an action seeking Common Law relief under the Constitution for the United States of America as amended, as a result of violations of the Plaintiffs' constitutional rights arising under the First, Fourth, Fifth, Fourteenth and Sixteenth Amendments. Further relief is sought pursuant to the Administrative Procedure Act (hereinafter called "APA") at 5 U.S.C. §§ 701-706, the Sherman Antitrust Act of 1890 and the Clayton Act of 1914 codified at 15 U.S.C. § 17, and the Commerce Clause. The following issues as alleged herein give rise to the Plaintiffs' complaint as proper before this Court in seeking such relief as commanded upon the exhaustion of the administrative remedies, and is not extraordinary.

The Defendants' acts have effectively wreaked havoc on Plaintiffs' life, health, liberty, property and posterity, depriving Plaintiffs of their most fundamental rights as protected under the Constitution for the United States of America. The Plaintiffs reserve the right to amend this complaint at anytime in the event the Plaintiffs discover additional violations of the Constitution, State or Federal law cognizable as a cause of action, prior to and after the Defendants answer, by leave of the Court if necessary.

## Jurisdiction And Venue

This Court has Article III jurisdiction over this matter statutorily invoked pursuant to 28 U.S.C. §§ 1331 to engage the Common Law protections afforded to the Plaintiffs under the First, Fourth, Fifth, Ninth, Tenth, Thirteenth, Fourteenth and Sixteenth Amendments, and Article I, Section 7, Clauses 1 and 2, and Article I, Section 10, Clause 1 of the Constitution for the United States of America as Amended; the United States Code of Judicial Procedure; and the Administrative Procedures Act at 5 U.S.C. §§ 701-706. Jurisdictional claims arise under the United States and present federal questions within this Court's jurisdiction under Article III of the United States Constitution.

FIRST AMENDED
VERIFIED COMPLAINT                    4 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                       Notary page 44, Exhibits: 139 pages

Venue is proper in this District pursuant to the United States Code of Judicial Procedure, 28 U.S.C. § 1391. The UNITED STATES is a federal corporation created by an Act of Congress pursuant to 28 U.S.C § 3002(15)(A) and a *citizen* is defined at 28 U.S.C § 1332(c)(1) and (d). The DEPARTMENT OF THE TREASURY is an agency within the meaning of 5 U.S.C § 101, creating the Defendant INTERNAL REVENUE SERVICE as the internal affairs division within the Department as it is not an agency of the UNITED STATES.

A duly authorized officer and *qui tam* actor for the UNITED STATES federal corporation will answer on behalf of the acts committed by its officials, officers, agents from said district. *"The United States government is a foreign corporation with respect to a state."* (*In the Matter of Merriam*, 36 N.E. 505, 141 N.Y. 479, affirmed 16 S.Ct. 1073, 163 U.S. 625, 41 L.Ed 28720 CJS, Section 1785; also see *Penhallow v. Doane's Administrator's*; *Clearfield Trust Company v. United States*, 318 U.S. 363-371, 1942.) Said corporations are prohibited from certain acts and limited to certain enumerated powers by said contract (the Constitution for the United States), which are alleged herein.

The Defendants, the UNITED STATES aka UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE, DEPARTMENT OF THE TREASURY, the DEPARTMENT OF JUSTICE, Title 26 U.S.C. § 7201; Title 26 U.S.C. §7203; Title 26 U.S.C. § 7851; JAMES "TONY" STROTHER, in his official capacity; TIMOTHY E. NOONAN; in his official capacity; and DOES 1 through 5 inclusively, individually and collectively participated in causing damage and harm to Plaintiffs Roger Davis and Jo Elaine Davis' person and property; and Plaintiffs hereby enjoin all Defendants, pursuant to Fed.R.Civ.P. Rule 18, *in pari materia* with 28 U.S.C. § 1367 – engaging this Court's supplemental jurisdiction.

FIRST AMENDED
VERIFIED COMPLAINT                    5 of 46                Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                            Notary page 44, Exhibits: 139 pages

**All References Made To Title 26 Of The United States Code aka The Internal Revenue Code Is Limited To "In The Nature Of" Only**

The Plaintiffs, having documentary evidence sufficient to establish and conclude that the Internal Revenue Code was not enacted by the United States Congress as commanded under Article I, Section 7, Clauses 1 and 2 of the Constitution for the United States of America, make a limited reference to the Code "in the nature of" – only giving rise for the purpose of understanding the substance of the Plaintiffs' complaint – and no other inference should be drawn. Plaintiffs' reference to any statutes cited from the Code should not be construed or interpreted in any manner to validate that the Code was constitutionally enacted. To that end, the Plaintiffs cite Title 26 of the United States Code aka the Internal Revenue Code, as amended, herein and throughout.

**Defendants**

i.    At all times relevant hereto, the corporate citizen Defendant the UNITED STATES aka the UNITED STATES OF AMERICA'S corporate headquarters is located at 500 N. Capitol Street NW, Washington, D.C. 20221.

ii.   At all times relevant hereto, the corporate citizen Defendant the DEPARTMENT OF THE TREASURY'S main office is located at 1500 Pennsylvania Avenue NW, Washington, D.C. 20220.

iii.  At all times relevant hereto, the corporate citizen Defendant the INTERNAL REVENUE SERVICE'S main office is located at 1111 Constitution Avenue NW, Washington, D.C. 20224, with a pilot office location at 3333 S. National, Suite 300, Springfield, Missouri 65807.

iv.   At all times relevant hereto, the corporate citizen Defendant the DEPARTMENT OF JUSTICE'S main office is located at 950 Pennsylvania Avenue NW, Washington, D.C. 20530-0001.

v.    At all times relevant hereto, the corporate citizen Defendant Title 26 U.S.C. § 7201's main office is located at United States, c/o U.S. Attorney General, 950 Pennsylvania Avenue NW, Washington, D.C. 20530-0001.

vi.    At all times relevant hereto, the corporate citizen Defendant Title 26 U.S.C. § 7203's main office is located at United States, c/o U.S. Attorney General, 950 Pennsylvania Avenue NW, Washington, D.C. 20530-0001.

vii.    At all times relevant hereto, the corporate citizen Defendant Title 26 U.S.C. § 7851's main office is located at United States, c/o U.S. Attorney General, 950 Pennsylvania Avenue NW, Washington, D.C. 20530-0001.

viii.    JAMES "TONY" STROTHER is an employee of the Internal Revenue Service, Criminal Investigation Division located at 3333 S. National, Suite 300, Springfield, Missouri 65807.

ix.    TIMOTHY E. NOONAN is an employee of the Internal Revenue Service, Criminal Investigation Division, located at 3333 S. National Suite 300, Springfield, Missouri 65807.

x.    The true names and identities of DOES 1 through 5 are unknown to the Plaintiffs; however, when the true names and identities of the DOE Defendants are discovered, Plaintiffs will amend the complaint to include the true names and identities of DOES 1 through 5.

## Demand for Trial by Jury

Plaintiffs, Carl Roger Davis and Jo Elaine Davis, demand that the Federal Rules of Civil Procedure, Rule 1, Scope and Purpose of Rules shall govern this action, and Plaintiffs shall preserve inviolate, their **right of trial by jury** under Rule 38 and 57, and right of discovery disclosures without request prescribed under Rule 26, concurrent with Defendants' answer pursuant to Rule 7(a) and Rule 8(b), with no other pleadings allowed except upon Order of the

FIRST AMENDED
VERIFIED COMPLAINT                    7 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
Notary page 44, Exhibits: 139 pages

Court as provided by law. The **JURY** shall decide all issues including immunity, and shall decide upon all claims in this suit.

THEREFORE, demand is hereby made by Plaintiffs for a trial by jury to determine all facts and issues before the Court.

### The United States Supreme Court Established The Doctrine Of Substance Over Form Regarding The Filing Of A Complaint

The United St*ates Supreme Court stated in Frank Lyon Co. v. United States,* 435 U.S. 561 (1978) 98 S.Ct. 1291, "In applying this doctrine of substance over form, the Court has looked to the objective economic realities of a transaction rather than to the particular form the parties employed. ***The Court has never regarded 'the simple expedient of drawing up papers,'*** *Commissioner* v. *Tower*, 327 U.S. 280, 291 (1946), ***as controlling for tax purposes when the objective economic realities are to the contrary. In the field of taxation, administrators of the laws, and the courts, are concerned with substance and realities, and formal written documents are not rigidly binding.*** *Helvering* v. *Lazarus & Co.*, 308 U.S., at 255. See also *Commissioner v. P. G. Lake, Inc.*, 356 U.S. 260, 266-267 (1958); *Commissioner* v. *Court Holding Co.*, 324 U.S. 331, 334 (1945). ***Nor is the parties' desire to achieve a particular tax result necessarily relevant.*** *Commissioner* v. *Duberstein*, 363 U.S. 278, 286 (1960).

### No Plain, Adequate And Complete Remedy, Statutory Or Otherwise, Exists For Plaintiffs To Challenge The Constitutionality Of A Federal Statute

Plaintiffs have invoked the tenable jurisdiction of the Administrative Procedure Act (APA). In this instant case, the Plaintiffs have no access to judicial review to challenge the constitutionality regarding the statutory language, construction or ambiguity of 26 U.S.C. § 7201, 7203 and 7851, as "*. . . the Act was not intended to bar an action where . . . Congress has not provided the plaintiff with an alternative legal way to challenge the validity of a tax.*" See

FIRST AMENDED
VERIFIED COMPLAINT                    8 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                        Notary page 44, Exhibits: 139 pages

*South Carolina v. Regan,* 465 U.S. 367, 373, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). The Plaintiffs are seeking non-monetary relief under the APA regarding the <u>procedural validity</u> of the agency's actions.

The Administrative Procedure Act ("APA"), however, waives the United States' sovereign immunity for actions brought by [p]ersons ***suffering a legal wrong*** at the hands of an agency when those [p]ersons seek relief other than monetary damages pursuant to 5 U.S.C. § 702(a). ***"Another waiver of sovereign immunity may be found in a statute that creates a federal agency, corporation or other artificial entity, and gives to that entity, the power to sue and be sued."*** See *FDIC v. Meyer*, 510 U.S. 471, 473, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994).

In *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989), the court cited the intent of Congress in passing the APA in so stating: ". . . ***on its face, the 1976 amendment to § 702 waives sovereign immunity in all actions seeking relief from official misconduct except for money damages."*** The court went on to state: ". . . *nothing in the legislative history of the 1976 amendment of § 702 suggests that Congress intended to limit the waiver of sovereign immunity to the specific forms of "agency action" enumerated in § 551(13). On the contrary,* **Congress stated that "the time [has] now come to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity."** H.Rep. No. 1656, 94th Cong., 2d Sess. 9, *reprinted in* 1976 U.S. Code Cong. & Admin.News 6121, 6129 (emphasis supplied). **<u>*Congress singled out types of government conduct similar to the alleged INS conduct in this case*</u>** — **<u>*"tax investigations"*</u>** *and* **"control of subversive activities"** — *as appropriate for judicial review under the amended version of § 702."*

In this instant case, the UNITED STATES and named Defendants cannot and have not

pointed to a plain, adequate and complete remedy – statutory or otherwise – that would prove to

have afforded the Plaintiffs a remedy to challenge the Constitutionality, validity or vagueness of

an internal revenue statute – rendering the jurisdiction of the APA unquestionable.

## Affidavit of Facts And Summary Of Events

1.    Plaintiffs restate and incorporate by reference all of the allegations contained in all of the

preceding paragraphs.

2.    That on or about October 25, 2000, Plaintiffs' Attorney, Milton Baxley, filed a notice of

due process violations with the Internal Revenue Service District Director in Oklahoma City,

Oklahoma, and provided an opportunity to the said District Director to produce competent

evidence of Defendants' compliance, through its agent, with section 6001, subsection (d) of the

Internal Revenue Code, *Vol 68A, Stat 1, § 6001(d)*, and authority for operation of sections 6201,

6321, and 6331, Vol 68A, Stat 1, §§ 6201, 6321 and 6331, upon those denied the notice

mandated in section 6001, subsection (d) (see **Exhibit A,** pages 1-3 attached hereto and

incorporated herein by reference).

3.    That on or about November 8, 2000, Plaintiffs' Attorney, Milton Baxley, filed a

complaint with the Treasury Inspector General Tax Administration regarding the failure of said

District Director to produce competent evidence of Defendants' compliance with section 6001,

subsection (d) of the Internal Revenue Code (see **Exhibit A,** pages 4-6 attached hereto and

incorporated herein by reference).

4.    That the Chief, Automated Collection System, failed to produce competent evidence of

defendant's claims for 1992, 1993, and 1994, in response to CPA Malatesta's correspondence.

5.    That on or about October 22, 2001, Plaintiffs' Attorney, Milton Baxley, filed a notice of

due process violations with the IRS Service Center Director in Kansas City and provided an

FIRST AMENDED
VERIFIED COMPLAINT                           10 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                              Notary page 44, Exhibits: 139 pages

opportunity to the said Service Center Director to produce competent evidence of claims made in a CP71D, regarding 1992, 1993, and 1994 (see **Exhibit A,** pages 7-8 attached hereto and incorporated herein by reference).

6.      That said Service Center Director failed to produce competent evidence of Defendant's claims for 1992, 1993, and 1994.

7.      That on or about November 12, 2001, Plaintiffs' Attorney, Milton Baxley, filed a Complaint of due process violations with the Internal Revenue Service General Counsel regarding the failures of the Service Center Director and the Chief, Automated Collection System, to produce competent evidence of authority or claims (see **Exhibit A,** pages 9-12 attached hereto and incorporated herein by reference).

8.      That on or about June 18, 2002, an individual identifying himself as Special Agent Timothy E. Noonan contacted the Plaintiff, Roger Davis, and was instructed to contact Plaintiff's Attorney at that time, Milton Baxley.

9.      That on or about June 19, 2002, the individual identifying himself as Internal Revenue Agent Timothy E. Noonan sent a notice of appointment to the Plaintiff, setting a date of July 1, 2002 to discuss alleged tax years 1999 and 2000.

10.     That on or about July 1, 2002, the individual identifying himself as Internal Revenue Agent Timothy E. Noonan sent a notice of his intent to contact other persons by appointment regarding the information sought (see **Exhibit A,** page 13 attached hereto and incorporated herein by reference).

11.     That on or about July 8, 2002, Plaintiffs' Attorney, Milton Baxley, objecting to third party contacts, notified Noonan that unauthorized disclosure is a violation of section 6103 of the Internal Revenue Code; section 7602's implementation through Title 27, Code of Federal

FIRST AMENDED
VERIFIED COMPLAINT                    11 of 46        Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                     Notary page 44, Exhibits: 139 pages

Regulations; and of a possible action for damages under Internal Revenue Code section 7431. Said Attorney Correspondence also notified Noonan that section 1203 of the IRS Restructuring and Reform Act of 1998 called for termination for misconduct for violations of rights found in the Constitution and the Internal Revenue Code, including unauthorized disclosure (see **Exhibit A,** pages 14-15 attached hereto and incorporated herein by reference).

12.     That on or about July 8, 2002, Attorney Baxley responded to Noonan's offer of a Collection Due Process hearing (see **Exhibit A,** pages 16-19 attached hereto and incorporated herein by reference).

13.     That on or about August 14, 2002, Attorney Baxley filed another TIGTA complaint for Noonan's failure to produce evidence of his enforcement authority as required by law when demanded. (See **Exhibit A-20.**)

14.     TIGTA failed to respond.

15.     That on or about December 12, 2002, the individual identifying himself as Internal Revenue Agent Timothy E. Noonan issued Third Party Summonses "In the matter of Carl Roger Davis..." to the following third-party entities: Trans Union Corporation, CSC Credit Services, Experian, and also issued a third-party summons In the matter of Jo Elaine Davis..." to Martin Enterprises; seeking testimony and records (see **Exhibit B**, pages 1 to 4 attached hereto and incorporated herein by reference).

16.     That on or about On or about May 18, 2004, an individual identifying himself as Internal Revenue Special Agent James "Tony" Strother (sic) issued Third-Party Summonses "In the Matter of Carl Roger Davis..." to the following entities: Annette's Bookkeeping Services, Inc., Jeffrey Long, CPA, Ozark Mountain Bank, Branson Bank, Roger Carl Davis, Oak Bluff Management Trust, Hattie's Trust, Phoenix Trust, R.C.D. Investments, R.C.D. Marketing Group,

FIRST AMENDED
VERIFIED COMPLAINT                    12 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                        Notary page 44, Exhibits: 139 pages

Goody Trust, Farmhouse Trust, Chariots Trust, Branson Mountain Trust, Bottom Line Employee Services of Missouri, Inc., Attic Creek Holding Co., American Financial Services Trust, AG Impact Management, Inc., Arizona Trust, First Premier Mortgage, and The Farmhouse Restaurant; and Revenue Special Agent James "Tony" Strother (sic) issued Third-Party Summonses "In the Matter of Jo Elaine Davis..." to the following entities: The Farmhouse Restaurant, Oak Bluff Management Trust, and Jo Elaine Davis (see **Exhibit B**, pages 5 to 29 attached hereto and incorporated herein by reference).

17.    That on or about November 22, 2004, Internal Revenue Special Agent James Strother obtained a Search Warrant in Case # 04-2419-JCE-01, to search for the records sought by Noonan (see **Exhibit C**, pages 1 to 11 attached hereto and incorporated herein by reference).

18.    No Affidavit in support of said search warrant or summonses have been produced.

19.    That on or about November 23, 2004 at 6:05 a.m., James A. Strother, Timothy E. Noonan and Ten (10) UNKNOWN AGENTS raided Plaintiffs Roger Carl Davis and Jo Elaine Davis' property known as the "Farmhouse Family Restaurant" located at 119 West Main Street, Branson, Missouri.

20.    Plaintiffs were served with subpoenas to testify on January 19, 2005 before Grand Jury 2004R01281-01 that was investigating possible violations of the internal revenue laws at Title 26, United States Code, Section 7201 – for alleged "willful failure to file federal income taxes" (see **Exhibit D** attached hereto and incorporated herein by reference).

21.    That Plaintiffs are with evidence that the statutory construction of 26 U.S.C. § 7201 is an enforcement statute which fails to identify the tax imposed by the title which Plaintiffs have been made liable and allegedly are subject to (see **Exhibit E** attached hereto and incorporated herein by reference).

FIRST AMENDED
VERIFIED COMPLAINT                    13 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                                  Notary page 44, Exhibits: 139 pages

22.    That 26 U.S.C. § 7851(6) *et seq.*, at Subtitle F, is the statute presumed to be enacted in compliance with to Article I, § 7, Clauses 1 and 2 of the Constitution for the United States of America, as Congress has failed to enact this title, rendering its enforcement a nullity (see **Exhibit G** attached hereto and incorporated herein by reference).

23.    That the Defendants, the UNITED STATES aka UNITED STATES OF AMERICA, the INTERNAL REVENUE SERVICE, the DEPARTMENT OF THE TREASURY, Title 26 U.S.C. § 7201, Title 26 U.S.C. § 7203, Title 26 U.S.C. § 7851, and DOES 1 through 5, individually and collectively participated in causing damage and harm to Plaintiffs Carl Roger Davis and Jo Elaine Davis' person and property, and Plaintiffs hereby enjoin all Defendants, pursuant to Fed.R.Civ.P Rule 18, *in pari materia* with 28 U.S.C. § 1367, engaging this Court's supplemental jurisdiction.

24.    Although the Plaintiffs are of the conviction that the facts and law speaks unambiguously to the matters present herein and throughout, having experienced first hand the peril of American Citizens acting as *pro se* litigants proceeding before a prejudice and biased judiciary acting with impunity and favoritism on behalf of the UNITED STATES and its employees regarding these serious life and liberty issues, having no confidence in the judiciary due to the fear of reprisal and the potential for abuse of process as previously experienced, the Plaintiffs have submitted a copy of this First Amended Verified Complaint to the appropriate fiduciary Congressional authorities to effect the record for oversight and review purposes (see **Exhibit L** attached hereto and incorporated herein by reference).

### COUNT I.
### Defendants Violated The Fifth Amendment, 26 U.S.C. § 6531 And The APA

25.    Plaintiffs reallege all allegations stated above, and further state and allege as follows:

FIRST AMENDED
VERIFIED COMPLAINT                    14 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                                 Notary page 44, Exhibits: 139 pages

26.    On or About May 18, 2004, or soon thereafter, alleged Special Agents JAMES "TONY" STROTHER and TIMOTHY E. NOONAN of the Department of the Treasury, Internal Revenue Service Criminal Investigation Division, (and DOES 1 through 5, inclusively), caused to be issued Form 2039 Summonses to the following: Annette's Bookkeeping Services, Inc.; Jeffrey Long, CPA; Ozark Mountain Bank; Branson Bank; Roger Carl Davis; Oak Bluff Management Trust; Hattie's Trust; Phoenix Trust; R.C.D. Investments; R.C.D. Marketing Group; Goody Trust; Farmhouse Trust; Chariots Trust; Branson Mountain Trust; Bottom Line Employee Services of Missouri, Inc.; Attic Creek Holding Co.; American Financial Services Trust; AG Impact Management, Inc.; Arizona Trust; First Premier Mortgage; and The Farmhouse Restaurant, demanding the production of books and records pertaining to the Plaintiffs, Carl Roger Davis and Jo Elaine Davis, seeking testimony and records pursuant to a criminal investigation.

27.    Plaintiffs are presently under criminal investigation for tax years 1998 through 2003 for possible violations of the internal revenue laws for alleged tax evasion and willful failure to file.

28.    The authority to indict and prosecute for violations of the internal revenue laws is found at Title 26 U.S.C. § 6531, which states in pertinent part: *"No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that the period of limitation shall be 6 years . . ."*

29.    The Defendants are investigating and seeking indictment and prosecution of the Plaintiffs for tax years 1998 through 2003 as indicated on the criminal investigation third party Summonses issued by Special Agent TIMOTHY E. NOONAN. Accordingly, Section 6531 of

FIRST AMENDED
VERIFIED COMPLAINT                    15 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                                 Notary page 44, Exhibits: 139 pages

the Code provides for a period of limitation for indictment under the internal revenue laws of up to six years.

30.     Defendants JAMES "TONY" STROTHER and TIMOTHY E. NOONAN (and DOES 1 through 5, inclusively), acting in their official capacity and under color of legal authority, are proceeding in direct violation of 26 U.S.C. § 6531, as the Summonses were issued solely for criminal purposes - seeking information against Plaintiffs for possible charges of tax evasion and willful failure to file.

31.     Defendants JAMES "TONY" STROTHER and TIMOTHY E. NOONAN (and DOES 1 through 5, inclusively) well knew that 26 U.S.C. § 6531 provides for the statute of limitation for prosecution, and said Defendants and their Criminal Investigation Division Manager and the Criminal Investigation Division Supervisor were all personally responsible for compliance.

32.     The last year Plaintiffs could have been indicted under the internal revenue laws for tax year 1998 was 2004, and for tax year 1999 was 2005 and for tax year 2000 was 2006, yet the Defendants are seeking to enlarge the statute and indict and prosecute the Plaintiffs more than seven (7) years beyond the statute of limitations as imposed by Congress.

33.     The Plaintiffs have been damaged as a direct and proximate result of the Defendants' intent on prosecuting the Plaintiffs' outside the statute of limitations as proscribed pursuant to 26 U.S.C. § 6531, giving rise to an action cognizable under the Administrative Procedure Act; and the Plaintiffs are entitled to a review of the assessment procedures pursuant to 26 U.S.C. § 7429 *et seq.* in light of their collusive acts. Furthermore, Plaintiffs are entitled to the have this Court set forth a determination and order the Defendants to cease and desist with the continued public persecution and pending statutory prosecution of Plaintiffs as prohibited by Congress and until such time the Defendants have been ordered by Court decree.

FIRST AMENDED
VERIFIED COMPLAINT                    16 of 46           Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                         Notary page 44, Exhibits: 139 pages

## COUNT II.
### Violations Of Plaintiffs' Rights Under APA and the Fourth Amendment

34.    Plaintiffs reallege all allegations stated above, and further state and allege as follows:

35.    On or About May 18, 2004 or soon thereafter, alleged Special Agents JAMES "TONY" STROTHER and TIMOTHY E. NOONAN of the Department of the Treasury, Internal Revenue Service Criminal Investigation Division, (and DOES 1 through 5, inclusively), caused to be issued Form 2039 Summonses to issue in violation of 26 U.S.C. § 7602(d)(1) when they well knew a Justice Department referral was in effect.

36.    The individual identifying himself as Special Agent James "Tony" Strother is a *criminal investigator*, as signified by the title, "Special Agent." This status is confirmed by the fact that the Third Party Summonses at issue specifically identify Special Agents JAMES "TONY" STROTHER and TIMOTHY E. NOONAN as employees of the Department of the Treasury, Internal Revenue Service Criminal Investigation Division.

37.    Defendants JAMES "TONY" STROTHER and TIMOTHY E. NOONAN, (and DOES 1 through 5, inclusively), acting in their official capacity and under color of legal authority, issued the above-referenced administrative Summonses in direct violation of 26 U.S.C. § 7602(d)(1), as they were issued solely for criminal purposes - seeking information against Plaintiffs for possible charges of tax evasion and willful failure to file (see **Exhibit F** attached hereto and incorporated herein by reference).

38.    Defendants JAMES "TONY" STROTHER and TIMOTHY E. NOONAN, (and DOES 1 through 5, inclusively), well knew that issuing the Summonses solely for a criminal purpose was a violation of 26 U.S.C. § 7602(d)(1, and said Defendants and their Criminal Investigation Division Manager and the Criminal Investigation Division Supervisor were all personally responsible for compliance.

FIRST AMENDED
VERIFIED COMPLAINT                    17 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
Notary page 44, Exhibits: 139 pages

39.     Special Agents JAMES "TONY" STROTHER and TIMOTHY E. NOONAN, while leading an alleged criminal investigation under the internal revenue laws into the activities of the Plaintiffs, did cause third party summonses to issue for purposes of a criminal investigation as expressly prohibited pursuant to Title 26 U.S.C. § 7602(d)(1), in violation of the Administrative Procedure Act.

40.     The Plaintiffs have been damaged as a direct and proximate result of the Defendants' issuance of third party summonses to issue for purposes of a criminal investigation as expressly prohibited pursuant to Title 26 U.S.C. § 7602(d)(1), giving rise to an action cognizable under the Administrative Procedure Act; and the Plaintiffs are entitled to a review of the assessment procedures pursuant to 26 U.S.C. § 7429 *et seq.* in light of their collusive acts. Plaintiffs are entitled to the have this Court set forth a determination and order the Defendants to cease and desist with the continued public persecution and pending statutory prosecution of Plaintiffs until such time the Defendants have been ordered by Court decree.

**COUNT III.**
**Defendants Are Seeking Prosecution In Violation Of 26 USC 6213(a), The Due**
**Process Clause Of The Fifth Amendment And The Administrative Procedures Act**

41.     Plaintiffs reallege all allegations stated above, and further allege:

42.     On or about November 23, 2004 or soon thereafter, Defendants JAMES "TONY" STROTHER and TIMOTHY E. NOONAN, (and DOES 1 through 5 inclusively), employees of the UNITED STATES, a Federal corporation; the DEPARTMENT OF THE TREASURY and the INTERNAL REVENUE SERVICE and the DEPARTMENT OF JUSTICE, conspired with intent to deprive Plaintiffs of their constitutionally-protected Rights, did in bad faith and under color of law intentionally and recklessly, with willful disregard for the internal revenue laws, began seeking prosecution prior to issuance of *a Notice of Deficiency* (90-day letter) for tax years

1992, 1993 and 1994 as <u>required</u> by 26 U.S.C. § 6212(a) and 6213(a) and (b) and applicable Treasury Regulations (see **Exhibit H** attached hereto and incorporated herein by reference).

43.    Pursuant to 26 U.S.C. § 6213(a), Restrictions applicable to deficiencies; petition to Tax Court, states in pertinent part: "*. . . no . . . proceeding in court . . . shall be . . . prosecuted until such notice has been mailed to the taxpayer . . .*" and the Plaintiffs are not in receipt of any such notice (see **Exhibit H** attached hereto and incorporated herein by reference).

44.    Defendants JAMES "TONY" STROTHER and TIMOTHY E. NOONAN, (and DOES 1 through 5, inclusively), acting in their official capacity and under color of legal authority, are seeking prosecution in direct violation of 26 U.S.C. § 6213(a) – seeking information against Plaintiffs for possible charges of tax evasion and willful failure to file.

45.    Defendants JAMES "TONY" STROTHER and TIMOTHY E. NOONAN, (and DOES 1 through 5, inclusively), well knew no notices of deficiency were issued, and proceeded in violation of 26 U.S.C. § 6213(a), which prohibits prosecution in court until such notices have been mailed; and said Defendants and their Criminal Investigation Division Manager and the Criminal Investigation Division Supervisor were all personally responsible for compliance.

46.    The Defendants never assessed any tax or caused a notice and demand to pay any tax imposed to issue as commanded by 26 U.S.C. § 6301 prior to empanelling the Grand Jury investigation and seeking prosecution as prohibited by 26 U.S.C. § 6213(a), clearly violating the Fifth Amendment due process clause and rights of the Plaintiffs.

47.    As a direct and proximate result of the Defendants' failure to fully comply with 26 U.S.C. §§ 6212 and 6213(a) and their illegal conduct, the Plaintiffs are entitled to a review of the assessment procedures pursuant to 26 U.S.C. § 7429 *et seq.*, and the Defendants should be

FIRST AMENDED
VERIFIED COMPLAINT                    19 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                        Notary page 44, Exhibits: 139 pages

ordered to cease and desist seeking prosecution of the Plaintiff as herein prohibited by this act of Congress.

## COUNT IV.
### 26 U.S.C. § 7201 Is Void For Vagueness And Is Constitutionally Defective

48.    Plaintiffs restate and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

49.    On or about May 18, 2004 or soon thereafter, Plaintiffs Carl Roger Davis and Jo Elaine Davis suffered an invasion and raid at the Family Farmhouse Restaurant and were informed that they were under Criminal Investigation by officers and employees of the Internal Revenue Service, and the Department of Justice, Tax Division pending possible statutory charges for alleged violations of 26 U.S.C. § 7201 – Attempt to evade or defeat tax.

50.    On or about January 28, 2005 or soon thereafter, Plaintiffs were issued subpoenas from the United States District Court, Western District of Missouri, to witness and testify against themselves before a grand jury under cause number 2004R01281-01 as it relates to the possible pending criminal charges of tax evasion – a statutory violation of 26 U.S.C. § 7201.

51.    The statutory construction and plain language of 26 U.S.C. § 7201, the statute which the Plaintiffs are presumed to have violated, states in pertinent part: "Any person who willfully attempts in any manner to evade or defeat *any tax imposed* by this title ... shall ... be guilty of a felony..."

52.    Plaintiffs are with evidence sufficient to conclude that the statutory language of 26 U.S.C. § 7201 is not a standalone, "self-executing" enforcement statute; it is overly broad and void for vagueness on its face, as it fails in its present statutory construction to disclose which tax is imposed by Title 26 that would give notice – as commanded by the Sixth Amendment to the Constitution for the United States of America – and inform Plaintiffs of the nature and cause of

FIRST AMENDED
VERIFIED COMPLAINT                    20 of 46        Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                      Notary page 44, Exhibits: 139 pages

the accusation, thereby extending the common-law right and opportunity to properly defend against any potential action that might be brought against the Plaintiffs.

53.     Title 26 of the United States Code, also known as the Internal Revenue Code, is a compilation of thousands of <u>different classifications of income taxes imposed</u>; however, the language of 26 U.S.C. § 7201 stands <u>moot</u>, as it fails to disclose which tax is imposed by the title applicable to the Plaintiffs' alleged activities.

54.     To the degree that the statute may be determined to have passed Constitutional muster under Article I, Section 7, Clauses 1 and 2, Congress has effectively placed the burden of proof on the Defendants, particularly the UNITED STATES at large, to identify the tax imposed in order to determine the liability of the TAXPAYER. However, 26 U.S.C. § 7201 – an enforcement statute – does not establish or create an income tax liability under the internal revenue laws; it functions to punish for the alleged evasion and nonpayment of some a statutory tax imposed under the Code.

55.     The statutory language and construction of 26 U.S.C. § 7491(a)(1), Burden shifts where taxpayer produces credible evidence, states as follows: "*If, **in any court proceeding**, a taxpayer introduces credible **evidence with respect to any factual issue relevant to ascertaining the liability** of the TAXPAYER **for any tax imposed** by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue,*" thus shifting the burden of proof on the Defendants to identify and establish which statutory tax has been imposed under Title 26 of the United States Code.

56.     As the Code ambiguously references "any tax imposed," the Defendants have not identified which statutory tax has been imposed, or will be imposed by the Title that the Plaintiffs are presumed to have attempted to evade or defeat. Without question one can assert

FIRST AMENDED
VERIFIED COMPLAINT                    21 of 46           Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                         Notary page 44, Exhibits: 139 pages

that the phrase ". . . *tax imposed by this title . . ."* is overly broad, vague, ambiguous, constitutionally deficient, and creates an impossibility for a man or woman of average intelligence to know <u>which income tax law or internal revenue laws</u> the Plaintiffs are presumed to have attempted to evade or defeat.

57.    Without question one can assert that the phrase ". . . *tax imposed by this title . . ."* is overly broad, vague, constitutionally deficient and creates an impossibility for a man or woman of average intelligence to know <u>which income tax law or laws</u> the Plaintiffs are presumed to have attempted to evade or defeat.

58.    Can the Plaintiffs establish that the vagueness of this statute appears on its face to violate the fundamental principles of the Common Law under the Sixth Amendment and does not provide full disclosure to inform a man or woman of average intelligence of the nature and cause of the accusation? We must answer in the affirmative. Let us consider a like scenario using a man or woman of average intelligence. In this example, on Saturday, December 23, 2006, TAXPAYER A crosses the path of TAXPAYER B at a large shopping mall during the Christmas Season in a parking lot of more than 5,000 vehicles.

59.    While in the presence of TAXPAYER B, TAXPAYER A begins to have a heart attack, becoming short of breath and clenching his chest. Before loosing consciousness, in a swallowed breath TAXPAYER A communicates to TAXPAYER B that his vehicle is parked in the mall parking lot and his heart medicine is located in the glove compartment of the vehicle – pleading before his last breath that he go retrieve it – at which point TAXPAYER A loses consciousness.

60.    TAXPAYER B goes into a full panic because TAXPAYER A passed out prior giving TAXPAYER B a description and location that would enable TAXPAYER B to locate TAXPAYER A's vehicle, retrieve the heart medication and save his life. Thus, in this scenario,

TAXPAYER B was unable to save the life of TAXPAYER A because he was not given the information necessary to determine which one of the more than 5,000 vehicles in the mall parking lot belonged to TAXPAYER A.

61.     The above scenario is relative to the number of different alleged *taxes imposed* under the internal revenue laws and the income tax laws.  The statutory construction and language of 26 U.S.C. § 7201 fails to disclose the particular *"tax imposed,"* leaving the Plaintiffs without knowledge of which tax they are presumed to have attempted to evade or defeat – surely a life and death situation considering the seriousness of the possible indictment. How can a [p]erson (sentient flesh and blood being) be punished to suffer the possible loss of life and liberty to become property of the Federal Government via incarceration pursuant to an ambiguous statute that is an enforcement statute, is not self-executing and is unsupported by an underlying statute identifiable within the Code?

62.     **The question of law that must be answered is:**

> Because 26 U.S.C. § 7201 is an enforcement statute and is not self-executing, which statute identifiable under Title 26 of the United States Code (IRC) imposes a statutory tax liability that the Plaintiffs are presumed to have violated that would give rise to Plaintiffs being indicted for the alleged crime of tax evasion?

63.     On its face, the statutory construction and language of 26 U.S.C. § 7201 is not a self-executing standalone enforcement statute, and must be supported by an enhancement statute that discloses the statutory *"tax imposed"* by Title 26 that would inform the Plaintiffs of the nature and cause of the accusation, as required under the Common Law pursuant to the Sixth Amendment to the Constitution for the United States of America.

64.     Does the statutory construction and/or ambiguous language of 26 U.S.C. § 7201 in its present form as a self-executing standalone enforcement statute violate the due process clause of the Fifth and Fourteenth Amendments wherein it fails to inform the Plaintiffs of which *"tax*

FIRST AMENDED
VERIFIED COMPLAINT                    23 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                       Notary page 44, Exhibits: 139 pages

*imposed*" by the title (under the internal revenue laws) that the Plaintiffs are presumed to have violated? Plaintiffs must answer in the affirmative.

65.    The statutory construction and plain language of 26 U.S.C. § 7201, charged as a self-executing standalone enforcement statute, must be challenged as <u>unconstitutional</u> on its face in direct violation of both the due process clause of the Fifth Amendment and the equal protection clause of the Fourteenth Amendment of the United States Constitution, because <u>it fails to inform</u> the Plaintiffs (or any man or woman of average intelligence) <u>which</u> tax is the "*. . . tax imposed by this title . . .*", be it an income or an internal revenue tax he is presumed to have violated.

66.    How can the Plaintiffs, a man and woman of average intelligence, defend against an undisclosed and invisible *tax imposed* under the internal revenue laws that the Defendants have refused to identify? The placement of the burden on the Plaintiffs in this conundrum is wholly unconstitutional.

67.    The statutory construction and language of 26 U.S.C. § 7201 violates the Common Law and Constitutional due process as it: (1) is not in harmony with the Common Law, (2) cannot be imposed upon citizens/subjects/statutory slaves referred to as TAXPAYERS equally, (3) is a Pandora's Box for selective prosecution, (4) is unreasonable, (5) does not have a real or substantial objective to be obtained, save fear and collusion, (6) violates the constitutional due process of law at Amendments Five, Six, Nine, Ten and Fourteen for failure to give notice and opportunity to be heard and to disclose the nature and cause of the accusation and (8) violates equal protection of the law. . Furthermore, the objective is not a reasonable and proper one for the legislature to seek, as neither the ends are legitimate, nor the means acceptable for meeting that end.

FIRST AMENDED
VERIFIED COMPLAINT                    24 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                       Notary page 44, Exhibits: 139 pages

68.     The statutory construction of 26 U.S.C. § 7201, presumed to be a self-executing standalone enforcement statute, is herein challenged by the Plaintiffs as void for vagueness and, therefore, unconstitutional because the crux of the statute is incompetent, and thus benign, wherein it does not disclose in its own words a statutory liability for which *". . . any tax imposed by this title . . ."* which the Plaintiffs are presumed to have attempted to evade or defeat – the very lynchpin for being indicted by the statute.

69.     Unfortunately, in this quagmire of "Congressional Activism," trolling hand-in-hand with "Judicial Activism," the United States Congress and United States Supreme Court make it no secret and have openly admitted that Congress intentionally enacts legislation to be ambiguous, so as to allow judicial activism, political interpretation and abuse of discretion that results in the *"selective prosecution"* of issues before the Court – in essence making every act of Congress *void ab initio*.

70.     This practice in and of itself is in bad faith and unconstitutional, because ambiguous legislation fails to comply with the common-law jurisdiction established under the Constitution for the United States of America, based on principles of the Common Law, to effectively instruct Citizens of average intelligence the intent of the law and what the law commands or forbids.

71.     The Plaintiffs have been damaged as a direct and proximate result of the Defendants' *failure to identify the tax imposed under the internal revenue laws* pursuant to 26 U.S.C. § 7201, that would give rise to an assessment under 26 U.S.C. §§ 6301. The Plaintiff is entitled to a review of the assessment procedures pursuant to 26 U.S.C. § 7429 *et seq.*

        WHEREFORE, Plaintiffs Carl Roger Davis and Jo Elaine Davis pray the Court set forth a determination of the following:

FIRST AMENDED
VERIFIED COMPLAINT                          25 of 46                Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                                  Notary page 44, Exhibits: 139 pages

a.   Set forth a written judicial determination under the Common Law of the Constitution that 26 U.S.C. § 7201 is a statute void for vagueness, because it is not in harmony with the Common Law of the Constitution and violates the due process clause of the Fifth Amendment and the nature and cause of the accusation of the Sixth Amendment.

b.   Set forth a written judicial determination under the Common Law of the Constitution that 26 U.S.C. § 7201 is void for vagueness and is, therefore, unconstitutional and cannot operate as a standalone enforcement statute, because it implies but fails to identify any tax imposed under the internal revenue laws that give rise to being charged by the statute itself.

c.   Issue an Order under the Common Law of the Constitution prohibiting the Defendants from causing the Plaintiffs to be charged for possible violation of 26 U.S.C. § 7201 until such time a determination has been made to establish the constitutionality.

## COUNT V.
## 26 U.S.C. § 7203 Is Void For Vagueness And Constitutionally Defective

72.   Plaintiffs restate and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

73.   On or about May 18, 2004 or soon thereafter, Plaintiffs Carl Roger Davis and Jo Elaine Davis were informed that they are under Criminal Investigation by officers and employees of the Internal Revenue Service, Department of Justice, Tax Division, pending possible statutory charges for alleged violations of 26 U.S.C. § 7203 – Willful failure to file return, supply information, or pay tax.

74.    The language of 26 U.S.C. § 7203, the statute under which the Plaintiffs may be charged, is as follows: *"Any person required under this title to pay any estimated tax or tax*, or *required by this title* or by regulations made under authority thereof *to make a return, keep any records, or supply any information*, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor . . ."

75.    In addition the statutory language of 26 U.S.C. § 7203, Congress enacted 26 U.S.C. § 6001 as an enforcement statute for an alleged violation of failing to act, the section of the Code that the Secretary must give notice commanding Plaintiffs to act, which states in pertinent part: *"Every person liable for any tax imposed by this title*, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe. Whenever in the judgment of the Secretary it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable for tax under this title."

76.    Here the statutory language of section 6001 works *in pari materia* with, and is just as ambiguous as 7201 and 7203, employing phrases such as: (1) *every person liable*, (2*) any tax imposed*, (3) *that the Secretary may require any person by notice served upon him*, (4) *to keep books and records* – a statutory maze of internal revenue riddles. The language of 26 U.S.C. § 6001 appears to command an act of commission by the Secretary, in that he may require *any person* by notice served upon him to keep books and records.

77.    It is reasonable to presume that if the Secretary did not serve notice and the regulations do not serve notice (and there is no requirement for any person to serve notice upon himself),

FIRST AMENDED
VERIFIED COMPLAINT                    27 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                        Notary page 44, Exhibits: 139 pages

then Plaintiffs cannot be presumed to have violated 26 U.S.C. § 7203, the statutory enforcement statute for failing to act pursuant to notice not given by the Secretary or by regulations under 26 U.S.C. § 6001, which indeed is an act or alleged crime of omission.

78.    Plaintiffs are with evidence sufficient to conclude that the statutory language and construction of 26 U.S.C. § 7203 is problematic in that it is overly broad and void for vagueness on its face; it appears to fail to disclose who *any* person required is, under the title, to keep *any* records or supply *any* information, giving Plaintiffs notice and opportunity to pay any estimated tax required by statute and regulation.

79.    Title 26 of the United States Code is a compilation of thousands of <u>different classifications of income taxes imposed</u>; however, the language of 26 U.S.C. § 7203 appears to stand <u>moot,</u> as it fails to disclose who the any person is that is required to keep books and records and therefore burdens the Secretary to give notice to such person at 26 U.S.C. § 6001.

80.    Congress effectively placed the burden on the Government to serve notice on *any person* required to keep books and records, supply information and identify the tax imposed to determine the liability of the TAXPAYER; however, 26 U.S.C. § 7203 is a enforcement statute that does not establish or create a liability.

81.    The statutory language of 26 U.S.C. § 7491(a)(1), Burden shifts where TAXPAYER produces credible evidence, states as follows: "*If, **in any court proceeding**, a taxpayer introduces credible **evidence with respect to any factual issue relevant to ascertaining the liability** of the TAXPAYER **<u>for any tax imposed</u>** by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.*"

FIRST AMENDED
VERIFIED COMPLAINT                    28 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                        Notary page 44, Exhibits: 139 pages

82.    As the Code constantly references "any tax imposed," the Defendants have failed to identify what tax has been, or will be imposed, by the title under which the Plaintiffs are presumed to be required to pay an estimated tax or tax.

83.    Without question one can assert that the phrase "*. . . Any person required . . ."* is overly broad, vague, constitutionally deficient and creates an impossibility for a man or woman of average intelligence to know who ***any person required*** is, as such is the responsibility of the Secretary to inform the Plaintiffs of their duty to keep books and records – and if the Secretary fails to inform the Plaintiffs, it is his nonfeasance or failure to act that caused the Plaintiffs not to act.

84.    Plaintiffs have never received notice from the Secretary, and by regulations are not required to keep books and records or render statements, without notice from the Secretary prior thereto.

85.    Can the Plaintiffs establish that vagueness of this statute appears on its face to violate the fundamental principles of full disclosure and, therefore, due process? We must answer in the affirmative.

86.    Let's consider a like scenario using everyday life for the average Human being/non-statutory Citizen or subject. In this example, TAXPAYER X, after securing a major contract with United States Oil Company (USOC), receives Letter 978 from the Secretary on January 15, 2004 explaining that because he sells Oil products throughout the United States of America, he is required to keep books and records to assess his tax liability and pay the tax on the oil products – and with such notice he proceeds accordingly.

87.    But TAXPAYER Z, after graduating from high school, became a self sufficient carpenter who worked with his hands and contracted to build single and multiple family dwellings with

FIRST AMENDED
VERIFIED COMPLAINT                    29 of 46              Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                            Notary page 44, Exhibits: 139 pages

various construction vendors in his local State of Honesty beginning in 1994; he never filed a federal income tax return, because he never received notice from the Secretary like TAXPAYER X that instructed him to do so – therein never filing a return, never keeping books or records and never keeping information.

88.    Because TAXPAYER Z never received a notice from the Secretary or area director, he had no reason to believe that he was legally required to file a federal income tax return or pay a tax.

89.    The above scenario is relative to the number of different unknown taxes imposed by the income tax laws. The statutory construction and language of 26 U.S.C. § 7203 fails to disclose the particular *"person required,"* leaving the Plaintiffs without knowledge of which tax they are presumed to have willfully failed to file.

**The question of law that must be answered is:**

(a)    Can a person be penalized and punished to suffer the possible loss of life and liberty, to become United States property based on a statutory enactment that commands the Secretary to perform an act that does not create a known legal duty Plaintiffs can effectively violate? The statutory obligation to notice the Plaintiffs is that of the Secretary's – not the Plaintiffs.

(b)    On its face, the statutory construction and language of 26 U.S.C. § 7203 acts as a standalone enforcement statute – unsupported by an enhancement statute, and not self-executing for prosecutorial purposes.

(c)    Does the statutory construction and/or language of 26 U.S.C. § 7203 – in its present form as a standalone enforcement statute that is not self-executing – violate the due process clause of the Fifth and Fourteenth Amendments wherein it fails to inform the Plaintiffs

FIRST AMENDED
VERIFIED COMPLAINT                    30 of 46        Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                      Notary page 44, Exhibits: 139 pages

of the statutory *"**person required**"* by the *Secretary* to perform the Act? Plaintiffs must answer in the positive.

90.    The statutory construction of 26 U.S.C. § 7203 charged as a standalone enforcement statute that is not self-executing appears to be <u>unconstitutional</u> on its face, in direct violation of the due process clause of the Fifth Amendment and the equal protection clause of the Fourteenth Amendment of the United States Constitution, because <u>it fails to inform</u> the Plaintiffs (or any man or woman of average intelligence) of <u>which of</u> the 1000 plus taxes is the *". . . **tax imposed by this title . . .**"* that they are presumed to have violated.

91.    The statutory language and construction of 26 U.S.C. § 7203 violates the substantive elements of constitutional due process as: (1) is not in harmony with the Common Law, (2) it cannot be imposed upon Citizens (TAXPAYERs) equally, (3) it is a Pandora's Box for selective prosecution, (4) it is unreasonable, (5) it does not have a real or substantial objective to be obtained, (6) the objective is not a reasonable and proper one for the legislature to seek, (7) the ends are not legitimate nor the means acceptable for meeting that end, and (8) it violates substantive and constitutional due process of law for failure to give notice and opportunity to be heard, fails to disclose the nature and cause of the accusation, and violates equal protection of the law.

92.    The statutory language and construction of 26 U.S.C. § 7203 – presumed to be a standalone enforcement statute that is not self-executing – is herein challenged by the Plaintiffs as unconstitutional and void for vagueness because the statute clearly commands that the main element of the statute encompasses the undisclosed liability for *". . . **any tax imposed by this title . . .**"* which is the lynchpin for being charged by this statute.

FIRST AMENDED
VERIFIED COMPLAINT                    31 of 46           Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                        Notary page 44, Exhibits: 139 pages

93.     The Plaintiffs have been damaged as a direct and proximate result of the Defendants' *failure to identify the tax imposed under the internal revenue laws* pursuant to 26 U.S.C. § 7203, that would give rise to an assessment under 26 U.S.C. §§ 6301. The Plaintiff is entitled to a review of the assessment procedures pursuant to 26 U.S.C. § 7429 *et seq*.

**WHEREFORE**, Plaintiffs Carl Roger Davis and Jo Elaine Davis pray the Court set forth a determination of the following:

a.  Set forth a written judicial determination under the Common Law of the Constitution that 26 U.S.C. § 7203 is a statute void for vagueness because it is not in harmony with the Common Law of the Constitution and violates the due process clause of the Fifth Amendment and the nature and cause of the accusation of the Sixth Amendment.

b.  Set forth a written judicial determination under the Common Law of the Constitution that 26 U.S.C. § 7203 is void for vagueness and is therefore unconstitutional and cannot operate as a standalone enforcement statute because it implies, but fails to identify, any tax imposed under the internal revenue laws that give rise to being charged by the statute itself.

c.  Issue an Order under the Common Law of the Constitution prohibiting the Defendants from causing the Plaintiffs to be charged for possible violation of 26 U.S.C. § 7203 until such time a determination has been made to establish the constitutionality of the statute.

**COUNT VI.**
**Statutes Of The United States Not Legislatively Enacted by Congress**
**As Required Under The Constitution Have No Force Or Effect Of Law**

94.     Plaintiffs restate and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

95.     Documentary intrinsic evidence is sufficient to establish that ALL statutes under Subtitle F of the Internal Revenue Code have not yet been enacted by an Act of Congress in violation of

FIRST AMENDED
VERIFIED COMPLAINT                    32 of 46        Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                     Notary page 44, Exhibits: 139 pages

Article I § 7 Clauses 1 and 2 of the Constitution, including but not limited to, 26 U.S.C. § 6531, 7201, 7203, 7802, 7431, 7433, 6103 and 7602.

96.    The Internal Revenue Service was created by the Department of the Treasury at 26 U.S.C. § 7802(a) as an Oversight Board (not an Act of Congress under the Constitution) for which the original intent was for (internal affairs) governing federal employees.

97.    This is further established in the United States Government Manual 2006 on page 341 as listed under the Department of the Treasury. This is supported at Title 26 U.S.C. § 6103(b)(9) – Federal agency "means an agency of section 551(1) of title 5, United States Code."

98.    The Constitution for the United States of America does not authorize an agency of the Government, including the Department of the Treasury, to pass legislative enactments – thus, limiting the jurisdictional reach of the Service.

99.    The term "Act of Congress" means a law enacted in one of the ways prescribed by Article I § 7 Clauses 1 and 2 of the Constitution. Acts of Congress are published in the United States Statutes At Large, which constitutes "*legal evidence*" of what the law provides. Article I § 7 Clause 1 and 2 of the Constitution states in pertinent part:

>    Section 7 Clause 1: "*All Bills for raising revenue shall originate in the House of Representatives . . .*" and;

>    Section 7 Clause 2: "*Every Bill which shall have passed the House of Representatives and the Senate, shall, before it becomes a Law, be presented to the President of the United States . . .*"

100.    Section 7851 of Title 26 comes under Subtitle F of the Internal Revenue Code (IRC) of 1954 and 1986 as amended to date.

101.    Subchapter B of Title 26 of the United States Code discloses the effective dates of enactment as codified at 26 U.S.C. § 7851 - Applicability of revenue laws:

FIRST AMENDED
VERIFIED COMPLAINT                    33 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                                 Notary page 44, Exhibits: 139 pages

(1) **Subtitle A. "**(A) *Chapters 1, 2, 4, and 6 of this title shall apply only with respect to taxable years beginning after December 31, 1953, <u>and ending after the date of enactment of this title</u>,***"**

(2) **Subtitle B. "**(A) <u>*Chapter 11 of this title shall apply with respect to estates of decedents dying after the date of enactment of this title*</u>, and with respect to such estates chapter 3 of the Internal Revenue Code of 1939 is hereby repealed."

(3) **Subtitle C. "***Subtitle C of this title shall apply only with respect to remuneration paid after December 31, 1954,* except that chapter 22 of such subtitle shall apply only with respect to remuneration paid after December 31, 1954, which is for services performed after such a date."

(4) **Subtitle D. "***Subtitle D of this title shall take effect on January 1, 1955.***"**

(5) **Subtitle E. "***Subtitle E* shall take effect on January 1, 1955 …"

(6) **Subtitle F. "**(A) General rule. <u>*The provisions of subtitle F shall take effect on the day after the date of enactment of this title*</u> and shall be applicable with respect to any tax imposed by this title."

102.    In accordance with the Internal Revenue Code, United States Code Service and United States Code Annotated, Title 26 U.S.C. § 7802 is provisioned under Subtitle F – Procedures and Administration, Chapter 75. Crimes and Other Offenses – an Act that Congress failed to legislatively enact under the Constitution at Article I, Section 7, Clauses 1 and 2 – giving rise to a Constitutional controversy. Accordingly, Subtitle A Income taxes, a Chapter 2 tax on self-employment as referenced at 26 U.S.C. § 7851(a)(1) come under this enforcement provision.

103.    A literal read of 26 U.S.C. § 7851(a)(1) states in pertinent part: *"**Chapters . . . 2 . . . of this title shall apply. . . to taxable years beginning after December 31, 1953; <u>and ending after the date of enactment of this title.</u>"**

104.    The construction of the statute reads: Subtitle F "(a) General rule. <u>***The provisions of subtitle F shall take effect on the day after the date of enactment of this title***</u>," and there is no date of enactment for Subtitle F, no Public Law reference to the enactment of Subtitle F, no Enacting Clause for Subtitle F, or any other information to conclude that Subtitle F has ever been enacted under Congressional Mandate and legislative authorization.

FIRST AMENDED
VERIFIED COMPLAINT                    34 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                                  Notary page 44, Exhibits: 139 pages

105.    To further establish that Subtitle F has not yet been enacted by Congress, the following language is provisioned at 26 U.S.C. § 7851(c) – Crimes and forfeitures, which openly violates constitutional mandate and circumvents the required Acts of Congress in so stating:

> (c) **Crimes and forfeitures.** "*All offenses committed*, and all penalties or forfeitures incurred, *under any provision of law hereby repealed, may be prosecuted and punished in the same manner and with the same effect as if this title had not been enacted*."

106.    This statute unambiguously establishes that even if Congress has failed to comply with the constitutional requirements prescribed by Article I § 7 of the Constitution, Plaintiffs can be prosecuted and punished without such an enactment.

107.    If Plaintiffs are to rely on the clear language of the statute, a man or woman of average intelligence would conclude that Subtitle F, which covers Chapters 61 through 80, has not yet been enacted – and upon enactment, Chapter 2 of Subtitle A is ended. Plaintiffs seek declaratory relief to determine the validity of an enforcement statute that has never been enacted by Congress – and upon its enactment, the Chapter to which the statute applies shall have ended.

**The questions of law are as follows:**

(a)    Can the Department of the Treasury cause statutes to be published in the Internal Revenue Code as if they are legislative enactments by Congress under the Constitution – even though they have never been enacted as prescribed by Article I § 7 Clauses 1 and 2 of the Constitution?

(b)    Can Plaintiffs be persecuted and then prosecuted and punished by an Act of Congress related to any internal revenue law that has not been enacted by Congress as prescribed by Article I § 7 Clauses 1 and 2 of the Constitution?

(c)    Does Congress have the power to circumvent the prescribed mechanisms established by Article I § 7 Clauses 1 and 2 of the Constitution as it relates to the internal revenue laws?

FIRST AMENDED
VERIFIED COMPLAINT                    35 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
Notary page 44, Exhibits: 139 pages

(d)   Can Congress draft and publish an Act that has never been enacted which effectively usurps and circumvents Article I § 7 Clauses 1 and 2 of the Constitution that may cause Plaintiffs to suffer punishment and prosecution in the same manner and with the same effect as if this title had not been enacted?

(e)   When Congress fails or refuses to comply with Article I § 7 Clauses 1 and 2 of the Constitution, does this not cause any Act *not* passed or enacted by Congress according to its terms to be null and void, having no force and effect in law?

108.   The Plaintiffs have been damaged as a direct and proximate result of the Defendants' *failure to establish where* under Constitution for the United States of America Congress is authorized to ignore and not comply with Article I § 7 Clauses 1 and 2, regarding the enactment of laws generating revenue, a/k/a, internal revenue laws.

**WHEREFORE**, Plaintiffs Carl Roger Davis and Jo Elaine Davis pray the Court set forth a determination of the following:

a.   Set forth a written judicial determination under the Common Law of the Constitution that 26 U.S.C. § 7851, *et seq.*, is a statute under the internal revenue laws that must be enacted pursuant to Article I, § 7, Clauses 1 and 2 of the Constitution for the United States of America, which commands an Act of Congress.

b.   Set forth a written judicial determination under the Common Law of the Constitution that 26 U.S.C. § 7851, *et seq.*, has not been enacted pursuant to Article I, § 7, Clauses 1 and 2 of the Constitution for the United States of America pursuant to an Act of Congress and the statute is void – having no force or effect of law.

c.   Set forth a written judicial determination under the Common Law of the Constitution for Injunctive relief, prohibiting the Defendants from causing the prosecution of the Plaintiffs

under the enforcement statues of the internal revenue laws pursuant to Title 26 U.S.C. § 7851(6) Subtitle F that have never been enacted at Article I, § 7, Clauses 1 and 2 of the Constitution for the United States of America and generally.

**d.** Issue an Order under the Common Law of the Constitution prohibiting the Defendants from causing the Plaintiffs to be prosecuted under the enforcement statues at Title 26 U.S.C. § 7851(6) Subtitle F of the internal revenue laws that have never been enacted by any Act of Congress.

## COUNT VII.
### The Internal Revenue Service IS NOT Authorized Under The Constitution For The United States Of America Through Any Act Of Congress To Administer The Internal Revenue Laws

109.    Plaintiffs restate and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

110.    On or About May 18, 2004, or soon thereafter, alleged Special Agents JAMES "TONY" STROTHER and TIMOTHY E. NOONAN of the Department of the Treasury – Internal Revenue Service Criminal Investigation Division (and DOES 1 through 5, inclusively) caused to be issued Form 2039 Summonses to the following: Annette's Bookkeeping Services, Inc.; Jeffrey Long, CPA; Ozark Mountain Bank; Branson Bank; Roger Carl Davis; Oak Bluff Management Trust; Hattie's Trust; Phoenix Trust; R.C.D. Investments; R.C.D. Marketing Group; Goody Trust; Farmhouse Trust; Chariots Trust; Branson Mountain Trust; Bottom Line Employee Services of Missouri, Inc.; Attic Creek Holding Co.; American Financial Services Trust; AG Impact Management, Inc.; Arizona Trust; First Premier Mortgage; and The Farmhouse Restaurant, demanding the production of books and records pertaining to the Plaintiffs, Carl Roger Davis and Jo Elaine Davis, seeking testimony and records pursuant to a criminal investigation. (See **Exhibit B** attached hereto and incorporated herein by reference.)

111.    The Form 2039 Summonses clearly identify the Department of the Treasury and Internal Revenue Service to include the logo of their seal, the Buzzard as their signature and mark representing their corporate offices. (See **Exhibit B** attached hereto and incorporated herein by reference).

112.    In 1862, during the Civil War, President Lincoln and Congress created the Office of Commissioner of Internal Revenue and enacted an income tax to pay war expenses (see Revenue Act of 1862). The position of Commissioner exists today as the head of the Internal Revenue Service (see **Exhibit I** attached hereto and incorporated herein by reference).

113.    The organization created that enforced the collection of these taxes without authority was named the Bureau of Internal Revenue, in contrast to U.S. government institutions that collected external revenue through duties and tariffs.

114.    This organization is further established in the United States Government Manual 2006 on page 341 as the Internal Revenue Service listed under the Department of the Treasury. The Office of the Commission of Internal Revenue, cited as the Internal Revenue Service Oversight Board at 26 U.S.C. § 7802(a), was originally intended to oversee internal affairs and governance of federal employees. However, INTERNAL REVENUE SERVICE as it exists today was never created by an Act of Congress under the Constitution. As early as the year 1929, the Bureau of Internal Revenue began using the name "Internal Revenue Service" on at least one tax form. In 1953 the name change to the "Internal Revenue Service" was formalized in Treasury Decision 6038 (see **Exhibit I** attached hereto and incorporated herein by reference).

115.    To further establish the non-agency status of the INTERNAL REVENUE SERVICE, pursuant to Title 26 U.S.C. § 6103(b)(9) - Federal agency, ***"means an agency of section 551(1) of title 5, United States Code,"*** where any established entity of the United States Government

FIRST AMENDED
VERIFIED COMPLAINT                    38 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                        Notary page 44, Exhibits: 139 pages

deemed an "agency" is defined; and IRS is not defined as such within that meaning. (See **Exhibit J** attached hereto and incorporated herein by reference.)

116.   As affirmed and established by Richard A. Ward on November 18, 1993 in the case of *Diversified Metal Products, Inc., v. Internal Revenue Service, et al.*, Civil No. 93-405-E-EJL, on page 2 at ¶ 4 of Counsel's answer, he affirms that the Internal Revenue Service is not an agency of the United States in so stating in pertinent part: *"Denies that the Internal Revenue Service is an agency of the United States Government . . ."* (See **Exhibit J** attached hereto and incorporated herein by reference.)

117.   In a recently declassified document released by the National Archives and Records Administration (NARA) dated August 25, 1945 to Secretary Vinson from Messrs. Luxford and Brenner regarding the Administrative History of the Bureau of Internal Revenue (existing now as the defendant INTERNAL REVENUE SERVICE), Luxford states on page 27 at § VIII ¶ 1: *"There has never been any statutory creation of the Bureau of Internal Revenue, although the Bureau is mentioned in several statutes . . ."* affirming the alleged existence of the *nul tiel* entity, not created by any act of Congress – Constitutionally or otherwise – and, therefore, rendering the INTERNAL REVENUE SERVICE'S enforcement authority a nullity. (See **Exhibit K** attached hereto and incorporated herein by reference.)

118.   The Constitution for the United States of America does not authorize any agency of the Government, including the Department of the Treasury, to pass legislative enactments – thus, limiting the jurisdictional scope and reach of the INTERNAL REVENUE SERVICE and its *qui tam* officers, agents and employees proceeding on behalf of the UNITED STATES Federal Corporation.

FIRST AMENDED
VERIFIED COMPLAINT                    39 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                        Notary page 44, Exhibits: 139 pages

**The questions of law are as follows:**

(a)    What part of the Constitution for the United States of America authorized the INTERNAL REVENUE SERVICE to act on behalf of the UNITED STATES or the DEPARTMENT OF THE TREASURY being created by any act of Congress to collect revenues within the meaning of Article I § 7 Clauses 1 and 2 of the Constitution?

(b)    What part of the Constitution for the United States of America authorized the DEPARTMENT OF THE TREASURY to create and employ the INTERNAL REVENUE SERVICE to act on behalf of the UNITED STATES to collect revenues from American Citizens pursuant to an act of Congress within the meaning of Article I § 8 Clause 1 of the Constitution?

(c)    What act of Congress created the INTERNAL REVENUE SERVICE under the Constitution for the United States of America that authorized its officers, agents and employees to collect revenues within the meaning of Article I § 8 Clause 1 of the Constitution?

(d)    Because the INTERNAL REVENUE SERVICE was not created by an act of Congress and is not an agency of the United States Government, without proceeding under abuse of power, color of law and color of authority, under what jurisdictional authority is the IRS authorized under the Constitution for the United States of America to act as a police power to enforce the collection of internal revenues allegedly owed by Plaintiffs within the meaning of Article I § 8 Clause 1 of the Constitution?

119.    The Plaintiff has been damaged as a direct and proximate result of the Defendants' *failure to establish where* under Constitution for the United States of America an act of Congress created the INTERNAL REVENUE SERVICE that would authorize its officers, agents or employees to act on behalf of the UNITED STATES Federal Corporation for the collection of internal revenue – or external revenue for that matter.

**WHEREFORE,** Plaintiffs Carl Roger Davis and Jo Elaine Davis pray the Court set forth a determination of the following:

a.  Set forth a written judicial determination that the INTERNAL REVENUE SERVICE was not created under the Constitution for the United States of America pursuant to an act of Congress.

b.  Set forth a written judicial determination that the INTERNAL REVENUE SERVICE is not an agency of the United States Government.

c.  Set forth a written judicial determination that the INTERNAL REVENUE SERVICE is not an agency of the United States Government and its officers, agents and employees acted beyond their jurisdictional scope to issue administrative process and to petition the DEPARTMENT OF JUSTICE to empanel a Grand Jury to prosecute the Plaintiffs criminally for an alleged violation of the internal revenue laws.

## CONCLUSION

120.    At all times this summary is incorporated by reference as to each and every cause of action and/or count as stated herein.

121.    The acts of the Defendants, the UNITED STATES Federal Corporation, the INTERNAL REVENUE SERVICE *nul tiel* corporation, the DEPARTMENT OF THE TREASURY and the DEPARTMENT OF JUSTICE are clear violations of the Constitution for the United States of America, Acts of Congress and the United States Supreme Court, committing pernicious acts under color of law.

122.    The reprehensible and vexatious conduct of and the illegal disclosure made by Criminal Investigation Division Special Agent JAMES "TONY" STROTHER and the other agents involved herein caused Plaintiffs substantial professional and personal embarrassment, loss of

goodwill, and unnecessary attorneys fees and accountant fees, resulting in actual damages, the extent of which at this time cannot be completely and accurately ascertained, but which will be more fully known after the completion of discovery.

123.    The intentional and/or grossly negligent unlawful disclosure by Criminal Investigation Division Special Agent JAMES "TONY" STROTHER and the other agents involved herein entitles Plaintiffs to punitive damages, the extent of which at this time cannot be completely and accurately ascertained, but which will be more fully known after the completion of discovery.

**WHEREFORE**, Plaintiffs Carl Roger Davis and Jo Elaine Davis have been damaged by officials, officers, agents and employees of the Defendants and their agencies herein named due to their individual and collective intentional, willful and reckless acts and Plaintiffs pray for other declaratory and injunctive relief as follows:

a.  Set forth a written judicial determination under the Common Law of the Constitution that the Defendants are statutorily prohibited from seeking prosecution of Plaintiffs pursuant to 26 U.S.C. § 6531, *et seq.*, which provides the statute of limitations for tax prosecutions under the internal revenue laws to six (6) years and that the Defendants are without jurisdiction to seek prosecution for years 1998, 1999 and 2000;

b.  Set forth a written judicial determination under the Common Law of the Constitution that the Defendants proceeded in violation of 26 U.S.C. § 7602(d)(1), *et seq.*, which prohibits the issuance of administrative summonses when a Justice Department referral is in effect pursuant to a criminal investigation, rendering all evidence obtained by the Defendants in this manner null and void;

c.  Set forth a written judicial determination under the Common Law of the Constitution that the Defendants are statutorily prohibited from seeking prosecution of Plaintiffs pursuant to 26

FIRST AMENDED
VERIFIED COMPLAINT                    42 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                        Notary page 44, Exhibits: 139 pages

U.S.C. § 6212(a) and 6213(a) *et seq.*, which prohibit the Plaintiffs from being prosecuted for an alleged violation of the internal revenue laws until such time a notice of deficiency or determination letter has been issued.

d.  Set forth a written judicial determination under the Common Law of the Constitution that the Defendants proceeded in violation of 26 U.S.C. § 6103 *et seq.*, bringing the Plaintiffs harm and injury with the disclosure of personal information to third parties not authorized or entitled to such disclosure;

e.  Award Plaintiffs declaratory and injunctive under the APA;

f.  Award Plaintiffs relief pursuant to the Equal Access to Justice Act, including but not limited to, an award of reasonable attorneys fees and costs; and

g.  Any other remedy under Common Law of the Constitution, at law and in equity this Court deems just and proper.

### JURY TRIAL DEMANDED

Respectfully Submitted.

### VERIFICATION

I/we, Carl Roger Davis and Jo Elaine Davis, declare under penalty of perjury pursuant to 28 U.S.C. § 1746(1), that I/we believe the above to be true and correct to the best of my/our knowledge, understanding and belief. All Rights retained without recourse.

On this _14th_ day December, 2007

Signature _____
                Carl Roger Davis, Plaintiff

Signature: _____
                Jo Elaine Davis, Plaintiff

FIRST AMENDED
VERIFIED COMPLAINT                    43 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                                                                 Notary page 44, Exhibits: 139 pages

# NOTARY ACKNOWLEDGMENT

State of Missouri          )

                           ) Subscribed and Sworn.

County of _Taney_       )

     Before me, the undersigned authority, on this _14th_ day of _December_ , 2007

appeared **Carl Roger Davis  and  Jo Elaine Davis** known to me to be the person whose names

are subscribed to the foregoing instrument, and acknowledged to me that they executed the

instrument for the purposes and consideration expressed in the instrument.

     Given under my hand and seal of office.

     (Seal)

**KRISTINA D. NORDYKE**
Notary Public - Notary Seal
STATE OF MISSOURI
Taney County
07041935
My commission expires April 26, 2011

_Kristina D Nordyke_
Notary's Signature

My Commission Expires: _4·26·2011_

## ATTACHMENTS:

**Exhibit A:** Attorney Milton Baxley's Correspondence with the IRS in behalf of Plaintiffs
(19 pages)

**Exhibit B:** 2039 Summonses issued to Third-Party Entities (29 pages)

**Exhibit C:** Search Warrant to Search Family Farmhouse Restaurant (11 pages)

**Exhibit D:** Subpoenas to Testify Before a Grand Jury (10 pages)

**Exhibit E:** Title 26 U.S.C. § 7201 – Tax Evasion (1 page)

**Exhibit F:** Title 26 U.S.C. § 7602(d)(1) – Limitation of Authority To Issue Summons (2 pages)

**Exhibit G:** Title 26 U.S.C. § 7851, U.S. Constitution Article I § 7 Clause I and II  (12 pages)

**Exhibit H:** Title 26 U.S.C. §§ 6212 and 6213(a) – Restrictions Applicable to Deficiencies, 26
CFR §§ 301.6212 and 6213-1(a)(2)  (9 pages)

FIRST AMENDED
VERIFIED COMPLAINT         44 of 46         Carl Roger Davis and Jo Elaine Davis, Plaintiffs
Notary page 44, Exhibits: 139 pages

**Exhibit I:** United States Government Manual 2005/2006 – Commissioner of Internal Revenue, Title 26 U.S.C. §§ 7801 and 7802 – Internal Revenue Service Oversight Board (12 pages)

**Exhibit J:** Diversified Metal Products, Inc., v. T-Bow Company Trust, Internal Revenue Service, etc – IRS Is Not An Agency Of the United States Government; and Title 26  U.S.C. § 6103(b)(9) - Federal agency (9 pages)

**Exhibit K:** NARA Declassified Document Dated August 25, 1945 Confirming That the Internal Revenue Service (Bureau of Internal Revenue) Has Never Been Created By Any Act Of Congress (38 pages)

**Exhibit L:** Letters to Chief Counsel William Smith, and Chief Counsel Preet Bharara of the U.S. Committee on the Judiciary, Senator Christopher S. "Kit" Bond, and to Senator Claire McCaskill. (6 pages)

FIRST AMENDED
VERIFIED COMPLAINT                    45 of 46                    Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                                  Notary page 44, Exhibits: 139 pages

## CERTIFICATE OF SERVICE

I, Carl Roger Davis, certify that on this 13th day of December 2007, I served a true copy of the above First Amended Verified Complaint by certified mail addressed as follows:

Daniel John Healy
U.S. Department of Justice
P.O. Box 227
Washington, DC 20044
Certified Mail:  7007 0220 0000 2023 1495


William Smith, Majority Chief Counsel
Preet Bharara, Minority Chief Counsel
US Committee on the Judiciary
Subcommittee Administrative Oversight/Courts
224 Dirksen Senate Office Building
Washington, D.C. 20510
Certified Mail: 7007 0220 0000 6951 6393


The Honorable Christopher S. "Kit" Bond
United States Senate
274 Russell Senate Office Bldg
Washington, D.C. 20510-2503
Certified Mail: 7007 0220 0000 6951 6409


The Honorable Claire McCaskill
United States Senate
717 Hart Senate Office Bldg
Washington, D.C. 20510-2504
Certified Mail: 7007 0220 0000 6951 6416


Carl Roger Davis

FIRST AMENDED
VERIFIED COMPLAINT                46 of 46          Carl Roger Davis and Jo Elaine Davis, Plaintiffs
                                                    Notary page 44, Exhibits: 139 pages

EXHIBIT A
07-1749

**EXHIBIT A**
Attorney Milton Baxley's Correspondence with the IRS in behalf of Plaintiffs
(19 pages)

# Milton H. Baxley II

*Lnwyer*

October 25, 2000

Internal Revenue Service
District Director
55 North Robinson Street
Oklahoma City, Oklahoma 73102

Ret. Receipt No: z217 734 641
RE: Roger Davis and Joey Davis
SSN/EIN: *EXEMPT (b)(6)*
TAX YEARS: 1992, 1993, 1994

Implied Legal Notice: Violation of Due Process for Failure to Provide **Notice(s)**
to Keep Records **and** File Returns

Dear District Director

I have Power of Attorney (POA) for Roger Davis and Joey Davis in regards to federal tax liability and I am in receipt of the collection action pertaining to the tax year(s) indicated above.

I will certainly honor your request and I will, of course, deliver any returns and/or records in my possession that are not protected under attorney client privilege or otherwise, once you answer a few of my concerns with regard to the authority requiring my clients to file federal tax returns, keep records, and/or produce these returns and records.

Title 26 CFR 1.6001-1(d) states: "The district director may require any person, by *notice sewed upon him,* to make such returns, render such statements, or keep such *specific* records as will enable the district director to determine whether or not such a person is liable for tax under subtitle **A** of the Code, including qualified State individual income taxes, which are treated pursuant to section 6361(a) as if they were imposed by chapter 1 of subtitle A."

Roger Davis and Joey Davis have no knowledge of receiving said notice. In order to comply with the proper rules, regulations and procedures of the Service, we need for your office to provide us with a copy of the Notice(s) issued from the district director on behalf of Roger Davis and Joey Davis requiring returns, statements or the keeping of records. Such notice is a procedural and administrative requirement so that Roger Davis and Joey Davis are cognizant of any and all said obligations applicable to them.

Additionally, the use of 26 USC §§ 6201, 6321 and lor 6331 as the purported authority to assess, lien or levy Roger Davis and Joey Davis for the collection of some unspecified species of tax is unconscionable and in direct violation of my clients' due process rights.

Congress has mandated the proper procedures for a lawful assessment, lien or levy. These procedures are clearly and unambiguously detailed in the Internal Revenue Manual, all of which have been completely disregarded by .

As you know, the official source of all United States law is the Statutes at Large. Statutes at Large are "legal evidence" of laws contained therein and are accepted as proof of those laws in any court of the United States. *Toyer's Inc. v. United States,* (1959, CA3 Pa) 265 F2d 615, 59-1 USTC, 3 AFTR 2d 1137; Bear *v. United States,* (1985, DC Neb) 611 F Supp 589, affd (1987, CA8 Neb) 810 F 2d 153.

Where the Code title has not been enacted into positive law, it is only prima facie or rebuttable evidence of law, and if construction is necessary, recourse may be had to original statutes themselves. Preston v. Heckler, (1984, CA9 Alaska) 734 F2d 1359, 34 CCH EPD 3443; United States v. Zuger, (1984, DC Conn) 602 F Supp 889, affd without op(1985, CA2 Conn) 755 F2d 915, cert den and app dismd (1985) 474 U.S.805, 881 Ed 2d 32, 106 S. Ct. 38. Where there is conflict between codification and Statutes at Large, Statutes at Large must prevail. Stephan v. United States, (1943) 319 U.S. 423; United States v. Welden, (1964) 377 U.S. 95;American Export Lines v. United States, (1961) 153 Ct. CI 201, 290 F2d 925; Abell v. United States, (1975) 207 Ct. CI 207, 518 F2d 1369, cert den (1976) 429 U.S. 817, 50 L Ed 2d 76, 97 S. Ct. 59.

Assessment Authority - Legal presumption of lawful authority of Section 6201 used by the IRS and applied to my clients are hereby refuted and rebutted for the collection of income tax.

The Internal Revenue-Code § 6201 is derived from Section 3182 of Revised Statues of 1874. The species of authorized tax assessed are described in the Statute at Large enacted on December 24, 1872, chap. 13, sec. 2, vol. 17, page 402, where with great clarity describes authorized assessment of taxes as being onlyfor tobacco and distilled spirits. There have been no amendments to the Statute at Large as of this date, therefore there are no changes to the original intent of Congress. Roger Davis and Joey Davis were not involved in the business of cotton or distilled spirits during the years in question; therefore there is no legal basis for an assessment.

> Code which require the determination of taxable income of the taxpayer from specific sources or activities and which give rise to statutory groupings to which this section is applicable include the sections described below.

The sections describing taxable income from within the United States lists the following sources:

Liens -Legal presumption of lawful authority of IRC § 6321, as it applies to my clients, Roger Davis and Joey Davis, are hereby refuted and rebutted as the authority for the IRS to lien for the collection of income tax for the following reasons.

The Internal Revenue Code Section 6321 was derived from the 1954 code, which was derived from section 3670 of the 1939 code. (Joint committee on Taxation, Derivations of Code Sections of the 1939 and 1954 code, 1992, U.S. Government)

Section 3670 of the 1939 code was derived from section 3186 of the Revised Statutes of 1874 (R.S. 1874) and was termed "Lien for Taxes". This section was derived from the actual Statute passed by Congress on July 13, 1866. This Act identifies only excise taxes on cotton and distilled spirits as lienable. This Act was amended by the Statutes at Large, vol. 45, chap. 852, section 613, page 875, dated May 29, 1928, to amend the method of lien. The Act does not change the taxes authorized by Congress to create a lien, per the original Statute at Large of 1866, which are namely excise taxes on cotton and distilled spirits, nothing else. Roger Davis and Joey Davis were not involved in the business of cotton or distilled spirits during the years in question; therefore there is no legal basis for establishing a lien.

Levy by Distraint - Legal presumption of lawful authority of IRC § 6331, as it applies to my clients, are hereby refuted and rebutted as the authority for the IRS to levy for the collection of income tax for the following reasons.

The Internal Revenue Code section 6331(a) was derived from the 1954 code, which was derived from sections 3310, 3660,3690,3692 and 3700 of the 1939 Code. (Joint Committee on Taxation, Derivations of Code Sections of the 1939 and 1954,1992, U.S. government)

Section 3690 of the 1939 Code is the single identifying section on the species of tax, which can be collected by distraint and was derived from Revised Statutes of 1874 section 3187 and is titled "Taxes collectible by distraint". The actual Statute at Large enacted by Congress, which conclusively reveals Congressional intent as to taxes authorized to be collected by levy and distraint was enacted on July 13, 1866 and refers with great specificity *only to taxes on cotton and distilled spirits.* Please see Chapter 184, Section 9, vol. 14, pages 98, and 106 of the Act. The Statute at Large has not been amended to this date, therefore, the original intent of Congress has not changed. My clients, Roger Davis and Joey Davis, were not involved in cotton or distilled spirits for the years in question; therefore there is no legal basis for establishing a levy.

Also, the above Statutes are in complete harmony with the official Federal Register Index where it clearly shows the implementing regulation for Title 26 USC §§ 6201, 6321 and 6331 is 27 CFR Part 70. I invite your attention to the CFR index. This regulation is issued by the Bureau of Alcohol, Tobacco, and Firearms. This agency collects stamp taxes, which are the species of tax applicable to *tobacco, cotton and distilled spirits.* According to *1* CFR 1 § 21.21 each agency shall publish its own regulations and may not cross-reference to another agency unless it meets the exceptions as published in the Federal Register. Therefore, Title 26 USC §§ 6201, 6321 and 6331, having no implementing regulations, have no force or effect in law.

Absent that evidence, you violated my clients' Constitutional right to due process of law, the enabling Acts of Congress, Internal Revenue codes, Regulations promulgated by the Secretary and the Internal Revenue Manual rules.

I regard any collection action against my clients as exaction. This is defined by Internal Revenue regulation **26** CFR **601.106(1)** Rule **1:** (In part)

> An exaction by the U.S. Government, **which** is not based upon law, statutory or otherwise, is a taking of property **without** due process of law, in violation of the Fifth Amendment of the United States Constitution. (Emphasis added)

The Internal Revenue Service has been given *no statutory authority* to assess, lien, levy or collect income taxes by distraint from my clients. To continue this process is a blatant violation of my clients' Fifth Amendment right to due process.

Thank you for your prompt attention to this matter.

Best regards,

Milton H. Baxley II
_____
Milton H. Baxley II

Cc: Roger Davis and Joey Davis

# Milton H. Baxley II

*Lawyer*

November 8, 2000

Treasury Inspector General for Tax
Administration
PO Box 589
Ben Franklin Station
Washington, DC 20044-0589

CERTIFIED #
7099 3220 0010 4867 5430
RE: Roger Davis and Joey Davis
SSN/EIN: *Exempt* (b) (6)
TAX YEARS: 1992, 1993, 1994

## COMPLAINT
### MISAPPLICATION OF TITLE 26 USC §§ 6201, SIGNING FALSE DOCUMENTS MAIL FRAUD AND FAILURE TO PROVIDE NOTICE (S) TO KEEP BOOKS AND RECORDS AND PILE RETURNS

Dear Inspector General:

This is a complaint against the District Director of Oklahoma City. This District Director has been given the courtesy of a 20-day Implied Legal Notice (enclosed) to correct the violations noted. This District Director has refused to correct these violations and has not responded to the Implied Legal Notice in a timely manner.

Pursuant to the Restructuring and Reform Act of 1998, I am requesting that an investigation be initiated into the conduct of this Internal Revenue Service District Director by your office. This District Director purposefully, and with depraved heart, denied me the unalienable constitutional right of due process.

I would hope that your investigation would lead to the termination of this District Director and that your actions will be within the letter and the spirit of the law.

Please acknowledge receipt of this Complaint and include the National and District case numbers assigned to the investigation so I may track its progress.

Respectfully submitted,

*Milton H. Baxley II*

Milton H. Baxley

CC:    District Director, Oklahoma City
       Roger Davis, Joey Davis

*25525 State Road 46, Suite 2 Mt. Plymouth, Florida 32776*
*352)383-9100  FAX: 352)383-0808*

Comp6001

| Form **2848**<br>(Rev. December 1995)<br>Department of the Treasury<br>Internal Revenue Service | **Power of Attorney<br>and Declaration of Representative**<br>▶ For Paperwork Reduction and Privacy Act Notice, see the Instructions. | OMB No. 1545-0150 |
|---|---|---|

| | For IRS Use Only |
|---|---|
| | Received by: |
| | Name _____ ) |
| | Telephone _____ |
| | Function _____ |
| | Date _____ |

**Part I** Power of Attorney (Please type or print.)

1 Taxpayer Information (Taxpayer(s) must sign and date this form on page 2, line 9.)

| Taxpayer name(s) and address | Social security number(s) | Employer Identification number |
|---|---|---|
| Roger Davis<br>Joey Davis<br><br>P.O. Box 6207<br>Branson, Missouri  65615 | (b)(6) Exempt<br><br>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 | |

| Daytime telephone number | Plan number (if applicable) |
|---|---|
| (417) 334-5731 | |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

2 Representative(s) (Representative(s) must sign and date this form on page 2, Part II.)

| Name and address | |
|---|---|
| Milton H. Baxley II<br>25525 S.R. 46, Ste. 1<br>Mt. Plymouth, Florida  32776 | CAF No. 2006-1914OR<br>Telephone No. (352) 383-9100<br>Fax No. (352) 383-0808<br>Check if new:  Address ......... ☐  Telephone No. ...... ☐ |
| Bryan Malatesta<br>1700 FM 1960 W. Ste. 213<br>Houston, Texas  77090 | CAF No. _____<br>Telephone No. _____<br>Fax No. _____<br>Check if new:  Address ......... ☐  Telephone No. ...... ☐ |
| | CAF No. _____<br>Telephone No. _____<br>Fax No. _____<br>Check if new:  Address ......... ☐  Telephone No. .... ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**Tax Matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income Tax & Civil Penalty | 1040 | 1985, '86, '87, '88, '89, '90, '91, '92, '93, '94, 1995, '96, '97, '98, '99, 2000, '01, '02, '03, 2004 |
| | | |
| | | |

4  Specific Use Not Recorded on **Centralized Authorization File (CAF).** ▬ If the power of attorney is for a specific use not recorded on CAF, check this box. (See Line 4 ▬ **Specific Uses Not Recorded on CAF** on page 3.) ............................................. ▶ ☐

5  **Acts Authorized.** – The representatives are authorized to receive and inspect  confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described in line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see **Line 5 ▬ Acts Authorized** on page 4).
List any specific additions or deletions to the acts otherwise authorized in this power of attorney:

_____
_____
_____
_____

NOTE: In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81–38, printed as Pub. 470, for more information.

NOTE: The tax matters partner/person of a partnership or S corporation is not permitted to authorize representatives to perform certain acts. See the instructions for more information.

6  **Receipt** of Refund Checks. ▬ If you want to authorize a representative named in line 2 to receive, BUT NOT **TO ENDORSE OR CASH,** refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶ _____

Form 2848 (Rev. 12-95)

Form 2848 (Rev. 12-97)                                                                                    Page **2**

7    Notices and communications. Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2 unless you check one or more of the boxes below.

a    If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

b    If you also want the second representative listed to receive a copy of such notices and communications, check this box . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☒

c    If you do not want any notices or communications sent to your representative(s), check this box  . . . . . . . ▶ ☐

8.    **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here.  . . . . . . . . . . . . . ▶ ☐
YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.

9    **Signature of taxpayer(s).** If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.

| | | |
|---|---|---|
| *[signature]* | 10/9/00 | |
| Signature | Date | Title (if applicable) |
| *Roger Davis* | | |
| Print Name | | |
| *[signature]* | 10/9/00 | |
| Signature | Date | Title (if applicable) |
| *Joey Davis* | | |
| Print Name | | |

---

**Part II**    Declaration of Representative

Under penalties of perjury, I declare that:

a    I am not currently under suspension or disbarment from practice before the Internal Revenue Service;

a    I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;

•    I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and

•    I am one of the following:

a    Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

b    Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.

c    Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.

d    Officer—a bona fide officer of the taxpayer's organization.

e    Full-Time Employee—a full-time employee of the taxpayer.

f    Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).

g    Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).

h    Unenrolled Return Preparer—an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department Circular No. 230.

▶ IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF **ATTORNEY** WILL BE RETURNED.

| Designation—Insert above letter (a–h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| a | FL | *Milton V. Bayley* | 10 9 00 |
| h | .TX | *Brynaldito* | 10.9.00 |

# Milton H. Baxley II

*Lawyer*

October 22, 2001

Internal Revenue Service
Service Center Director
Kansas City, Missouri 64999

Confirmation No: 91 1408 2133 3930 1012 6579
RE: Roger Davis
TIN/SSN#:Exempt (b)(6)
Tax YEARS: 1992,1993,1994

**Subject: CP71D**

### IMPLIED LEGAL NOTICE: VIOLATION OF DUE PROCESS
### FOR FAILURE TO RESPOND TO PREVIOUS NOTICES, VIOLATION OF THE FREEDOM
### OF INFORMATION ACT AND VIOLATION OF THE PRIVACY ACT AND
### MISAPPLICATION OF TITLE 18 USC § 1341 MAIL FRAUD

Dear Service Center Director:

I have Power of Attorney for Roger Davis in regards to federal tax matters. I am in receipt of a CP71D dated October 15,2001 which was sent to my client by Chief ACS of Kansas City.

This letter will serve as implied legal notice to you and the Chief ACS for failure to properly respond to my previous correspondence regarding the above tax years.

At this point, it appears that the IRS is proceeding in bad faith with collection activities against my client and has no intention of providing the requested information. Chief ACS's failure to reply to correspondence is in violation of the IR Manual which states:

**Internal Revenue Manual, Chapter 3(17)(46)1.5, Taxpayer Correspondence:**

> (2) All correspondence received from taxpayers must be answered and the answer should indicate: This is in reply to your correspondence of such and such a date, and explain the action taken, even if the action taken was exactly what the taxpayer requested.

Therefore, I demand you properly respond to my previous correspondence. A copy of that correspondence is enclosed.

You are hereby put on notice that this letter must be filed as a permanent part of client's IRS/TDA/AIMS/IMF 23C record. If such record(s) has/have been deleted or substituted, this demand still applies.

INITIAL _MHB_

Should examination action continue on my client or if you refuse to respond to this Implied Notice within twenty (20) days, I will file a complaint with the Treasury Inspector General for Tax Administration in Washington, D.C. and ask that you be terminated for misconduct as per Section 1203 of the Restructuring and Reform Act of 1998.

A copy of this Notice may also be sent to the appropriate Congressmen. We will ask them to look into this violation of due process. I will also ask the Congressmen to office inquire as to whether the Restructuring and Reform Act of 1998 is being administered to the letter and spirit of the law, according to the mandate of Congress in this instance.

Best regards,

*Milton H. Baxley II*

Milton H. Baxley II

Cc:   Chief Kansas City
      Roger Davis

Enclosures (3):   Power of Attorney
                  CP71D
                  Previous Letter to Chief Kansas City

# *Milton H. Baxley II*

*Lawyer*

FAXED
11-13-01

November 12, 2001

Richard W. Skillman, Acting General Counsel
Office of the General Counsel
Internal Revenue Service
1111 Constitution Avenue N.W., Room 3026
Washington, D.C. 20224

Fax Number: (202) 622-4277
RE: Roger Davis
SSN|EIN: Exempt (b)(6)
Tax Years: 1992, 1993, 1994

## COMPLAINT
### VIOLATION OF DUE PROCESS FOR FAILURE TO RESPOND TO PREVIOUS NOTICES, MAIL FRAUD, AND IMPERSONATING A FEDERAL OFFICER

Dear Inspector General,

I have Power of Attorney for Roger Davis in regards to federal tax matters.

This is a complaint against the Service Center Director & Chief ACS of Kansas City. The have been given the courtesy of a 20-day Implied Legal Notice (enclosed) to correct the violations noted. This Service Center Director & Chief ACS of Kansas City has refused to correct these violations and has not responded to the Implied Legal Notice in a timely manner.

Pursuant to the Restructuring and Reform Act of 1998, I am requesting that an investigation be initiated into the conduct of this Internal Revenue Service Service Center Director & Chief ACS of Kansas City by your office. This Service Center Director & Chief ACS of Kansas City purposefully, and with depraved hearts, denied me the unalienable constitutional right of due process.

I would hope that your investigation would lead to the termination of this Service Center Director & Chief ACS of Kansas City and that your actions will be within the letter and the spirit of the law.

Please acknowledge receipt of this Complaint and include the National and District case numbers assigned to the investigation so I may track its progress.

Respectfully submitted,

*Milton H. Baxley II*

Milton H. Baxley

Cc:     Service Center Director of Kansas City
        Chief ACS of Kansas City
        TIGTA

Enclosures (2): Power of Attorney
                Implied Notice

You are hereby put on notice that this letter must be filed as a permanent part of client's IRS/TDA AIMS/IMF 23C record. If such records have been deleted or substituted, this demand still applies.

INITIAL *MHB*

| Form **2848** (Rev. December 1985) Department of the Treasury Internal Revenue Service | **Power of Attorney and Declaration of Representative** ▶ For Paperwork Reduction and Privacy Act Notice, see the Instructions. | OMB No. 1545-0¼ |
|---|---|---|

**For IRS Use Only**
Received by.
Name
Telephone _____
Function _____

**Part I** **Power of Attorney** (Please type or print.)

**1 Taxpayer information** (Taxpayer(s) must sign and date this form on page 2, line 9.)

| Taxpayer name(s) and address | Social security number(s) | Employer Identification number |
|---|---|---|
| Roger Davis Joey Davis P.O. Box 6207 Branson, Missouri 65615 | 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 telephone number (daytime) 334-5731 | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** (Representative(s) must sign and date this form on page 2, Part II.)

| Name and address | |
|---|---|
| Milton H. Baxley II 25525 S.R. 46, Ste. 1 Mt. Plymouth, Florida 32776 | CAF No. 2006-19110R Telephone No. (352) 383-9100 Fax No. (352) 383-0808 Check if new: Address ............□ Telephone No. ......□ |
| Name and address Bryan Malatesta Ste. 213 Houston, Texas 77090 | CAF No. Telephone No. Check if new: Address ............□ Telephone No. ....□ |
| Name and address | CAF No. Telephone No. Fax No. Check if new: Address ............□ Telephone No. ....□ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**Tax Matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941,720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income Tax & Civil Penalty | 1040 | 1985, '86, '87, '88, '89, '90, '01, '92, '93, '94, 1995, '96, '97, '98, '99, 2000, '01, '02, '03, |
| | | |
| | | |

**4 Specific Use Not Recorded on Centralized Authorization File (CAF).** – If the power of attorney is for a specific use not recorded on CAF, check this box. (See Line 4 – Specific Uses Not Recorded on CAF on page 3). ................................................. ▶ □

**5 Acts Authorized.** – The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described in line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see Line 5 – Acts Authorized on page 4).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: _____

**NOTE:** In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.

**NOTE:** The tax matters partner/person of a partnership or S corporation is not permitted to authorize representatives to perform certain acts. See the instructions for more information.

**6 Receipt of Refund Checks.** – If you want to authorize a representative named in line 2 to receive, BUT NOT TO ENDORSE OR CASH, refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶ _____

Form 2818 (Rev. 12-97)

Page 2

**Notices and communications.** Original notices and other written communications will be sent to you and a copy to the representative listed on line 2 unless you check one or more of the boxes below.

a If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ► ☒

b If you also want the second representative listed to receive a copy of such notices and communications, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ► ☒

c If you do not want any notices or communications sent to your representative(s), check this box . . . . . . . . ►

**8 Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here. . . . . . . . . . ► ☐
**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9 Signature of taxpayer(s).** If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I cerrify that I have the authority to execute this form on behalf of the taxpayer,

► **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

| | | |
|---|---|---|
| _Roger Davis_ | 10/9/00 | |
| Signature | Date | Title (if applicable) |
| Roger Davis | | |
| Print Name | | |
| _Joey Davis_ | 10/9/00 | |
| Signature | Date | Title (if applicable) |
| Joey Davis | | |
| Print Name | | |

## Declaration of Representative

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR. Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax, matter(s) specified there; and
- I am one of the following:
  - a Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
  - b Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.
  - c Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.
  - d Officer—a bona fide officer of the taxpayer's organization.
  - e Full-Time Employee—a full-time employee of the taxpayer.
  - f Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
  Enrolled Actuary—enrolled as an actuary by h e Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
  - h Unenrolled Return Preparer—an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department No. 230.

► **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation—Insert above letter (a–h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| a | FL | _Milton H. Baxley II_ | 10·9·00 |
| h | .TX | _Brynmaldito_ | 10·9·00 |

Internal Revenue Service

**Department of the Treasury**

Letter Number: 3164 C (DO)

Letter Date

July 1, 2002

Social Security Number or

Employer Identification Number:

1 . .

For Assistance You May Call Us At:

(417) 841-4529

Person to Contact:

Timothy E. Noonan

Employee Identification Number:

43-15669

Robert C Davis

P O Box 6167

Branson, Missouri 65615

Dear Sir

We have attempted to obtain unfiled returns from you. You should already be aware of this from our previous contacts with you. Generally, our practice is to deal directly with a taxpayer or a taxpayer's duly authorized representative. However, we sometimes talk with other persons, for example when we need information that the taxpayer has been unable to provide, or to verify information we have received.

We are writing to tell you that we may contact other persons. If we do contact other persons we will generally need to tell them limited information, such as your name. The law prohibits us from disclosing any more information than is necessary to obtain or verify the information we are seeking. Our need to contact other persons may continue as long as there is activity on this matter.

If you have any questions regarding this letter or wish to request a list of contacts, please do not hesitate to contact us at the telephone number listed above.

Sincerely,

Timothy E Noonan

Letter 3164 C(DO) (1-2000)
Cat No 732280

*Milton H. Baxley II*                                                                    *Lawyer*



July 8, 2002

Internal Revenue Service                          Fax Number: (417) 887-8597
Attn:Timothy E. Noonan, Internal Revenue          RE: Roger Davis
Agent                                             TIN/SSN #: Exempt (b)(6)
3333 S. National
Suite 300                                         Subject: Unauthorized Disclosure
Springfield, Missouri 65807

Dear Timothy E. Noonan:

I have Power of Attorney to resolve all federal tax matters for Roger Davis.

I am in receipt of your letter informing Roger Davis that you are going to contact third parties to receive information regarding the collection of Roger Davis's alleged ł liability. Please be advised that Roger Davis does not agree to any disclosure of tax information to any third parties.

In that the IRS has not noticed my client pursuant to 26 USC §6001 and 26 CFR §1.6001, any contact of third parties is a violation of 26 USC §301.6109:

> Nothing contained in the regulations under section 6109 shall limit the authority of the Internal Revenue Service to obtain taxpayer identifying numbers required before or after the effective date of this paragraph *after notice is served upon the taxpayer pursuant to section 6001.* [Emphasis added]

Since my client was never served notice to keep *specific* books and records pursuant to 26 USC §6001 and 26 CFR §1.6001, you have no authority to disclose "return information" with third parties. In addition to unauthorized disclosure of identifying numbers pursuant to §301.6109, 26 USC §6103 (b)(2)(A) states that "return information" includes:

> ...*a taxpayer's identity,* the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, *whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence. or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and...*[Emphasis added]

Also be advised, the code you reference, 26 USC Section 7602(c)(1), is implemented by Title 27 Parts 170 and 296. Since §7602 applies only to Title 27, any contact with third parties is *not* within the scope of your "official duties" as defined in §301.6103(k)(6)-1. My client is not involved in Title 27 activities. Any third party contact is without authority and is violation of the Internal Revenue Code.

If you do so without having received official authorization signed by Roger Davis, it will be in violation of the Internal Revenue Code at 26 USC §6103 and of the Federal regulations at 26 CFR §301.6103 and you could be liable for damages under 26 USC 97431. This has recently been upheld in the U.S. District Court, Southern District of Florida, Case No. 99-8065, resulting in a $126,000 judgment against the IRS.

Section 7604 has no implementing regulation. Therefore, Sections 7602 and 7604 have no merit in law regarding Title 26 taxes and do not provide any authority for collection action against my client or for the determination of a liability. My client is the only one who can determine if there is a requirement to file a federal tax return and has determined there is no such requirement.

In addition to the above monetary damages, Section 1203 of the Restructuring and Reform Act of 1998 states that violations of the Internal Revenue Code of 1986, Department of Treasury regulations, policies of the Internal Revenue Service (including the Internal Revenue Manual), or violations of any right under the Constitution of the United States or various civil rights violations should be grounds for dismissal for JRS employees. They must be charged with misconduct and terminated if there has been a judicial or final administrative determination that the employee committed any of these, and/or other, acts or omissions. In the event of an unauthorized disclosure, there will be a formal request that the agent responsible be administratively sanctioned according to Section 1203 of the Restructuring and Reform Act of 1998.

Please give this matter careful consideration before proceeding.

Regards,

Milton H. Baxley II

Milton H. Baxley II

Cc: Roger Davis

Enclosures (2):  Power of Attorney
                 3164

# Milton H. Baxley II

*Lawyer*

July 8, 2002

Internal Revenue Service
Attn: Timothy E. Noonan
3333 S. National
Springfield, Missouri 65807

Fax Number: (417) 887-8597
RE: Roger Davis
Exempt (b)(6)

Tax Years: 1999, 2000

Subject: Verified Statement and Bill for CDPH

INITIAL *mHb*

Dear Timothy E. Noonan:

This letter is in response to the IRS offer of a Collection Due Process Hearing (CDPH) pursuant to the IRS Restructuring and Reform Act of 1998. This letter will be the facts of the case as the IRS Chief Counsel has determined that The Public can no longer record the Hearings, making it impossible to have an accurate record of the proceeding. In my view, this is a blatant violation of Due Process in itself. In the event that I get an adverse Determination Letter from you, when I file my Complaint with the Treasury Inspector General for Tax Administration, that will be one of the charges against you and the Chief Counsel.

That being said, I am, under protest, asking for the Due Process Hearing. Hereafter is my statement concerning the alleged bill. Once you produce the following verified documents, we will not contest the bill. The amount of the bill will be stipulated to and paid in full upon receipt of said documentation

Per *Ryder v. United* States, 115 S.Ct. 2031, 132 L.Ed.2d 136, 515 U.S. 177 and Federal Crop *Insurance* v. Merrill, 332 U.S. 380, I am required to initiate a direct challenge to authority of anyone representing himself or herself as a government officer or agent prior to the finality of any proceeding in order to avoid implications of de *facto* officer doctrine. When challenged, those posing as government officers and agents are required to affirmatively prove whatever authority they claim. In the absence of proof, they may be held personally accountable for loss, injury and damages. See particularly, the former 26 U.S.C. § 7804(b), now published in notes following § 7801. Per 26 U.S.C. § 7214(a), if and when IRS personnel exceed authority prescribed by law, or fail to carry out duties imposed by law, they are criminally liable.

Per Paragraph 2 of 31 CFR Part 1, Appendix B of Subpart C (Find following 31 CFR § 1.36), I am entitled to directly request evidence of authority and/or liability:

> Internal Revenue Service procedures permit the examination of tax records during the course of an investigation, audit, or collection activity. Accordingly, individuals should contact the Internal Revenue Service employee conducting an audit or effecting the collection of tax liabilities to gain access to such records, rather than seeking access under the provisions of the Privacy Act.

Please provide me with certified copies of the following:

1. Your precise title and cite the section of the act of Congress that created the office you occupy;

2. Your constitutional oath of office, as required by Article VI, Paragraph 3 of the Constitution of the United States and 5 U.S.C. § 3331;

3. Your civil commission as agent or officer of Government of the United States, as required by Article II § 3 of the Constitution of the United States and attending legislation;

4. Your affidavit declaring that you did not pay for or otherwise make or promise consideration to secure the office (5 U.S.C. § 3332);

5. Your personal surety bond;' an4

6. Documentation that establishes your complete line of delegated authority, including all intermediaries such as the Assistant Commissioner (International), beginning with the President of the United States.

As stated earlier, the issue at the upcoming CDPH, is one of verification. Section 6330 (c)(1) of the Internal Revenue Code states that the Appeals Officer shall, at the hearing, obtain *verification* from the Secretary that the requirements of any applicable law or administrative procedures have been met. Blacks Law dictionary, 6th Ed., defines verification as *"confrination of correctness, truth or authenticity, by affidavit, oath or deposition."* Additionally, 26 USC §6061 and 96065 state that verification requires a signature under the penalty of perjury for any return, document, or statement required to be made under any provision of the internal revenue laws.

My offer to you is this: My client is not neglecting or refusing to pay, therefore, there is no lawful basis for lien. Upon presentment of a verified statement from you in the form of an oath or affidavit that you have *first hand knowledge* that all proper procedures were followed, in addition to a verified bill and the documents that prove you are an officer of the federal government, I *will direct my clientt to pay the bill.* The statement from the Internal Revenue Service and yourself must be signed *under penalty of perjury* by a person who has *first hand knowledge* of the facts, that the alleged amount is due and owing by client, and that the amount is *true,* correct and complete.

Please forward the documents requested evidencing your authority, your verification statement, as well as the verified bill within 30 days so that this matter may be resolved. If you are going to refuse the offer, I need a letter c o n f i n g that fact within 10 days.

Regards,

*Milton H. Baxley II*

Milton H. Baxley II

Enclosure/s: POA

---

' Bond requirements generally are prescribed by 26 U.S.C§ 7101, but see also, 26 U.S.C§ 7102, 31 U.S.C§ 9303 and 26 CFR § 301.7101-1.

Form **2848**
(Rev. December
Department of the Treasury
Internal Revenue Service

## Power of Attorney
## and Declaration of Representative

▶ For Paperwork Reduction and Privacy Act Notice, see the instructions.

OMB No. 1545-0150

For IRS Use Only
Received by:
Name _____
Telephone _____
Function _____
Date _____

**Power of Attorney** (Please type or print.)

**1 Taxpayer Information (Taxpayer(s) must sign and date this form on page 2, line 9.)**

| Taxpayer name(s) and address | Social security number(s) | Employer identification |
|---|---|---|
| Roger Davis <br> Joey Davis <br><br> P.O. Box 6207 <br> Branson, Missouri  65615 | 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 <br> Daytime telephone number <br> (417) 334-5731 | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s) (Representative(s) must sign and date this form on page 2, Part II.)**

| Name and address | |
|---|---|
| Milton H. Baxley II <br> 25525 S.R. 46, Ste. 1 <br> Mt. Plymouth, Florida  327'76 | CAF No. 2006-1914OR <br> Telephone No. (352) 383-9100 <br> Fax No. (352) 383-0808 <br> Check if new: Address ..........☐  Telephone No. .....☐ |
| Name and address <br> Bryan Malatesta <br> 1700 FM 1960 W. Ste. 213 <br> Houston, Texas  77090 | CAF No. _____ <br> Telephone No. _____ <br> Fax No. _____ <br> Check if new: Address ..........☐  Telephone No. .....☐ |
| Name and address | CAF No. _____ <br> Telephone No. _____ <br> Fax No. _____ <br> Check if new: Address ..........☐  Telephone No. .....☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax Matters**

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 841, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| Income Tax & Civil Penalty | 1040 | 1985, 86, 87, 88, 89, 90, 91, 92, 93, 94, 1995, '96, '97, '98, '99, 2000, '01, '02, '03, 2004 |
| | | |
| | | |

**4 Specific Use Not Recorded on Centralized Authorization File (CAF).** – If the power of attorney is for a specific use not recorded on CAF, check this box. (See Line 4 – Specific User Not Recorded on CAF on page 3.) .......................................... ▶ ☐

**5 Acts Authorized.** – The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to h a tax matters described in line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative unless specifically added below, or the power to sign certain returns (see Line 5 – Acts Authorized on page 4).

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: _____

_____

NOW, In general, an unenrolled preparer of tax returns cannot sign any document for a taxpayer. See Revenue Procedure 81-38, printed as Pub. 470, for more information.

NOTE: The tax matters partner/person of a partnership or S corporation is not permitted to authorize representatives to perform certain acts. See the instructions for more information.

**6 Receipt of Refund Checks.** – If you want to authorize a representative named in line 2 to receive, BUT NOT TO ENDORSE OR CASH, refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

Form 2848 (Rev. 12-97)

Page **2**

**7** Notices and communications. Original notices and other written communications will be sent to you and a copy to the representative listed on line 2 unless you check one or more of the boxes below.

   **a** If you want the first representative listed on line 2 to receive the original, and yourself a copy, of such notices or communications, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

   **b** If you also want the second representative listed to receive a copy of such notices and communications, check this box . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☒

   **c** If you do not want any notices or communications sent to your representative(s), check this box . . . . . ▶ ☐

**8** Retention/revocation of prior power(s) of attorney. The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here. . . . . . . . . . ▶ ☐
**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9** . Signature of taxpayer(s). If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

   ▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

| | | |
|---|---|---|
| *Roger Davis* | 10/9/00 | |
| Signature | Date | Title (if applicable) |
| *Roger Davis* | | |
| Print Name | | |
| *Joey Davis* | 10/9/00 | |
| Signature | Date | Title (if applicable) |
| *Joey Davis* | | |
| Print Name | | |

## Part II    Declaration of Representative

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:
  - **a** Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
  - **b** Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.
  - **c** Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.
  - **d** Officer—a bona fide officer of the taxpayer's organization.
  - **e** Full-Time Employee—a full-time employee of the taxpayer.
  - **f** Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
  - **g** Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d)(1) of Treasury Department Circular No. 230).
  - **h** Unenrolled Return Preparer—an unenrolled return preparer under section 10.7(c)(viii) of Treasury Department Circular No. 230.

   ▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.**

| Designation—Insert above letter (a–h) | Jurisdiction (state) or Enrollment Card No. | Signature | Date |
|---|---|---|---|
| a | FL | *Milton H. Cauley* | 10/9/00 |
| h | TX | *Brynaldito* | 10·9·00 |

# Milton H. Baxley II

*Lawyer*

August 14, 2002

David C. Williams
Treasury Inspector General
for Tax Administration
P.O. Box 589
Ben Franklin Station
Washington, DC 20044-0589

Confirmation No: 91 1408 2133 3930 2137 3887
RE: Roger Davis
SS#:
Tax Years: 1995, 1996, 1997, 1998, 2001

## COMPLAINT

**VIOLATION OF 18 USC § 912 — FALSE PERSONATION, § 1341 — MAIL FRAUD,
18 USC § 499 — MILITARY, NAVAL OR OFFICIAL PASSES, 26 USC § 7214 (1) — EXTORTION,
IRS RESTRUCTURING AND REFORM ACT OF 1998 § 1203,
FAIR DEBT COLLECTION PRACTICES ACT — 15 USC § 1692(d)**

Dear Inspector General,

This is a Complaint against Timothy E. Noonan, Internal Revenue Agent of Springfield, Missouri 65807. This Internal Revenue Agent received a request for documents verifying their authority along with a Verified Statement, (copy enclosed), to be signed under the penalty of perjury, that my client has a tax liability and an obligation to file a specific form/return required by law. This request is pursuant to the Administrative Procedures Act at 5 USC §556(d) and 26 USC §§ 6061,6065.

This Internal Revenue Agent has refused to produce documents evidencing their authority and a Verified Statement. *An offer to perform has been made and has been refused* The refusal to respond and provide the evidence of authority and a lawful obligation constitutes harassment and is a violation of 18 USC § 912, 5 USC §556(d) and the Fair Debt Collection Practices Act (FDCPA) at 15 USC § 1692(d).

Iddionally, this Internal Revenue Agent does not have enforcement authority as evidenced by the IRM at 1.16.4.3.1 The only IRS personnel who have enforcement authority are the 1811 series, Special Agents (Criminal Investigation), and Inspectors (Internal Security). *All other employees* are issued *non-enforcement* pocket commissions. Further evidence of this Internal Revenue Agent lack of enforcement authority is seen in the Organizational Chart of the Department of the Treasury. The IRS does not come under the authority of the Under Secretary for Enforcement, only the BATF. Therefore, this Internal Revenue Agent has no authority for enforcement of examination, summons, or other performance.

Pursuant to the Restructuring and Reform Act of 1998, I am requesting that an investigation be initiated into the conduct of this Internal Revenue Agent by your office. This employee is in clear violation of the Administrative Procedures Act at 5 USC §556(d), 26 USC § 7214(1), and the Fair Debt Collection Practices Act as embraced in the IRS Restructuring and Reform Act enacted by Public Law 105-206, 112 Stat. 686 et. seq.

I would hope that your investigation and your actions will be within the letter and the spirit of the law. Please acknowledge receipt of this Complaint and include the National and District case numbers assigned to the investigation so I may track its progress.

Respectfully submitted,

*Milton H. Baxley II*

Milton H. Baxley II

Enclosure/s:    Power of Attorney
                Copy of request for Authority/Verified Statement
Treasury Organizational Chart

~· Timothy E. Noonan
    ger Davis

You are hereby put on notice that this letter must be filed as a permanent part of client's IRS/TDA/AIMS/IMF 23C record If such record(s) has/have been deleted or substituted, this demand still applies

INITIAL  *MHB*

**EXHIBIT B**
2039 Summonses issued to Third-Party Entities
(29 pages)



# Summons

In the matter of ___Roger C. Davis___ ___P.O.Box 421 / 6167___ ___Branson, Missouri  65615___

Internal **Revenue** Service (Division): ___Small Business / Self-Employed Operating Division___

Industry/Area (name or **number**): ___Area 9, Compliance___

Periods: ___January 1, 1995 through December 31, 2001___

## The Commissioner of Internal Revenue

To: ___Trans Union Corporation___    ___Cindy Hennessy, Custodian of Records___

At: ___555 W. Adams Street    Chicago, Illinois  60661___

You are hereby summoned and required to appear before ___Timothy E. Noonan, or his designee___
an officer of he Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the **tax** liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

**Do not write in this space**

**Business address and telephone number of IRS officer before whom you are to appear:**

___3333 S. National, Suite 300    Springfield, Missouri  65807    (417) 841-4529___

**Place and time for appearance at** ___3333 S. National. Suite 300    Springfield, Missouri  65807___

# IRS

on the ___9th___ day of ___January___ ___2003___ at ___10:00___ o'clock ___a___ m.

Issued under authority of the Internal Revenue Code this ___12th___ *(year)* day of ___December___ ___2002___
*(year)*

artment of the Treasury
Internal Revenue Service

_____    ___Internal Revenue Agent___
Signature of issuing officer    Title

**www.irs.gov**

_____    ___Group Manager  (By Telephone 12/10/02___
Form 2039 (Rev.12-2001)    Signature of approving officer*(if applicable)*    Title
Catalog Number 21405J

**Part** *C* — to be given to noticee

# Summons

In the matter of    Roger Carl Davis    P.O. Box 421 16167    Branson, Missouri  65616

Internal Revenue Service (Division):    Small Business / Self-Employed Operating Division
Industry/Area (name or number):    Area 9, Compliance

Periods:    January 1, 1995 through December 31, 2001

## The Commissioner of Internal Revenue

**To:**    CSC Credit Services    Donna Dimarco, Custodian of Records

**At:**    652 North Sam Houston Boulevard East    Houston, Texas  77060

You are hereby summoned and required to appear before    Timothy E. Noonan, or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

### Do not write in this space

**Business address and telephone number of IRS officer before whom you are to appear:**

3333 S. National, Suite 300    Springfield, Missouri  65807    (417) 841-4529

**Place and time for appearance at**    3333 S. National, Suite 300    Springfield, Missouri  65807

# IRS

on the    9th    day of    January    ,    2003    at    10:00    o'clock    a    m.
Issued under authority of the Internal Revenue Code this    12th    *(year)* day of    December    ,    2002    *(year)*

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

_Signature of issuing officer_    Internal Revenue Agent
    Title

_Signature of approving officer (if applicable)_    Group Manager  (By Telephone 12/10/02
    Title

**Part C  —  to be given to noticee**



# Summons

In the matter of ___Roger C. Davis___ ___P.O. Box 42116167___ ___Branson, Missouri 65615___

Internal Revenue Service (Division): ___Small Business / Self-Employed Operating Division___
Industry/Area (name or number): ___Area 9, Compliance___

Periods: ___January 1, 1995 through December 31, 2001___

## The Commissioner of Internal Revenue

To: ___Experian     Rick Haas, Cusodian of Records___

At: ___701 Experian Parkway    Allen, Texas 75013___

You are hereby summoned and required to appear before ___Timothy E. Noonan, or his designee___
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

**Do not write in this space**

Business address and telephone number of IRS officer before whom you are to appear:

___3333 S. National, Suite 300    Springfield, Missouri 65807    (417) 887-1055___

Place and time for appearance at ___3333 S. National, Suite 300    Springfield, Missouri 65807___

# IRS

on the ___9th___ day of ___January___, ___2003___ at ___10:00___ o'clock ___a___ m.

Issued under authority of the Internal Revenue Code this ___12th___ day of ___December___, ___2002___

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev.12-2001)
Catalog Number 21405J

___Signature of issuing officer___    Internal Revenue Agent
Title

___Signature of approving officer (if applicable)___    Group Manager (By Telephone 12110102
Title

Part C — to be given to noticee



# Summons

In the matter of ___Jo Elaine Davis___ ___P.O. Box 421 / 6167___ ___Branson, Missouri 65615___

Internal Revenue Service (Division): ___Small Business / Self-Employed Division___
Industry/Area (name or number): ___Area 9, Compliance___

Periods: ___January 1, 1995 through December 31, 2001___

## The Commissioner of Internal Revenue

To: _MARTIN    ENTERPRISES    INS.         CHRISTY    MARTIN    CUSTODIAN   OF   RECORDS_

At: _3310    S.   CAMPBELL              SPRINGFIELD    MISSOURI    65807_

You are hereby summoned and required to appear before ___Timothy E. Noonan,___ or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers,
and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the
administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Do not write in this space

**Business address and telephone number of IRS officer before whom you are to appear:**

___3333 S. National, Suite 300    Springfield, Missouri  65807    (417) 841-4529___

**Place and time for appearance at** ___3333 S. National, Suite 300    Springfield, Missouri  65807___

**IRS**
Department of the Treasury
Internal Revenue Service

**www.irs.gov**

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

on the ___9th___ day of ___January___ ___2003___ at ___10:00___ o'clock ___a___ m.

Issued under authority of the Internal Revenue Code this ___12th___ day of ___December___ ___2002___
(year)                                                        (year)

_T. E. 3_                                          Internal Revenue Agent
Signature of issuing officer                                Title

_CHART  ARINS  by  T. E. 3_                  Group Manager (By Telephone 12/10102
Signature of approving officer (if applicable)                Title

Part **C** — to be given to noticee



# Summons

In the matter of  Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616
Internal Revenue Service (Division):  Criminal Investigation
Industry/Area (name or number) :  St. Louis / Springfield, Missouri POD
Periods:  January 1, 1998 through December 31, 2003

## The Commissioner of Internal Revenue

To:  Annette's Bookkeeping Services, Inc., Custodian of Record

At:  3433 S. Campbell, Springfield, Missouri 65807

You are hereby summoned and required to appear before ——— James "Tony" Strother, or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Do not write in this space

Business address and telephone number of IRS officer before whom you are to appear:.

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

Place and time for appearance at    3333 S. National, Suite 301    Springfield, Missouri 63807

**IRS**  on the   15   day of   June   2004   at   10:00   o'clock  a  . m.
Issued under authority of the Internal Revenue Code this   18   (year) day of   May   .   2004  (year)

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

Signature of issuing officer

Special Agent
Title
N/A

Signature of approving officer (if applicable)

Title

**Part C** —  to be given to noticee



# Summons

In the matter of __Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616__
Internal Revenue Service (Division): __Criminal Investigation__
Industry/Area (name or number): __St. Louis / Springfield, Missouri POD__
Periods: __January 1, 1998 through December 31, 2003__

## The Commissioner of Internal Revenue

To: __Jeffrey Long, CPA__

At: __215 W. College, Branson, Missouri 65615__

You are hereby summoned and required to appear before ____James "Tony" Strother, or his designee____
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

### SEE ATTACHMENT TO SUMMONS

### Do not write in this space

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 831-1509

Place and time for appearance at ___3333 S. National, Suite 301    Springfield, Missouri 65807    .___

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| on the | 15 | day of | June | 2004 | at | 10:00 | o'clock | a |

Issued under authority of the Internal Revenue Code this __18__ day of __May__ __2004__
                                                        (year)                    (year)

Department of the Treasury
Internal Revenue Service

_Signature of issuing officer_ . Special Agent

www.irs.gov                                        Title
                                                    N/A
Form 2039 (Rev. 12-2001)    Signature of approving officer (if applicable)    Title
Catalog Number 21405J

                                        Part C — to be given to noticee



# Summons

In the matter of __Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616_____
Internal Revenue Service (Division): __Criminal Investigation_____
Industry/Area (name or number): __St. Louis / Sprin___ eld, Missouri POD__
Periods: __January 1, 1998 through December 31, 2003_____

### The Commissioner of Internal Revenue

To: __Ozark Mountain Bank ~ Cindy Barkley, Controller_____

At: __PO Box 130, Branson, Missouri 65615_____

You are hereby summoned and required to appear before ____James "Tony" Strother, or his designee____
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the **tax liability** or the collection of the tax liability or for the purpose of inquiring into any offense **connected** with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Do not write in this space

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

Place and time for appearance at __3333 S. National, Suite 301    Springfield, Missouri 65807_____

**IRS**

| on the | 15 | day of | June | 2004 | at | 10:00 | o'clock | a | m. |

Issued under authority of the Internal Revenue Code this __18__ *(year)* day of __May__ __2004__ *(year)*

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form **2039** (Rev.12-2001)
Catalog Number 21405J

Signature of issuing officer

Signature of approving officer *(if applicable)*

Special Agent
Title

N/A
Title

**Part C — to be given to noticee**



# Summons

In the matter of ___Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616___

Internal Revenue Service (Division): ___Criminal Investigation___

Industry/Area (name or number): ___St. Louis / Springfield, Missouri POD___

Periods: ___January 1, 1998 through December 31, 2003___

## The Commissioner of Internal Revenue

To: ___Branson Bank - Cindy LeBlanc, Operations Officer___

At: ___1501 State Highway 248, Branson, Missouri 65616___

___James "Tony" Strother, or his designee___

You are hereby summoned and required to appear before _____ an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the Internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Do not write in this space

Business address and telephone number of **IRS officer** before whom you are to appear:

| 3333 S. National, Suite 301 | Springfield, Missouri 65807 | (417) 841-4509 |

Place and time for appearance at ___3333 S. National, Suite 301___  Springfield, Missouri 65807 .

**IRS**

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

on the ___15___ day of ___June___ ___2004___ at ___10:00___ o'clock ___a___ m.
 (year)

Issued under authority of the Internal Revenue Code this ___18___ day of ___May___ ___2004___
 (year)

___Signature of issuing officer___     Special Agent
                                        Title

___Signature of approving officer (if applicable)___     N/A
                                                          Title

**Part C —  to be given to noticee**



# Summons

In the matter of ___Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616___

Internal Revenue Service (Division): ___Criminal Investigation___

Industry/Area (name or number): ___St. Louis I Springfield, Missouri POD___

Periods: ___January 1,1998 through December 31,2003___

## The Commissioner of Internal Revenue

To: ___Roger Carl Davis___

At: ___232 Arizona Dr., Branson, Missouri 65616___

You are hereby summoned and required to appear before ___James "Tony" Strother, or his designee___
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

### SEE ATTACHMENT TO SUMMONS

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

| ___[signature]___ | Special Agent |
|---|---|
| Signature of IRS officer serving the summons | Title |

Business address and telephone number of **IRS officer** before whom you are to appear:

___3333 S. National, Suite 301   Springfield, Missouri 65807   (417) 841-4509___

Place and time for appearance at ___3333 S. National, Suite 301   Springfield, Missouri 65807___

# IRS

on the ___3___ day of ___June___ ___2001___ at ___10:00___ o'clock ___a___ m.

Issued under authority of the Internal Revenue Code this ___18___ (year) day of ___May___ ___2004___ (year)

Department of the Treasury
Internal Revenue Service

www.irs.gov

| ___[signature]___ | Special Agent |
|---|---|
| Signature of issuing officer | Title |
| N/A | |
| Signature of approving officer (if applicable) | Title |

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

**Part A –** to be given to person summoned

ATTACHMENT TO SUMMONS ISSUED TO: Roger Carl Davis (SSN # *EXEMPT (b)(6)*

FOR THE YEARS: January 1, 1998 through December 31,2003

All records and books of account relative to the financial transactions of:

AG Impact Management, Inc.
American Financial Services Trust
Arizona Trust
Attic Creek Holding Company
Bottom Line Employee Services of Missouri, Inc.
Branson Mountain Trust
Chariots Trust
The Farmhouse Restaurant (f/k/a The Farmhouse Restaurant, Inc.)
Farmhouse Trust
Goody Trust
Hattie's Trust
· Oak Bluff Management Trust
Phoenix Trust
R.C.D. Investments
R.C.D. Marketing Group
First Premier Mortgage
*Jo Elaine Davis*
*Roger Carl Davis*
To include but not limited to:

ALL BUSINESS BOOKKEEPING RECORDS and other financial records including
General Ledger, General Journals, all Subsidiary Ledgers and Journals, Gross Receipts
and income records, Cash Receipts and Disbursement records and/or Journals, sales
and Purchase records and/or Journals, Accounts Receivable and Payable Ledgers and
records, Bad Debt records, Cost of Goods Sold records, Loan Receivable and Payable
Ledgers, Voucher Register and all sales and expense invoices including all invoices
documenting expenses paid by cash (currency ) or bank check (cashier or teller checks)
and retained copies of any bank checks (cashier or teller checks.)

Inventory records establishing beginning and ending inventories including inventory
sheets, work-papers, and valuation records. Records and work-papers reflecting the
purchase, basis and depreciable life of assets. Records and work-papers of sales of
business assets such records disclosing the dates of purchase and sale, cost and sales
price, records establishing or adjusting asset basis.

All financial statements, bookkeeper's and/or accountant's workpapers used in the
preparation of business records or tax returns. Retained copies of all federal and state
income, payroll and excise tax returns.

SAVINGS ACCOUNT RECORDS: Including passbooks or bank statements, records
reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos,



# Summons

In the matter of Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616

Internal Revenue Service (Division): Criminal Investigation

Industry/Area (name or number): St. Louis / Springfield, Missouri POD

Periods: January 1, 1998 through December 31, 2003

## The Commissioner of Internal Revenue

To: Oak Bluff Management Trust. - Roger Carl Davis

At: 208 E. College St., Ste 265, Branson, Missouri 65616

You are hereby summoned and required to appear before James "Tony" Strother, or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

### SEE ATTACHMENT TO SUMMONS

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____                    Special Agent
Signature of IRS officer serving the summons            Title

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

Place and time for appearance at    3333 S. National, Suite 301    Springfield, Missouri 65807

# IRS

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev.12-2001)
Catalog Number 21405J

on the ___3___ day of ___June___ 2004 at 10:00 o'clock _a_ m.

Issued under authority of the Internal Revenue Code this _18_ (year) day of ___May___ 2004 (year)

_____                    Special Agent
Signature of issuing officer                            Title

_____                    N/A
Signature of approving officer (if applicable)          Title

Part A - to be given to person summoned



# Summons

In the matter of Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616
Internal Revenue Service (Division): Criminal Investigation
Industry/Area (name or number): St. Louis / Springfield, Missouri POD
Periods: January 1,1998 through December 31,2003

## The Commissioner of Internal Revenue

To: Hatties Trust. - Roger Carl Davis

At: 208 E. College, Ste 285, Branson, Missouri 65616

You are hereby summoned and required to appear before     James "Tony" Strother, or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____     Special Agent
Signature of IRS officer serving the summons                    Title

**Business address and telephone number of IRS officer before whom you are to appear:**

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

Place and time for appearance at    3333 S. National, Suite 301    Springfield, Missouri 65807

**IRS**

on the ___3___ day of ___June___ ___2004___ at ___10:00___ o'clock ___a___ m.

Issued under authority of the Internal Revenue Code this ___18___ *(year)* day of ___May___ ___2004___
                                                                                         *(year)*

Department of the Treasury
Internal Revenue Service

_____     Special Agent
Signature of issuing officer                    Title

www.irs.gov

                                                                 N/A
Form 2039 (Rev.12-2001)          Signature of approving officer *(if applicable)*     Title
Catalog Number 21405J

**Part A - to be given to person summoned**



# Summons

In the matter of Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616

Internal Revenue Service (Division): Criminal Investigation

Industry/Area (name or number): St. Louis / Springfield, Missouri POD

Periods: January 1, 1998 through December 31, 2003

## The Commissioner of Internal Revenue

To: Phoenix Trust. - Roger Carl Davis

At: Branson, Missouri 65616

You are hereby summoned and required to appear before James "Tony" Strother, or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

---

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____          Special Agent
Signature of IRS officer serving the summons          Title

**Business address and telephone number of IRS officer before whom you are to appear:**

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

**Place and time for appearance at** 3333 S. National, Suite 301    Springfield, Missouri 65807

# IRS

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

on the __3__ day of __June__ __2004__ at __10:00__ o'clock __a__ m.
_(year)_

Issued under authority of the Internal Revenue Code this __18__ day of __May__ __2004__
_(year)_          _(year)_

_____          Special Agent
Signature of issuing officer          Title

_____          N/A
Signature of approving officer (if applicable)          Title

**Part A - to be given to person summoned**



# Summons

In the matter of  Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616

Internal Revenue Service (Division): Criminal Investigation

Industry/Area (name or number):  St. Louis / Springfield, Missouri POD

Periods: January 1, 1998 through December 31, 2003

### The Commissioner of Internal Revenue

To: R.C.D. Investments – Roger Davis

At: 110 W. Adams, Branson, Missouri 65616

You are hereby summoned and required to appear before    James "Tony" Strother, or his designee

an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____      Special Agent
Signature of IRS officer serving the summons          Title

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

Place and time for appearance at    3333 S. National, Suite 301    Springfield, Missouri 65807

**IRS**

on the _____3_____ day of _____June_____ _____2004_____ at _____10:00_____ o'clock _____a_____ m.

Issued under authority of the Internal Revenue Code this  18  day of  May   2004

Department of the Treasury
Internal Revenue Service

www.irs.gov

_____      Special Agent
Signature of issuing officer          Title

                                                    N/A
_____      Title
Signature of approving officer (if applicable)

Form 2039 (Rev.12-2001)
Catalog Number 21405J

**Part A** - to be given to person summoned



# Summons

**In the matter of** Roger Carl Davis, 232 Arizona Dr., Branson, Missouri  65616
**Internal Revenue Service (Division):** Criminal Investigation
**Industry/Area (name or number):** St. Louis / Springfield, Missouri POD
**Periods:** January 1,1998 through December 31,2003

## The Commissioner of Internal Revenue

**To:** R.C.D. Marketing Group - Roger Carl Davis

**At:** 400 Corporate Place, Branson, Missouri  65616

You are hereby summoned and required to appear before   James "Tony" Strother, or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

---

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

| | |
|---|---|
| _Signature of IRS officer serving the summons_ | Special Agent |
| | _Title_ |

Business address and telephone number of **IRS** officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri  65807    (417) 841-4509

Place and time for appearance at    3333 S. National, Suite 301    Springfield, Missouri  65807

---

**IRS**

Department of the Treasury
Internal Revenue Service

**www.irs.gov**

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

on the ___3___ day of ___June___ ___2004___ at ___10:00___ o'clock ___a___ m.

Issued under authority of the Internal Revenue Code this ___18___ day of ___May___ ___2004___

_Signature of issuing officer_    Special Agent
                                  Title
                                  N/A

_Signature of approving officer (if applicable)_    Title

Part A - to be given to person summoned



# Summons

In the matter of __Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616__

Internal Revenue Service (Division): __Criminal Investigation__

Industry/Area (name or number): __St. Louis / Springfield, Missouri POD__

Periods: __January 1, 1998 through December 31, 2003__

## The Commissioner of Internal Revenue

To: __Goody Trust. – Roger Carl Davis__

At: __Branson, Missouri 65616__

You are hereby summoned and required to appear before _____ James "Tony" Strother, or his designee _____
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____          Special Agent
Signature of IRS officer serving the summons                    Title

Business address and telephone number of **IRS officer** before whom **you** are to appear:

__3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509__

Place and time for appearance at __3333 S. National, Suite 301    Springfield, Missouri 65807__

# IRS

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev.12-2001)
Catalog Number 21405J

on the ___3___ day of ___June___ ___2004___ at ___10:00___ o'clock ___a___ m.
                                                              (year)

Issued under authority of the Internal Revenue Code this __18__ day of ___May___ ___2004___
                                                                (year)

_____          Special Agent
Signature of issuing officer                    Title

_____          N/A
Signature of approving officer (if applicable)                    Title

**Part A** - to be given to person summoned



# Summons

In the matter of ___Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616___
Internal Revenue Service (Division): ___Criminal Investigation___
Industry/Area (name or number): ___St. Louis / Springfield, Missouri POD___
Periods:___January 1, 1998 through December 31, 2003___

## The Commissioner of Internal Revenue

To: Farmhouse Trust. - Roger Carl Davis

At: 208 E. College St., Ste 265, Branson, Missouri 65616

You are hereby summoned and required to appear before ___James "Tony" Strother, or his designee___
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into **any** offense connected with the administration or enforcement of the internal revenue laws concerning the **person** identified above for the periods shown.

SEE **ATTACHMENT** TO SUMMONS

---

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____     Special Agent
Signature of IRS officer serving the summons                    Title

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

Place and time for appearance at ___3333 S. National, Suite 301    Springfield, Missouri 65807___

**IRS**

on the ___3___ day of ___June___, ___2004___ at ___10:00___ o'clock ___a___ m.

Issued under authority of the Internal Revenue Code this ___18___ day of ___May___ ___2004___

Department of the Treasury
Internal Revenue Service
**www.irs.gov**

_____     Special Agent
Signature of issuing officer                    Title

_____     N/A
Signature of approving officer (if applicable)                    Title

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

Part **A** - to be given to person summoned



# Summons

In the matter of __Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616__

Internal Revenue Service (Division): __Criminal Investigation__

Industry/Area (name or number): __St. Louis / Springfield, Missouri POD__

Periods: __January 1, 1998 through December 31, 2003__

## The Commissioner of Internal Revenue

To: __Chariots Trust. - Roger Carl Davis__

At __Branson, Missouri 65616__

You are hereby summoned and required to appear before __James "Tony" Strother, or his designee__ an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws wnceming the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____      Special Agent
Signature of IRS officer serving the summons                Title

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

Place and time for appearance at    3333 S. National, Suite 301    Springfield, Missouri 65807

## IRS

**Department of the Treasury
Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev.12-2001)
Catalog Number 21405J

on the ___3___ day of ___June___ ___2004___ at ___10:00___ o'clock ___a___ m.
                                                    (year)

Issued under authority of the Internal Revenue Code this ___18___ day of ___May___ ___2004___
                                                                                (year)

_____      Special Agent
Signature of issuing officer                Title

_____      N/A
Signature of approving officer (if applicable)                Title

**Part A - to be given to person summoned**



# Summons

In the matter of ___Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616___
Internal Revenue Service (Division): ___Criminal Investigation___
Industry/Area (name or number): ___St. Louis / Springfield, Missouri POD___
Periods: ___January 1, 1998 through December 31,2003___

## The Commissioner of Internal Revenue

To: ___Branson Mountain Trust - Roger Carl Davis___

At: ___Branson, Missouri 65616___

You are hereby summoned and required to appear before ___James "Tony" Strother, or his designee___
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

| | |
|---|---|
| _Signature of IRS officer serving the summons_ | Special Agent |
| | _Title_ |

Business address and telephone number of IRS officer before **whom** you are to appear:

___3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509___

**Place and time for appearance at** ___3333 S. National, Suite 301    Springfield, Missouri 65807___

**IRS**

on the ___3___ day of ___June___ ___2004___ at ___10:00___ o'clock ___a___ m.
_(year)_

Issued under authority of the Internal Revenue Code this ___18___ day of ___May___ ___2004___
_(year)_

Department of the Treasury
Internal Revenue Service

www.irs.gov

| | |
|---|---|
| _Signature of issuing officer_ | Special Agent |
| | _Title_ |
| | N.A |
| _Signature of approving officer (if applicable)_ | _Title_ |

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

Part A - to be given to person summoned



# Summons

In the matter of __Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616__

Internal Revenue Service (Division): __Criminal Investigation__

Industry/Area (name or number): __St. Louis / Springfield, Missouri POD__

Periods: __January 1, 1998 through December 31, 2003__

## The Commissioner of Internal Revenue

To: __Bottom Line Employee Services of Missouri, Inc. - Roger Carl Davis__

At: __400 Corporate Place, Branson, Missouri 65616__

You are hereby summoned and required to appear before _____James "Tony" Strother, or his designee_____
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

---

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____                    Special Agent
Signature of IRS officer serving the summons                Title

Business address and telephone number of IRS officer before whom **you** are to appear:

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

**Place and time for appearance at** 3333 S. National, Suite 301    Springfield, Missouri 65807

# IRS

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev.12-2001)
Catalog Number 21405J

on the __3__ day of __June__ __2004__ at __10:00__ o'clock __a__ m.

Issued under authority of the Internal Revenue Code this __18__ (year) day of __May__ __2004__
(year)

_____                    Special Agent
Signature of Issuing officer                                Title

                                                            N/A
Signature of approving officer (if applicable)              Title

Part A - to be given to person summoned



# Summons

In the matter of   Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616

Internal Revenue Service (Division):   Criminal Investigation

Industry/Area (name or number):   St. Louis / Springfield, Missouri POD

Periods:   January 1, 1998 through December 31, 2003

### The Commissioner of Internal Revenue

To:   Attic Creek Holding Co. - Roger Carl Davis

At:   Branson, Missouri 65616

You are hereby summoned and required to appear before    James "Tony" Strother, or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Attestation

I hereby certify that I have examined and compared this copy of the summons with the original
and that it is a true and correct copy of the original.

_____    Special Agent
Signature of IRS officer serving the summons       Title

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

Place and time for appearance at    3333 S. National, Suite 301    Springfield, Missouri 65807

**IRS**

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev.12-2001)
Catalog Number 21405S

on the   3   day of   June   2004   at   10:00   o'clock   a   m.
                               (year)

Issued under authority of the Internal Revenue Code this 18 day of   May   2004
                                                  (year)

_____    Special Agent
Signature of issuing officer        Title

N/A
_____
Signature of approving officer (if applicable)        Title

**Part A - to be given to person summoned**



# Summons

In the matter of  Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616

Internal Revenue Service (Division):  Criminal Investigation

Industry/Area (name or number):  St. Louis / Springfield, Missouri POD

Periods:  January 1, 1998 through December 31, 2003

## The Commissioner of Internal Revenue

To:  American Financial Services Trust. - Roger Carl Davis

At:  Branson, Missouri  65616

You are hereby summoned and required to appear before    James "Tony" Strother, or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

---

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____          Special Agent
Signature of IRS officer serving the summons                    Title

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri  65807    (417) 841-4509

Place and time for appearance at    3333 S. National, Suite 301    Springfield, Missouri  65807

# IRS

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

on the    3    day of    June    2004    at    10:00    o'clock    a    m.
                                    (year)

Issued under authority of the Internal Revenue Code this    18    day of    May    2004
                                            (year)                              (year)

_____          Special Agent
Signature of issuing officer                    Title
                                            N/A
_____          Title
Signature of approving officer (if applicable)

Part A - to be given to person summoned



# Summons

In the matter of __Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616__
Internal Revenue Service (Division): __Criminal Investigation__
Industry/Area (name or number): __St. Louis / Springfield, Missouri POD__
Periods: __January 1, 1998 through December 31, 2003__

## The Commissioner of Internal Revenue

To: __AG Impact Management, Inc. - Roger Carl Davis, Secretary__

At: __205 W. Atlantic St., Branson, Missouri 65616__

You are hereby summoned and required to appear before __James "Tony" Strother, or his designee__
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____     Special Agent
Signature of IRS officer serving the summons                    Title

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

**Place and time for appearance at**    3333 S. National, Suite 301    Springfield, Missouri 65807

## IRS

**Department of the Treasury
Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

on the __3__ day of __June__ __2004__ at __10:00__ o'clock __a__ m.
(year)

Issued under authority of the Internal Revenue Code this __18__ day of __May__ __2004__
(year)                                        (year)

_____     Special Agent
Signature of issuing officer                    Title

_____     N/A
Signature of approving officer (if applicable)                    Title

**Part A - to be given to person summoned**

# Summons

In the matter of __Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616__

Internal Revenue Service (Division): __Criminal Investigation__

Industry/Area (name or number): __St. Louis / Springfield, Missouri POD__

Periods: __January 1, 1998 through December 31, 2003__

## The Commissioner of Internal Revenue

To: __Arizona Trust - Roger Carl Davis__

At: __Branson, Missouri  65616__

You are hereby summoned and required to appear before __James "Tony" Strother, or his designee__
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____    Special Agent
Signature of IRS officer serving the summons                    Title

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301   Springfield, Missouri 65807   (417) 841-4509

Place and time for appearance at   3333 S. National, Suite 301   Springfield, Missouri 65807

**IRS**

Department of the Treasury
Internal Revenue Service

**www.irs.gov**

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

on the ___3___ day of ___June___ ___2004___ at ___10:00___ o'clock ___a___ m.

issued under authority of the Internal Revenue Code this ___18___ (year) day of ___May___ ___2004___ (year)

_____    Special Agent
Signature of issuing officer                    Title

N/A
Signature of approving officer (if applicable)                    Title

**Part A - to be given to person summoned**



# Summons

**In the matter of** Roger Carl Davis, **232** Arizona Dr., Branson, Missouri 65616

Internal Revenue Service (Division): Criminal Investigation

Industry/Area (name or number): St. Louis / Springfield, Missouri POD

Periods: January 1, 1998 through December 31, 2003

## The Commissioner of Internal Revenue

**To:** First Premier Mortgage - Roger Carl Davis, Manager

**At:** 118 W. Main, Suite C, Branson, Missouri 65616

You are hereby summoned and required to appear before _____ James "Tony" Strother, or his designee _____
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the **person** identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____          Special Agent
Signature of IRS officer serving the summons                Title

**Business address and telephone number of IRS officer before whom you are to appear:**

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 811-4509

**Place and time for appearance at** _____ 3333 S. National, Suite 301    Springfield, Missouri 65807

## IRS

on the _____ 3 _____ day of _____ June _____ 2004 _____ at _____ 10:00 _____ o'clock _a_ m.
(year)

Issued under authority of the Internal Revenue Code this _18_ day of _____ May _____ 2004
(year)

**Department of the Treasury
Internal Revenue Service**

**www.irs.gov**

_____          Special Agent
Signature of issuing officer                Title

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

_____          N/A
Signature of approving officer (if applicable)                Title

**Part A - to be given to person summoned**



# Summons

In the matter of __Roger Carl Davis, 232 Arizona Dr., Branson, Missouri 65616__

Internal Revenue Service (Division): __Criminal Investigation__

Industry/Area (name or number): __St. Louis/ Springfield, Missouri POD__

Periods: __January 1, 1998 through December 31, 2003__

## The Commissioner of Internal Revenue

To: __The Farmhouse Restaurant (f/k/a The Farmhouse Restaurant, Inc.) - Roger Carl Davis, President/Treasurer__

At: __119 W. Main, Branson, Missouri 65616__

You are hereby summoned and required to appear before __James "Tony" Strother__, or his designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

### Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____                    Special Agent
Signature of IRS officer serving the summons                    Title

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301     Springfield, Missouri 65807     (417) 841-4509

Place and time for appearance at __3333 S. National, Suite 301     Springfield, Missouri 65807__

**IRS**

On the __3__ day of __June__     __2004__     at __10:00__     o'clock __a__ m.

Issued under authority of the Internal Revenue Code this __18__ (year) day of __May__     __2004__ (year)

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev.12-2001)
Catalog Number 21405J

_____                    Special Agent
Signature of issuing officer                    Title

                                                N/A
_____                    Title
Signature of approving officer (if applicable)

**Part A - to be given to person summoned**



# Summons

In the matter of __Jo Elaine Davis, 232 Arizona Dr., Branson, Missouri 65616__

Internal Revenue Service (Division): __Criminal Investigation__

Industry/Area (name or number): __St. Louis/ Springfield, Missouri POD__

Periods: __January 1, 1998 through December 31,2003__

## The Commissioner of Internal Revenue

To: __The Farmhouse Restaurant (f/k/a The Farmhouse Restaurant, Inc.) - Jo Elaine Davis, Vice President/Secretary__

At: __119 W. Main, Branson, Missouri 65616__

You are hereby summoned and required to appear before __James "Tony" Strother, or his designee__
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____          Special Agent
Signature of IRS officer serving the summons              Title

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509

Place and time for appearance at    3333 S. National, Suite 301    Springfield, Missouri 65807

**IRS**

on the __3__ day of __June__ __2004__ at __10:00__ o'clock __a__ m.
_(year)_

Issued under authority of the Internal Revenue Code this __18__ day of __May__ __2004__
_(year)_

Department of the Treasury
Internal Revenue Service

www.irs.gov

_____          Special Agent
Signature of issuing officer              Title

_____          N/A
Signature of approving officer (if applicable)              Title

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

Part A - to be given to person summoned



# Summons

In the matter of ___Jo Elaine Davis, 232 Arizona Dr., Branson, Missouri  65616_____

Internal Revenue Service (Division): ___Criminal Investigation_____

Industry/Area (name or number): ___St. Louis / Springfield, Missouri **POD**_____

Periods: ___January 1, 1998 through December 31, 2003_____

## The Commissioner of Internal Revenue

To: ___Oak Bluff Management Trust - Jo Elaine Davis_____

At: ___208 E. College St., Ste 265, Branson, Missouri  65616_____

You are hereby summoned and required to appear before ___James "Tony" Strother, or his designee_____
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, **papers**, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_____    Special Agent_____
Signature of IRS officer serving the summons                Title

Business address and telephone number of IRS officer before **whom** you are to appear:

___3333 S. National, Suite 301    Springfield, Missouri 65807    (417) 841-4509___

Place and time for appearance at ___3333 S. National, Suite 301    Springfield, Missouri 65807___

**IRS**

Department of the Treasury
Internal Revenue Service
www.irs.gov

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

on the ___3___ day of ___June___ ___2004___ at ___10:00___ o'clock ___a___ m.
                                                    (year)
Issued under authority of the Internal Revenue Code this ___18___ day of ___May___ ___2004___
                                                                                            (year)

_____    Special Agent_____
Signature of issuing officer                Title

_____    N/A_____
Signature of approving officer (if applicable)                Title

Part **A** - to be given to person summoned





# Summons

In the matter of ___Jo Elaine Davis, 232 Arizona Dr., Branson, Missouri 65616___

Internal Revenue Service (Division): ___Criminal Investigation___

Industry/Area (name or number): ___St. Louis/ Springfield, Missouri POD___

Periods: ___January 1,1998 through December 31,2003___

## The Commissioner of Internal Revenue

To: ___Jo Elaine Davis___

At: ___232 Arizona Dr., Branson, Missouri 65616___

You are hereby summoned and required to appear before ___James "Tony" Strother, or his designee___ an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the Internal revenue laws concerning the person identified above for the periods shown.

SEE ATTACHMENT TO SUMMONS

Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

| _(signature)_ | Special Agent |
|---|---|
| Signature of IRS officer serving the summons | Title |

Business address and telephone number of IRS officer before whom you are to appear:

3333 S. National, Suite 301     Springfield, Missouri 65807     (417) 841-4509

Place and time for appearance at    3333 S. National, Suite 301     Springfield, Missouri 65807

# IRS

on the ___3___ day of ___June___, ___2004___ at ___10:00___ o'clock ___a___ m.

Issued under authority of the Internal Revenue Code this ___18___ day of ___May___, ___2004___.

| _(signature)_ | Special Agent |
|---|---|
| Signature of issuing officer | Title |
| Signature of approving officer (if applicable) | N/A |
| | Title |

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev.12-2001)
Catalog Number 21405J

Part **A** - to be given to person summoned

**EXHIBIT C**
Search Warrant Re: Family Farmhouse Restaurant
(11 pages)

¾AO 93 .   (Rev-. 8/98) Search Warrant

# UNITED STATES DISTRICT COURT

_____WESTERN_____   District of   _____MISSOURI_____

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

## SEARCH WARRANT

BUILDING KNOWN AS FARMHOUSE FAMILY
RESTAURANT LOCATED AT 119 W. MAIN
STREET, BRANSON, MISSOURI

Case Number: $04-2419JCE-01$

TO:    __JAMES A. STROTHER, S.A. IRS__    and any Authorized Officer of the United States

Affidavit(s) having been made before me by    __JAMES A. STROTHER, S.A., IRS__    who has reason to believe
<br>Affiant

that   ☐ on the person of, or   X   on the premises known as (name, description and/or location)
**BUILDING** KNOWN AS FARMHOUSE FAMILY RESTAURANT LOCATED AT 119
W. MAIN STREET, BRANSON, MISSOURI

L   :   __WESTERN_____   District _____MISSOURI_____   there is
concealed a certain person or property, namely (describe the person or

## SEE ATTACHMENT 1

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is
now concealed on the person or premises above described and establish grounds for the issuance of this warrant.

YOU ARE HERESY COMMANDED to search on, or before    __12/1/04__
<br>Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the
search   ☒ in the daytime — 6:00 AM to 10:00 P.M.   ☐ at anytime in the day or night as I find reasonable cause has been
~~established~~    and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person
or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to
__U.S. Magistrate Judge__      as required by law.
<br>U.S. Judge or Magistrate

__11/22/04__    __10:55 A.M.__    at    __SPRINGFIELD, MISSOURI__
<br>Date and Time Issued                             City and State

__JAMES C. ENGLAND, U.S. MAGISTRATE JUDGE__
<br>. and Title of Judicial Officer               Signature of Judicial Officer



COPY

AO 93     (Rev. 8/98)  Search Warrant (Rev

| RETURN | Case Number: |
|---|---|

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| 11-22-04 | 11-23-04  6:05 AM | TERRY McKENZIE |

INVENTORY MADE IN THE PRESENCE OF

TERRY McKENZIE

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

"SEE ATTACHED"

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the ~~warrant~~

_____

Subscribed, sworn to, and returned before me this date.

_____

U.S. Judge or Magistrate                    Date

ATTACHMENT 1

ITEMS TO BE SEIZED

(a) All electronic devices capable of storing, analyzing, creating, displaying,
converting or transmitting electronic or magnetic media, Including but
not limited to, computers and computer equipment including all
processing units and circuit boards; all computer peripheral devices
attached and unattached to the computer, including monitors, printers,
keyboards, or other physical devices which serve to transmit information
to or information from a computer; all magnetic and other storage
devices such as floppy disks, hard disks, disk drives, and magnetic
computer tapes which are forms of storage devices for computer readable
information; and all documents, manuals or programs stored in the form
of electronic or magnetic media which are capable of being Interpreted
by a computer, including but not limited to operating systems, application
software, computer passwords and security devices that explain the way
the computer hardware, programs and data are used.

(b) All bookkeeping records and other financial records including general
ledger, general journals, all subsidiary ledgers and journals, gross receipts
and income records, cash receipts and disbursement records and/or
journals, sales and purchase records and/or journals, accounts receivable
and payable ledgers and records, bad debt records, cost of goods sold
records, loan receivable and payable ledgers, voucher register, and all

sales and expense invoices including all invoices documenting expenses paid by cash (currency) or bank check (cashier or official checks) or money orders, and retained copies of any bank checks (cashier or official checks) or money orders for all businesses, charities, or trusts maintained or controlled by CARL ROGER DAVIS and/or Jo Elaine Davis.

(c) Trust instruments including all Attachments, Schedules, Amendments, and Codicils, and any records revealing all Certificate Holders and/or Beneficiaries of the trust to include name, address, and Social Security Number and/or Employer Identification Number. Identification of all former and current trustees from its inception to the present including name, address and telephone number. All trust income tax returns (IRS Foms 1041) for the years 1998, 1999,2000, 2001,2002, and 2003. All payroll tax returns covering the years 1998, 1999, 2000, 2001, 2002, and 2003 including all IRS Foms W-2, 941, and 940. Copies of all IRS Foms 1099 received and issued by the trust for the years 1998, 1999, 2000, 2001, 2002, and 2003. All minutes of the trust from inception to present, including the appointment and/or resignations/terminations of the trustees, records of all assets transferred into the trust, and all records regarding the ownership of all the shares of beneficial interest. All accounting books and records for the trust including check registers, disbursement journals, receipts journals, general ledgers, financial statements, and other workpapers used in the preparation of the tax returns and/or financial statements.

(d) Records related, but not limited to the Farmhouse Restaurant, Inc., Bottom Line Employee Services, Inc., Bottom Line Employee Services of Missouri, Inc., R.C.D. Marketing Group, R.C.D. Investments, American Financial Services Trust, Arizona Trust, Attic Creek Holding Co., Branson Mountain Trust, Chariots Trust, Farmhouse Trust, R&D Marketing Trust, Goody Trust, Hattie's Trust, J&C Corporation Trust, Oak BluffManagment Trust (a/k/a Oak Bluff Management Trust), and Phoenix Trust.

(e) Records and workpapers reflecting the purchase, basis and depreciable life of assets. Records and workpapers of the sale of business or trust assets such records disclosing the dates of purchase and sale, cost and sales price, records establishing or adjusting asset basis.

(f) Checking and savings account records, including account signature cards, canceled checks, deposit slips, deposit receipts, passbooks, bank statements, debit and credit memos, wire transfer advices, related bank advices, Forms 1099 issued, cashiers checks and money 'orders purchases, correspondence, other bank related transaction documents, and any and all documents related to personal, business, or trust accounts in any foreign or domestic financial institution. Records of any certificates of deposit, money market certificates, U.S. Treasury Notes or Bills purchased.

(g) Loan records including applications, financial statements, loan collateral, credit and background investigations required, loan agreement, notes or

mortgages, settlement sheets, contracts, rstained copies of checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loan correspondence files and memoranda relative to these loans.

(h) Cash Register receipts, tapes, printouts or storage devices

(i) Safe deposit box records and keys for any box maintained or controlled by CARL ROGER DAVIS and/or Jo Elaine Davis, one of their trusts, or businesses.

(j) Records of payment to or from CARL ROGER .DAVIS.. whether handwritten, hand printed, typed or computer printed.

(k) Any mailing, shipping and printing records.

(l). Evidence of personal expenditures and the acquisition of assets.

(m)     Photographs or videotapes relating to DAVIS showing evidence of personal expenditures, assets, and associates.

(n) Corporate minute books, stock registers or other records reflecting ownership of corporate stocks. All financial statements, bookkeeper's and/or accountant's workpapers used in the preparation of business records or tax returns. Retained copies of all federal and state income, payroll and excise tax returns.

(o) Real estate records including purchase and sales agreements, all correspondence, papers, or other files relating to the sale or sales of real

estate. Mortgage records relative to the purchase of property and any other mortgages or loans. Any and all records made in connection with purchases and/or sales of real estate including records, which indicate the location of the property, dates of the real estate closing and the name of the parties to the real estate transactions.

(p) Indicia of occupancy, residency, and/or ownership of this premises or any other premises including utility and telephone bills and tax records.

(q) Address and/or telephone books and directories, and papers reflecting names, addresses and/or telephone numbers.

# Inventory Listing of All Items Seized at Search Warrant Site

| | | |
|---|---|---|
| **Site** Name:<br>119 W. Main Street<br>Branson, Missouri 65616<br><br>NE Corner of North Business<br>65 and Main | **Investigation Number:**<br>430330045<br>**Starting Date and Time:**<br>11/23/2004 06:05 AM<br>Ending **Date** and Time:<br>11/22/2004 10:25 AM | Report Date:<br>Tuesday, November 23,<br>2004 |

| | | | |
|---|---|---|---|
| Control #: | 1 | Evidence **Box:** | 1 |
| Location: | Office Space Entry | Locator Code: | |
| Found: | Closet | | |
| Description: | Seized Per Warrant | Farmhouse Purchases | |

| | | | |
|---|---|---|---|
| Control #: | 2 | Evidence Box: | 2 |
| Location: | Office Space Entry | Locator Code: | File Cabinet #1 |
| Found: | Top Drawer | | |
| Description: | Seized Per Warrant | Misc. Financial Records | |

| | | | |
|---|---|---|---|
| Control #: | 3 | Evidence Box: | 3 |
| Location: | Office Space Entry | Locator Code: | File Cabinet #1 |
| Found: | 2nd Drawer | | |
| Description: | Seized Per Warrant | Various and Misc. Records of Business and Personal Expenses and Expenditures | |

| | | | |
|---|---|---|---|
| Control #: | 4 | Evidence Box: | 1 |
| Location: | Office Space Main | Locator Code: | Desk 1 |
| Found: | Safe | | |
| Description: | Seized Per Warrant | Certificate of Insurance; Farmhouse Building Loan Papers | |

| | | | |
|---|---|---|---|
| Control #: | 5 | Evidence Box: | 1 |
| Location: | Office Space Entry | Locator Code: | Green Table #1 |
| Found: | Top of Table | | |
| Description: | Seized Per Warrant | Fax Reports Printed | |

| | | | |
|---|---|---|---|
| Control #: | 6 | Evidence **Box:** | 1 |
| Location: | Office Space Entry | Locator Code: | Bookcase #1 |
| Found: | Bookcase #1 | | |
| Description: | Seized Per Warrant | Corporate Minute Book | |

| | | | |
|---|---|---|---|
| Control #: | 7 | Evidence Box: | 1 |
| Location: | Office Space Entry | Locator Code: | Trash Can |
| Found: | Trash Can by Desk | | |
| Description: | Seized Per Warrant | Two Tapes and Register Tapes | |

| Control #: | 8 | Evidence Box: | 4 |
|---|---|---|---|
| Location: | Office Space Entry | Locator Code: | File Cabinet #1 |
| Found: | 2nd Drawer | | |
| Description: | Seized Per Warrant | Various and Misc. Records of Business and Personal Expenses & Expenditures | |

| Control #: | 9 | Evidence Box: | 5 |
|---|---|---|---|
| Location: | Office Space Entry | Locator Code: | File Cabinet #1 |
| Found: | 3rd Drawer | | |
| Description: | Seized Per Warrant | Payroll and Corporation Records | |

| Control #: | 10 | Evidence Box: | 1 |
|---|---|---|---|
| Location: | Office Space Entry | Locator Code: | Desk |
| Found: | RHS Bottom Drawer | | |
| Description: | Seized Per Warrant | Register Printouts and Sales Summary Sheets | |

| Control #: | 11 | Evidence Box: | 6 |
|---|---|---|---|
| Location: | Office Space Main | Locator Code: | Desk 1 |
| Found: | Top Right Hand Drawer | | |
| Description: | Seized Per Warrant | Misc. Financial Records | |

| Control #: | 12 | Evidence Box: | 6 |
|---|---|---|---|
| Location: | Office Space Main | Locator Code: | |
| Found: | Top of Table Behind Desk 1 | | |
| Description: | Seized Per Warrant | Roledex | |

| Control #: | 13 | Evidence Box: | 9 |
|---|---|---|---|
| Location: | Office Space Entry | Locator Code: | File Cabinet #2 |
| Found: | 2nd Drawer | | |
| Description: | Seized Per Warrant | Misc. Financial Records | |

| Control #: | 14 | Evidence Box: | 6 |
|---|---|---|---|
| Location: | Office Space Main | Locator Code: | |
| Found: | Desk 1, Right Bottom Drawer | | |
| Description: | Seized Per Warrant | Misc. Financial Records | |

| Control #: | 15 | Evidence Box: | 1 |
|---|---|---|---|
| Location: | Office Space Entry | Locator Code: | File Cabinet #2 |
| Found: | Drawer #1 | | |
| Description: | Seized Per Warrant | Bank Records | |

| Control #: | 16 | Evidence Box: | 6 |
|---|---|---|---|
| Location: | Office Space Main | Locator Code: | |
| Found: | Desk 2, Top Right Hand Drawer | | |
| Description: | Seized Per Warrant | Misc. Financial Records | |



| Control #: | 17 | Evidence Box: | 7 |
| Location: | Office Space Entry | Locator Code: | File Cabinet #2 |
| Found: | 3rd Drawer | | |
| Description: | Seized Per Warrant | Various Records and Invoices of Personal and Trust Expenses and Expenditures | |

| Control #: | 18 | Evidence Box: | 8 |
| Location: | Office Space Main | Locator Code: | |
| Found: | Desk 2 Bottom Right Hand Drawer | | |
| Description: | Seized Per Warrant | Bank Statements and Misc. Financial Documents | |

| Control #: | 19 | Evidence Box: | 6 |
| Location: | Office Space Main | Locator Code: | Desk 2 |
| Found: | Bottom Right Drawer | | |
| Description: | Seized Per Warrant | Bank Deposit Tickets, Check Stubs and Misc. Financial Records | |

| Control #: | 20 | Evidence Box: | 10 |
| Location: | Office Space Entry | Locator Code: | File Cabinet #2 |
| Found: | 4th Drawer | | |
| Description: | Seized Per Warrant | Misc. Business Invoices | |

| Control #: | 21 | Evidence Box: | 6 |
| Location: | Office Space Main | Locator Code: | Desk 2 |
| Found: | Right Bottom Drawer | | |
| Description: | Seized Per Warrant | 2003 Date Book | |

| Control #: | 22 | Evidence Box: | 6 |
| Location: | Office Space Main | Locator Code: | Desk 2 |
| Found: | Top of Desk | | |
| Description: | Seized Per Warrant | Tax Trust Newsletter, Corp. Drafts, Misc. Documents | |

| Control #: | 23 | Evidence Box: | 6 |
| Location: | Office Space Main | Locator Code: | Desk 2 |
| Found: | Desk 2 | | |
| Description: | Seized Per Warrant | Image of Laptop Dell Inspiron 5100 | |

| Control #: | 24 | Evidence Box: | 6 |
| Location: | Office Space Main | Locator Code: | Desk 1 |
| Found: | Desk 1 | | |
| Description: | Seized Per Warrant | 7 CD-Rs, 1 CD-Foodservice Advantage Club, 1 Floppy Disk | |

| Control #: | 25 | | Evidence Box: | 6 |
| --- | --- | --- | --- | --- |
| Location: | Office Space Main | | Locator Code: | Desk 1 |
| Found: | Desk 1 Top of Desk | | | |
| Description: | Seized Per Warrant | Image of Toshiba Desktop, Image Name: FHR-A1,  8 Acer Power Computer (not powered on) FHR-B1 | | |

| Control #: | 26 | | Evidence Box: | 11 |
| --- | --- | --- | --- | --- |
| Location: | Office Space Main | | Locator Code: | File Cabinet |
| Found: | Cabinet next to **Desk** 2 | | | |
| Description: | Seized Per Warrant | Misc. Financial Records and 1999 Date Book | | |

**EXHIBIT D**
Subpoenas to Testify Before a Grand Jury
(10 pages)

# United States District Court

WESTERN ——— DISTRICT OF —— MISSOURI

TO:

CARL ROGER DAVIS

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:     2004R01281-01

☐ PERSON   ☒ DOCUMENTS OR OBJECT(S)

YOU ARE HEREBY **COMMANDED** to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | ROOM |
|-------|------|
| United States Courthouse 222 N. John Q. Hammons Parkway Springfield, MO  65806 | 2310 |
| | DATE AND TIME  9:00 a.m. Wednesday, Dec. 15, 2004 |

**YOU ARE ALSO COMMANDED** to bring with you the following **document(s) or object(s):**

*Changed To January 19, 05*

SEE ATTACHMENT TO SUBPOENA.

☐ *Please see additional information on reverse*

**This** subpoena shall remain in effect until you are granted leave to depart by the court or oy an **officer** acting on behalf of the court.

| CLERK | DATE |
|-------|------|
| *Patricia L. Brune* | November 22, 2004 |
| (BY) DEPUTY CLERK *Alexandra R. Martinez* | |

This subpoena is issued upon application of the United States of America

NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY
AUSA David C. Jones
901 St. Louis Street, Suite 500
Springfield, Missouri   65806
417-831-4406  or  1-800-347-4493

*If not applicable, enter "none"

To be used in lieu of AO110

FORM OBD-227
JAN. 86

ATTACHMENT TO SUBPOENA ISSUED TO: Carl Roger Davis

FOR THE YEARS: January 1,1998 through December 31,2003

All records and books of account relative to the financial transactions of:

American Financial Services Trust
Arizona Trust
Attic Creek Holding Co.
Bottom Line Employee Services, Inc.
Bottom Line Employee Services of Missouri, Inc.
Branson Mountain Trust
Chariots Trust
Farmhouse Restaurant
Farmhouse Restaurant, Inc.
Farmhouse Trust
First Premier Mortgage
R&D Marketing Trust
Goody Trust
Hattie's Trust
J&C Corporation Trust
Oak Bluff Managment Trust  (a/k/a Oak Bluff Management Trust)
Phoenix Trust
R.C.D. Investments
R.C.D.  Marketing Group


To include but not limited to:

ALL BUSINESS BOOKKEEPING RECORDS and other financial records including
General Ledger, General Journals, all Subsidiary Ledgers and Journals, Gross Receipts
and income records, Cash Receipts and Disbursement records and/or Journals, sales
and Purchase records and/or Journals, Accounts Receivable and Payable Ledgers and
records, Bad Debt records, Cost of Goods Sold records, Loan Receivable and Payable
Ledgers, Voucher Register and all sales and expense invoices including all invoices
documenting expenses paid by cash (currency ) or bank check (cashier or teller checks)
and retained copies of any bank checks (cashier or teller checks.)

Inventory records establishing beginning and ending inventories including inventory
sheets, work-papers, and valuation records.  Records and work-papers reflecting the
purchase, basis and depreciable life of assets.  Records and work-papers of sales of
business assets such records disclosing the dates of purchase and sale, cost and sales
price, records establishing or adjusting asset basis.

All financial statements, bookkeeper's and/or accountant's workpapers used in the preparation of business records or tax returns. Retained copies of all federal and state income, payroll and excise tax returns.

SAVINGS ACCOUNT RECORDS: Including passbooks or bank statements, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, records reflecting the identity of checks deposited, withdrawal slips, and records disclosing the disposition of withdrawals, Forms 1099, debit and credit memos. Records of any certificates of deposit, money market certificates, U.S. Treasury Notes or Bills purchased.

CHECKING ACCOUNT RECORDS: Including bank statements, deposit slips, records revealing the identity of checks drawn on the account, checks deposited, all debit and credit memos, and Forms 1099 issued.

LOAN RECORDS: Including applications, financial statements, loan collateral, credit and background investigations required, loan agreements, notes or mortgages, settlement sheets, contracts, retained copies of checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loans correspondence files and internal memoranda relative to these loans.

RECORD FORMAT: In addition to hard copies, records are requested in the form of magnetic media. Data may be provided in a jump drive (aka flash drive, key drive, or thumb drive), compact disk, 3 1/2 inch diskette, 8mm tape, or 9 track tape, in ASCII delimited format. A record layout for the data is also requested.

## *ADVICE OF RIGHTS*

Subpoena No. __2004R01281-01__

1.    The grand jury is conducting an investigation of possible

violations of federal criminal laws involving:

### Title 26, United States Code, Sections 7201

2.    You may refuse to answer any question if a truthful answer to

the question would tend to incriminate you.

3.    Anything you do say may be used against you by the grand jury

or in a subsequent legal proceeding.

4.    If you have retained counsel, the grand jury will permit you a

reasonable opportunity to step outside the grand jury room to

consult with counsel if you so desire.

U.S. DEPARTMENT OF JUSTICE



INSTRUCTIONS FOR FACT WITNESSES APPEARING ON
BEHALF OF THE UNITED STATES GOVERNMENT
(Not Applicable to Federal Employees)

**READ THE** INFORMATION CONTAINED ON **THIS** FORM BEFORE YOUR COURT APPEARANCE.  PLEASE CALL THE **INDIVIDUAL(S)** LISTED **BELOW** FOR INFORMATION REGARDING TRAVEL ARRANGEMENTS AND **SPECIFIC** ENTITLEMENTS.  IF YOU HAVE **A MEDICAL CONDITION** OR FAMILY SITUATION THAT REQUIRES SPECIAL CONSIDERATION, PLEASE ADVISE THE **INDIVIDUAL** LISTED **BELOW** AS SOON AS POSSIBLE.

**CONTACT PERSON(S):**   Louetta Prewitt, Legal Assistant          TELEPHONE NUMBER:   (417) 831-4406
                        Jean Cage, Victim Witness Specialist                             (816) 426-3122

**- VERIFY** YOUR ATTENDANCE -

On the last business day **BEFORE** you travel to court, call the above number to verify that your attendance is required.   This may prevent a wasted trip in the event the trial date is changed.

- APPEARANCE IN ANOTHER C I M -

If you are required to travel to another city to appear in court, immediately contact the individual listed above and request instructions.  **Any** amount advanced to you will be deducted from your fees and allowances.

- REIMBURSEMENT OF EXPENSES AND ATTENDANCE FEES -

A.     ATTENDANCE FEE:  You will be paid a fee of $40 per day, including travel days.

B.     TRANSPORTATION:  Call the individual listed above to obtain information on transportation.   Reimbursement will be made for travel by the least expensive method reasonably available to you.  The following rules apply to transportation expenses:

      Local Travel:  The recommended method of travel in the local area of court is transit **bus/subway.**

   2.  Privately Owned Vehicles **(POV):**  You will be reimbursed the following amounts:

      Motorcycle $.285 per mile     Automobile $.375 per mile     Airplanes .995 per mile

      in addition to the above mileage allowance, necessary tolls, parking and other fees may be reimbursed.   You must keep a **record** of your odometer readings if you travel by motorcycle or automobile.  If two or more **witnesses** travel in the same vehicle, only one reimbursement for mileage can be made.

      IF POV EXPENSES, INCLUDING MILEAGE, TOLLS, PARKING AND OTHER ASSOCIATED COSTS, ARE GREATER THAN THE GOVERNMENT AIRFARE, YOU WILL BE RESPONSIBLE FOR THE DIFFERENCE.

   3.  Common Carrier:  If you are located outside the local court area, CALL THE INDIVIDUAL LISTED ABOVE FOR INSTRUCTIONS. Train, bus or airfare will be reimbursed at the Government rate.  Reimbursement WILL NOT be made for First Class accommodations; "Frequent Flyer" tickets, or charter service. DO NOT purchase non-refundable tickets.  If your appearance date changes or is cancelled, you WILL NOT be reimbursed for non-refundable tickets.  If you have any questions concerning transportation arrangements, please contact the **individual(s)** listed above.

C.     MEALS:  If it is necessary for you to remain away from home overnight, you will receive the following daily meal allowances:

      $    17.50  for each travel day   **PLUS**     $     35.00  for each full day at court

D.     LODGING:  If it is necessary for you to remain away from home overnight, you will be reimbursed for the ACTUAL COST of your hotel/motel room, which may be not exceed    $    61.00   per night, including tax.

- YOU MUST RETAIN RECEIPTS -

ALL CLAIMS FOR PARKING MUST BE SUPPORTED BY A RECEIPT.  OTHER EXPENSES EQUAL **TO $25** OR MORE MUST BE **SUP-** PO   ED BY A RECEIPT, WITH THE EXCEPTION OF MEALS AND MILEAGE.

- DISMISSAL -

When you are advised that your attendance is no longer required, you should request information regarding the payment of the fees and allowances outlined above. The individual requiring your attendance will provide you with a Fact Witness Voucher.  You will be required to list your expenses on this Voucher. The voucher will be submitted to the U.S. Marshals Service for payment.  The U.S. Marshals Service will process the voucher and MAIL the payment to you.  If you require funds to return home, you must bring this fact to the attention of the individual requiring your attendance, who will notify the U.S. Marshals Service.

# United States District Court

WESTERN DISTRICT OF MISSOURI

TO:

JO ELAINE DAVIS

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:    2004R01281-02

☐ PERSON    ☒ DOCUMENTS OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | ROOM |
|---|---|
| United States Courthouse<br>222 N. John Q. Hammons Parkway<br>Springfield, MO  65806 | 2310 |
| | DATE AND TIME<br>9:00 a.m.<br>Wednesday, Dec. 15, 2004 |

YOU ARE ALSO COMMANDED to bring with you the following **document(s)** or **object(s)**:

*Changed To Jan 19-05*

SEE ATTACHMENT TO SUBPOENA.

☐ *Please see additional Information on reverse*

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK | DATE |
|---|---|
| *Patricia L. Brune*<br>(BY) DEPUTY CLERK<br>*Alexandra R. Martinez* | November 22, 2004 |

This subpoena is issued upon application
of the United States of America

NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY
AWSA David C. Jones
901 St. Louis Street, Suite 500
Springfield, Missouri  65806
417-831-4406   or   1-800-347-4493

COPY

'If not applicable, enter "none."    To be used in lieu of AO110    FORM OBD-227
JAN. 86

ATTACHMENT TO SUBPOENA ISSUED TO: JO ELAINE DAVIS

FOR THE YEARS: January 1,1998 through December 31,2003

All records and books of account relative to the financial transactions of:

> American Financial Services Trust
> Arizona Trust
> Attic Creek Holding Co.
> Bottom Line Employee Services, Inc.
> Bottom Line Employee Services of Missouri, Inc.
> Branson Mountain Trust
> Chariots Trust
> Farmhouse Restaurant
> Farmhouse Restaurant, Inc.
> Farmhouse Trust
> First Premier Mortgage
> R&D Marketing Trust
> Goody Trust
> Hattie's Trust
> J&C Corporation Trust
> Oak Bluff Managment Trust  (a/k/a Oak Bluff Management Trust)
> Phoenix Trust
> R.C.D. Investments
> R.C.D.  Marketing Group

To include but not limited to:

ALL BUSINESS BOOKKEEPING RECORDS and other financial records including General Ledger, General Journals, all Subsidiary Ledgers and Journals, Gross Receipts and income records, Cash Receipts and Disbursement records and/or Journals, sales and Purchase records and/or Journals, Accounts Receivable and Payable Ledgers and records, Bad Debt records, Cost of Goods Sold records, Loan Receivable and Payable Ledgers, Voucher Register and all sales and expense invoices including all invoices documenting expenses paid by cash (currency ) or bank check (cashier or teller checks) and retained copies of any bank checks (cashier or teller checks.)

Inventory records establishing beginning and ending inventories including inventory sheets, work-papers, and valuation records.  Records and work-papers reflecting the purchase, basis and depreciable life of assets.  Records and work-papers of sales of business assets such records disclosing the dates of purchase and sale, cost and sales price, records establishing or adjusting asset basis.

All financial statements, bookkeeper's and/or accountant's workpapers used in the preparation of business records or tax returns. Retained copies of all federal and state income, payroll and excise tax returns.

SAVINGS ACCOUNT RECORDS: Including passbooks or bank statements, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, records reflecting the identity of checks deposited, withdrawal slips, and records disclosing the disposition of withdrawals, Forms 1099, debit and credit memos. Records of any certificates of deposit, money market certificates, U.S. Treasury Notes or Bills purchased.

CHECKING ACCOUNT RECORDS: Including bank statements, deposit slips, records revealing the identity of checks drawn on the account, checks deposited, all debit and credit memos, and Forms 1099 issued.

LOAN RECORDS: Including applications, financial statements, loan collateral, credit and background investigations required, loan agreements, notes or mortgages, settlement sheets, contracts, retained copies of checks issued for loans, repayment records, including records revealing the date, amount and method of repayment (cash or check), checks used to repay loans and a record disclosing the total amount of discount or interest paid annually, records of any liens, loans correspondence files and internal memoranda relative to these loans.

RECORD FORMAT: In addition to hard copies, records are requested in the form of magnetic media. Data may be provided in a jump drive (aka flash drive, key drive, or thumb drive), compact disk, 3 112 inch diskette, 8mm tape, or 9 track tape, in ASCII delimited format. A record layout for the data is also requested.

# *ADVICE OF RIGHTS*

Subpoena No. __2004R01281-02__

1.    The grand jury is conducting an investigation of possible

violations of federal criminal laws involving:

**Title 26, United States Code, Section 7201**

2.    You may refuse to answer any question if a truthful answer to

the question would tend to incriminate you.

3.    Anything you do say may be used against you by the grand jury

or in a subsequent legal proceeding.

4.    If you have retained counsel, the grand jury will permit you a

reasonable opportunity to step outside the grand jury room to

consult with counsel if you so desire.



U.S. DEPARTMENT OF JUSTICE

INSTRUCTIONS FOR FACT WITNESSES APPEARING ON
BEHALF OF THE UNITED STATES GOVERNMENT
(Not Applicable to Federal Employees)

READ THE INFORMATION CONTAINED ON THIS FORM BEFORE YOUR COURT APPEARANCE. PLEASE CALL THE **INDIVIDUAL(S)** LISTED BELOW FOR INFORMATION REGARDING TRAVEL ARRANGEMENTS AND SPECIFIC ENTITLEMENTS. IF YOU HAVE A MEDICAL CONDITION OR FAMILY SITUATION THAT REQUIRES SPECIAL CONSIDERATION, PLEASE ADVISE THE INDIVIDUAL LISTED BELOW AS SOON AS POSSIBLE.

CONTACT **PERSON(S):**   Louetta **Prewitt,** Legal Assistant         TELEPHONE NUMBER:   (417) 831-4406
                         Jean Cage, **Victim** Witness Specialist                            (816) 426-3122

-VERIFY YOUR ATTENDANCE -

On the last business day BEFORE you travel to court, **call** the above number to verify that your attendance is required.   This may prevent a wasted trip in the event the trial date is changed.

-APPEARANCE **IN** ANOTHER **CITY** -

f you are required to travel to another city to appear in court. immediately contact the individual listed above and request instructions. Any amount advanced to you will be deducted from your fees and allowances.

• REIMBURSEMENT OF EXPENSES AND **ATTENDANCE** FEES •

1.   **ATTENDANCE** FEE:   You will be paid a fee of $40 per day, including travel days.

2.   TRANSPORTATION:  Call the individual listed above to obtain information on transportation.  Reimbursement will be made for travel by the least expensive method reasonably available to you.   The following rules apply to transportation expenses:

   1. Local Travel:   The recommended method of travel in the local area of court is transit **bus/subway.**

   2. Privately **Owned** Vehicles (POV):   You will be reimbursed the following amounts:

   Motorcycle $.285 per mile     Automobile $.375 per mile     Airplanes .995 per mile

   In addition to the above mileage allowance. necessary tolls, parking and other fees may be reimbursed.  You must keep a record of your odometer readings if you travel by motorcycle or automobile.  If two or more witnesses travel in the same vehicle, only one reimbursement for mileage can be made.

   IF POV EXPENSES, INCLUDING MILEAGE, TOLLS, PARKING AND OTHER ASSOCIATED COSTS, ARE GREATER THAN THE GOVERNMENT AIRFARE, YOU WILL BE RESPONSIBLE FOR THE DIFFERENCE.

   3. Common **Carrier:**  If you are located outside the local court area, CALL THE INDIVIDUAL **LISTED** ABOVE FOR INSTRUCTIONS. Train, bus or airfare will be reimbursed at the Government rate.  Reimbursement WILL NOT be made for First Class **accommoda-** tions, "Frequent Flyer" tickets, or charter service.  DO NOT purchase non-refundable tickets.  If your appearance date changes or Is **cancelled,** you WILL NOT be reimbursed for non-refundable tickets.  If you have any questions concerning transportation arrange- ments, please contact the **individual(s)** listed above.

   MEALS:  If it is necessary for you to remain away from home overnight, you will receive the following daily meal allowances:

   $    17.50  for each travel day   **PLUS**    $    35.00  for each full day at court

   LODGING:  If it is necessary for you to remain away from home overnight, you will be reimbursed for the ACTUAL COST of **your** hotel/motel room, which may be not exceed   $    61.00  per night, including tax.

• YOU MUST RETAIN RECEIPTS •

LL CLAIMS FOR PARKING MUST BE SUPPORTED BY A RECEIPT.  OTHER EXPENSES EQUAL TO $25 OR MORE MUST BE SUP- PORTED BY A RECEIPT, WITH THE EXCEPTION OF MEALS AND MILEAGE.

• DISMISSAL •

7en you are advised that your attendance is no longer required, you should request information regarding the payment of the fees and allowances outlined ove. The individual requiring your attendance will provide you with a Fact Witness Voucher. You will be required to list your expenses on this Voucher. The ·oucher will be submitted to the U.S. Marshals Service for payment. The U.S. Marshals Service will process the voucher and MAIL the payment to you. If you

**EXHIBIT E**
Title 26 United States Code § 7201
(1 pages)

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

# TITLE 26 - INTERNAL REVENUE CODE
## Subtitle F - Procedure and Administration
### CHAPTER 75 - CRIMES, OTHER OFFENSES, AND FORFEITURES
#### Subchapter A - Crimes
##### PART I - GENERAL PROVISIONS

## § 7201. Attempt to evade or defeat tax

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

(Aug. 16, 1954, ch. 736, 68A Stat. 851; Pub. L. 97–248, title III, § 329(a), Sept. 3, 1982, 96 Stat. 618.)

### Amendments

1982—Pub. L. 97–248 substituted "$100,000 ($500,000 in the case of a corporation)" for "$10,000".

### Effective Date of 1982 Amendment

Section 329(e) of Pub. L. 97–248 provided that: "The amendments made by this section [amending this section and sections 7203, 7206, and 7207 of this title] shall apply to offenses committed after the date of the enactment of this Act [Sept. 3, 1982]."

**EXHIBIT F**
Title 26 U.S.C. § 7602
(2 pages)

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

**TITLE 26 - INTERNAL REVENUE CODE**
   **Subtitle F - Procedure and Administration**
      **CHAPTER 78 - DISCOVERY OF LIABILITY AND ENFORCEMENT OF TITLE**
         **Subchapter A - Examination and Inspection**

## § 7602. Examination of books and witnesses

### (a)  Authority to summon, etc.

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

   **(1)**  To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

   **(2)**  To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

   **(3)**  To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

### (b)  Purpose may include inquiry into offense

The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

### (c)  Notice of contact of third parties

   **(1)**  **General notice**

   An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

   **(2)**  **Notice of specific contacts**

   The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collection of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.

   **(3)**  **Exceptions**

   This subsection shall not apply—

      **(A)**  to any contact which the taxpayer has authorized;

      **(B)**  if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person; or

      **(C)**  with respect to any pending criminal investigation.

### (d)  No administrative summons when there is Justice Department referral

   **(1)**  **Limitation of authority**

   No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

*26 USC 7602*

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

**(2)  Justice Department referral in effect**

For purposes of this subsection—

**(A)  In general**

A Justice Department referral is in effect with respect to any person if—

**(i)** the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, or

**(ii)** any request is made under section 6103 (h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103 (b)) relating to such person.

**(B)  Termination**

A Justice Department referral shall cease to be in effect with respect to a person when—

**(i)** the Attorney General notifies the Secretary, in writing, that—

**(I)** he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

**(II)** he will not authorize a grand jury investigation of such person with respect to such an offense, or

**(III)** he will discontinue such a grand jury investigation,

**(ii)** a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

**(iii)** the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in subparagraph (A)(ii).

**(3)  Taxable years, etc., treated separately**

For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this title shall be treated separately.

**(e)  Limitation on examination on unreported income**

The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income.

(Aug. 16, 1954, ch. 736, 68A Stat. 901; Pub. L. 94–455, title XIX, § 1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1834; Pub. L. 97–248, title III, § 333(a), Sept. 3, 1982, 96 Stat. 622; Pub. L. 105–206, title III, §§ 3412, 3417 (a), July 22, 1998, 112 Stat. 751, 757.)

## Amendments

1998—Subsec. (c). Pub. L. 105–206, § 3417(a), added subsec. (c). Former subsec. (c) redesignated (d).

Subsec. (d). Pub. L. 105–206, § 3417(a), redesignated subsec. (c) as (d). Former subsec. (d) redesignated (e).

Pub. L. 105–206, § 3412, added subsec. (d).

Subsec. (e). Pub. L. 105–206, § 3417(a), redesignated subsec. (d) as (e).

1982—Pub. L. 97–248 redesignated existing provisions as subsec. (a), added subsec. (a) heading, and added subsecs. (b) and (c).

1976—Pub. L. 94–455 struck out "or his delegate" after "Secretary" wherever appearing.

**EXHIBIT G**
Title 26 U.S.C. §§ 7807 and 7851 and U.S. Constitution, Article I § 7 Cl. I and II
(12 pages)

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

**TITLE 26 - INTERNAL REVENUE CODE**
  **Subtitle F - Procedure and Administration**
    **CHAPTER 80 - GENERAL RULES**
      **Subchapter A - Application of Internal Revenue Laws**

## § 7807. Rules in effect upon enactment of this title

(a) **Interim provision for administration of title**

Until regulations are promulgated under any provision of this title which depends for its application upon the promulgation of regulations (or which is to be applied in such manner as may be prescribed by regulations) all instructions, rules or regulations which are in effect immediately prior to the enactment of this title shall, to the extent such instructions, rules, or regulations could be prescribed as regulations under authority of such provision, be applied as if promulgated as regulations under such provision.

(b) **Provisions of this title corresponding to prior internal revenue laws**

(1) **Reference to law applicable to prior period**

Any provision of this title which refers to the application of any portion of this title to a prior period (or which depends upon the application to a prior period of any portion of this title) shall, when appropriate and consistent with the purpose of such provision, be deemed to refer to (or depend upon the application of) the corresponding provision of the Internal Revenue Code of 1939 or of such other internal revenue laws as were applicable to the prior period.

(2) **Elections or other acts**

If an election or other act under the provisions of the Internal Revenue Code of 1939 would, if this title had not been enacted, be given effect for a period subsequent to the date of enactment of this title, and if corresponding provisions are contained in this title, such election or other act shall be given effect under the corresponding provisions of this title.

(Aug. 16, 1954, ch. 736, 68A Stat. 917.)

### References in Text

The Internal Revenue Code of 1939, referred to in subsec. (b), is act Feb. 10, 1939, ch. 2, 53 Stat. 1, as amended. Prior to the enactment of the Internal Revenue Code of 1986 [formerly I.R.C. 1954], the 1939 Code was classified to former Title 26, Internal Revenue Code. The Internal Revenue Code of 1954 was redesignated The Internal Revenue Code of 1986 by Pub. L. 99–514, § 2, Oct. 22, 1986, 100 Stat. 2095. For table of comparisons of the 1939 Code to the 1986 Code, see Table I preceding section 1 of this title.

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

# TITLE 26 - INTERNAL REVENUE CODE
## Subtitle F - Procedure and Administration
### CHAPTER 80 - GENERAL RULES
#### Subchapter B - Effective Date and Related Provisions

## § 7851. Applicability of revenue laws

### (a)  General rules

Except as otherwise provided in any section of this title—

#### (1)  Subtitle A

**(A)**  Chapters 1, 2, 4,[1] and 6 of this title shall apply only with respect to taxable years beginning after December 31, 1953, and ending after the date of enactment of this title, and with respect to such taxable years, chapters 1 (except sections 143 and 144) and 2, and section 3801, of the Internal Revenue Code of 1939 are hereby repealed.

**(B)**  Chapters 3 and 5 [1] of this title shall apply with respect to payments and transfers occurring after December 31, 1954, and as to such payments and transfers sections 143 and 144 and chapter 7sections 143 and 144 and chapter 7 of the Internal Revenue Code of 1939 are hereby repealed.

**(C)**  Any provision of subtitle A of this title the applicability of which is stated in terms of a specific date (occurring after December 31, 1953), or in terms of taxable years ending after a specific date (occurring after December 31, 1953), shall apply to taxable years ending after such specific date. Each such provision shall, in the case of a taxable year subject to the Internal Revenue Code of 1939, be deemed to be included in the Internal Revenue Code of 1939, but shall be applicable only to taxable years ending after such specific date. The provisions of the Internal Revenue Code of 1939 superseded by provisions of subtitle A of this title the applicability of which is stated in terms of a specific date (occurring after December 31, 1953) shall be deemed to be included in subtitle A of this title, but shall be applicable only to the period prior to the taking effect of the corresponding provision of subtitle A.

**(D)**  Effective with respect to taxable years ending after March 31, 1954, and subject to tax under chapter 1 of the Internal Revenue Code of 1939—

**(i)**  Sections 13 (b)(3), 26 (b)(2)(C), 26 (h) (1)(C) (including the comma and the word "and" immediately preceding such section), 26(i)(3), 108(k), 207(a)(1)(C), 207(a)(3)(C), and the last sentence of section 362(b)(3) of such Code are hereby repealed; and

**(ii)**  Sections 13 (b)(2), 26 (b)(2)(B), 26 (h) (1)(B), 26 (i)(2), 207 (a)(1)(B), 207 (a)(3)(B), 421 (a)(1)(B), and the second sentence of section 362(b)(3) of such Code are hereby amended by striking out "and before April 1, 1954" (and any accompanying punctuation) wherever appearing therein.

#### (2)  Subtitle B

**(A)**  Chapter 11 of this title shall apply with respect to estates of decedents dying after the date of enactment of this title, and with respect to such estates chapter 3 of the Internal Revenue Code of 1939 is hereby repealed.

**(B)**  Chapter 12 of this title shall apply with respect to the calendar year 1955 and all calendar years thereafter, and with respect to such years chapter 4 of the Internal Revenue Code of 1939 is hereby repealed.

#### (3)  Subtitle C

Subtitle C of this title shall apply only with respect to remuneration paid after December 31, 1954, except that chapter 22 of such subtitle shall apply only with respect to remuneration paid after December 31, 1954, which is for services performed after such date. Chapter 9 of the Internal Revenue Code of 1939 is hereby repealed with respect to remuneration paid after December 31,

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

1954, except that subchapter B of such chapter (and subchapter E of such chapter to the extent it relates to subchapter B) shall remain in force and effect with respect to remuneration paid after December 31, 1954, for services performed on or before such date.

**(4)  Subtitle D**

Subtitle D of this title shall take effect on January 1, 1955. Subtitles B and C of the Internal Revenue Code of 1939 (except chapters 7, 9, 15, 26, and 28, subchapter B of chapter 25, and parts VII and VIII of subchapter A of chapter 27 of such code) are hereby repealed effective January 1, 1955.

Provisions having the same effect as section 6416 (b)(2)(H),[1] and so much of section 4082 (c)[1] as refers to special motor fuels, shall be considered to be included in the Internal Revenue Code of 1939 effective as of May 1, 1954. Section 2450(a) of the Internal Revenue Code of 1939 (as amended by the Excise Tax Reduction Act of 1954) applies to the period beginning on April 1, 1954, and ending on December 31, 1954.

**(5)  Subtitle E**

Subtitle E shall take effect on January 1, 1955, except that the provisions in section 5411 permitting the use of a brewery under regulations prescribed by the Secretary for the purpose of producing and bottling soft drinks, section 5554, and chapter 53section 5554, and chapter 53 shall take effect on the day after the date of enactment of this title. Subchapter B of chapter 25, and part VIII of subchapter A of chapter 27, of the Internal Revenue Code of 1939 are hereby repealed effective on the day after the date of enactment of this title. Chapters 15 and 26, and part VII of subchapter A of chapter 27, of the Internal Revenue Code of 1939 are hereby repealed effective January 1, 1955.

**(6)  Subtitle F**

**(A)  General rule**

The provisions of subtitle F shall take effect on the day after the date of enactment of this title and shall be applicable with respect to any tax imposed by this title. The provisions of subtitle F shall apply with respect to any tax imposed by the Internal Revenue Code of 1939 only to the extent provided in subparagraphs (B) and (C) of this paragraph.

**(B)  Assessment, collection, and refunds**

Notwithstanding the provisions of subparagraph (A), and notwithstanding any contrary provision of subchapter A of chapter 63 (relating to assessment), chapter 64 (relating to collection), or chapter 65 (relating to abatements, credits, and refunds) of this title, the provisions of part II of subchapter A of chapter 28 and chapters 35, 36, and 37 (except section 3777) of subtitle D of the Internal Revenue Code of 1939 shall remain in effect until January 1, 1955, and shall also be applicable to the taxes imposed by this title. On and after January 1, 1955, the provisions of subchapter A of chapter 63, chapter 64, and chapter 65 (except section 6405) of this title shall be applicable to all internal revenue taxes (whether imposed by this title or by the Internal Revenue Code of 1939), notwithstanding any contrary provision of part II of subchapter A of chapter 28, or of chapter 35, 36, or 37, of the Internal Revenue Code of 1939. The provisions of section 6405 (relating to reports of refunds and credits) shall be applicable with respect to refunds or credits allowed after the date of enactment of this title, and section 3777 of the Internal Revenue Code of 1939 is hereby repealed with respect to such refunds and credits.

**(C)  Taxes imposed under the 1939 Code**

After the date of enactment of this title, the following provisions of subtitle F shall apply to the taxes imposed by the Internal Revenue Code of 1939, notwithstanding any contrary provisions of such code:

    **(i)**  Chapter 73, relating to bonds.

    **(ii)**  Chapter 74, relating to closing agreements and compromises.

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

    **(iii)** Chapter 75, relating to crimes and other offenses, but only insofar as it relates to offenses committed after the date of enactment of this title, and in the case of such offenses, section 6531, relating to periods of limitation on criminal prosecution, shall be applicable. The penalties (other than penalties which may be assessed) provided by the Internal Revenue Code of 1939 shall not apply to offenses, committed after the date of enactment of this title, to which chapter 75 of this title is applicable.

    **(iv)** Chapter 76, relating to judicial proceedings.

    **(v)** Chapter 77, relating to miscellaneous provisions, except that section 7502 shall apply only if the mailing occurs after the date of enactment of this title, and section 7503 shall apply only if the last date referred to therein occurs after the date of enactment of this title.

    **(vi)** Chapter 78, relating to discovery of liability and enforcement of title.

    **(vii)** Chapter 79, relating to definitions.

    **(viii)** Chapter 80, relating to application of internal revenue laws, effective date, and related provisions.

  **(D) Chapter 28 and subtitle D of 1939 Code**

    Except as otherwise provided in subparagraphs (B) and (C), the provisions of chapter 28 and of subtitle D of the Internal Revenue Code of 1939 shall remain in effect with respect to taxes imposed by the Internal Revenue Code of 1939.

  **(7) Other provisions**

If the effective date of any provision of the Internal Revenue Code of 1986 is not otherwise provided in this section or in any other section of this title, such provision shall take effect on the day after the date of enactment of this title. If the repeal of any provision of the Internal Revenue Code of 1939 is not otherwise provided by this section or by any other section of this title, such provision is hereby repealed effective on the day after the date of enactment of this title.

**(b) Effect of repeal of Internal Revenue Code of 1939**

  **(1) Existing rights and liabilities**

The repeal of any provision of the Internal Revenue Code of 1939 shall not affect any act done or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause, before such repeal; but all rights and liabilities under such code shall continue, and may be enforced in the same manner, as if such repeal had not been made.

  **(2) Existing offices**

The repeal of any provision of the Internal Revenue Code of 1939 shall not abolish, terminate, or otherwise change—

    **(A)** any internal revenue district,

    **(B)** any office, position, board, or committee, or

    **(C)** the appointment or employment of any officer or employee,

existing immediately preceding the enactment of this title, the continuance of which is not manifestly inconsistent with any provision of this title, but the same shall continue unless and until changed by lawful authority.

  **(3) Existing delegations of authority**

Any delegation of authority made pursuant to the provisions of Reorganization Plan Numbered 26 of 1950 or Reorganization Plan Numbered 1 of 1952, including any redelegation of authority made pursuant to any such delegation of authority, and in effect under the Internal Revenue Code of 1939 immediately preceding the enactment of this title shall, notwithstanding the repeal of such code, remain in effect for purposes of this title, unless distinctly inconsistent or manifestly incompatible with the provisions of this title. The preceding sentence shall not be construed as limiting in any manner the power to amend, modify, or revoke any such delegation or redelegation of authority.

*26 USC 7851*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

### (c) Crimes and forfeitures

All offenses committed, and all penalties or forfeitures incurred, under any provision of law hereby repealed, may be prosecuted and punished in the same manner and with the same effect as if this title had not been enacted.

### (d) Periods of limitation

All periods of limitation, whether applicable to civil causes and proceedings, or to the prosecution of offenses, or for the recovery of penalties or forfeitures, hereby repealed shall not be affected thereby, but all suits, proceedings, or prosecutions, whether civil or criminal, for causes arising, or acts done or committed, prior to said repeal, may be commenced and prosecuted within the same time as if this title had not been enacted.

### (e) Reference to other provisions

For the purpose of applying the Internal Revenue Code of 1939 or the Internal Revenue Code of 1986 to any period, any reference in either such code to another provision of the Internal Revenue Code of 1939 or the Internal Revenue Code of 1986 which is not then applicable to such period shall be deemed a reference to the corresponding provision of the other code which is then applicable to such period.

### Footnotes

[1] See References in Text note below.

(Aug. 16, 1954, ch. 736, 68A Stat. 919; Pub. L. 94–455, title XIX, § 1906(b)(13)(A), Oct. 4, 1976, 90 Stat. 1834; Pub. L. 99–514, § 2, Oct. 22, 1986, 100 Stat. 2095.)

## References in Text

Chapter 4 of this title, referred to in subsec. (a)(1)(A), was repealed by Pub. L. 101–508, title XI, § 11801(a)(37), Nov. 5, 1990, 104 Stat. 1388–521.

The date of enactment of this title, referred to in subsecs. (a)(1)(A), (5), (6)(A) to (C), (7), (b)(2), (3), is Aug. 16, 1954.

Various provisions of the Internal Revenue Code of 1939, referred to in text and described below, have corresponding provisions appearing in the Internal Revenue Code of 1986 [formerly I.R.C. 1954]. For table of comparisons of the 1939 Code to the 1986 Code, see Table I preceding section 1 of this title. See, also, subsec. (e) of this section for provision that references in the 1986 Code to a provision in the 1939 Code, not then applicable, shall be deemed a reference to the corresponding provision of the 1986 Code, which is then applicable.

Chapter 1 of the Internal Revenue Code of 1939, referred to in subsec. (a)(1)(A), (D), was comprised of sections 1 to 482 of former Title 26, Internal Revenue Code. Sections 1 to 33 were repealed by subsec. (a)(1)(A) of this section, section 34 was repealed by act Feb. 25, 1944, ch. 63, title I, § 106(c)(2), 58 Stat. 31, sections 35 to 184 were repealed by subsec. (a)(1)(A) of this section, section 185 was repealed by act Feb. 25, 1944, ch. 63, title I, § 107(a), 58 Stat. 31, sections 201 to 263 were repealed by subsec. (a)(1)(A) of this section, section 264 was repealed by act Oct. 21, 1942, ch. 619, title I, § 159(e), 56 Stat. 860, sections 265 to 362 were repealed by subsec. (a)(1)(A) of this section, section 363 was repealed by act Oct. 21, 1942, ch. 619, title I, § 170(a), 56 Stat. 878, sections 371 to 482 were repealed by subsec. (a)(1)(A) of this section.

Sections 143 and 144 of the Internal Revenue Code of 1939, referred to in subsec. (a)(1)(A), (B), were classified to sections 143 and 144 of former Title 26, Internal Revenue Code.

Chapter 2 of the Internal Revenue Code of 1939, referred to in subsec. (a)(1)(A), was comprised of sections 500 to 784 of former Title 26, Internal Revenue Code. Sections 500 to 511 and 650 to 706 were repealed by subsec. (a)(1)(A) of this section, sections 600 to 605 were repealed by act Nov. 8, 1945, ch. 453, title II, § 202, 59 Stat. 574, sections 710 to 736, 740, 742 to 744, 750, 751, 760, 761 and 780 to 784 were repealed by act Nov. 8, 1945, ch. 453, title I, § 122(a), 59 Stat. 568, section 741 was repealed by act Oct. 21, 1942, ch. 619, title II, §§ 224(b), 228 (b), 56 Stat. 920, 925, section 752 was repealed by act Oct. 21, 1942, ch. 619, title II, § 229(a)(1), 56 Stat. 931, eff. as of Oct. 8, 1940.

Section 3801 of the Internal Revenue Code of 1939, referred to in subsec. (a)(1)(A), was classified to section 3801 of former Title 26, Internal Revenue Code. Section 3801 was repealed by subsec. (a)(1)(A) of this section.

Chapter 5 of this title, referred to in subsec. (a)(1)(B), was repealed by Pub. L. 105–34, title XI, § 1131(a), Aug. 5, 1997, 111 Stat. 978.

106TH CONGRESS
2d Session } HOUSE OF REPRESENTATIVES { DOCUMENT
No. 106–214

# THE
# CONSTITUTION
## OF THE
# UNITED STATES
## OF AMERICA

*As Amended*

———

*Unratified Amendments*

———

*Analytical Index*



## PRESENTED BY MR. HYDE

January 31, 2000    •    Ordered to be printed

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON: 2000

4          CONSTITUTION OF THE UNITED STATES

paid out of the Treasury of the United States.[6] They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

[2] No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.

SECTION. 7. [1] All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills.

[2] Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. But in all such Cases the Votes of both Houses shall be determined by yeas and Nays, and the Names of the Persons voting for and against the Bill shall be entered on the Journal of each House respectively. If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.

[3] Every Order, Resolution, or Vote to which the Concurrence of the Senate and House of Representatives may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the Case of a Bill.

SECTION. 8. [1] The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

[2] To borrow Money on the credit of the United States;

[3] To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;

[4] To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;

[5] To coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures;

---

[6] This clause has been affected by amendment XXVII.

ent to his appointment.
.Op.) 3 Op.O.L.C. 286.

during tenure

:s not prohibit the ap-
legislator to an office
e of appointment it is
:ertain that a proposed
· that office may receive
a future date. 1969, 42
nary 3.

and confirmation of a
te time, is ineligible for
e of this clause, cannot
s of his appointment to
his ineligibility ceases.
ivil Office, 1883, 17 Op.

t was elected and quali-
·tates senator for a term
., 1883, and in Mar.,
l to accept the position
e interior, which office
· resigned, after his sec-
he office of tariff com-
reated by Act of Con-
torney-general advised
of the Constitution dis-
· appointment as com-
intment to Civil Office,
Sen. 365.

e in Congress does not
·r of the House until he
office as such represen-
he may lawfully hold
his election until that
p.Atty.Gen. 408.

and holding an office
h that of representative
.eligible to the latter of-
)e Large, Smith Ell.Cas.

and forfeiture of office
m holding an office in-
hat of senator is elected
e, his resignation of the
)ffering to assume the
r will remove any objec-
this clause. Stanton v.
·. 205.

execute the duties of an
Jnited States after one is
ess, but before he takes
a disqualification; such
:ned prior to the taking
le, Cl. & H.El.Cas. 314.

lection to Congress, ac-
ce, and subsequently re-

signs the same before his term in Con-
gress is to begin, he will not thereby be
rendered incapable of holding his seat in
Congress. Washburn v. Ripley, Cl. &
H.El.Cas. 679 to 682.

The acceptance by any member of any
office under the United States, after he
has been elected to and taken his seat in
Congress, operates as a forfeiture of his
seat. Van Ness, Cl. & H.El.Cas. 122.

If the office to which a person is ap-
pointed does not in fact exist, such ap-
pointment will not render him ineligible
to election as senator. Stanton v. Lane,
Taft El.Cas. 205.

The formal resignation of an office held
by a member-elect is not necessary if the
duties of it have so far ceased as to have
operated a virtual abolition of the office.
Munford, Cl. & H.El.Cas. 316.

**7. Service in armed forces**

Plaintiff committee and certain named
members thereof who were reservists and
former reservists in the armed forces had
no standing as citizens to bring action
challenging armed forces reserve mem-
bership of members of Congress as being
in violation of this clause, since claimed
nonobservance of this clause presented
merely an abstract injury rather than a
concrete injury which was essential to
satisfy the case or controversy require-
ment of Constitution. Schlesinger v. Re-
servists Committee to Stop the War,
U.S.Dist.Col.1974, 94 S.Ct. 2925, 418

U.S. 208, 41 L.Ed.2d 706. Federal
Courts ☞ 13

One who accepts a commission as colo-
nel of volunteers is disqualified to become
or remain a member of the House of
Representatives, and the rule is not al-
tered by reason of the fact that the com-
mission is issued by the governor of the
state. Baker, 1 Bart.El.Cas. 92. See,
also, Byington v. Vandever, 1 Bart.
El.Cas. 395.

Under the practice which has long pre-
vailed, Members of Congress may enter
the armed forces by enlistment, commis-
sion or otherwise but thereupon cease to
be Members of Congress provided the
House or the Senate, as the case may be,
chooses to act. 1943, 40 Op.Atty.Gen.
Dec. 23.

The exclusive responsibility for inter-
preting and enforcing this clause rests
with the Congress, and therefor does not
require the President to take action with
respect to the reserve commissions cur-
rently held by Members of Congress.
1977 (Counsel-Inf.Op.) 1 Op.O.L.C. 242.

The office of major of militia is an
office incompatible with that of senator
or representative. Van Ness, Cl. & H.El.
Cas. 122.

The office of brigadier-general in the
volunteer forces of the United States is
incompatible with that of member of ei-
ther house of Congress. Stanton v. Lane,
Taft El.Cas. 205.

# Section 7, Clause 1. Revenue Bills to Originate in House; Amendments by Senate

All Bills for raising Revenue shall originate in the House of
Representatives; but the Senate may propose or concur with Amend-
ments as on other Bills.

## CROSSREFERENCES

"Appropriation law" defined as in this section for purposes of line item veto, see 2
USCA § 691e.
Power of Congress to lay and collect taxes, see USCA Const. Art. I, § 8, cl. 1.
Preferences by regulation of commerce or revenue to ports of one state over those
of another prohibited, see USCA Const. Art. I, § 9, cl. 6.
Presidential line item veto authority, see 2 USCA § 691.

## LAW REVIEW AND JOURNAL COMMENTARIES

Original penumbras: Constitutional interpretation in the first year of Congress.
Kent Greenfield, 26 Conn.L.Rev. 79 (1993).

**Art. I § 7, cl. 1**                    THE CONGRESS                    REVENUE BILLS

Pulling the purse strings of the Commander in Chief. Peter Raven–Hansen and William C. Banks, 80 Va.L.Rev. 833 (1994).

## WESTLAW ELECTRONIC RESEARCH

See WESTLAW guide following the Explanation pages of this volume.

## Notes of Decisions

Amendments by Senate    4
Bills for raising revenue    2
Justiciability    6
Origination in House    3
Penalties    5
Purpose    1

### 1. Purpose

Origination requirement was intended to grant primary power over taxation to the house more closely tied to the popular will. U.S. v. Munoz–Flores, C.A.9 (Cal.) 1988, 863 F.2d 654, certiorari granted 110 S.Ct. 48, 493 U.S. 808, 107 L.Ed.2d 17, reversed on other grounds 110 S.Ct. 1964, 495 U.S. 385, 109 L.Ed.2d 384. Statutes ⚖ 6

### 2. Bills for raising revenue

Statute requiring courts to impose a monetary "special assessment" on persons convicted of federal crimes is not a revenue raising bill for purposes of the origination clause, considering that statute was passed as part of a particular program to provide money for that program, the Crime Victims Fund, and not to raise revenue to support government generally; any revenue for the general Treasury that statute created was incidental to provision's primary purpose. U.S. v. Munoz–Flores, U.S.Cal.1990, 110 S.Ct. 1964, 495 U.S. 385, 109 L.Ed.2d 384. Costs ⚖ 285; Statutes ⚖ 6

A bill providing for the taxation of property in the District of Columbia for the purpose of aiding in a scheme for the providing of adequate railroad terminal facilities in the District of Columbia, was not one to raise revenue to be applied in meeting the expenses or obligations of the government generally, and therefore it was not necessary that it should originate in the House of Representatives. Millard v. Roberts, U.S.Dist.Col.1906, 26 S.Ct. 674, 202 U.S. 429, 50 L.Ed. 1090.

An Act of Congress providing a national currency secured by a pledge of bonds of the United States, and imposing, in the furtherance of that object and also to

meet the expense attending the execution of the Act, a tax on the notes in circulation of a banking association organized under the statutes, is clearly not a revenue bill which the Constitution declares must originate in the House of Representatives. Twin City Nat. Bank of New Brighton v. Nebecker, U.S.Dist.Col.1897, 17 S.Ct. 766, 167 U.S. 196, 42 L.Ed. 134. See, also, Rainey v. U.S., N.Y.1914, 34 S.Ct. 429, 232 U.S. 310, 58 L.Ed. 617. Statutes ⚖ 6

The construction of this limitation is practically well settled by the uniform action of Congress; according to that construction, it has been confined to bills to levy taxes in the strict sense of the word, and has not been understood to extend to bills for other purposes which incidentally create revenue. U.S. v. Norton, U.S.N.Y.1875, 91 U.S. 566, 1 Otto 566, 23 L.Ed. 454. United States ⚖ 22

Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) does not violate Originations Clause. Walthall v. U.S., C.A.9 (Alaska) 1997, 131 F.3d 1289. Statutes ⚖ 6

Enactment of Iran Claims Settlement Act, authorizing 1.5% deduction from Iran-United States Claims Tribunal awards as "user fee," did not violate origination clause even though bill originated in Senate; fact that deductions were recovered as "miscellaneous receipts" into United States Treasury did not require holding that bill's primary purpose was for "raising revenue." Sperry Corp. v. U.S., C.A.Fed.1991, 925 F.2d 399, certiorari denied 112 S.Ct. 53, 502 U.S. 809, 116 L.Ed.2d 30.

Act is not subject to challenge under origination clause, which provides that all bills for raising revenue shall originate in House of Representatives, where main purpose of act is other than raising revenue. U.S. v. King, C.A.10 (Kan.) 1989, 891 F.2d 780. Constitutional Law ⚖ 6

Special assessment of $50 pursuant to statute imposing special assessments on those convicted of offenses against United

States violated origin; stitution. Shah v. U.S 878 F.2d 1156, cer S.Ct. 195, 493 U.S. 86 Costs ⚖ 285; Statute

Term "Bills for ra used in the originati refer only to laws in rather, refers in gene ing to taxes. Armst (Cal.) 1985, 759 F.2d 6

Tax Equity and F Act, which authorize penalty is constitution er contended statute v tion of Representatives' ve; of Representatives' ve; revenue, while Senat revenue so that "reve of bill originated in : U.S., C.A.8 (Minn.) 1 Internal Revenue ⚖ :

Merchant Marine U.S.C.A. § 861 et se raise revenue, but one can merchant **marin** permanent basis, and tutional because orig Bertelsen v. White, C. 65 F.2d 719. Statute:

A "bill" is a **draft** o submitted to the Le; ment, though the w loosely as synonymou and it is not the st product of the legisla; ject for a statute, wh may take a very diff time it is ready for law, to which this cla all bills for raising rev the House of Represe v. Lowe, S.D.N.Y.1915

While the primary c is the raising of revel of the government, a; general purpose are " enue," in the sense c and therefore must or: of Representatives, it o follow that every bill f imate and well-define becomes a revenue sense, because, as an i object, it may contain payment of certain du special taxes. Twin New Brighton v. Neb;

ζaven-Hansen and

ιlume.

ιding the execution
ιe notes in circula-
ociation organized
clearly not a reve-
ιnstitution declares
ⵏouse of Represen-
lat. Bank of New
U.S.Dist.Col.1897,
196, 42 L.Ed. 134.
U.S., N.Y.1914, 34
)10, 58 L.Ed. 617.

f this limitation is
ιd by the uniform
according to that
en confined to bills
strict sense of the
ιeen understood to
ιer purposes which
ιenue. US. v. Nor-
l U.S. 566, 1 Otto
ⵏnited States ☞ 22

ιscal Responsibility
ι) does not violate
Walthall v. U.S.,
, 131 F.3d 1289.

Claims Settlement
% deduction from
Claims Tribunal
did not violate orig-
ιough bill originated
deductions were re-
ιeous receipts" into
ιry did not require
ιmary purpose was
" Sperry Corp. v.
25 F.2d 399, certio-
, 53, 502 U.S. 809,

to challenge under
vhich provides that
renue shall originate
ιtatives, where main
ιr than raising reve-
C.A.10 (Kan.) 1989,
ιtitutional Law ☞ 6

: of $50 pursuant to
cial assessments on
ιnses against United

States violated origination clause of Con-
stitution. Shah v. U.S., C.A.9 (Cal.) 1989,
878 F.2d 1156, certiorari denied 110
S.Ct. 195, 493 U.S. 869, 107 L.Ed.2d 149.
Costs ☞ 285; Statutes ☞ 6

Term "Bills for raising Revenue" as
used in the origination clause does not
refer only to laws increasing taxes but,
rather, refers in general to all laws relat-
ing to taxes. Armstrong v. U.S., C.A.9
(Cal.) 1985, 759 F.2d 1378. Statutes ☞
6

Tax Equity and Fiscal Responsibility
Act, which authorizes frivolous return
penalty is constitutional, although taxpay-
er contended statute was enacted in viola-
tion of origination clause because House
of Representatives' version of bill reduced
revenue, while Senate version increased
revenue so that "revenue-raising" aspect
of bill originated in Senate. Wardell v.
U.S., C.A.8 (Minn.) 1985, 757 F.2d 203.
Internal Revenue ☞ 5201; Statutes ☞ 6

Merchant Marine Act of 1920, 46
U.S.C.A. § 861 et seq. was not bill to
raise revenue, but one to establish Ameri-
can merchant marine upon sound and
permanent basis, and hence not unconsti-
tutional because originating in Senate.
Bertelsen v. White, C.C.A.1 (Mass.) 1933,
65 F.2d 719. Statutes ☞ 6

A "bill" is a draft of a proposed statute
submitted to the Legislature for enact-
ment, though the word is often used
loosely as synonymous with act or law,
and it is not the statute, or the final
product of the legislative will, but a pro-
ject for a statute, which by amendment
may take a very different shape by the
time it is ready for promulgation as a
law, to which this clause refers requiring
all bills for raising revenue to originate in
the House of Representatives. Hubbard
v. Lowe, S.D.N.Y.1915, 226 F. 135.

While the primary object of all taxation
is the raising of revenue for the support
of the government, and all bills for that
general purpose are "bills for raising rev-
enue," in the sense of the Constitution,
and therefore must originate in the House
of Representatives, it does not necessarily
follow that every bill for some other legit-
imate and well-defined general purpose
becomes a revenue bill, in the same
sense, because, as an incident to the main
object, it may contain a provision for the
payment of certain dues, license fees, or
special taxes. Twin City Nat. Bank of
New Brighton v. Nebeker, App.D.C.1894,

3 App.D.C. 190, affirmed 17 S.Ct. 766,
167 U.S. 196, 42 L.Ed. 134.

Special assessment statute did not vio-
late origination clause, inasmuch as any
revenue raising resulting from imposition
of special assessment was only incidental
to Congress' primary purpose of punish-
ing convicted defendants and assisting
victims of crime. U.S. v. Vines, S.D.Ala.
1989, 718 F.Supp. 895. Statutes ☞ 6

Treaty which creates exemption from
taxation of income of United States citi-
zens, contrary to 26 U.S.C.A. § 61, would
be in contravention of exclusive constitu-
tional authority of the House of Repre-
sentatives to originate all bills for raising
revenues. Swearingen v. U.S., D.C.Colo.
1983, 565 F.Supp. 1019. Statutes ☞ 6

A provision in an Act of Congress in-
creasing the rate of postage from one
cent for two ounces to one cent an ounce
was held not unconstitutional though the
clause originated in the Senate and was
not an amendment to a bill for raising the
revenue originating in the House of Rep-
resentatives. U.S. v. James, C.C.N.Y.
1875, 26 F.Cas. 577, 8 Chi.Leg.N. 111,
No. 15464. Statutes ☞ 6

Victims of Crime Act did not raise reve-
nue within meaning of origination clause
and, therefore, did not need to originate
in House of Representatives, even though
program established by Act involved a
fund with $100 million cap, and, even
though all contributions to fund were ter-
minated after certain date; nothing in Act
or legislative history affirmatively sug-
gested any purpose behind Act other than
to subsidize victim assistance programs.
U.S. v. Simpson, C.A.3 (Pa.) 1989, 885
F.2d 36, certiorari denied 110 S.Ct. 2565,
495 U.S. 958, 109 L.Ed.2d 747. Statutes
☞ 6

Legislation authorizing imposition of
special assessment on persons convicted
of offenses against United States was not
revenue measure and, thus, that legisla-
tion originated in Senate did not violate
origination clause. U.S. v. Yearwood,
E.D.La.1989, 718 F.Supp. 14, affirmed
894 F.2d 404. Statutes ☞ 6

**3. Origination in House**

The section of the Tariff Act of August
5, 1909, which substituted a corporation
tax as proposed in the Senate for a plan
of inheritance taxation as contained in
the bill as originally introduced in the
House of Representatives, was not invalid

**Art. I § 7, cl. 1**

Note 3

for having originated in the Senate, as the bill properly originated in the House and the amendment was germane to the subject-matter of the bill. Flint v. Stone Tracy Co., U.S.Vt.1911, 31 S.Ct. 342, 220 U.S. 107, 55 L.Ed. 389, Am.Ann.Cas. 1912B,1312. See, also, Rainey v. U.S., N.Y.1914, 34 S.Ct. 429, 232 U.S. 310, 58 L.Ed. 617.

Tax Equity and Fiscal Responsibility Act of 1982 [26 U.S.C.A. § 1 note] did not violate origination clause [U.S.C.A. Const. Art. 1, § 7, cl. 1]. Jolly v. U.S., CA.9 (Cal.) 1985, 764 F.2d 642. Statutes ⊂= 6

Where the Cotton Futures Act, Act Aug. 18, 1914, c. 255, 38 Stat. 693, as originally passed by the Senate, sought to prohibit contracts for cotton futures not in the form therein prescribed, by excluding from the mails all matter relating to the business of those exchanges not using the statutory contract, and the House of Representatives struck out everything after the enacting clause and substituted a different Act, seeking to prohibit such contracts by the imposition of a prohibitive tax, the bill originated in the Senate, within this clause requiring revenue bills to originate in the House of Representatives, but providing that the Senate may propose or concur with amendments as on other bills; even though the journals of Congress were resorted to, the result would be the same, as is shown by the certificate of the Secretary of the Senate that the bill originated in the Senate, as it is a common practice and in a parliamentary sense is proper and permissible to substitute by amendment anything germane to the matter of a pending bill, and the court cannot substitute its own opinion for the congressional opinion of congressional procedure and the meaning of amendments. Hubbard v. Lowe, S.D.N.Y.1915, 226 F. 135.

Frivolous tax return section of Tax Equity and Fiscal Responsibility Act, 26 U.S.C.A. § 6702, is not unconstitutional on theory that Act originated in Senate in contravention of this clause. Stamp v. C.I.R., N.D.Ill.1984, 579 F.Supp. 168. Internal Revenue ⊂= 5201; Statutes ⊂= 6

Assuming arguendo that taxpayer could raise constitutional questions in action notwithstanding his failure to raise them in his claim for refund, Tax Equity and Fiscal Responsibility Act, Pub.L. 97–248, Sept. 3, 1982, which included 26 U.S.C.A. § 6702, providing $500 civil penalty for

frivolous returns, was not unconstitutional on ground that Act originated in Senate instead of House of Representatives, in that Act in fact originated in the House and was merely amended in the Senate. Tibbetts v. Secretary of the Treasury, W.D.N.C.1984, 577 F.Supp. 911. Statutes ⊂= 6

**4. Amendments by Senate**

Tax Equity and Fiscal Responsibility Act, which added frivolous return penalty to Internal Revenue Code was constitutionally enacted where bill originated in House of Representatives, even if Senate completely amended content of bill. Boday v. U.S., CA.9 (Ariz.) 1985, 759 F.2d 1472. Statutes ⊂= 6

Senate did not exceed its authority under the origination clause when it proposed the extensive amendments which eventually became the Tax Equity and Fiscal Responsibility Act in 1982. Armstrong v. U.S., CA.9 (Cal.) 1985, 759 F.2d 1378.

Taxation bill which originates in the House and is subsequently amended in the Senate is constitutionally enacted when the amendment is germane to the subject matter of the bill and not beyond the power of the Senate to propose. Harris v. U.S.I.R.S., CA.9 (Ariz.) 1985, 758 F.2d 456. Statutes ⊂= 6

Procedure by which 26 U.S.C.A. § 6702 providing for imposition of penalty for filing frivolous income tax return was enacted as part of Tax Equity and Fiscal Responsibility Act, Pub.L. 97–248, Sept. 3, 1982, 96 Stat. 324, which was passed after Senate struck entirety of House bill and substituted its own language by amendment, did not violate this clause providing that all bills for raising revenue shall originate in House of Representatives. Vaughn v. U.S., W.D.La. 1984, 589 F.Supp. 1528. Statutes ⊂= 6

26 U.S.C.A. § 6702 providing for assessment of penalty against taxpayers for filing frivolous income tax returns was not unconstitutional on the ground that it violated this clause because the Senate had amended the original House bill by striking out all of the text following the enacting clause and inserted a substitute text where the Senate amendments were germane to the subject matter of the House bill. Scull v. U.S., E.D.Va.1984, 585 F.Supp. 956. Statutes ⊂= 6

**THE CONGRESS**

**APPROVAL OR**

Procedure under Fiscal Responsibilit 97–248, 96 Stat. 61 with the bill origina by House of Repre and then the bill be tracting all languag except enacting cla new text and Hous sion was constituti D.C.Ariz.1984, 582 firmed in part, app 765 F.2d 148. Stat

As long as rever House, even substa ments do not viol clause. Ueckert v. 581 F.Supp. 1262, nied. Statutes ⊂= 6

Tax Equity and Act, 26 U.S.C.A. § 6 tutional as contraven tax measures origin Representatives whe signed into law as the House but the S the House bill and a ment. Bearden v. C 575 F.Supp. 1459. 3020; Statutes ⊂= 6

**5. Penalties**

Statute which autł impose $50 special a fendant who pleade( knowingly and unla arm identified as pi¡ late origination claus

# Section 7, C
o

Every Bill whi and the Senate, President of the not he shall retu shall have origin; Journal, and proc two thirds of tha together with the likewise be recc House, it shall b both Houses shal

was not unconstitution-

Act originated in Sen-
use of Representatives,
originated in the House
amended in the Senate.
etary of the Treasury,
7 F.Supp. 911.  Stat-

by Senate

1 Fiscal Responsibility
frivolous return penalty
ue Code was constitu-
where bill originated in
ntatives, even if Senate
led content of bill.  Bo-
(Ariz.) 1985, 759 F.2d
6

exceed its authority un-
n clause when it pro-
ve amendments which
e the Tax Equity and
lity Act in 1982.  Arm-
.9 (Cal.) 1985, 759 F.2d

hich originates in the
bsequently amended in
onstitutionally enacted
nent is germane to the
the bill and not beyond
enate to propose.  Har-
CA.9 (Ariz.) 1985, 758
s ⚬ 6

which 26 U.S.C.A.
for imposition of penal-
lous income tax return
art of Tax Equity and
lity Act, Pub.L. 97–248,
Stat. 324, which was
ate struck entirety of
ubstituted its own lan-
lent, did not violate this
h at all bills for raising
jinate in House of Rep-
ughn v. U.S., W.D.La.
1 1528.  Statutes ⚬ 6

5702 providing for as-
ty against taxpayers for
ncome tax returns was
al on the ground that it
se because the Senate
original House bill by
the text following the
nd inserted a substitute
nate amendments were
subject matter of the
l v. U.S., E.D.Va.1984,
Statutes ⚬ 6

Procedure under which Tax Equity and
Fiscal Responsibility Act of 1982, Pub.L.
97–248, 96 Stat. 611 (1982), was enacted
with the bill originating and being passed
by House of Representatives and Senate
and then the bill being amended by sub-
tracting all language approved by House,
except enacting clause, and inserting a
new text and House accepting that ver-
sion was constitutional.  Aune v. U.S.,
D.C.Ariz.1984, 582 F.Supp. 1132, af-
firmed in part, appeal dismissed in part
765 F.2d 148.  Statutes ⚬ 6

As long as revenue bill originates in
House, even substantial Senate amend-
ments do not violate dictates of this
clause.  Ueckert v. U.S., D.C.N.D.1984,
581 F.Supp. 1262, reconsideration de-
nied.  Statutes ⚬ 6

Tax Equity and Fiscal Responsibility
Act, 26 U.S.C.A. § 6702, is not unconsti-
tutional as contravening requirement that
tax measures originate in the House of
Representatives where the bill that was
signed into law as the Act originated in
the House but the Senate struck most of
the House bill and added its own amend-
ment.  Bearden v. C.I.R., D.C.Utah 1983,
575 F.Supp. 1459.  Internal Revenue ⚬
3020; Statutes ⚬ 6

**5.  Penalties**

Statute which authorized trial court to
impose $50 special assessment upon de-
fendant who pleaded guilty to charge of
knowingly and unlawfully making fire-
arm identified as pipe bomb did not vio-
late origination clause.  U.S. v. Michael,

CA.5 (Tex.) 1990, 894 F.2d 1457.  Costs
⚬ 285; Statutes ⚬ 6

For purposes of determining whether
assessment is a "penalty" or a revenue
raising measure required to have origi-
nated in the House of Representatives,
penalties are defined functionally, by
their effect, rather than by the word used
to describe them;  if special assessment is
intended to raise revenue for the Govern-
ment's use, rather than to punish offend-
ers, the name by which it is called. is
irrelevant.  U.S. v. Munoz–Flores, CA.9
(Cal.) 1988, 863 F.2d 654, certiorari
granted 110 S.Ct. 48, 493 U.S. 808, 107
L.Ed.2d 17, reversed on other grounds
110 S.Ct. 1964, 495 U.S. 385, 109
L.Ed.2d 384.  Statutes ⚬ 6

**6.  Justiciability**

Claim that statute requiring courts to
impose a monetary "special assessment"
on any person convicted of a federal
crime was passed in violation of the origi-
nation clause did not present a nonjustici-
able question on theory that Supreme
Court could not fashion "judicially man-
ageable standards" for determining either
whether a bill is "for raising Revenue" or
where a bill "originates."  U.S. v. Munoz–
Flores, U.S.Cal.1990, 110 S.Ct. 1964, 495
U.S. 385, 109 L.Ed.2d 384.  Federal
Courts ⚬ 13.15

Origination clause challenge to special
assessment pursuant to Victims of Crime
Act was not political question and was
justiciable.  U.S. v. Simpson, CA.3 (Pa.)
1989, 885 F.2d 36, certiorari denied 110
S.Ct. 2565, 495 U.S. 958, 109 L.Ed.2d
747.  Constitutional Law ⚬ 68(1)

# Section 7, Clause 2.  Approval or Veto of Bills; Repassage Over Veto

Every Bill which shall have passed the House of Representatives
and the Senate, shall, before it become a Law, be presented to the
President of the United States;  If he approve he shall sign it, but if
not he shall return it, with his Objections to that House in which it
shall have originated, who shall enter the Objections at large on their
Journal, and proceed to reconsider it.  If after such Reconsideration
two thirds of that House shall agree to pass the Bill, it shall be sent,
together with the Objections, to the other House, by which it shall
likewise be reconsidered, and if approved by two thirds of that
House, it shall become a Law.  But in all such Cases the Votes of
both Houses shall be determined by yeas and Nays, and the Names of

**EXHIBIT H**
Title 26 U.S.C. §§ 6212 and 6213(a) – Restrictions Applicable to Deficiencies,
26 CFR §§ 301.6212 and 6213-1(a)(2)
(9 pages)

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

TITLE 26 - INTERNAL REVENUE CODE
Subtitle F - Procedure and Administration
CHAPTER 63 - ASSESSMENT
Subchapter B - Deficiency Procedures in the Case of Income, Estate, Gift, and Certain Excise Taxes

§ 6213. Restrictions applicable to deficiencies; petition to Tax Court

(a)  Time for filing petition and restriction on assessment

Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6851, 6852, or 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421 (a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court, including the Tax Court, and a refund may be ordered by such court of any amount collected within the period during which the Secretary is prohibited from collecting by levy or through a proceeding in court under the provisions of this subsection. The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition. Any petition filed with the Tax Court on or before the last date specified for filing such petition by the Secretary in the notice of deficiency shall be treated as timely filed.

(b)  Exceptions to restrictions on assessment
(1)  Assessments arising out of mathematical or clerical errors

If the taxpayer is notified that, on account of a mathematical or clerical error appearing on the return, an amount of tax in excess of that shown on the return is due, and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical or clerical error, such notice shall not be considered as a notice of deficiency for the purposes of subsection (a) (prohibiting assessment and collection until notice of the deficiency has been mailed), or of section 6212 (c)(1) (restricting further deficiency letters), or of section 6512 (a) (prohibiting credits or refunds after petition to the Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section. Each notice under this paragraph shall set forth the error alleged and an explanation thereof.

(2)  Abatement of assessment of mathematical or clerical errors
(A)  Request for abatement

Notwithstanding section 6404 (b), a taxpayer may file with the Secretary within 60 days after notice is sent under paragraph (1) a request for an abatement of any assessment specified in such notice, and upon receipt of such request, the Secretary shall abate the assessment. Any reassessment of the tax with respect to which an abatement is made under this subparagraph shall be subject to the deficiency procedures prescribed by this subchapter.

(B)  Stay of collection

*26 USC 6213*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

In the case of any assessment referred to in paragraph (1), notwithstanding paragraph (1), no levy or proceeding in court for the collection of such assessment shall be made, begun, or prosecuted during the period in which such assessment may be abated under this paragraph.

### (3) Assessments arising out of tentative carryback or refund adjustments

If the Secretary determines that the amount applied, credited, or refunded under section 6411 is in excess of the overassessment attributable to the carryback or the amount described in section 1341 (b)(1) with respect to which such amount was applied, credited, or refunded, he may assess without regard to the provisions of paragraph (2) the amount of the excess as a deficiency as if it were due to a mathematical or clerical error appearing on the return.

### (4) Assessment of amount paid

Any amount paid as a tax or in respect of a tax may be assessed upon the receipt of such payment notwithstanding the provisions of subsection (a). In any case where such amount is paid after the mailing of a notice of deficiency under section 6212, such payment shall not deprive the Tax Court of jurisdiction over such deficiency determined under section 6211 without regard to such assessment.

## (c) Failure to file petition

If the taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a), the deficiency, notice of which has been mailed to the taxpayer, shall be assessed, and shall be paid upon notice and demand from the Secretary.

## (d) Waiver of restrictions

The taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency.

## (e) Suspension of filing period for certain excise taxes

The running of the time prescribed by subsection (a) for filing a petition in the Tax Court with respect to the taxes imposed by section 4941 (relating to taxes on self-dealing), 4942 (relating to taxes on failure to distribute income), 4943 (relating to taxes on excess business holdings), 4944 (relating to investments which jeopardize charitable purpose), 4945 (relating to taxes on taxable expenditures), 4951 (relating to taxes on self-dealing), or 4952 (relating to taxes on taxable expenditures), 4955 (relating to taxes on political expenditures), 4958 (relating to private excess benefit), 4971 (relating to excise taxes on failure to meet minimum funding standard), 4975 (relating to excise taxes on prohibited transactions) shall be suspended for any period during which the Secretary has extended the time allowed for making correction under section 4963 (e).

## (f) Coordination with title 11

### (1) Suspension of running of period for filing petition in title 11 cases

In any case under title 11 of the United States Code, the running of the time prescribed by subsection (a) for filing a petition in the Tax Court with respect to any deficiency shall be suspended for the period during which the debtor is prohibited by reason of such case from filing a petition in the Tax Court with respect to such deficiency, and for 60 days thereafter.

### (2) Certain action not taken into account

For purposes of the second and third sentences of subsection (a), the filing of a proof of claim or request for payment (or the taking of any other action) in a case under title 11 of the United States Code shall not be treated as action prohibited by such second sentence.

## (g) Definitions

For purposes of this section—

### (1) Return

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

TITLE 26 - INTERNAL REVENUE CODE
　　Subtitle F - Procedure and Administration
　　　　CHAPTER 63 - ASSESSMENT
　　　　　　Subchapter B - Deficiency Procedures in the Case of Income, Estate, Gift, and Certain Excise Taxes

## § 6212. Notice of deficiency

### (a) In general

If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44 he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office.

### (b) Address for notice of deficiency

#### (1) Income and gift taxes and certain excise taxes

In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, or chapter 44 if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, chapter 41, chapter 42, chapter 43, chapter 44, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

#### (2) Joint income tax return

In the case of a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice, except that if the Secretary has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, a duplicate original of the joint notice shall be sent by certified mail or registered mail to each spouse at his last known address.

#### (3) Estate tax

In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by chapter 11, if addressed in the name of the decedent or other person subject to liability and mailed to his last known address, shall be sufficient for purposes of chapter 11 and of this chapter.

### (c) Further deficiency letters restricted

#### (1) General rule

If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213 (a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year, of gift tax for the same calendar year, of estate tax in respect of the taxable estate of the same decedent, of chapter 41 tax for the same taxable year, of chapter 43 tax for the same taxable year, of chapter 44 tax for the same taxable year, of section 4940 tax for the same taxable year, or of chapter 42 tax, (other than under section 4940) with respect to any act (or failure to act) to which such petition relates, except in the case of fraud, and except as provided in section 6214 (a) (relating to assertion of greater deficiencies before the Tax Court), in section 6213 (b)(1) (relating to mathematical or clerical errors), in section 6851 or 6852 (relating to termination assessments), or in section 6861 (c) (relating to the making of jeopardy assessments).

#### (2) Cross references

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

For assessment as a deficiency notwithstanding the prohibition of further deficiency letters, in the case of—

(A) Deficiency attributable to change of treatment with respect to itemized deductions, see section 63 (e)(3).

(B) Deficiency attributable to gain on involuntary conversion, see section 1033 (a)(2)(C) and (D).

(C) Deficiency attributable to activities not engaged in for profit, see section 183 (e)(4).

For provisions allowing determination of tax in title 11 cases, see section 505 (a) of title 11 of the United States Code.

**(d) Authority to rescind notice of deficiency with taxpayer's consent**

The Secretary may, with the consent of the taxpayer, rescind any notice of deficiency mailed to the taxpayer. Any notice so rescinded shall not be treated as a notice of deficiency for purposes of subsection (c)(1) (relating to further deficiency letters restricted), section 6213 (a) (relating to restrictions applicable to deficiencies; petition to Tax Court), and section 6512 (a) (relating to limitations in case of petition to Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice. Nothing in this subsection shall affect any suspension of the running of any period of limitations during any period during which the rescinded notice was outstanding.

(Aug. 16, 1954, ch. 736, 68A Stat. 770; Pub. L. 85–866, title I, §§ 76, 89 (b), Sept. 2, 1958, 72 Stat. 1661, 1665; Pub. L. 88–272, title I, § 112(d)(1), Feb. 26, 1964, 78 Stat. 24; Pub. L. 91–172, title I, § 101(f)(2), (j)(40), (41), Dec. 30, 1969, 83 Stat. 524, 530; Pub. L. 91–614, title I, § 102(d)(5), Dec. 31, 1970, 84 Stat. 1842; Pub. L. 93–406, title II, § 1016(a)(10), Sept. 2, 1974, 88 Stat. 930; Pub. L. 94–455, title II, § 214(b), title XII, §§ 1204(c)(5), 1206 (c)(3), title XIII, § 1307(d)(2)(F)(ii), (G), title XVI, § 1605(b)(5), title XIX, §§ 1901(b)(31)(C), (37)(C), 1906 (b)(13)(A), Oct. 4, 1976, 90 Stat. 1549, 1698, 1704, 1728, 1754, 1800, 1803, 1834; Pub. L. 95–30, title I, § 101(d)(15), May 23, 1977, 91 Stat. 134; Pub. L. 95–600, title IV, § 405(c)(5), title VII, § 701(t)(3)(C), Nov. 6, 1978, 92 Stat. 2871, 2912; Pub. L. 96–223, title I, § 101(f)(1)(C), (4), (5), Apr. 2, 1980, 94 Stat. 252, 253; Pub. L. 96–589, § 6(d)(2), Dec. 24, 1980, 94 Stat. 3408; Pub. L. 97–34, title IV, § 442(d)(4), Aug. 13, 1981, 95 Stat. 323; Pub. L. 99–514, title I, § 104(d)(17), title XV, § 1562(a), Oct. 22, 1986, 100 Stat. 2106, 2761; Pub. L. 100–203, title X, § 10713(b)(2)(C), Dec. 22, 1987, 101 Stat. 1330–470; Pub. L. 100–418, title I, § 1941(b)(2)(B)(iii), (E), (F), Aug. 23, 1988, 102 Stat. 1323; Pub. L. 100–647, title I, § 1015(m), Nov. 10, 1988, 102 Stat. 3572; Pub. L. 105–34, title III, § 312(d)(12), Aug. 5, 1997, 111 Stat. 840; Pub. L. 105–206, title I, § 1102(b), July 22, 1998, 112 Stat. 703.)

## Amendments

1998—Subsec. (a). Pub. L. 105–206 inserted at end "Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office."

1997—Subsec. (c)(2)(C) to (E). Pub. L. 105–34, which directed the amendment of par. (2) by striking out subpar. (C) and redesignating succeeding subpars. accordingly, was executed by redesignating subpar. (E) as (C) and striking out former subpar. (C). Prior to amendment, subpar. (C) read as follows: "Deficiency attributable to gain on sale or exchange of principal residence, see section 1034 (j)." Former subpar. (D) was repealed previously.

1988—Subsec. (a). Pub. L. 100–418, § 1941(b)(2)(B)(iii), substituted "or 44" for "44, or 45".

Subsec. (b)(1). Pub. L. 100–418, § 1941(b)(2)(E), substituted "or chapter 44" for "chapter 44, or chapter 45" and "chapter 44, and this chapter" for "chapter 44, chapter 45, and this chapter".

Subsec. (c)(1). Pub. L. 100–418, § 1941(b)(2)(F), substituted "or of chapter 42 tax" for "of chapter 42 tax" and struck out ", or of chapter 45 tax for the same taxable period" after "such petition relates".

Subsec. (d). Pub. L. 100–647 inserted sentence at end that nothing in this subsection shall affect suspension of running of period of limitations during period during which rescinded notice was outstanding.

1987—Subsec. (c)(1). Pub. L. 100–203 inserted reference to section 6852.

**Internal Revenue Service, Treasury**

$600 and makes a refund of $300, no part of such refund constitutes a "rebate" since the refund is not made on the ground that the tax imposed by subtitle A is less than the tax shown on the return. If, however, the district director determines that the tax imposed by subtitle A is $500 and refunds $400, the amount of $100 of such refund would constitute a rebate since it is made on the ground that the tax imposed by subtitle A ($500) is less than the tax shown on the return ($600). The amount of such rebate ($100) would be taken into account in arriving at the amount of any deficiency subsequently determined.

[32 FR 15241, Nov. 3, 1967, as amended by T.D. 7102, 36 FR 5498, Mar. 24, 1971; T.D. 7575, 43 FR 58817, Dec. 18, 1978; T.D. 7838, 47 FR 44249, Oct. 7, 1982; T.D. 8628, 60 FR 62212, Dec. 5, 1995]

§301.6212-1 Notice of deficiency.

(a) *General rule.* If a district director or director of a service center (or regional director of appeals), determines that there is a deficiency in respect of income, estate, or gift tax imposed by subtitle A or B, or excise tax imposed by chapter 41, 42, 43, or 44, of the Code, such official is authorized to notify the taxpayer of the deficiency by either registered or certified mail.

(b) *Address for notice of deficiency*—(1) *Income, gift, and chapter 41, 42, 43, and 44 taxes.* Unless the district director for the district in which the return in question was filed has been notified under the provisions of section 6903 as to the existence of a fiduciary relationship, notice of a deficiency in respect of income tax, gift tax, or tax imposed by chapter 41, 42, 43, or 44 shall be sufficient if mailed to the taxpayer at his last known address, even though such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

(2) *Joint income tax returns.* If a joint income tax return has been filed by husband and wife, the district director (or assistant regional commissioner, appellate) may, unless the district director for the district in which such joint return was filed has been notified by either spouse that a separate residence has been established, send either a joint or separate notice of deficiency to the taxpayers at their last known

address. If, however, the proper district director has been so notified, a separate notice of deficiency that is a duplicate original of the joint notice, must be sent by registered mail prior to September 3, 1958, and by either registered or certified mail on and after September 3, 1958, to each spouse at his or her last known address. The notice of separate residences should be addressed to the district director for the district in which the joint return was filed.

(3) *Estate tax.* In the absence of notice, under the provisions of section 6903 as to the existence of a fiduciary relationship, to the district director for the district in which the estate tax return was filed, notice of a deficiency in respect of the estate tax imposed by chapter 11, subtitle B, of the Code shall be sufficient if addressed in the name of the decedent or other person subject to liability and mailed to his last known address.

(c) *Further deficiency letters restricted.* If the district director or director of a service center (or regional director of appeals) mails to the taxpayer notice of a deficiency, and the taxpayer files a petition with the Tax Court within the prescribed period, no additional deficiency may be determined with respect to income tax for the same taxable year, gift tax for the same "calendar period" (as defined in §25.2502-1(c)(1)), estate tax with respect to the taxable estate of the same decedent, chapter 41, 43, or 44 tax of the taxpayer for the same taxable year, section 4940 tax for the same taxable year, or chapter 42 tax of the taxpayer (other than under section 4940) with respect to the same act (or failure to act) to which such petition relates. This restriction shall not apply in the case of fraud, assertion of deficiencies with respect to any qualified tax (as defined in paragraph (b) of §301.6361-4) in respect of which no deficiency was asserted for the taxable year in the notice, assertion of deficiencies with respect to the Federal tax when deficiencies with respect to only a qualified tax (and not the Federal tax) were asserted for the taxable year in the notice, assertion of greater deficiencies before the Tax Court as provided in section 6214(a), mathematical errors as provided in section 6213(b)(1),

§ 301.6212-2                                            26 CFR Ch. I (4-1-06 Edition)

termination assessments in section 6851 or 6852, or jeopardy assessments as provided in section 6861(c). Solely for purposes of applying the restriction of section 6212(c), a notice of deficiency with respect to second tier tax under chapter 43 shall be deemed to be a notice of deficiency for the taxable year in which that taxable event occurs. See § 53.4963–1(e)(7)(iii) or (iv) for the date on which that taxable event occurs.

[32 FR 15241, Nov. 3, 1967, as amended by T.D. 7238, 37 FR 28739, Dec. 29, 1972; T.D. 7579, 43 FR 59360, Dec. 20, 1978; T.D. 7838, 47 FR 44249, Oct. 7, 1982; T.D. 7910, 48 FR 40376, Sept. 7, 1983; T.D. 8084, 51 FR 16305, May 2, 1986; T.D. 8628, 60 FR 62212, Dec. 5, 1995]

§ 301.6212–2  Definition of last known address.

(a) *General rule.* Except as provided in paragraph (b)(2) of this section, a taxpayer's last known address is the address that appears on the taxpayer's most recently filed and properly processed Federal tax return, unless the Internal Revenue Service (IRS) is given clear and concise notification of a different address. Further information on what constitutes clear and concise notification of a different address and a properly processed Federal tax return can be found in Rev. Proc. 90–18 (1990–1 C.B. 491) or in procedures subsequently prescribed by the Commissioner.

(b) *Address obtained from third party*— (1) *In general.* Except as provided in paragraph (b)(2) of this section, change of address information that a taxpayer provides to a third party, such as a payor or another government agency, is not clear and concise notification of a different address for purposes of determining a last known address under this section.

(2) *Exception for address obtained from the United States Postal Service*—(1) *Updating taxpayer addresses.* The IRS will update taxpayer addresses maintained in IRS records by referring to data accumulated and maintained in the United States Postal Service (USPS) National Change of Address database that retains change of address information for thirty-six months (NCOA database). Except as provided in paragraph (b)(2)(ii) of this section, if the taxpayer's name and last known address

in IRS records match the taxpayer's name and old mailing address contained in the NCOA database, the new address in the NCOA database is the taxpayer's last known address, unless the IRS is given clear and concise notification of a different address.

(ii) *Duration of address obtained from NCOA database.* The address obtained from the NCOA database under paragraph (b)(2)(i) of this section is the taxpayer's last known address until one of the following events occurs—

(A) The taxpayer files and the IRS properly processes a Federal tax return with an address different from the address obtained from the NCOA database; or

(B) The taxpayer provides the Internal Revenue Service with clear and concise notification of a change of address, as defined in procedures prescribed by the Commissioner, that is different from the address obtained from the NCOA database.

(3) *Examples.* The following examples illustrate the rules of paragraph (b)(2) of this section:

*Example 1.* (i) A is an unmarried taxpayer. The address on A's 1999 Form 1040, U.S. Individual Income Tax Return, filed on April 14, 2000, and 2000 Form 1040 filed on April 13, 2001, is 1234 Anyplace Street, Anytown, USA 43210. On May 15, 2001, A informs the USPS of a new permanent address (9876 Newplace Street, Newtown, USA 12345) using the USPS Form 3575, "Official Mail Forwarding Change of Address Form." The change of address is included in the weekly update of the USPS NCOA database. On May 29, 2001, A's address maintained in IRS records is changed to 9876 Newplace Street, Newtown, USA 12345.

(ii) In June 2001 the IRS determines a deficiency for A's 1999 tax year and prepares to issue a notice of deficiency. The IRS obtains A's address for the notice of deficiency from IRS records. On June 15, 2001, the Internal Revenue Service mails the notice of deficiency to A at 9876 Newplace Street, Newtown, USA 12345. For purposes of section 6212(b), the notice of deficiency mailed on June 15, 2001, is mailed to A's last known address.

*Example 2.* (i) The facts are the same as in *Example 1,* except that instead of determining a deficiency for A's 1999 tax year in June 2001, the IRS determines a deficiency for A's 1999 tax year in May 2001.

(ii) On May 21, 2001, the IRS prepares a notice of deficiency for A and obtains A's address from IRS records. Because A did not inform the USPS of the change of address in sufficient time for the IRS to process and

Internal Revenue Service, Treasury                    §301.6213-1

post the new address in Internal Revenue Service's records by May 21, 2001, the notice of deficiency is mailed to 1234 Anyplace Street, Anytown, USA 43210. For purposes of section 6212(b), the notice of deficiency mailed on May 21, 2001, is mailed to A's last known address.

*Example 3.* (i) C and D are married taxpayers. The address on C and D's 2000 Form 1040, U.S. Individual Income Tax Return, filed on April 13, 2001, and 2001 Form 1040 filed on April 15, 2002, is 2468 Spring Street, Little City, USA 97531. On August 15, 2002, D informs the USPS of a new permanent address (8642 Peachtree Street, Big City, USA 13579) using the USPS Form 3575, "Official Mail Forwarding Change of Address Form." The change of address is included in the weekly update of the USPS NCOA database. On August 29, 2002, D's address maintained in IRS records is changed to 8642 Peachtree Street, Big City, USA 13579.

(ii) In October 2002 the IRS determines a deficiency for C and D's 2000 tax year and prepares to issue a notice of deficiency. The Internal Revenue Service obtains C's address and D's address for the notice of deficiency from IRS records. On October 15, 2002, the IRS mails a copy of the notice of deficiency to C at 2468 Spring Street, Little City, USA 97531, and to D at 8642 Peachtree Street, Big City, USA 13579. For purposes of section 6212(b), the notices of deficiency mailed on October 15, 2002, are mailed to C and D's respective last known addresses.

(c) *Last known address for all notices, statements, and documents.* The rules in paragraphs (a) and (b) of this section apply for purposes of determining whether all notices, statements, or other documents are mailed to a taxpayer's last known address whenever the term *last known address* is used in the Internal Revenue Code or the regulations thereunder.

(d) *Effective Date*—(1) *In general.* Except as provided in paragraph (d)(2) of this section, this section is effective on January 29, 2001.

(2) *Individual moves in the case of joint filers.* In the case of taxpayers who file joint returns under section 6013, if the NCOA database contains change of address information for only one spouse, paragraphs (b)(2) and (3) of this section will not apply to notices, statements, and other documents mailed before the processing of the taxpayers' 2000 joint return.

[T.D. 8939, 66 FR 2820, Jan. 12, 2001]

§301.6213-1  Restrictions applicable to deficiencies; petition to Tax Court.

(a) *Time for filing petition and restrictions on assessment*—(1) *Time for filing petition.* Within 90 days after notice of the deficiency is mailed (or within 150 days after mailing in the case of such notice addressed to a person outside the States of the Union and the District of Columbia), as provided in section 6212, a petition may be filed with the Tax Court of the United States for a redetermination of the deficiency. In determining such 90-day or 150-day period, Saturday, Sunday, or a legal holiday in the District of Columbia is not counted as the 90th or 150th day. In determining the time for filing a petition with the Tax Court in the case of a notice of deficiency mailed to a resident of Alaska prior to 12:01 p.m., e.s.t., January 3, 1959, and in the case of a notice of deficiency mailed to a resident of Hawaii prior to 4 p.m., e.d.s.t., August 21, 1959, the term "States of the Union" does not include Alaska or Hawaii, respectively, and the 150-day period applies. In determining the time within which a petition to the Tax Court may be filed in the case of a notice of deficiency mailed to a resident of Alaska after 12:01 p.m., e.s.t., January 3, 1959, and in the case of a notice of deficiency mailed to a resident of Hawaii after 4 p.m., e.d.s.t., August 21, 1959, the term "States of the Union" includes Alaska and Hawaii, respectively, and the 90-day period applies.

(2) *Restrictions on assessment.* Except as otherwise provided by this section, by sections 6851, 6852, and 6861(a) (relating to termination and jeopardy assessments), by section 6871(a) (relating to immediate assessment of claims for income, estate, and gift taxes in bankruptcy and receivership cases), or by section 7485 (in case taxpayer petitions for a review of a Tax Court decision without filing bond), no assessment of a deficiency in respect of a tax imposed by subtitle A or B or chapter 41, 42, 43, or 44 of the Code and no levy or proceeding in court for its collection shall be made until notice of deficiency has been mailed to the taxpayer, nor until the expiration of the 90-day or 150-day period within which a petition may be filed with the Tax Court, nor, if a petition has been filed with the Tax Court,

until the decision of the Tax Court has become final. As to the date on which a decision of the Tax court becomes final, see section 7481. Notwithstanding the provisions of section 7421(a), the making of an assessment or the beginning of a proceeding or levy which is forbidden by this paragraph may be enjoined by a proceeding in the proper court. In any case where the running of the time prescribed for filing a petition in the Tax Court with respect to a tax imposed by chapter 42 or 43 is suspended under section 6213(e), no assessment of a deficiency in respect of such tax shall be made until expiration of the entire period for filing the petition.

(b) *Exceptions to restrictions on assessment of deficiencies*—(1) *Mathematical errors.* If a taxpayer is notified of an additional amount of tax due on account of a mathematical error appearing upon the return, such notice is not deemed a notice of deficiency, and the taxpayer has no right to file a petition with the Tax Court upon the basis of such notice, nor is the assessment of such additional amount prohibited by section 6213(a).

(2) *Tentative carryback adjustments.* (i) If the district director or the director of the regional service center determines that any amount applied, credited, or refunded under section 6411(b) with respect to an application for a tentative carryback adjustment is in excess of the overassessment properly attributable to the carryback upon which such application was based, the district director or the director of the regional service center may assess the amount of the excess as a deficiency as if such deficiency were due to a mathematical error appearing on the return. That is, the district director or the director of the regional service center may assess an amount equal to the excess, and such amount may be collected, without regard to the restrictions on assessment and collection imposed by section 6213(a). Thus, the district director or the director of the regional service center may assess such amount without regard to whether the taxpayer has been mailed a prior notice of deficiency. Either before or after assessing such an amount, the district director or the director of the regional service center will notify the taxpayer

that such assessment has been or will be made. Such notice will not constitute a notice of deficiency, and the taxpayer may not file a petition with the Tax Court of the United States based on such notice. However, the taxpayer, within the applicable period of limitation, may file a regular claim for credit or refund based on the carryback, if he has not already filed such a claim, and may maintain a suit based on such claim if it is disallowed or if it is not acted upon by the Internal Revenue Service within 6 months from the date the claim was filed.

(ii) The method provided in subdivision (i) of this subparagraph to recover any amount applied, credited, or refunded in respect of an application for a tentative carryback adjustment which should not have been so applied, credited, or refunded is not an exclusive method. Two other methods are available to recover such amount: (*a*) By way of a deficiency notice under section 6212; or (*b*) by a suit to recover an erroneous refund under section 7405. Any one or more of the three available methods may be used to recover any amount which was improperly applied, credited, or refunded in respect of an application for a tentative carryback adjustment.

(3) *Assessment of amount paid.* Any payment made after the mailing of a notice of deficiency which is made by the taxpayer as a payment with respect to the proposed deficiency may be assessed without regard to the restrictions on assessment and collection imposed by section 6213(a) even though the taxpayer has not filed a waiver of restrictions on assessment as provided in section 6213(d). A payment of all or part of the deficiency asserted in the notice together with the assessment of the amount so paid will not affect the jurisdiction of the Tax Court. If any payment is made before the mailing of a notice of deficiency, the district director or the director of the regional service center is not prohibited by section 6213(a) from assessing such amount, and such amount may be assessed if such action is deemed to be proper. If such amount is assessed, the

Internal Revenue Service, Treasury

assessment is taken into account in determining whether or not there is a deficiency for which a notice of deficiency must be issued. Thus, if such a payment satisfies the taxpayer's tax liability, no notice of deficiency will be mailed and the Tax Court will have no jurisdiction over the matter. In any case in which there is a controversy as to the correct amount of the tax liability, the assessment of any amount pursuant to the provisions of section 6213(b)(3) shall in no way be considered to be the acceptance of an offer by the taxpayer to settle such controversy.

(4) *Jeopardy*. If the district director believes that the assessment or collection of a deficiency will be jeopardized by delay, such deficiency shall be assessed immediately, as provided in section 6861(a).

(c) *Failure to file petition*. If no petition is filed with the Tax Court within the period prescribed in section 6213(a), the district director or the director of the regional service center shall assess the amount determined as the deficiency and of which the taxpayer was notified by registered or certified mail and the taxpayer shall pay the same upon notice and demand therefor. In such case the district director will not be precluded from determining a further deficiency and notifying the taxpayer thereof by registered or certified mail. If a petition is filed with the Tax Court the taxpayer should notify the district director who issued the notice of deficiency that the petition has been filed in order to prevent an assessment of the amount determined to be the deficiency.

(d) *Waiver of restrictions*. The taxpayer may at any time by a signed notice in writing filed with the district director waive the restrictions on the assessment and collection of the whole or any part of the deficiency. The notice must in all cases be filed with the district director or other authorized official under whose jurisdiction the audit or other consideration of the return in question is being conducted. The filing of such notice with the Tax Court does not constitute filing with the district director within the meaning of the Code. After such waiver has been acted upon by the district director and the assessment has been made in accord-

ance with its terms, the waiver cannot be withdrawn.

(e) *Suspension of filing period for certain chapter 42 and chapter 43 taxes*. The period prescribed by section 6213(a) for filing a petition in the Tax Court with respect to the taxes imposed by section 4941,4942, 4943, 4944, 4945, 4951, 4952, 4955, 4958, 4971, or 4975, shall be suspended for any other period which the Commissioner has allowed for making correction under § 53.4963-1(e)(3). Where the time for filing a petition with the Tax Court has been suspended under the authority of this paragraph (e), the extension shall not be reduced as a result of the correction being made prior to expiration of the period allowed for making correction.

[32 FR 15241, Nov. 3, 1967, as amended by T.D. 7838, 47 FR 44250, Oct. 7, 1982; T.D. 8084, 51 FR 16035, May 2, 1986; T.D. 8628, 60 FR 62212, Dec. 5, 1995; T.D. 8920, 66 FR 2171, Jan. 10, 2001]

### § 301.6215-1  Assessment of deficiency found by Tax Court.

Where a petition has been filed with the Tax Court, the entire amount redetermined as the deficiency by the decision of the Tax Court which has become final shall be assessed by the district director or the director of the regional service center and the unpaid portion of the amount so assessed shall be paid by the taxpayer upon notice and demand therefor.

### § 301.6221-1  Tax treatment determined at partnership level.

(a) *In general*. A partner's treatment of partnership items on the partner's return may not be changed except as provided in sections 6222 through 6231 and the regulations thereunder. Thus, for example, if a partner treats an item on the partner's return consistently with the treatment of the item on the partnership return, the IRS generally cannot adjust the treatment of that item on the partner's return except through a partnership-level proceeding. Similarly, the taxpayer may not put partnership items in issue in a proceeding relating to nonpartnership items. For example, the taxpayer may not offset a potential increase in taxable income based on changes to nonpartnership items by a potential decrease based on partnership items.

**EXHIBIT I**

United States Government Manual 2005/2006 – Commissioner of Internal Revenue,
Title 26 U.S.C. §§ 7801 and 7802 – Internal Revenue Service Oversight Board
(12 pages)

# The United States Government Manual 2005/2006

Office of the Federal Register
National Archives and Records Administration

| | |
|---|---|
| Assistant Commissioner (Information Technology) | CYNTHIA Z. SPRINGER |
| Assistant Commissioner (Public Debt Accounting) | DEBRA HINES |
| Assistant Commissioner (Securities Operations) | JOHN R. SWALES III |
| Assistant Commissioner (Investor Services) | FRED PYATT |
| Executive Director (Administration Resource Center) | GLENN E. BALL |
| Executive Director (Government Securities Regulation Staff) | LORI SANTAMORENA |
| Executive Director (Savings Bonds Marketing Office) | PAUL VOGELZANG |

## OFFICE OF THRIFT SUPERVISION

*1700 G Street NW., Washington, DC 20552*
*Phone, 202–906–6000. Internet, www.ots.treas.gov.*

| | |
|---|---|
| Director | JAMES E. GILLERAN |
| Deputy Director | RICHARD M. RICCOBONO |
| Chief Counsel | JOHN E. BOWMAN |
| Managing Director, Information Systems, Administration and Finance | TIMOTHY T. WARD |
| Managing Director, External Affairs | KEVIN PETRASIC |
| Managing Director, Examinations and Supervision | SCOTT M. ALBINSON |
| Associate Director for Federal Deposit Insurance Corporation | WALTER B. MASON |
| Director of Human Resources | SUE A. RENDLEMAN |

*The Department of the Treasury performs four basic functions: formulating and recommending economic, financial, tax, and fiscal policies; serving as financial agent for the U.S. Government; enforcing the law; and manufacturing coins and currency.*

The Treasury Department was created by act of September 2, 1789 (31 U.S.C. 301 and 301 note). Many subsequent acts have figured in the development of the Department, delegating new duties to its charge and establishing the numerous bureaus and divisions that now comprise the Treasury.

**Secretary** As a major policy adviser to the President, the Secretary has primary responsibility for formulating and recommending domestic and international financial, economic, and tax policy; participating in the formulation of broad fiscal policies that have general significance for the economy; and managing the public debt. The Secretary also oversees the activities of the Department in carrying out its major law enforcement responsibility; in serving as the financial agent for the U.S. Government; and in manufacturing coins, currency, and other products for customer agencies. The Secretary also serves as the Government's chief financial officer.

### Activities

**Economic Policy** The Office of the Assistant Secretary for Economic Policy assists policymakers in the determination of economic policies. The Office:

—reviews and analyzes domestic and international economic issues and developments in the financial markets;

—assists in the development of official economic projections; and

**DEPARTMENT OF THE TREASURY**

SECRETARY

DEPUTY SECRETARY

CHIEF OF STAFF

DEPUTY CHIEF OF STAFF

DEPUTY CHIEF OF STAFF

COUNSELOR



## DEPARTMENT OF THE TREASURY

TREASURY BUREAUS

¹ Assistant Secretary (Management) and Chief Financial Officer is Treasury's Chief Operating Officer.

mptroller of the Currency,

documents,
use invitations and
n cards. It also is
sing and assisting
the design and
Government
cause of their innate
easons, require
eit-deterrence

operates a second
ring plant in Fort
ue Mound Road,
–231–4000.

ving and Printing,
gton, DC 20228. Phone,

overnment Annual
incial Report of the

dministers the
ction system,
$2.2 trillion
network of more than
itutions. It also
on of Federal
lividual and
deposits, customs
nts, fines, and
ched the Electronic
System
ich allows
nesses to pay
the Internet.
rovides such
printable
documenting each
y to schedule

advance payments, and access to payment history.

The Treasury Offset Program is one of the methods used to collect delinquent debt. FMS uses the program to withhold Federal payments, such as Federal income tax refunds, Federal salary payments, and Social Security benefits, to recipients with delinquent debts, including past-due child support obligations and State and Federal income tax debt.

**Electronic Commerce**  Through its electronic money program, FMS tests new payments and collection technologies using the Internet and card technology, as well as related technologies such as digital signatures and biometrics. FMS has initiated electronic money pilot programs to help Federal agencies modernize their payments and collection activities. Examples include stored-value cards used on military bases and in Government hospitals, electronic checks, point-of-sale check truncations, and Internet credit card collection programs.

**Payments**  Each year, FMS disburses nearly 1 billion with an access dollar value of more than 1.7 trillion, to a wide variety of recipients, such as those who receive Social Security, IRS tax refunds, and veterans' benefits. For fiscal year 2004, nearly 75 percent of these transactions were issued by electronic funds transfer. The remainder of FMS payments are disbursed by check.

### Regional Financial Centers—Financial Management Service

| Center/Address | Director |
| --- | --- |
| Austin, TX (P.O. Box 149058, 78741) | Robert Mange |
| Kansas City, MO (P.O. Box 12599, 64116) | Gary Beets |
| Philadelphia, PA (P.O. Box 8676, 19101) | Michael Colarusso |
| San Francisco, CA (P.O. Box 193858, 94119) | Philip Belisle |

For further information, contact the Office of Legislative and Public Affairs, Financial Management Service, Department of the Treasury, Room 555, 401 Fourteenth Street SW., Washington, DC 20227. Phone, 202–874–6740. Internet, www.fms.treas.gov.

## Internal Revenue Service

The Office of the Commissioner of Internal Revenue was established by act of July 1, 1862 (26 U.S.C. 7802). The Internal Revenue Service (IRS) is responsible for administering and enforcing the internal revenue laws and related statutes, except those relating to alcohol, tobacco, firearms, and explosives. Its mission is to collect the proper amount of tax revenue, at the least cost to the public, by efficiently applying the tax law with integrity and fairness. To achieve that purpose, the IRS:

—strives to achieve the highest possible degree of voluntary compliance in accordance with the tax laws and regulations;

—advises the public of their rights and responsibilities;

—determines the extent of compliance and the causes of noncompliance;

—properly administers and enforces the tax laws; and

—continually searches for and implements new, more efficient ways of accomplishing its mission.

Basic activities include

—ensuring satisfactory resolution of taxpayer complaints, providing taxpayer service and education;

—determining, assessing, and collecting internal revenue taxes;

—determining pension plan qualifications and exempt organization status; and

—preparing and issuing rulings and regulations to supplement the provisions of the Internal Revenue Code.

The source of most revenues collected is the individual income tax and the social insurance and retirement taxes. Other major sources are corporate income, excise, estate, and gift taxes.

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

TITLE 26 - INTERNAL REVENUE CODE
Subtitle F - Procedure and Administration
CHAPTER 80 - GENERAL RULES
Subchapter A - Application of Internal Revenue Laws

## § 7801. Authority of Department of the Treasury

(a) **Powers and duties of Secretary**

(1) **In general**

Except as otherwise expressly provided by law, the administration and enforcement of this title shall be performed by or under the supervision of the Secretary of the Treasury.

(2) **Administration and enforcement of certain provisions by Attorney General**

(A) **In general**

The administration and enforcement of the following provisions of this title shall be performed by or under the supervision of the Attorney General; and the term "Secretary" or "Secretary of the Treasury" shall, when applied to those provisions, mean the Attorney General; and the term "internal revenue officer" shall, when applied to those provisions, mean any officer of the Bureau of Alcohol, Tobacco, Firearms, and Explosives so designated by the Attorney General:

(i) Chapter 53.

(ii) Chapters 61 through 80, to the extent such chapters relate to the enforcement and administration of the provisions referred to in clause (i).

(B) **Use of existing rulings and interpretations**

Nothing in this Act [1] alters or repeals the rulings and interpretations of the Bureau of Alcohol, Tobacco, and Firearms in effect on the effective date of the Homeland Security Act of 2002, which concern the provisions of this title referred to in subparagraph (A). The Attorney General shall consult with the Secretary to achieve uniformity and consistency in administering provisions under chapter 53 of title 26, United States Code.

[(b) **Repealed. Pub. L. 97–258, § 5(b), Sept. 13, 1982, 96 Stat. 1068, 1078**]

(c) **Functions of Department of Justice unaffected**

Nothing in this section or section 301 (f) of title 31 shall be considered to affect the duties, powers, or functions imposed upon, or vested in, the Department of Justice, or any officer thereof, by law existing on May 10, 1934.

### Footnotes

[1] So in original.

(Aug. 16, 1954, ch. 736, 68A Stat. 915; Pub. L. 86–368, § 1, Sept. 22, 1959, 73 Stat. 647; Pub. L. 88–426, title III, § 305(39), Aug. 14, 1964, 78 Stat. 427; Pub. L. 94–455, title XIX, § 1906(b)(13)(B), Oct. 4, 1976, 90 Stat. 1834; Pub. L. 97–258, §§ 2(f)(1), 5 (b), Sept. 13, 1982, 96 Stat. 1059, 1068, 1078; Pub. L. 107–296, title XI, § 1112(k), Nov. 25, 2002, 116 Stat. 2277.)

### References in Text

The effective date of the Homeland Security Act of 2002, referred to in subsec. (a)(2)(B), is 60 days after Nov. 25, 2002, see section 4 of Pub. L. 107–296, set out as an Effective Date note under section 101 of Title 6, Domestic Security.

### Amendments

2002—Subsec. (a). Pub. L. 107–296 designated existing provisions as par. (1), inserted par. heading, and added par. (2).

1982—Subsec. (b). Pub. L. 97–258, § 5(b), struck out subsec. (b) which related to Office of General Counsel of Department of the Treasury. See section 301 of Title 31, Money and Finance.

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

**TITLE 26 - INTERNAL REVENUE CODE**
  **Subtitle F - Procedure and Administration**
    **CHAPTER 80 - GENERAL RULES**
      **Subchapter A - Application of Internal Revenue Laws**

**§ 7802. Internal Revenue Service Oversight Board**

  **(a) Establishment**

There is established within the Department of the Treasury the Internal Revenue Service Oversight Board (hereafter in this subchapter referred to as the "Oversight Board").

  **(b) Membership**

    **(1) Composition**

The Oversight Board shall be composed of nine members, as follows:

      **(A)** six members shall be individuals who are not otherwise Federal officers or employees and who are appointed by the President, by and with the advice and consent of the Senate.

      **(B)** one member shall be the Secretary of the Treasury or, if the Secretary so designates, the Deputy Secretary of the Treasury.

      **(C)** one member shall be the Commissioner of Internal Revenue.

      **(D)** one member shall be an individual who is a full-time Federal employee or a representative of employees and who is appointed by the President, by and with the advice and consent of the Senate.

    **(2) Qualifications and terms**

      **(A) Qualifications**

Members of the Oversight Board described in paragraph (1)(A) shall be appointed without regard to political affiliation and solely on the basis of their professional experience and expertise in one or more of the following areas:

        **(i)** Management of large service organizations.

        **(ii)** Customer service.

        **(iii)** Federal tax laws, including tax administration and compliance.

        **(iv)** Information technology.

        **(v)** Organization development.

        **(vi)** The needs and concerns of taxpayers.

        **(vii)** The needs and concerns of small businesses.

In the aggregate, the members of the Oversight Board described in paragraph (1)(A) should collectively bring to bear expertise in all of the areas described in the preceding sentence.

      **(B) Terms**

Each member who is described in subparagraph (A) or (D) of paragraph (1) shall be appointed for a term of 5 years, except that of the members first appointed under paragraph (1)(A)—

        **(i)** two members shall be appointed for a term of 3 years,

        **(ii)** two members shall be appointed for a term of 4 years, and

        **(iii)** two members shall be appointed for a term of 5 years.

      **(C) Reappointment**

An individual who is described in subparagraph (A) or (D) of paragraph (1) may be appointed to no more than two 5-year terms on the Oversight Board.

      **(D) Vacancy**

*26 USC 7802*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

Any vacancy on the Oversight Board shall be filled in the same manner as the original appointment. Any member appointed to fill a vacancy occurring before the expiration of the term for which the member's predecessor was appointed shall be appointed for the remainder of that term.

**(3)  Ethical considerations**

**(A)  Financial disclosure**

During the entire period that an individual appointed under subparagraph (A) or (D) of paragraph (1) is a member of the Oversight Board, such individual shall be treated as serving as an officer or employee referred to in section 101(f) of the Ethics in Government Act of 1978 for purposes of title I of such Act, except that section 101(d) of such Act shall apply without regard to the number of days of service in the position.

**(B)  Restrictions on post-employment**

For purposes of section 207 (c) of title 18, United States Code, an individual appointed under subparagraph (A) or (D) of paragraph (1) shall be treated as an employee referred to in section 207(c)(2)(A)(i) of such title during the entire period the individual is a member of the Board, except that subsections (c)(2)(B) and (f) of section 207 of such title shall not apply.

**(C)  Members who are special Government employees**

If an individual appointed under subparagraph (A) or (D) of paragraph (1) is a special Government employee, the following additional rules apply for purposes of chapter 11 of title 18, United States Code:

**(i)**  Restriction on representation

In addition to any restriction under section 205 (c) of title 18, United States Code, except as provided in subsections (d) through (i) of section 205 of such title, such individual (except in the proper discharge of official duties) shall not, with or without compensation, represent anyone to or before any officer or employee of—

**(I)**  the Oversight Board or the Internal Revenue Service on any matter;

**(II)**  the Department of the Treasury on any matter involving the internal revenue laws or involving the management or operations of the Internal Revenue Service; or

**(III)**  the Department of Justice with respect to litigation involving a matter described in subclause (I) or (II).

**(ii)**  Compensation for services provided by another

For purposes of section 203 of such title—

**(I)**  such individual shall not be subject to the restrictions of subsection (a)(1) thereof for sharing in compensation earned by another for representations on matters covered by such section, and

**(II)**  a person shall not be subject to the restrictions of subsection (a)(2) thereof for sharing such compensation with such individual.

**(D)  Waiver**

The President may, only at the time the President nominates the member of the Oversight Board described in paragraph (1)(D), waive for the term of the member any appropriate provision of chapter 11 of title 18, United States Code, to the extent such waiver is necessary to allow such member to participate in the decisions of the Board while continuing to serve as a full-time Federal employee or a representative of employees. Any such waiver shall not be effective unless a written intent of waiver to exempt such member (and actual waiver language) is submitted to the Senate with the nomination of such member.

**(4)  Quorum**

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

Five members of the Oversight Board shall constitute a quorum. A majority of members present and voting shall be required for the Oversight Board to take action.

**(5) Removal**

**(A) In general**

Any member of the Oversight Board appointed under subparagraph (A) or (D) of paragraph (1) may be removed at the will of the President.

**(B) Secretary and Commissioner**

An individual described in subparagraph (B) or (C) of paragraph (1) shall be removed upon termination of service in the office described in such subparagraph.

**(6) Claims**

**(A) In general**

Members of the Oversight Board who are described in subparagraph (A) or (D) of paragraph (1) shall have no personal liability under Federal law with respect to any claim arising out of or resulting from an act or omission by such member within the scope of service as a member.

**(B) Effect on other law**

This paragraph shall not be construed—

**(i)** to affect any other immunities and protections that may be available to such member under applicable law with respect to such transactions;

**(ii)** to affect any other right or remedy against the United States under applicable law; or

**(iii)** to limit or alter in any way the immunities that are available under applicable law for Federal officers and employees.

**(c) General responsibilities**

**(1) Oversight**

**(A) In general**

The Oversight Board shall oversee the Internal Revenue Service in its administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes and tax conventions to which the United States is a party.

**(B) Mission of IRS**

As part of its oversight functions described in subparagraph (A), the Oversight Board shall ensure that the organization and operation of the Internal Revenue Service allows it to carry out its mission.

**(C) Confidentiality**

The Oversight Board shall ensure that appropriate confidentiality is maintained in the exercise of its duties.

**(2) Exceptions**

The Oversight Board shall have no responsibilities or authority with respect to—

**(A)** the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions,

**(B)** specific law enforcement activities of the Internal Revenue Service, including specific compliance activities such as examinations, collection activities, and criminal investigations,

**(C)** specific procurement activities of the Internal Revenue Service, or

**(D)** except as provided in subsection (d)(3), specific personnel actions.

**(d) Specific responsibilities**

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

The Oversight Board shall have the following specific responsibilities:

**(1) Strategic plans**

To review and approve strategic plans of the Internal Revenue Service, including the establishment of—

    **(A)** mission and objectives, and standards of performance relative to either, and

    **(B)** annual and long-range strategic plans.

**(2) Operational plans**

To review the operational functions of the Internal Revenue Service, including—

    **(A)** plans for modernization of the tax system,

    **(B)** plans for outsourcing or managed competition, and

    **(C)** plans for training and education.

**(3) Management**

To—

    **(A)** recommend to the President candidates for appointment as the Commissioner of Internal Revenue and recommend to the President the removal of the Commissioner;

    **(B)** review the Commissioner's selection, evaluation, and compensation of Internal Revenue Service senior executives who have program management responsibility over significant functions of the Internal Revenue Service; and

    **(C)** review and approve the Commissioner's plans for any major reorganization of the Internal Revenue Service.

**(4) Budget**

To—

    **(A)** review and approve the budget request of the Internal Revenue Service prepared by the Commissioner;

    **(B)** submit such budget request to the Secretary of the Treasury; and

    **(C)** ensure that the budget request supports the annual and long-range strategic plans.

**(5) Taxpayer protection**

To ensure the proper treatment of taxpayers by the employees of the Internal Revenue Service.

The Secretary shall submit the budget request referred to in paragraph (4)(B) for any fiscal year to the President who shall submit such request, without revision, to Congress together with the President's annual budget request for the Internal Revenue Service for such fiscal year.

**(e) Board personnel matters**

    **(1) Compensation of members**

        **(A) In general**

Each member of the Oversight Board who—

        **(i)** is described in subsection (b)(1)(A); or

        **(ii)** is described in subsection (b)(1)(D) and is not otherwise a Federal officer or employee,

shall be compensated at a rate of $30,000 per year. All other members shall serve without compensation for such service.

        **(B) Chairperson**

In lieu of the amount specified in subparagraph (A), the Chairperson of the Oversight Board shall be compensated at a rate of $50,000 per year.

    **(2) Travel expenses**

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

**(A) In general**

The members of the Oversight Board shall be allowed travel expenses, including per diem in lieu of subsistence, at rates authorized for employees of agencies under subchapter I of chapter 57 of title 5, United States Code, to attend meetings of the Oversight Board and, with the advance approval of the Chairperson of the Oversight Board, while otherwise away from their homes or regular places of business for purposes of duties as a member of the Oversight Board.

**(B) Report**

The Oversight Board shall include in its annual report under subsection (f)(3)(A) information with respect to the travel expenses allowed for members of the Oversight Board under this paragraph.

**(3) Staff**

**(A) In general**

The Chairperson of the Oversight Board may appoint and terminate any personnel that may be necessary to enable the Board to perform its duties.

**(B) Detail of Government employees**

Upon request of the Chairperson of the Oversight Board, a Federal agency shall detail a Federal Government employee to the Oversight Board without reimbursement. Such detail shall be without interruption or loss of civil service status or privilege.

**(4) Procurement of temporary and intermittent services**

The Chairperson of the Oversight Board may procure temporary and intermittent services under section 3109 (b) of title 5, United States Code.

**(f) Administrative matters**

**(1) Chair**

**(A) Term**

The members of the Oversight Board shall elect for a 2-year term a chairperson from among the members appointed under subsection (b)(1)(A).

**(B) Powers**

Except as otherwise provided by a majority vote of the Oversight Board, the powers of the Chairperson shall include—

    **(i)** establishing committees;

    **(ii)** setting meeting places and times;

    **(iii)** establishing meeting agendas; and

    **(iv)** developing rules for the conduct of business.

**(2) Meetings**

The Oversight Board shall meet at least quarterly and at such other times as the Chairperson determines appropriate.

**(3) Reports**

**(A) Annual**

The Oversight Board shall each year report with respect to the conduct of its responsibilities under this title to the President, the Committees on Ways and Means, Government Reform and Oversight, and Appropriations of the House of Representatives and the Committees on Finance, Governmental Affairs, and Appropriations of the Senate.

**(B) Additional report**

*26 USC 7802*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

Upon a determination by the Oversight Board under subsection (c)(1)(B) that the organization and operation of the Internal Revenue Service are not allowing it to carry out its mission, the Oversight Board shall report such determination to the Committee on Ways and Means of the House of Representatives and the Committee on Finance of the Senate.

(Aug. 16, 1954, ch. 736, 68A Stat. 915; Pub. L. 93–406, title II, § 1051(a), Sept. 2, 1974, 88 Stat. 951; Pub. L. 94–455, title XIX, § 1906(b)(13)(A), (B), Oct. 4, 1976, 90 Stat. 1834; Pub. L. 97–258, § 2(f)(2), Sept. 13, 1982, 96 Stat. 1059; Pub. L. 100–647, title VI, § 6235(a), Nov. 10, 1988, 102 Stat. 3737; Pub. L. 104–168, title I, § 101(a), (b)(2), July 30, 1996, 110 Stat. 1453, 1455; Pub. L. 105–206, title I, § 1101(a), July 22, 1998, 112 Stat. 691; Pub. L. 106–554, § 1(a)(7) [title III, § 319(27)], Dec. 21, 2000, 114 Stat. 2763, 2763A–648.)

### References in Text

The Ethics in Government Act of 1978, referred to in subsec. (b)(3)(A), is Pub. L. 95–521, Oct. 26, 1978, 92 Stat. 1824, as amended. Title I of the Act is set out in the Appendix to Title 5, Government Organization and Employees. For complete classification of this Act to the Code, see Short Title note set out under section 101 of Pub. L. 95–521 in the Appendix to Title 5 and Tables.

### Amendments

2000—Subsec. (b)(2)(B)(ii). Pub. L. 106–554 substituted a comma for semicolon before "and".

1998—Pub. L. 105–206 amended section catchline and text of section generally, substituting present provisions for provisions which: in subsec. (a), declared that there shall be in the Department of the Treasury a Commissioner of Internal Revenue, appointed by the President, with such duties and powers as prescribed by Secretary of the Treasury; in subsec. (b), established Office of Employee Plans and Exempt Organizations to carry out functions with respect to organizations exempt from tax and with respect to plans to which part I of subchapter D of chapter 1 applied; in subsec. (c), established Office for Taxpayer Services such as telephone, walk-in, and taxpayer educational services, and design and production of forms; and in subsec. (d), established Office of Taxpayer Advocate and set forth functions of Office and responsibilities of Commissioner regarding response to recommendations of Office. See section 7803 of this title.

1996—Pub. L. 104–168, § 101(b)(2), substituted "Commissioners; Taxpayer Advocate." for "Commissioner (Employee Plans and Exempt Organizations)" in section catchline.

Subsec. (d). Pub. L. 104–168, § 101(a), added subsec. (d).

1988—Subsec. (c). Pub. L. 100–647 added subsec. (c).

1982—Subsec. (b). Pub. L. 97–258 redesignated existing provisions as par. (1), added par. (1) heading, and added par. (2). Par. (2) is based on provisions that appeared in section 1037 of former Title 31, Money and Finance, prior to enactment of Title 31 by Pub. L. 97–258.

1976—Subsec. (a). Pub. L. 94–455, § 1906(b)(13)(B), substituted "Secretary of the Treasury" for "Secretary" after "prescribed by the".

Subsec. (b). Pub. L. 94–455, § 1906(b)(13)(A), struck out "or his delegate" after "Secretary".

1974—Pub. L. 93–406 designated existing provisions as subsec. (a) and added subsec. (b).

### Change of Name

Committee on Governmental Affairs of Senate changed to Committee on Homeland Security and Governmental Affairs of Senate, effective Jan. 4, 2005, by Senate Resolution No. 445, One Hundred Eighth Congress, Oct. 9, 2004.

Committee on Government Reform and Oversight of House of Representatives changed to Committee on Government Reform of House of Representatives by House Resolution No. 5, One Hundred Sixth Congress, Jan. 6, 1999.

### Effective Date of 1998 Amendment

Pub. L. 105–206, title I, § 1101(d), July 22, 1998, 112 Stat. 697, provided that:

"(1) In general.—The amendments made by this section [amending this section and sections 4946 and 6103 of this title] shall take effect on the date of the enactment of this Act [July 22, 1998].

*26 USC 7802*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

"(2) Initial nominations to internal revenue service oversight board.—The President shall submit the initial nominations under section 7802 of the Internal Revenue Code of 1986, as added by this section, to the Senate not later than 6 months after the date of the enactment of this Act [July 22, 1998].

"(3) Effect on actions prior to appointment of oversight board.—Nothing in this section shall be construed to invalidate the actions and authority of the Internal Revenue Service prior to the appointment of the members of the Internal Revenue Service Oversight Board."

## Effective Date of 1996 Amendment

Section 101(c) of Pub. L. 104–168 provided that: "The amendments made by this section [amending this section and section 7811 of this title] shall take effect on the date of the enactment of this Act [July 30, 1996]."

## Effective Date of 1988 Amendment

Section 6235(c) of Pub. L. 100–647 provided that: "The amendment made by subsection (a) [amending this section] shall take effect on the date 180 days after the date of the enactment of this Act [Nov. 10, 1988]."

## Effective Date of 1974 Amendment

Section 1051(d) of Pub. L. 93–406 provided that: "The amendments made by this section [amending this section and sections 5108 and 5109 of Title 5, Government Organization and Employees] shall take effect on the 90th day after the date of the enactment of this Act [Sept. 2, 1974]."

**EXHIBIT J**
Diversified Metal Products, Inc., v. T-Bow Company Trust, Internal Revenue
Service, et al. – IRS Is Not An Agency Of the United States Government and 26 U.S.C. § 6103
(9 pages)

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives and Records Administration, that the attached reproduction(s) is a true and correct copy of documents in his custody.

SIGNATURE

NAME  Steven M. Edwards

TITLE  Regional Administrator, Pacific Alaska Region

DATE  APR - 6 2000

NAME AND ADDRESS OF DEPOSITORY
National Archives & Records Admin.
6125 Sand Point Way NE
Seattle, WA 98115-7999

NA FORM 13040 (10-86)

BETTY H. RICHARDSON
United States Attorney
United States Attorney's Office
Box 32
Boise, Idaho  83707
Telephone:  (208) 334-1211



RICHARD R. WARD
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C.  20044-0683
Telephone:  (202) 307-5867

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF IDAHO

| | |
|---|---|
| DIVERSIFIED METAL PRODUCTS, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil No. 93-405-E-EJL ) |
| T-BOW COMPANY TRUST, INTERNAL REVENUE SERVICE, and STEVE MORGAN, | ) <u>UNITED STATES' ANSWER AND CLAIM</u> ) ) ) |
| Defendants. | ) ) ) |

The United States of America, through undersigned counsel
hereby responds to the numbered paragraphs of plaintiff's
complaint as follows:

1.    The United States is without information or knowledge
sufficient to form a belief as to the truth of the allegations
contained in paragraph 1 and, on that basis, denies the
allegations.

UNITED STATES ANSWER AND CLAIM - 1

5

9393990P.ANS

2.    The United States is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 2 and, on that basis, denies the allegations.

3.    The United States is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 3 and, on that basis, denies the allegations.

4.    Denies that the Internal Revenue Service is an agency of the United States Government but admits that the United States of America would be a proper party to this action.  Admits that the IRS has served a Notice of Levy on plaintiff for funds owed to defendant Steve Morgan.

5.    Admits that the IRS has made a demand on plaintiff for payment of funds owed to Steve Morgan.  The United States is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations, and, on that basis, denies the remaining allegations.

6.    Admits that Exhibits A and B are attached and are respectively, a copy of a letter from Lonnie Crockett and a copy of a Notice of Levy served by the IRS.

7.    The United States is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 7 and, on that basis, denies the allegations.

UNITED STATES ANSWER AND CLAIM - 2

8.    Admits that copies of two checks in the amounts of
$504.00 and $345.60 are attached to the complaint as Exhibit C.

9.    The United States is without information or knowledge
sufficient to form a belief as to the truth of the allegations
contained in paragraph 9 and, on that basis, denies the
allegations.

10.  Paragraph 10 contains allegations of law to which no
response is required.

• 11.  Paragraph 11 contains allegations of law to which no
response is required.

### FIRST DEFENSE

Plaintiff is not entitled to an award of attorney fees or
costs that would diminish the recovery of the United States.

### SECOND DEFENSE

The Internal Revenue Service is not a proper defendant and
the United States should be substituted in its place.

### THIRD DEFENSE

The United States has not waived its sovereign immunity to
suit.

### FOURTH DEFENSE

Plaintiff's complaint should be dismissed for insufficient
service of process on the United States.

### FIFTH DEFENSE

Plaintiff's complaint fails to state a jurisdictional basis
for suit.

UNITED STATES ANSWER AND CLAIM - 3

9393990P.ANS

### CLAIM OF THE UNITED STATES

1.    This claim is made pursuant to 26 U.S.C. Sections 7401 and 7403, at the direction of the Attorney General of the United States, with the authorization and at the request of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States.

2.    On May 29, 1989, a delegate of the Secretary of the Treasury made an assessment of unpaid personal income taxes against Steven and Koreen Morgan in the amount of $516.50, including penalties and interest, for the taxable period ending December 31, 1988.

3.    Notice of and demand for payment of the taxes described in paragraph 1 above was given to and made on Steven and Koreen Morgan in accordance with 26 U.S.C. § 6303.

4.    Notice of Federal Tax Lien with respect to the assessment described in paragraph 1 above was filed with the Madison County Recorder, Rexburg, Idaho on August 30, 1993.

5.    On May 31, 1993, a delegate of the Secretary of the Treasury made an assessment of unpaid personal income taxes against Steven Morgan in the amount of $2,565.21, including penalties and interest, for the taxable period ending December 31, 1989.

6.    Notice of and demand for payment of the taxes described in paragraph 4 above was given to and made on Steven Morgan in accordance with 26 U.S.C. § 6303.

UNITED STATES ANSWER AND CLAIM - 4

9393990P.ANS

7.    Notice of Federal Tax Lien with respect to the
assessment described in paragraph 4 above was filed with the
Madison County Recorder, Rexburg, Idaho on August 30, 1993.

8.    On May 31, 1993, a delegate of the Secretary of the
Treasury made an assessment of unpaid personal income taxes
against Steven Morgan in the amount of $2,393.28, including
penalties and interest, for the taxable period ending December
31, 1990.

9.    Notice of and demand for payment of the taxes described
in paragraph 7 above was given to and made on Steven Morgan in
accordance with 26 U.S.C. § 6303.

10.   Notice of Federal Tax Lien with respect to the
assessment described in paragraph 7 above was filed with the
Madison County Recorder, Rexburg, Idaho on August 30, 1993.

11.   Despite notice and demand, Steve Morgan has failed to
pay the taxes assessed and there remains due and owing to the
United States the sum of $5,474.99, plus accrued interest,
penalties, and other statutory additions.

12.   On or about August 3, 1993, the Internal Revenue
Service served a Notice of Levy on Steve Morgan's employer,
Diversified Metal Products, Inc., requesting payment of all
monies owed to Steve Morgan by Diversified Metal Products.

13.   The interpleaded fund contains money that is owed to
Steve Morgan by Diversified Metal Products, Inc. to which the
federal tax lien attaches.

UNITED STATES ANSWER AND CLAIM - 5

9393990P.ANS

14. The United States claims priority to the interpleaded fund in such amount remaining after satisfaction of the claims of competing claimants to the fund who are entitled to priority over the United States.

WHEREFORE, the United States of America prays the Court:

1. Adjudge and decree that the defendant the United States of America has valid and subsisting liens in the amount of $5,474.99, plus accrued interest, penalties, and other statutory additions.

2. Determine the rights, titles, and interest of the parties to the fund; and

3. Grant the United States its costs and such other further relief that is just and proper.

Respectfully submitted this _18th_ day of November, 1993.

BETTY H. RICHARDSON
United States Attorney


_Richard R. Ward_
RICHARD R. WARD
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
Telephone: (202) 307-5867

UNITED STATES ANSWER AND CLAIM - 6

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

any other provision of law, shall be construed to require the disclosure of standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards, if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws.

**(3) Taxpayer return information**

The term "taxpayer return information" means return information as defined in paragraph (2) which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates.

**(4) Tax administration**

The term "tax administration"—

    **(A)** means—

        **(i)** the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and

        **(ii)** the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and

    **(B)** includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

**(5) State**

The term "State" means—

    **(A)** any of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, the Canal Zone, Guam, American Samoa, and the Commonwealth of the Northern Mariana Islands, and

    **(B)** for purposes of subsections (a)(2), (b)(4), (d)(1), (h)(4), and (p) any municipality—

        **(i)** with a population in excess of 250,000 (as determined under the most recent decennial United States census data available),

        **(ii)** which imposes a tax on income or wages, and

        **(iii)** with which the Secretary (in his sole discretion) has entered into an agreement regarding disclosure.

**(6) Taxpayer identity**

The term "taxpayer identity" means the name of a person with respect to whom a return is filed, his mailing address, his taxpayer identifying number (as described in section 6109), or a combination thereof.

**(7) Inspection**

The terms "inspected" and "inspection" mean any examination of a return or return information.

**(8) Disclosure**

The term "disclosure" means the making known to any person in any manner whatever a return or return information.

**(9) Federal agency**

The term "Federal agency" means an agency within the meaning of section 551 (1) of title 5, United States Code.

**(10) Chief executive officer**

The term "chief executive officer" means, with respect to any municipality, any elected official and the chief official (even if not elected) of such municipality.

**(11) Terrorist incident, threat, or activity**

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

## TITLE 26 - INTERNAL REVENUE CODE
### Subtitle F - Procedure and Administration
#### CHAPTER 61 - INFORMATION AND RETURNS
##### Subchapter B - Miscellaneous Provisions

### § 6103. Confidentiality and disclosure of returns and return information

#### (a)  General rule

Returns and return information shall be confidential, and except as authorized by this title—

**(1)** no officer or employee of the United States,

**(2)** no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section, and

**(3)** no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii), paragraph (6), (12), (16), (19), or (20) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

#### (b)  Definitions

For purposes of this section—

**(1) Return**

The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

**(2) Return information**

The term "return information" means—

**(A)**  a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,

**(B)**  any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110 (b)) which is not open to public inspection under section 6110,

**(C)**  any advance pricing agreement entered into by a taxpayer and the Secretary and any background information related to such agreement or any application for an advance pricing agreement, and

**(D)**  any agreement under section 7121, and any similar agreement, and any background information related to such an agreement or request for such an agreement,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. Nothing in the preceding sentence, or in

**EXHIBIT K**
NARA Declassified Document Dated August 25, 1945 Confirming That
The Internal Revenue Service (Bureau of Internal Revenue)
Has Never Been Created By Any Act Of Congress
(38 pages)

REPRODUCED AT THE NATIONAL ARCHIVES

DECLASSIFIED
Authority 761 5961
By ST, NARA Date 5/13/05

SECRET

August 25, 1945

To:    Secretary Vinson

From:  Mr. Luxford

Conclusions and Recommendations in
Connection with the Study of Administrative
History of the Bureau of Internal Revenue.

      In preparing the attached memorandum outlining the
administrative history of the Bureau of Internal Revenue,
Mr. Brenner and I made an effort to confine it to the reported
facts and to refrain, so far as possible, from injecting our
own opinions and theories. I believed that this approach would
give you - and others you might consult - the best opportunity
to form an independent judgment of the lessons, if any, to be
learned from the Bureau's history.

      On the other hand, in making this study I have been
conscious of the fact that your interest in the subject stemmed
from a desire to better understand the de facto relationship
presently existing between the Bureau and the Treasury. In this
memorandum I am offering you my own conclusions and recommendations
on the subject.

      I have intentionally avoided expressing any conclusions
or recommendations on the subject of reorganizing the Bureau
internally except to the extent that this was essential for
improving the relationship between the Bureau and the Treasury.
It does seem clear to me, however, that consideration should be
given to whether some internal reorganization of the Bureau is
not highly desirable. While the attached historical memorandum
does throw some interesting light on this subject, I am of the
opinion that any internal reorganization should be considered
only after positive steps have been taken to assure an improvement
of the Bureau-Treasury relations. Once this is done, plans for
an internal reorganization can be considered not only in terms
of improving the Bureau but also in terms of further strengthening
the Bureau-Treasury relations. Moreover no such action should be
considered until a thorough study of the Bureau's actual operations
has been made by someone having your confidence and full support.

Conclusions

      In my opinion:

      (1) The Secretary of the Treasury today has - and always
has had - clear legal authority to control the Bureau of Internal
Revenue. Not only does the Secretary of the Treasury have clear
legal authority over the Bureau, he also has clear legal
responsibility for the policies and operations of the Bureau.

REPRODUCED...
...NARA DATE...

- 2 -

Moreover, in the eyes of the public, whatever the Bureau does - or fails to do - is directly identified with the Secretary of the Treasury. In a very real sense the public regards him as the man who puts his hands into their pockets and collects the taxes.

(2) The lack of de facto control over the administration and policies of the Bureau arises primarily from the fact that, although the Secretary of the Treasury has legal authority over, and responsibility for, the Bureau, the officers in charge of the Bureau - whether political or civil service appointees - have owed their primary loyalties elsewhere. Specifically, the political appointees have owed their appointments, their tenure and their loyalties to those responsible for their appointments - and not to the Secretary of the Treasury. The civil service officers of the Bureau know that Secretaries of the Treasury come and go, but the Bureau and its career men go on forever.

(3) While the political and career officials in the Bureau tend to regard the Secretary of the Treasury - and the Treasury Department - as necessary nuisances which must be tolerated but scarcely respected, yet these two types of officials do recognize that as a practical matter they must work together to achieve their separate aims. The ordinary political appointee thrown into the highly technical field of tax administration soon discovers that the "safe" way to avoid embarrassing mistakes on his part is to let the experts have their way. The career officials, on the other hand, find in these political officials powerful allies in support of their own positions and ambitions - to say nothing of counteracting "interference" by the Treasury. Thus, you discover the not infrequent anomaly of the Commissioner of Internal Revenue, for instance, ardently supporting a career man for a political post in the Bureau. Confronted with this situation, observing that in normal times the Bureau will cause little trouble if it is left alone, lacking specialized knowledge and experience in the tax field themselves, having other interests, and wary of stirring up a hornet's nest, most Secretaries of the Treasury have been inclined to leave the Bureau strictly alone.

(4) This condition of actual indifference to the Secretary of the Treasury ( and the Treasury generally) and the alliance between the political and career officials in the Bureau is probably much deeper than the personalities of the particular men who happen to hold these posts at any specific time. The existence of these same forces for the better part of a century have developed an ingrained way of thinking on the part of Bureau personnel generally, so that today we are confronted not only with the facts but also a tradition that will have to be uprooted if any permanent readjustment is contemplated.

(5) If this analysis is reasonably correct, the readjustment of the fundamental relationship between the Bureau and the Secretary of the Treasury must be conceived of as evolutionary rather than revolutionary. It will require tact and skill coupled



- 3 -

with plenty of dogged determination and persistence to make a fundamental change. On the other hand, prompt improvement can be achieved - at least during your tenure in office - if in your opinion this goal warrants the time and effort required in its accomplishment.

(6) As indicated above, it is difficult - if not impossible - to separate the relationship between the Bureau and the Secretary of the Treasury from the relationship between the Bureau and the Treasury Department. As is true in other fields - whether it be the eyes of the public, the Congress, or other government agencies - the Treasury Department and the Secretary of the Treasury are as one in the eyes of the Bureau. Both are "outsiders" and both hold certain reins of authority. The crucial points of contact between the Bureau, on the one hand, and the Secretary and the Department on the other, are primarily at the high policy level (such as major personnel actions, legislation, regulations and general policy decisions). At these high policy points of contact the men in the Department representing the Secretary do tend to reflect his views and vice versa so that this identity in concept is most natural. This point is particularly significant to our consideration because it suggests that any move strengthening the position of either the Secretary or the Department vis a vis the Bureau will most likely strengthen the position of the other. Thus in weighing techniques for improving the situation we are free to interchange the Department and the Secretary at any point where convenience or expediency suggest it is appropriate.

### Recommendations

In offering these recommendations for improving the de facto control of the Secretary over the Bureau of Internal Revenue and in achieving a greater degree of coordination in their policies and operations, I have assumed that fundamentally the short range treatment of the problem varies only in degree and not in kind from the long range approach to it. Accordingly I have not separated long range recommendations from those of short range. Rather I have dealt with them under the same heading, pointing out where necessary whether the proposals are of transitory or permanent significance.

I

### The Bureau Must be Made to Realize that the Secretary of the Treasury is the Boss.

All recommendations for readjusting the relations between the Bureau and the Secretary - whether temporary or permanent in nature can be telescoped into one proposition: The Bureau must be made to realize that the Secretary of the Treasury is the boss and that the Secretary intends to be the boss. Whether the readjustment proves temporary or permanent depends upon whether the Bureau is convinced that it is only the present Secretary of the Treasury who will have to be treated as boss or whether a fundamental change has occurred which will make any Secretary of the Treasury the Bureau's boss in fact as well as theory. Once the political and career officials become convinced that the Secretary is the boss and intends to so act, the Bureau will begin to function as an agent of the Secretary of the Treasury rather than as an independent contractor.



- 4 -

    But expressing this general recommendation hardly offers a concrete program for realizing its goal. The recommendations below will outline specific measures to implement and supplement this primary recommendation.

II

The Secretary of the Treasury Must Have the<br>Power to Appoint and Remove the Top Bureau Officials.

    As indicated in the part of this memorandum dealing with conclusions, the primary weakness in the de facto authority of the Secretary over the Bureau is that both political and career officials owe their positions and tenure to others than the Secretary. Until it is driven home to them that the Secretary has the power to hire and fire - and is willing to use it - their loyalties will remain elsewhere.

    Ideally, this situation can be best remedied on a permanent basis by giving the Secretary of the Treasury the statutory power of appointment, carrying with it the implied power of removal. While there might be a good deal of political opposition to this proposal, still a powerful case in its favor can be established. Moreover Congress and the Administration are bound to be reorganization minded at the inception of the reconversion period and the proposal might have the benefit of this momentum. This might be particularly the case if this proposal were lumped with other proposals, such as increasing the number of Assistant Secretaries.

    While different arguments would probably be required in selling this proposal to the Congress, from the point of view of achieving results, it would certainly drive home to the Bureau who was the boss and the Bureau would know that no matter who was Secretary of the Treasury, he would be the boss.

    If this proposal is deemed impractical or too likely to provoke delay where immediate action is necessary, then the Commissioner and the top Bureau officials should be informed specifically and unequivocally that the President is giving the Secretary of the Treasury an absolutely free hand over their appointment and tenure. This will give the Secretary de facto authority, at least temporarily. The weakness in this measure is quite obvious. In the first place the Bureau officials will be prone to regard it as temporary and subject to change with a new Administration, a new Secretary of the Treasury, or a change in political tides. They may be subservient but hardly reconstructed in mental outlook for they will be tempted to bide their time, meanwhile preserving their other loyalties against the day when conditions return to "normal".

    While it may be argued that the de facto power of appointment is adequate and the case of Assistant Secretaries be offered as proof, there are certain difficulties with the analogy. In the

- 5 -

first place, in the case of Assistant Secretaries there is no tradition of autonomy to overcome as in the Bureau's case; in fact there is at least a considerable degree of tradition to the contrary. In the second place, some of us can recall a few vivid instances where Assistant Secretaries were not the choice of the Secretary and where the power of the Secretary over his assistants was more theory than fact.

Finally, it should be pointed out that one of the deficiencies of a de facto appointing power is that the Secretary does not fight just one battle but is exposed to a whole series of battles, some of which may occur at times when his position may be at least temporarily weakened or embarrassed. Each time there is a major appointment to make, however, the Secretary's candidate must run the gamut of the President, the Party and the Congress - and the Bureau will know it too.

All of the foregoing is true regardless of whether the title of the head of the Bureau of Internal Revenue remains that of "Commissioner" or is changed to "Assistant Secretary of the Treasury in charge of the Bureau of Internal Revenue". While a change in titles might be helpful in dramatizing the fact that the Secretary was now the boss, still the fundamental question of loyalty would remain, regardless of title. In this connection it should be pointed out, however, that the actual job of administering the Bureau must be performed by a man in the Bureau and not a man located in an office in the main Treasury. He will have all he can do if he is on the spot and in a position to see things operating at first hand. He cannot do that and serve as one of the Secretary's personal staff here in the Treasury. Moreover, there are cogent reasons for believing that the task of integrating the administration of the Bureau and the policy formulating functions here in the Treasury should be performed by an Assistant Secretary on your personal staff. If this is the case, it might seem a little odd for the operating head of the Bureau with the title of "Assistant Secretary" to be reporting through another Assistant Secretary.

In any event it is suggested that the Bureau's relations with the Treasury would be improved effectively and dramatically by the appointment of "your man" to be its head, regardless of his title. This seems almost vital if you are to get the head of the Bureau to enter into this task with the spirit and drive essential to its achievement. Besides, it will dramatize the fact that you intend to be the boss and the other Bureau officials and the staff will get the point.

III

Qualifications for the Head of the Bureau

It would hardly require a separate heading for this subject to recommend the appointment of a "good man", but I should like



- 6 -

to suggest some of the special qualifications that would assist even a "good man".

A. The head of the Bureau should be a man having the Secretary's confidence and whom the Secretary will be prepared to support even when the "throat cutting" is at its worst. This means a man who sees eye to eye with the Secretary on the Secretary's objectives and on the means of achieving these objectives.

B. He must be a man with sufficient personality and interest to actually dominate the Bureau and who will feel personally responsible for the Bureau's operations. It goes without saying, of course, that he must devote his full time to running the Bureau.

C. He should be an experienced government man who can be plenty tough and yet wear gloves. It is the old story of "sending a thief to catch a thief". The man named must have the training and ability to equip him in taking the measure of the Bureau experts. Otherwise, he will find himself in the position of most political appointees taking the post; he must either be able to play their game and win or he will be forced to enter into a one-sided alliance with them to protect himself. But in suggesting that he be a government man, I emphasize that this does not mean he should be a Bureau man. He should not be a Bureau man because then the chances are he would be one of the club. Rather he must be outside the Bureau Club and proselyte its members into the Treasury Club. He does not need to be a tax expert if he knows where to get loyal men who are experts to assist him and to warn him of the pitfalls. He must be tough enough to take on the bureaucrats if need be; at the same time temperamentally inclined to win his battles without showing all his cards.

D. He should be a good judge of other men. No one man can hope to do the job. He must be able to pick other good men to serve as his lieutenants and be able to inspire them with his philosophy and approach. He must be able to win over part of the top staff, at least, to make them his men and ready to support him technically where necessary. In any bureau like Internal Revenue there are always a number of top caliber men who are themselves sick of the petty intrigue and bureaucracy. These men, if they can be separated from the chronic malcontents, will be ripe for a new deal and the opportunity to push forward. They will become the loyal supporters of those giving them this opportunity. The man selected as head of the Bureau also should be able to attract new blood from the Treasury proper and other government agencies since not only may this be necessary but in any case it is desirable in the course of reshaping the Bureau's attitude toward the Treasury.

- 7 -

IV

Integration of Bureau and Treasury

The Bureau should be more closely integrated with the tax policy side of the Treasury as well as with the Treasury generally. If relations between the Treasury and the Bureau are bad, there is an excellent chance that both have been at fault on this score. Specifically, while the Bureau must come to realize that the Secretary of the Treasury is the boss, the relationship between the Treasury and the Bureau cannot be that of master and servant. It must be that of partners whose separate success or failure depends upon joint cooperation.

Both the Treasury and the Secretary must earnestly seek to gain the confidence of the Bureau. In the past the Bureau has operated on the basis of being isolated from the Treasury and thus compelled to fight its own battles both with Congress and within the Treasury proper. Almost never has it been able to view the Treasury as a protector of its interests and sympathetically concerned with its problems. To a substantial extent this feeling has developed from the fact that the Treasury official supervising the Bureau has been either a weak man himself and afraid to stick up for the Bureau; or had little interest or sympathy with the Bureau and its problems; or was too preoccupied with other Treasury problems and could not take the time to look out for the Bureau. Correcting this situation should contribute to improving the Bureau's morale and establishing an espirit de corps with the Treasury.

The Bureau must be given greater encouragement to participate in the formulation of policy at a high level, including legislation. I know that a procedure already exists which is designed to achieve this end and I have no doubt but what it is reasonably effective. On the other hand, it probably can stand a good deal of improvement if we proceed in our reconsideration from the premise that people who see eye to eye are in charge of both the Bureau and the Treasury. Instead of a procedure equipped to absorb sniping and unsympathetic analysis, we should focus on one for partners.

Finally, the transfer of personnel between the Bureau and the Treasury should be greatly encouraged. Tax men in the Bureau should be carefully considered for any appointments in the tax field in the Treasury and vice versa. This is most desirable from the point of view of each group getting to know and better understand the problems of the other. Each gets more of the feeling that it is a part of a larger whole rather than two separate bodies with little in common except that they operate in the same general field. In addition, career men in the Bureau should be able to look forward to the possibility of extending their career in the main Treasury and men on the legislative side of the Treasury should be given the opportunity to observe first hand how their programs work in practice. This freedom of movement back and forth will do much to erase the existing barriers and drive home to both that they work for the Secretary of the Treasury.

TRANA D&G 10/8/05

C O N F I D E N T I A L

AUG 2 5 1945

To              Secretary Vinson

From            Messrs. Luxford and Brenner

Subject:        Administrative History of the
                Bureau of Internal Revenue.


        This memorandum has been prepared after a study of the
existing histories of the Bureau of Internal Revenue, the
legislative provisions relating to administration of the Bu-
reau, the hearings, reports, and debates in connection with
the revenue laws which made important changes in the admini-
stration of the Bureau, and the hearings and reports of the
more important Congressional investigations of the Bureau.
Unfortunately there is no recent study of the revenue admini-
stration sufficiently thorough to be useful.

        Considerable time has been spent in the examination of
legislative histories, which did not prove very fruitful because
the important administrative provisions are generally incorpora-
ted in revenue bills and are of minor significance as compared
to the actual tax provisions.  The material that does exist in
the legislative histories is scattered throughout the debates,
and frequently the administrative provisions were not the sub-
ject of extended discussion.[1/]

        This study does not include material which might be obtained
from an examination of the proceedings in connection with appro-
priations made by Congress for the work of the Bureau, nor does
it include a check of the contemporary newspapers and periodicals
for collateral background on the changes in administrative methods.

        We have not felt free to examine files of the Bureau of In-
ternal Revenue or check other sources there which would probably
be valuable in providing information on this subject.  Nor could
we have examined the material which has been studied during the
limited time in which this memorandum has been prepared if we
had also made use of the Bureau's sources.

---

1/ The most valuable sources we have examined are:
   The Internal Revenue System in the United States, Frederick
   C. Howe. (1896)
   The Bureau of Internal Revenue, Service Monographs of the
   United States Government, No. 25(1923)
   Monograph of the Attorney General's Committee on Administra-
   tive Procedure, Part 8 (Senate Document No. 10, 77th Congress,
   1941).
   Hearings of the Select Senate Committee on Investigation of
   the Bureau of Internal Revenue, March 14-April 9, 1924 and
   November 20, 1924-June 1, 1925.
   Report of the Select Senate Committee on Investigation of
   the Bureau of Internal Revenue, January 12, February 2, and
   February 26, 1926 (Report No. 27, 69th Congress).

- 2 -

## I. Early History.

There was no permanent system of internal taxation prior to the Civil War, and there was no permanent administrative agency for the collection of internal taxes until that time. During the earlier years, however, there were several periods during which internal taxes were collected, and the administrative system ultimately established as a permanent part of the Government is based largely upon the experience of these early attempts to collect internal taxes.

### A. Post-Revolution Period

The background of the first period of internal taxation has an important bearing on the type of administrative machinery that has been developed in the field of internal revenue. When the Federal Government was established under the Constitution, the difficulties caused by excise taxes levied by Parliament were still fresh in the minds of the public and of Congress. It was apparent to Hamilton, however, that customs duties alone would not provide sufficient funds for the financing of the Government. War expenditures had created a substantial public debt and revenue measures were needed if it was to be reduced.

Hamilton introduced measures for the imposition of excise taxes. According to Howe, The Internal Revenue System in the United States (1896), one of Hamilton's first reports advocated a moderate tax on liquor, but Congress rejected the proposal because of its centralizing tendencies which would result from the creation of a large body of Federal tax collectors. Howe (p. 17) then describes the opposition to excise taxes in the following paragraph:

"This aversion to internal taxes was partly traditional, partly the result of the absence of legal restraint in those isolated regions where the opposition was most intense. In the South, moreover, whiskey was looked upon almost as a necessity, and a tax upon its manufacture and sale no more defensible than one imposed upon any other product of the farm. In Pennsylvania, also, the feeling was most bitter; and the legislature of that State instructed its representatives in Congress to oppose the passage of such a measure by every means in their power, while a memorial from Westmoreland County (Pa.) insisted, among other things, that to convert grain into spirits was as clear a natural right as to convert grain into flour. An excise 'was the horror of all free states,' said one vigorous speaker in the House; it was 'hostile to the liberties of the people;' it would 'convulse the government; let loose a swarm of harpies, who, under the denomination of revenue officers, will range the country, prying into every man's house and affairs, and, like the Macedonian phalanx, bear down all before them'."

- 3 -

Beginning in March 1791, however, a series of internal taxes was enacted on such items as liquor, sugar, tobacco and legal instruments. This period of internal taxation lasted until 1802, when Congress enacted a law which abolished both the taxes and the administrative machinery which had been set up for their collection. During this entire time the collections from customs far exceeded the collections from internal taxes, and when the fiscal position of the Government had recovered from the difficulties arising out of the revolution, the internal taxes were discontinued.

To administer the internal taxes the country was divided into fourteen revenue districts, each state being a separate district. Each district had one supervisor, appointed by the President and confirmed by the Senate, whose salary was fixed by the President. Aggregate salaries could not exceed seven per cent of the internal taxes collected on liquor, or more than $45,000. There was also a provision for the division of revenue districts into inspection districts and the appointment of inspectors by the President with the consent of the Senate. The effect of these internal taxes was primarily political. It led to the "Whiskey Insurrection" in Pennsylvania during 1794, which clearly demonstrated that the central government was endowed with sufficient power to enforce its enactments. From a fiscal point of view, however, the taxes were of little significance.

Fear of centralizing tendencies and the jealousy with regard to states' rights undoubtedly led to the administrative provisions calling for the division of the country into districts with local supervisors and local inspectors. Even the fact that local citizens enforced the taxes was not a sufficient palliative to prevent the "Whiskey Insurrection".

In 1798 Congress for the first time levied a direct tax on real property. In connection with this tax the law provided for the creation of divisions each consisting of several counties within a state, and a commissioner for each division was appointed by the President with the consent of the Senate. All of the commissioners in a particular state were to act as a board to divide the state into assessment districts, appoint assessors and make regulations. The other officials who were created in connection with the direct tax were surveyors of the revenue. These men, however, were not appointed by the commissioners who were responsible for the direct tax, but were appointed by the supervisors who had the responsibility for the collection of other internal taxes.

In 1792 Congress created the office of "Commissioner of the Revenue" to replace the Assistant to the Secretary of the Treasury, who had been in charge of the collection of taxes. In 1800 Congress also created the office of the Superintendent of Stamps, who was in charge of the paper used for the purpose of collecting stamp taxes. The laws do not specify how either of these officials were appointed.



- 4 -

Hamilton had been the proponent of internal revenue measures and had worked hard to establish a system of excise taxes. When Jefferson took office in 1801, however, he took steps promptly to abolish the system. Before becoming President, Jefferson had attacked the excise taxes as likely to conduce dismemberment of the Union, and his party was pledged to the repeal of the taxes. Several reasons were given for the repeal. It was contended that the taxes which had been levied were oppressive, that the idea of an excise tax was hostile to the nature of a free people, and that the administration of internal taxes tended to multiply offices and increase patronage.

All the offices referred to above were abolished when the internal taxes were repealed by the Act of April 6, 1802 (2 Stat. 148). At the time, 400 officials were employed to administer the internal taxes, and the cost of maintaining this force was twenty per cent of the taxes collected.

B.  War of 1812.

From 1802 to 1812 customs duties, the receipts from the sales of public lands, and the overdue payments of the direct taxes were not only sufficient to meet the current needs of the Government but were also large enough to permit steady reduction of the public debt. In 1813, 1814, and 1815 Congress enacted a number of internal taxes for the purpose of financing the interest on the public debt, which had risen considerably as a result of the war. The excise taxes were all abolished in 1817. Congress also levied a direct tax of $3,000,000 in 1813, and in 1815 provided for an annual direct tax of $6,000,000. The larger direct tax was never collected but was reduced to $3,000,000 for the year of 1816 and abolished thereafter.

To administer the new taxes Congress recreated the Office of the Commissioner of the Revenue, and divided the states into collection districts with a collector and a principal assessor in each district. The Commissioner, the collectors and the assessors were all appointed by the President and confirmed by the Senate. It was the duty of the collectors to collect both the direct and excise taxes, and their functions were quite similar to those which they have at present. The Commissioner of the Revenue was placed in charge of the collection of all taxes, and the Secretary of the Treasury was authorized to transfer to him the collection of customs duties.

In 1817 Congress abolished all of the offices created for the purpose of collecting the excise and direct taxes, but the collectors were to remain in office until the outstanding taxes had been collected. In 1830 the Office of the Solicitor of the Treasury was created, and that officer, who was appointed by the President with the consent of the Senate, was charged with all of the residual duties of the Commissioner or acting Commissioner of the Revenue, in relation to collection of outstanding direct and internal duties.



- 5 -

From 1814 to 1818 when these taxes were collected, the receipts from customs still exceeded the receipts from internal taxes, but not by nearly so large an amount as during the prior period of internal taxation.

## II. The Civil War Laws.

The first Civil War Revenue Act was enacted on August 5, 1861 (12 Stat. 292). It levied a direct tax of $20,000,000 apportioned among the States, an income tax, and increased the customs duties. The Act authorized the President to divide the States and Territories into collection districts, each district having a collector and an assessor appointed by the President with the consent of the Senate. In addition, the Act provided for a Commissioner of Taxes to supervise the collection of the direct tax and the income tax to be nominated by the Secretary of the Treasury and appointed by the President. The Act also permitted the States to assess and collect their quotas of the direct tax, and this was the course which was followed by the States.

It was the Act of July 1, 1862 (12 Stat. 432) that actually established the internal revenue system which exists today. This legislation taxed so many things that a definite administrative system for their collection was essential. Congressman Morrill explained the bill to the House and, with respect to the administrative provisions, he said: "We have, therefore, looked to such examples as we found upon our statutes, and have endeavored to arrange a system by which all descriptions of duties could be assessed and collected through the same officers." (58 Cong. Globe 1194).

The old machinery which had been used for the collection of taxes during and immediately after the war of 1812 had expired. Instead of reviving it, Congress created the office of Commissioner of Internal Revenue, to be appointed by the President and confirmed by the Senate. The Commissioner, under the direction of the Secretary of the Treasury, was charged with the same general duties which he has today. During the House debate it had been proposed that the Commissioner act under the direction of the President but this proposition was defeated when it was pointed out that all revenue matters should be under the Treasury Department. (58 Cong. Globe 1218).

The President was authorized to divide the country into collection districts not exceeding the number of representatives in each state except California. The President created the full number of districts authorized by law (185) and for each district an assessor and a collector were appointed.

The principal officials created by the Act of 1862 were the assessors and the assistant assessors. Assessors were appointed by the President with the consent of the Senate, and they appointed their own assistants. Their functions included finding the



- 6 -

taxable property, assessing the taxes and hearing all appeals. The office of assessor remained the focal point of tax administration during the war and for several years thereafter until it was abolished in 1872. Assessors and their assistants were paid by the day.

Collectors, who were appointed by the President with the consent of the Senate, at that time were only fiscal agents and their principal duty was to collect the taxes in accordance with the lists furnished them by the assessors. Collectors were paid commissions on the money they collected and the amount of commissions any individual could receive was limited to $10,000 except in the larger districts. The commissions had to cover not only the collectors compensation but also that of the deputies they were authorized to appoint. Deputies were paid by the collectors and no additional funds were made available for this purpose.

The collectors had authority to appoint inspectors, who were the chief enforcement officers of the period. These men confined their activities to the enforcement of the taxes on liquor. Occasionally other inspectors were appointed in some districts in connection with the tobacco, petroleum and coal oil taxes. The authority to appoint inspectors was contained in a later act passed in 1862. (Act of July 1, 1862, 12 Stat. 447). In accordance with its terms, inspectors did not receive any payment from the Government but were paid fees by the manufacturers whose goods they inspected. This led to many abuses and according to "The Bureau of Internal Revenue", by Schmeckebier and Eble (1923), the fee system "was one of the weakest features of the whole Internal Revenue System, and there is no doubt that this method of compensation was one of the principal avenues of temptation to dishonest distillers, who were extra generous with 'fees' and thereby obtained the necessary protection which in later years led to the worst frauds in the history of the Nation."

The next revenue measure was enacted March 3, 1863 (12 Stat. 726). Under this legislation assessors were given an annual salary and an allowance for office rent, which replaced their per diem compensation. In addition, they were allowed commissions on collections made in their districts.

The Act of 1863 also created the position of Deputy Commissioner of Internal Revenue, to be appointed by the President and confirmed by the Senate, and it authorized the Secretary of the Treasury to appoint three revenue agents. This was the first statutory reference to revenue agents who were to be appointed for the purpose of enforcing the revenue laws.

The Revenue Act of June 30, 1864 (13 Stat. 223) made a few changes in the administrative provisions relating to the collection

- 7 -

of internal revenue.  It changed the method of compensation of collectors to an annual salary plus commissions, and it changed the method of paying inspectors from the fee system to a per diem compensation plus a travel allowance.  This latter provision was undoubtedly intended to do away with the abuses arising from the fee system, but Congress allowed the improvement to remain in effect only two years.  The only other administrative change brought about by this legislation was the increase in the number of revenue agents to five.

The Revenue Act of March 3, 1865 (13 Stat. 469) limited the commissions of collectors and increased the number of revenue agents from five to ten.  It also authorized the Secretary of the Treasury to appoint a Commission of three persons to study the whole problem of taxation, including "the manner and efficiency of the present and past methods of collecting the internal revenue".  The Commission's report will be dealt with under III below.

Shortly after the Civil War, several changes were made in the administrative provisions which had been worked out during the war.  In 1866, the fee system of paying inspectors was restored (14 Stat. 155), and the abuses which had characterized this sytem were revived.  The same act increased the number of deputy commissioners from one to three, but the deputies were reduced to two in 1874 (18 Stat. 6) and back to one in 1876 (19 Stat. 151).

On March 6, 1872 a law was passed which changed the system of having deputy collectors paid by the collectors.  From that time on their salaries were fixed by the Secretary of the Treasury, on the recommendation of the Commissioner of Internal Revenue, and were paid by the Government.  The appointment of internal revenue agents was changed by the same act which provided that they were to be appointed by the Commissioner of Internal Revenue, who was also authorized to fix their salaries (17 Stat. 241).  The Act of December 24, 1872 (17 Stat. 401) abolished the offices of assessors and assistant assessors.  As of July 1, 1873, these offices were terminated and their functions were transferred to the offices of the collectors.

III.  The Revenue Commission of 1865.

The Revenue Commission appointed by the Secretary of the Treasury in accordance with the Act of March 3, 1865, made 13 special reports and a general report.  In the general report it devoted some space to criticizing the manner of administration of the internal revenue laws.

The principal defects it found in the Bureau of Internal Revenue were:



- 8 -

(1) The lack of power and discretion in the officials of the Bureau;
(2) The absence of positions with high salaries and permanent tenure which would attract and keep competent personnel;
(3) The splitting of penalties and forfeitures with informers;
(4) The appointment, retention and promotion of officers on the basis of other circumstances than qualifications of good behavior.

The Commission reviewed the functions of the Secretary of the Treasury and concluded that the office was, next to the President, the most important in the Government. They expressed some concern over the fact that many duties of minor importance were imposed upon him in addition to the major ones, and accordingly, in suggesting a plan of reorganization in the administration of revenue collection, they proposed that an "Under-Secretary of the Treasury in Charge of the Revenue" be appointed, and that the general supervision and direction of revenue collections be assigned to him.

The Commission also proposed the appointment of a commissioner of the customs, a commissioner of the excise, a solicitor of the customs, and a solicitor of the excise. These 4 men, together with the Under Secretary, should constitute the Board of Commissioners of the Revenue, which should determine rules and regulations relating to collections, the expenditures to be incurred in collecting revenues, management of all revenue litigation, and the distribution of all awards for good service and valuable information.

Another recommendation of the Commission was that no subordinate officer in the Bureau be appointed until his qualifications had been examined and approved by the Board of Commissioners. They also suggested that the Secretary and the Under Secretary participate on the floor of the House in all debates on revenue questions. Finally, they proposed that each leading source of revenue be recognized as a division of the Bureau and be placed in charge of an officer with a permanent position and a good salary.

The response of Congress to the report of the Revenue Commission was contained in the Act of July 13, 1866 (14 Stat. 98). Before that time the only officers recognized by law were the commissioner, the deputy commissioner, and a cashier, other clerical assistance being drawn from employees of the Secretary of the Treasury. The new legislation provided a definite personnel for the Bureau. It authorized under the direction of the Secretary the employment of two deputy commissioners, in addition to the existing one, a solicitor, seven heads of divisions, and 244 clerks, messengers and laborers for the Washington office.



- 8 -

The sweeping reforms recommended by the Commission were not
followed, however. The farthest that Congress went in this
direction was to authorize the Secretary of the Treasury to
appoint a Special Commissioner of the Revenue in his department
to hold office for 4 years and make reports on every aspect of
the internal revenue policies.

The attitude of Congress toward the report of the Commis-
sion was clearly stated by Congressman Morrill:

"The law authorizing the Secretary of the Treasury to
assign to the Bureau of Internal Revenue a sufficient
force to carry it on will expire by its own limitation
on the 1st of July next, and it therefore becomes neces-
sary to make some arrangement for the permanent organi-
zation of the bureau. It will be seen that the bill
makes provision for this object. The operations of
this bureau are now on so large a scale as to require
the services of able, clearheaded men, trained to busi-
ness, and of unquestioned integrity. Such men in our
country are highly prized, and command the highest
salaries paid in financial and commercial employments,
and unless we fix salaries at an adequate or competing
point we shall only command the services of second-
rate men. The bane of the Treasury Department is that
so soon as officers receive the stamp of its confidence
they receive a loud call and the offer of more pay to go
elsewhere. The best officers are, therefore often mere
birds of passage, here today but may be gone tomorrow.
The Bureau of Internal Revenue, it is quite apparent,
is deficient in executive force. It is impossible that
the Commissioner, however faithful and industrious, and
I know of no man more so, should be able to consider all
the complicated cases daily arising for investigation in
the administration of his office, and we have conceded
not only the propriety but the absolute necessity of
reinforcing the office by two additional deputies and
one solicitor.

"Notwithstanding all the disadvantages we have
labored under in putting new and untried laws suddenly
into operation, it is gratifying to find that the expense
of collecting the revenue has been far less than was an-
ticipated--including everything except printing done by
the Public Printer--amounting, in 1865, to no more than
two and seventy-five one hundredths, or two and three
fourths per cent. This contrasts most favorably with
the cost of collection in Great Britain, where, after
years of experience, the cost varies from four and one
quarter to five and three fourts per cent.



- 10 -

"The services of the gentlemen employed on the
revenue commission, I have no doubt, are properly ap-
preciated by Congress, as they will be by the country,
and the Committee of Ways and Means were unanimously,
I believe, of the opinion that this kind of service
should not be entirely discontinued. Believing that
at least one similar officer can be profitably em-
ployed permanently, they have added a section to the
bill for this purpose, and I have no doubt it will
prove wise economy to adopt and continue it so long as
we may be compelled to raise anything like our present
revenues from taxation."
(71 Cong. Globe 2438).

IV.  Post Civil War to Post World War.

The Revenue Commission's report was not the only recognition
of flaws in the administration of internal revenue. Writing in
1896, Howe (The Internal Revenue System in the United States)
concluded that during the Civil War:

"* * *inefficiency and maladministration characterized
the service, dissipating the confidence of the public and
deleteriously affecting the revenues.

"Two causes were in the main responsible for this
result: one, the inadequacy of the remuneration offered;
but by far the most potent cause was the absence of a
merit system for the determination of appointments.
Probably no branch of our national administration has
suffered so much from the spoils system as has the in-
ternal revenue service; for in no department of the
government are efficiency and honesty so essential in
the employee". (p. 195)

The Act of July 20, 1868 (15 Stat. 125) authorized the Secre-
tary of the Treasury, on the recommendation of the Commissioner,
to appoint 25 supervisors of internal revenue. The supervisors
were to be enforcement officers, and, among other things, were
to be empowered to transfer inspectors, storekeepers, and gaugers
from one district to another and to suspend these officers from
duty. In 1873 (17 Stat. 241) the number of supervisors was re-
duced to 10 and the power of appointment was transferred from the
Secretary to the President with the consent of the Senate. In
1876 (19 Stat. 152) the offices of supervisors were abolished and
the powers of transfer and suspension were vested in the Commis-
sioner, with all other powers transferred to the collectors.

The 1868 legislation also authorized the commissioner to
employ 25 detectives for duty under the direction of the super-
visors or for other special duties. In 1872 (17 Stat. 241) the
title of these officials was changed from detective to agent.

The jobs of gaugers and storekeepers were created by the



- 11 -

1868 legislation." Gaugers were to be appointed by the Secretary, on the recommendation of the assessors in the districts in which they were to work. They checked on the production of liquor within their districts and were paid by the collectors out of fees paid by the distillers whose production they supervised. Storekeepers were appointed by the Secretary and were paid a daily wage. By the Act of March 6, 1872 (17 Stat. 241) gaugers were provided salaries paid by the Government rather than by the firms for which the gauging was done.

As revenues declined after the Civil War, steps were taken to reduce the size of the administrative machinery. The number of deputy commissioners was reduced to two in 1874 and to one in 1876. The number of districts was reduced in 1876 and again in 1877. In 1883 President Arthur by Executive Order further reduced the number of collection districts to 82, but later in the year he increased the number to 83 and then to 84.

In 1879 (20 Stat. 329) the number of revenue agents was increased to 35. At the same time, provision was made for the payment by the Government of the salaries of deputy collectors who had formerly been paid by the collectors. The collectors' salaries were also changed by fixing a minimum of $2,000 if annual collections were below $25,000, and a maximum salary of $4,500 if the annual collections exceeded $1,000,000. This method of paying collectors remained in force until 1919.

From the end of the Civil War until 1875 the most serious problem which faced the Bureau of Internal Revenue was that of the whiskey frauds. From 1864 to 1868 the rate on distilled liquors was so high that a premium was placed on fraud and evasion. In addition, revenue inspectors received their compensation through fees paid by the distillers, which opened the way to bribery and fraud. After a Congressional investigation it was recommended that the liquor tax be reduced from $2.00 a gallon to 50¢, and this was done in 1868. As a result, the revenue increased enormously.

From 1871 to 1875 additional frauds occurred through a conspiracy known as the "Whiskey Ring". The principal feature of this conspiracy was the large scale corruption of government officials.

Howe (supra p. 198) describes the attempts to improve the collection of liquor taxes as follows:

"The perfection of the details of the service received but scant attention during the war; but with the growing familiarity of officials with its defects from the disclosures of the press, as well as the invaluable investigation of the Revenue Commission, the importance of administrative efficiency became apparent. A careful revision of so much of the law as related to the manufacture and assessment of distilled spirits was made at the

REPRODUCED AT THE NATIONAL ARCHIVES

 by. Finara Date N/A/04

- 12 -

instance of the Revenue Commission in the years immediately subsequent to the war, the leading feature of which was the subjection of each distillery to the direct surveillance of a government inspector, whose duty it was to oversee the process of manufacture and sale, and the assessment of the duty. While the change was conducive of greater fidelity on the part of weighers, gaugers and other officials, and placed an additional check upon them, the powerful inducements which could be offered by the dishonest distillers frequently neutralized the effect of the measure; and there was no provision for constant rotation of the inspectors from one still or district to another, as was suggested by the Commission, a provision which would have greatly enhanced the efficiency of the law. But the effect of this, as well as all other remedial efforts on the part of Congress, was checked by the dishonesty, complicacy, and inefficiency of officials, traceable in part at least to the system of appointment and retention in office for political services."

Collections by contract were attempted from 1872 to 1874. The Secretary of the Treasury was authorized to enter into such contracts by an apparently innocent provision in an appropriation act passed in 1872 (17 Stat. 69). A few months after this act was passed a contract was made with John D. Sanborn for the collection of taxes from 39 distillers and purchasers of whiskey. Shortly thereafter, another contract was made for Sanborn to collect taxes on estates and incomes of 760 persons. A third contract covering a list of about 2,000 names, including 350 foreign residents, was also executed. A fourth contract was made for Sanborn to collect taxes from 592 railroad companies. The supervisors and collectors of internal revenue were directed by the Secretary to assist Sanborn in his work. The Commissioner protested but was unable to do anything about the contracts.

All the contracts provided that Sanborn would receive 50 per cent of the gross amount collected, and he collected $427,000. In 1874 there was a House investigation of the whole procedure and it was found that no responsible official in the Treasury Department knew much about the matter. None of them was willing to accept responsibility, but none of them was found to have been influenced by corrupt motives. The committee also found that many of the taxes collected by Sanborn would have been collected in due course by the Bureau in the ordinary discharge of its duty. As a result of the committee's recommendation, the law authorizing collection by contract was immediately repealed.

In 1887 an Executive Order reduced the number of collection districts from 85 to 63.

The Act of August 2, 1886, which placed a tax on oleomargarine, authorized the Secretary of the Treasury to appoint an analytical chemist and microscopist, and also authorized the Commissioner to employ additional chemists and microscopists when necessary.



- 13 -

The McKinley Tariff Act of 1890 (26 Stat. 567) provided for a bounty on sugar obtained from products grown in the United States and provided that the bounty should be determined by the Bureau of Internal Revenue. The Commissioner protested against such a function being placed in the Bureau but Congress paid no attention and the Bureau administered the law until it was repealed in 1894. This required the employment of 12 sugar inspectors and many deputy collectors of internal revenue for special duty as sugar weighers.

The Wilson Tariff Act of 1894 (28 Stat. 508) revived the income tax and led to the establishment of the Income Tax Division in the Bureau of Internal Revenue. This Division functioned only a few months before the Supreme Court held the income tax unconstitutional.

When Howe wrote his book in 1896 (supra, p. 203) he described the administration as follows:

"In concluding this sketch of the years of experimentation by means of which the present perfected machinery for the garnering of the resources of the nation into the Federal Treasury has been brought about, it may not be inadvisable to describe in some detail the workings of the internal revenue department in the collection of the several taxes at present imposed. The ground plan of the system has not changed fundamentally from the outlines defined by Hamilton over one hundred years ago. As in the department of customs, the chief ministerial officer is the Commissioner, whose duties remain substantially as outlined in the Act of 1862 * * *. In recent years, with the gradual reduction of the system, there has been a tendency to centralize and simplify the collection of the taxes, as is seen in the abolition of the offices of district assessors, as well as in the reduction of the collection districts, of which there are at the present time but sixty-three. It is now the duty of the commissioner to make all inquiries, determinations, and assessments of all taxes and penalties, and to certify a list of such assessments to the collector of the proper district, who is authorized to collect and account for the same to the commissioner. The latter officials are appointed by the President, by and with the consent of the Senate, and must be residents of the districts in which they serve. Every collector before entering upon the duties of his office, is required to execute a bond, with not less than five sureties, conditioned upon the faithful performance of his duties. He is then empowered to appoint as many deputies as he may deem necessary, for whose actions he is, in a like manner, held responsible.

"In addition to the official force directly employed in the collection of the taxes, there are appointed by the commissioner a certain number of special agents, who are deployed from the central office for the purpose of checking any attempted evasion or suspected complicity on the part of other officials; while the Secretary of the Treasury is



- 14 -

authorized to appoint, wherever deemed necessary, a
certain number of gaugers and storekeepers * * *".

In 1909 increasing government expenditures led to the
enactment of a tax of 1 per cent on the net income of corpora-
tions in excess of $5,000. A Corporation Tax Division was or-
ganized in the Bureau to supervise the collection of this tax.

In 1918, after the Constitution had been amended, Congress
enacted a new income tax law (38 Stat. 166). The tax was im-
posed on individuals and corporation and the 1909 tax on cor-
porations was repealed. Following the enactment of this law,
the Personal Income Tax Division was created in the Bureau, and
the Corporation Income Tax Division continued to collect the tax
on corporations.

In 1913 the Overman Act (38 Stat. 208) authorized the appoint-
ment of bonded deputy collectors by the collectors without regard
to the civil service rules. This legislation was enacted as part
of the Urgent Deficiency Appropriation Act which came up soon after
the Democratic Administration took office in 1913. A series of
executive orders had been issued by Presidents Cleveland, Roose-
velt and Taft, concerning the status of deputy collectors. Cleve-
land put them under civil service, Roosevelt took them out and
Taft covered them into civil service again. The result of this
series of orders was that the positions of deputy collectors were
filled by Republicans who were protected by the civil service
rules. The Overman amendment to the Urgent Deficiency Appropria-
tion bill was designed to relieve the situation.

There is some doubt whether the amendment was necessary. In
the course of the debate, Senator Overman quoted an opinion of
the Attorney General, dated January 3, 1913, in which that of-
ficial held that the term of office of a deputy collector expires
automatically upon the appointment of a successor to his collec-
tor (50 Congressional Record, 5388).

The proponents in the House contended that the civil service
had been used by the Republican Party to create an enormous
political machine. They alleged that the deputy collectors had
been selected for political service and that the amendment was
not aimed at destroying the civil service, but was intended to
make an efficient service possible.

The opposition in the House contended that the deputy col-
lectors could be removed from office if they were inefficient,
and hence, it was unnecessary to remove the protection of civil
service from these jobs. It was contended further that the pro-
blem could well be solved by requiring the deputy collectors who
had been covered under civil service without examination, to
take an examination and permit them to hold their jobs only if
they passed it.

The same arguments were used in the Senate and in addition
it was asserted that the logic of the amendment would mean the

- 15 -

complete abolition of the civil service system. Senator Hughes, a Democrat from New Jersey, even went so far as to argue that the Overman amendment was contrary to the Democratic platform.

In 1941 when the Attorney General's committee on administrative procedure issued its report on administrative procedure in government agencies, it found that each collector nominated his own staff, subject to the approval of the Commissioner and the Secretary. The monograph points out that even stenographers had deputy collector's status and were required to post nominal bonds. At the end of the fiscal year 1939 there were about 8,500 permanent employees in the collector's office, but only a few of them were civil service employees (Administrative Procedure in Government Agencies, part 9, page 1, Senate Document No. 10, 77th Congress).

In 1914 the Bureau was required to enforce the regulatory provisions of the narcotics laws. The Harrison Act of December 17 (38 Stat. 785) regulated the use of narcotics and provided for the payment of a fee of $1.00 by every person dealing in narcotics, and the Commissioner was required to enforce it.

The World War brought about several changes in the administration of internal taxes, most of which arose out of the constantly increasing revenues of the Government. The first World War Act was the Revenue Act of October 22, 1914 (38 Stat. 745), but this was a temporary measure and had little effect on the administrative provisions. The Revenue Act of September 8, 1916, however, levied an estate tax, a capital stock tax, and a munition manufacturers tax, and these new taxes required new administrative machinery. An Estate Tax Division was organized in the Bureau, which employed a field force of investigators to examine returns and enforce the tax. The munition manufacturers tax was collected only two years but the capital stock tax is still in effect.

During 1917 a number of tax measures were being considered by Congress and the time consumed in their consideration placed a heavy strain on the Bureau. Many of the proposals would have modified the entire internal revenue system and would have necessitated reorganization of the administrative machinery. Consequently, the Commissioner maintained close contact with Congress and received confidential advance information on the proposals in order that he might keep the collection districts informed and prepared to administer new laws. During this period the duties placed upon the Bureau were both tax collecting and regulatory. It was selected as the agency to enforce the prohibition laws and other prohibitory measures.

The first revenue measure enacted after the declaration of war was the Act of October 3, 1917 (40 Stat. 300). This Act amended many previous laws and was very difficult to administer as a result. It levied an excess profits tax, and in order to interpret this part properly, the Secretary of the Treasury selected a group of excess profits tax advisors from business and professional men. In addition, the Bureau was reorganized



- 16 -

with the creation of new offices and divisions. All of the
collectors were placed under the direction of a supervisor of
collectors, and the 31 revenue agents were placed under the di-
rection of a chief revenue agent. These two officials were
made equivalent in rank to deputy commissioners.

During 1918 Congress debated a large tax bill, but it was
not enacted at the time the war ended, and finally a smaller bill
was approved on February 24, 1919 (40 Stat. 1057). Among other
things the new law placed a tax on the products of child labor
and a Child Labor Tax Division was organized to enforce it. This
Division was abolished when the act was declared unconstitutional
in 1922. The 1919 act also created a Supervisory Tax Board of
6 members appointed by the Commissioner with the approval of the
Secretary. The Board functioned for about 6 months and was fol-
lowed by a Committee on Appeals and Review, which was an inde-
pendent unit of the Bureau responsible only to the Commissioner.
The Committee's function was to hear and consider cases appealed
by taxpayers and to answer the questions asked by the income tax
unit.

The 1919 act also provided for the employment of 5 deputy
commissioners and adjusted the salaries of collectors, including
a provision that no collector should receive more than $6,000
a year. From 1919 to 1921 there were a number of shifts in the
functions of the various units and divisions having jurisdiction
over miscellaneous excise taxes. The ultimate development was
that a Sales Tax Unit supervised the collection of taxes which
were regarded as purely sales taxes, and the Miscellaneous Unit
supervised other excise taxes, such as stamp taxes, taxes on trans-
fers of stock and special taxes on businesses and occupations.

Prior to 1920 the revenue agents and inspectors outside of
Washington served all the units of the Bureau and investigated
cases involving all kinds of internal tax matters. They were
responsible to the chief revenue agent, who in turn was respon-
sible directly to the Commissioner. By 1920 the enforcement of
the income tax had become such a difficult problem that the Field
Auditing Division was created. The men assigned to this division
were charged with the investigation of income and excess profits
taxes, but were not required to do any other work. The Revenue
Act of November 23, 1921 provided for the appointment of a Tax
Simplification Board consisting of 3 public members appointed by
the President and 3 officers of the Bureau designated by the Secre-
tary. Its duties were to investigate the procedures used by the
Bureau and to make recommendations that would simplify them.

During the prohibition era the Bureau had great responsibilities
in connection with the enforcement of the liquor laws. This work
has been largely obviated by the repeal of the prohibition amend-
ment to the Constitution, and accordingly an extensive discussion
is unwarranted.

REPRODUCED AT THE
NATIONAL ARCHIVES

- 17 -

## V. Senate Investigation of 1924-1926.

On February 21, 1924 Senator Couzens introduced a resolution
calling for the appointment of a Special Senate Committee to investi-
gate the Bureau of Internal Revenue, and make recommendations for
corrective legislation.  The terms of the resolution authorized the
Committee to hold hearings but did not permit the employment of experts.
As first presented, the resolution contained several "whereas" clauses
indicating that there had been unnecessary delay in decisions of
income tax cases, that the delay had been characterized by inefficiency
on the part of the Bureau and implied that there had been fraudulent
and corrupt practices in the administration of the revenue laws.
The Finance Committee reported the resolution without the preamble,
but Senator Robinson stated that the resolution itself was broad
enough to enable the committee to make any investigation that circum-
stances indicated to be necessary.

Senator Couzens stated in the debate that his reason for intro-
ducing the resolution was the public criticism which had been leveled
at the Bureau.  There were complaints about arbitrary and unreasonable
assessments, delays in final determinations, and many other injustices.

The resolution was adopted March 12, 1924 and on March 14, the
Special Committee held hearings which lasted until April 9.  On
April 10 Secretary Mellon sent a letter to the President in which he
stated that he approved the purposes of the resolution but that
Senator Couzens had conducted the hearings in such a way that he
was convinced that their sole purpose was to vent some personal
grievance against himself.  He alleged that the Committee attempted
only to investigate companies in which he was interested and that
they had failed to show any favoritism but had abandoned all con-
structive purposes.  Mellon's letter stated further that the Committee
had adopted a resolution authorizing Francis J. Heney to conduct the
investigation on the understanding that neither the Committee nor
the Government would pay him any compensation, but he would be paid
by Senator Couzens.  Mellon charged that the investigation injured
the efficiency of the Bureau and the taxpayer suffered because the
morale of the 60,000 employees of the Department was impaired.  He
stated "If the imposition of private resources be permitted to
interfere with the executive administration of government, the
machinery of government will cease to function."  The letter con-
cluded with this statement: "When, through unnecessary interference,
the proper exercise of this duty is rendered impossible, I must
advise you that neither I nor any other man of character can longer
take responsibility for the Treasury.  Government by investigation
is not government."

On the 11th of April President Coolidge sent a message to the
Senate attaching a copy of Secretary Mellon's letter.  In his message
the President said that he would always lay before the Senate any
information that was not of a confidential nature, but that the
attack being made on the Treasury went beyond any legitimate require-
ments.  Coolidge alleged that the appointment of an agent and attorney
to act in behalf of the United States but to be paid from some
source other than Treasury, violated an act of 1917, and that this
unwarranted intrusion must be resisted by the Executive.  He stated,
"Under a procedure of this kind the Constitutional guarantee against
unwarranted search and seizure breaks down * * *".  The conclusion



- 18 -

of the letter was, "If it is to continue, if the government is to
be thrown into disorder by it, the responsibility for it must rest
on those who are undertaking it. It is time that we return to a
government under and in accordance with the usual forms of the
law of the land. The state of the Union requires the immediate
adoption of such a course."

A very spirited debate followed the receipt of the President's
message and political charges of all kinds were made. Preparations
were being made for the political conventions to nominate Presidential
candidates, and the Senators of both parties tried to turn this
dispute to their political advantage.

In the course of the debate Senator McKellar quoted a letter
which had been received a few days before by one of the members of
the Committee from Secretary Mellon. In it Mellon stated that he
felt the Committee should make an immediate investigation in order
to satisfy itself and the public whether or not the companies in
which he was interested had received any favor from the Government.
A few days later he sent the letter described above to the President.
Senator Robinson attacked the validity of the statements made by
Mellon on the ground that it was impossible to interfere with the
efficiency of the Bureau or demoralize the 60,000 employees of the
Treasury by merely asking for the tax returns of the companies in
which Mellon was interested. No demand had been made that the records
be furnished but Mellon had turned them over to the Committee
voluntarily. He also pointed out that there could be no violation
in this instance of a Constitutional guarantee against unwarranted
search and seizure because that section protected private citizens
and was not a guarantee to public officials against publicity of
their records.

Senator Borah pointed out that when an investigating committee
demanded certain files from the Attorney General, and he refused
to furnish them because they were confidential, the President
requested the immediate resignation of the Attorney General. On
the other hand, when the Secretary of the Treasury manifested
impatience and resentment toward an investigation of tax returns
in which he was interested, the President assumed an entirely
different attitude and sent a message to the Senate seeking to call
a halt to the investigation.

The question of prohibition enforcement was also dragged into
the argument, as it had been charged that the Bureau was not making
a sufficient effort to enforce the law. The principal issue was
whether Secretary Mellon had any connection with a forged liquor
permit on the basis of which a saloon keeper in Pittsburg had
obtained a large quantity of whiskey from a bonded warehouse.

Some of the senators attempted to defend Senator Couzens' action
in agreeing to pay Mr. Heney's salary himself but ultimately the
Senate amended the earlier resolution so as to permit the Committee
to hire experts.



- 19 -

Additional hearings under the new resolution were held from
November 20, 1924 until June 1, 1925. On January 12, 1926 the
Committee filed a partial report and on February 2 filed the second
part of its report. The minority views were published on February 26.

The hearings were extremely voluminous, but consist primarily
of the examination and discussion of particular cases which had been
before the Bureau. There were, however, a number of references to
the adequacy of the administrative machinery.

The Committee heard the testimony of Frank E. Frazier, a former
employee of the Bureau, on the question of decentralizing the work
of the Bureau. Frazier pointed out that there were two field organ-
izations in the Bureau. One was the collection service, under the
supervision of 65 collectors, which had 7,000 people and was charged
with the collection of revenue and the auditing of individual income
tax returns below $15,000. Most of its employees were not covered
by the civil service rules. The second field organization was the
force of 8,000 people known as internal revenue agents and inspectors,
who were under the direction of 34 internal revenue agents in charge.
The people in the agents' offices were all civil service employees,
but did not do much auditing except in those cases referred to them
by Washington. Frazier pointed out that 7,000,000 returns were
audited in the field and the work in Washington was considerably in
arrears. He stated that it was his opinion that all auditing ought
to be done in the field.

Mr. Nash, the Assistant Commissioner of Internal Revenue, stated
that further decentralization had not taken place because there was
not a proper organization for the auditing of all returns in the field.
His reasons for this statement were that the men in the field were
not all civil service employees, were not technically qualified to
handle difficult returns, and were not paid high enough salaries.

Mr. Hartson, Solicitor of the Bureau, testified that decentral-
ization promotes a lack of uniformity in the rulings. He stated
that it is desirable to get taxpayers' cases settled, but it is more
important to the same taxpayer to be treated the same way that other
taxpayers in other jurisdictions are treated.

Mr. Frazier concluded by proposing that the Overman Act be
repealed, all the field forces, except the prohibition forces, be
consolidated, and that the auditing of practically all income tax
returns be done in the field. He predicted that this would speed
up the work of the Bureau, and that its appropriations could be
reduced by several million dollars at an early date.

At a later point Mr. Nash testified to the same effect as
Mr. Frazier that there were two field organizations, one under the
collectors, which was not civil service, and one under the agents,
which was civil service. He said that he would like to see all of
the field work under one administrative head, but that he did not
believe the problem could be solved by combining the collectors'
offices and the agents' offices because so many of the collector's



REPRODUCED...
...NARA DRIC...

- 20 -

employees were political appointees. Nash testified that the men in the agents' offices did a higher type of work and received on the average, higher salaries than the deputy collectors.

Senator King, who was a member of the Committee, stated that he felt it would be better to have one organization and have it responsible to Washington, rather than to local collectors. He wanted to know whether Secretary Mellon would sponsor such a move and whether it would be approved by the Treasury Department. Mr. Nash stated that it had been studied very carefully by the Treasury, but that any such proposal would require a drastic change in the law in order to keep the efficient people who did not have civil service status but who should stay in the internal revenue service. Senator King expressed his view as being that the duties of the collectors should be transferred to the revenue agents.

VI.  Senate Committee Report of 1926.

The investigation of the Special Senate Committee dealt primarily with the administration of the income and estate taxes. In addition, there were investigations of the administration of the prohibition laws and of the reasons for yearly variations in taxable income. In its first report the Committee took up the investigation of the income tax administration and stated that a subsequent report would be filed on this same subject. Apparently the second report has never been filed.

The two principal abuses which the Committee found in the administration of the income tax were allowances for discovery depletion and allowances for amortization of war facilities. In connection with depletion allowances the Committee found that Bureau officials superior to the engineers, were setting aside sound determinations of value and substituting excessive ones on the basis of analytic appraisals. This practice was forbidden by the regulations, but the regulations were being consistently ignored and the Committee recommended an amendment to the law. The Committee also found that the head of the Engineering Division was unfit to hold his position and that there was a growing tendency to make a production record regardless of principle and to give persistent and influential taxpayers anything they demanded in order to reach a settlement. The abuses found in connection with the amortization of war facilities were numerous and consisted of complicated methods of allowing greater amortization than was permitted by the revenue laws. On this point the Committee report states that taxes on about $140,000,000 of amortized values could be saved if Congress took prompt action.

The Committee also found that it was the Commissioner's consistent policy to exceed his authority to compromise taxes and in many cases he gave unsecured creditors and stockholders of insolvent corporations precedence over claims for taxes. The Committee concluded that the fraud penalty was never enforced by the Commissioner.



- 21 -

The administrative reasons behind these abuses were discussed
in detail by the Committee. The report states that the "practically
unlimited discretionary power vested in the Commissioner of Internal
Revenue" was really being exercised by the heads of the divisions
of the Bureau. There were no adequate rules or restrictions govern-
ing the division heads and their work could not be reviewed unless
a taxpayer was dissatisfied with their determinations or a refund
in excess of $50,000 was involved. Even subordinates within the
divisions were unable to protest, because it was the policy of the
income tax unit to discourage complaints and protests by employees,
and no direct communication with the Solicitor or the Commissioner
was permitted.

One of the principal defects discussed by the Committee was the
failure to publicize principles and practices to be followed in the
determination of tax liability. They found that this resulted in
gross discrimination because employees of the Income Tax Unit had
no uniform principals to follow; that taxpayers often failed to
claim allowances because they did not know that similar allowances
had been granted to others; that because precedents were not published,
taxpayers were forced to employ former employees of the Income Tax
Unit to advise them in tax cases, which placed an artificial premium
on the value of the services of such persons and enabled them to
charge excessive fees; that the demand for the services of ex-employees
of the Bureau caused an enormous turnover in the personnel of the
Bureau; and that because of the unsettled state of the law, many
claims were filed which should be settled by precedents.

The Committee concluded that the publication of rulings would
be the strongest possible deterrent against the making of unsound
rulings, but that instead of following such a course, it was the
policy of the Bureau to fix taxes by bargain so that the most per-
sistent trader got the lowest tax. Although the Committee recognized
that there were objections to throwing open the records of the Income
Tax Unit to the public, it suggested the necessity of giving an
opportunity for some outside scrutiny to protect the public against
discrimination.

In connection with the investigation of alleged delays in the
closing of tax cases, the Committee found that many delays took place
and were the result of bargaining with the taxpayers and the granting
of many extensions of time to furnish information required to determine
the validity of deductions.

On February 6, 1926, more than three weeks after the filing of
the majority report, two of the five members of the Committee filed
a report containing the minority views. In it they severely criticized
the majority for their handling of the investigation and the report,
and they also attempted to refute all of the criticisms made in the
majority report.

The comments on the Committee procedure were that most of the
cases discussed in the report had not been the subject of hearings
but had been examined after the close of the hearings from photostats
made from internal revenue files. The report was prepared by counsel
and the Bureau was given an inadequate opportunity to comment on it.



- 22 -

The Committee never met to discuss the report and it was published hastily, giving an erroneous impression to the public of the state of work in the Bureau.

With respect to the comments of the majority on administrative procedure in the Bureau, the minority made several arguments. First, they stated that the Committee had never examined the Bureau procedures at first hand as they had been invited to do by the Bureau officials. Second, they contended that the practice of delegating authority to division heads was justified, because it would be impossible for all the activities of the Bureau to be under the direct personal supervision of the Commissioner. The minority believed that the review procedures were adequate and that every step possible had been taken to protect the interests of the Government. The minority also contended that an enormous number of rulings and regulations had been published and that the bulletins in which rulings appeared had, for the preceding two years, contained a statement on the cover that "no unpublished ruling or decision will be cited or relied upon by any officer or employee of the Bureau of Internal Revenue as a precedent in the disposition of other cases." Finally, the minority attempted to show that the Bureau had accomplished a great deal against very serious obstacles.

The number and amount of taxes had been increased enormously between 1916 and the end of the investigation, which had caused the Bureau to expand its personnel in an attempt to handle the volume of work. In addition, new types of taxes were imposed and a great many new duties were imposed on the Bureau. The minority felt that the Bureau had overcome the greatest difficulties and had succeeded in becoming practically current in its work. They felt that the investigation had been limited to individual cases and had not gone into over-all accomplishments of the Bureau. The concluding paragraph of the minority report is as follows:

"The accomplishments of the bureau in collecting more than $30,000,000,000 in revenue and in auditing and closing 58,000,000 cases has been subjected for the last year and three months to this type of critical investigating by the investigating committee and its staff, composed of some 50 lawyers, engineers, accountants, and clerks. It has resulted in a criticism of various regulations which had received the approval of two administrations and many competent and able authorities on taxation, besides disclosing a difference of judgment in some specific cases. The investigation has disclosed no hint of any irregularity or fraud. That the bureau can so successfully withstand such a searching and critical investigation is a great tribute both to its present and past officials and employees. The bureau is entitled to the respect, admiration, and praise of the Congress and of the country for the honest and efficient way in which it has performed its work."



- 23 -

VII. Recent Developments in Administration.

When the office of the supervisor of collectors was
abolished some time after 1920, a new procedure was established
for the examination of collectors' offices. The men who had
been employed by the supervisor of collectors under civil service
became supervisors of accounts and collections. They were placed
under the direction of a Deputy Commissioner and organized
into an Accounts and Collections Unit created in 1922. They
have been used to supervise the personnel of collection districts,
to train new personnel, and to speed up collection drives in
districts where receipts lag. The purpose of their audit of
the collectors' books is to maintain agreement between the
collectors' books and the amounts charged against them at the
Bureau in Washington. They also report on the general efficiency
of the employees, and before the bulk of collectors' employees
were covered under civil service, they reviewed efficiency
ratings and had considerable control over the personnel of the
collectors' offices.

When benefit of legislation the Bureau took steps in
1927 to improve the work of the collectors' offices, particularly
where inadequacies resulted from the fact that the collectors
were political appointees. Collectors were persuaded in most
instances to appoint their chief deputies or chief clerks as
"Assistant to the Collector". At the time this was done there
was no requirement that the Assistant to the Collector be a
civil service officer, but in many cases the men appointed were
under the civil service. According to the Internal Revenue
Manual (1936) the Assistant to the Collector is under the
general direction of and responsible to the collector. It
is his duty to plan, organize, coordinate, supervise, and be
directly responsible for the operations of the office organization.
He assumes the duties of the collector in the collector's
absence. The chief weakness of this office is that the collector
is free to choose any member of his staff and to change assistants
at will.

In 1926 Congress authorized the President with the consent
of the Senate to appoint a Special Deputy Commissioner of Internal
Revenue. This official has such duties as are prescribed by the
Commissioner or authorized by law. (44 Stat. 126).

The Act of May 29, 1928 (45 Stat. 882) provided that the
salaries of collectors of internal revenue could be readjusted
and increased under regulations prescribed by the Commissioner
with the approval of the Secretary. It also limited the amount
received by any collector to $7,500 per year.

On March 2, 1929 legislation was enacted (45 Stat. 1496)
changing the salaries of storekeeper-gaugers from a per diem
basis to annual salaries based on their then existing per diem
rates.



REPRODUCED AT THE NATIONAL ARCHIVES

- 24 -

In 1934 an act was passed (48 Stat. 758) which reorganized the legal branch of the Bureau of Internal Revenue. Prior to the enactment of this law there was a Solicitor of the Treasury who had powers in a limited field not assigned to other legal officers of the Department, a General Counsel for the Bureau of Internal Revenue, an Assistant General Counsel for the Bureau, and an Assistant Solicitor of the Treasury.

The report of the House Committee on Ways and Means stated that "there is no responsible legal officer in the Treasury with power to coordinate the legal work of these separate groups of lawyers and to prevent waste and duplication of effort among them" (report No. 704, 73rd Congress, page 40).

The new law created the office of General Counsel, who is appointed by the President with the advice and consent of the Senate. In addition, the President is authorized to appoint, with the consent of the Senate, an Assistant General Counsel for the Bureau of Internal Revenue. Five other Assistant General Counsels were authorized to assist the General Counsel in the performance of his duties, but these appointments are made by the Secretary of the Treasury and only the Assistant General Counsel for the Bureau is appointed by the President and confirmed by the Senate.

The General Counsel is vested with the powers, duties, and functions of the General Counsel for the Bureau of Internal Revenue, the Assistant General Counsel for the Bureau of Internal Revenue, the Solicitor of the Treasury, and the Assistant Solicitor of the Treasury, all of which offices were abolished.

The Revenue Act of 1934 in which these provisions relating to the legal staff of the Treasury were incorporated, had been introduced for the purpose of increasing the revenue by preventing tax avoidance. Numerous amendments were made in the rate structure and in the detailed technical provisions of the tax laws. In the course of the debate Congressman McFadden made a speech concerning the information which had been accumulated concerning former Secretary Mellon's administration of the Bureau. In addition to criticizing the confidential rulings which were used extensively during Mellon's administration and the compromises which were entered into at that time, Congressman McFadden severely criticized the treatment which had been accorded employees of the Bureau. He alleged that employees were liberally rewarded at the Government's expense if they assisted Mellon to enrich himself, or the companies in which he was interested, through the avoidance of taxes. He alleged further that those who did not serve Mellon's purposes could not advance and those who dared to question his activities were "demoted, dismissed, dishonored and disgraced". He also contended that civil service employees of the Bureau were never granted the hearings to which they were entitled under the law if their status was affected by the action of Mellon or his associates.



- 25 -

In 1938 two new divisions concerned with taxation problems were created by administrative action. These were the Division of Tax Research and the office of the Tax Legislative Counsel. Although neither group was supposed to be a part of the Bureau or responsible to the Commissioner, their salaries and expenses were paid out of the annual appropriations for the Bureau. The Treasury Department Appropriation Act, 1944 (57 Stat. 250) is the first legislative reference to these divisions. Separate appropriations have been provided for them since June 30, 1943.

In 1938 Secretary Morgenthau decided to decentralize the settlement machinery of the Bureau of Internal Revenue. The purpose of decentralization was to creat a single unified settlement and trial agency with office facilities which were near the taxpayer's residence or place of business. The program is described in an article by Milton E. Carter, an official of the Bureau, in 17 Taxes 403 (1939) and there is a more detailed discussion in Part 9 of the monograph of the Attorney General's Committee on Administrative Procedure.

The Technical Staff of the Bureau of Internal Revenue was created for the purpose of carrying out the decentralization policy. That Staff exercises all the authority of the Secretary of the Treasury and the Commissioner of Internal Revenue in the review of protested tax determinations made by Internal Revenue agents in charge, and in the settlement of contested cases and their defense before the Court of Tax Appeals. The Technical Staff is charged with the disposition by settlement or trial of the many protested cases which arise each year. In 1939 it had ten field divisions and 38 permanent local offices. They grant hearings to taxpayers who request them after having failed to reach agreement with the investigating internal revenue agent. If the taxpayer declines to accept the determination of the Technical Staff the case is returned to the internal revenue agent in charge, who issues a notice of deficiency. Appeals by taxpayers to the Court of Tax Appeals again bring the case back to the Technical Staff which considers them with a view to settlement by agreement.

The Technical Staff operates under the general supervision of the Commissioner and has representatives of the Chief Counsel attached to each field office. The local member of the Chief Counsel's office must concur in settlements negotiated after appeals have been made to the Court of Tax Appeals, and they also try the cases which are not settled at this point.

The Monograph of the Attorney General's Committee criticizes some details of the decentralization program but gives it general approval and considerable praise for the speed with which it was organized and put into operation.



- 26 -

During the Senate's consideration of the Revenue Act of 1942, an incident occurred which illustrates in a striking manner the relationship of the Secretary of the Treasury and the Commissioner of Internal Revenue. This incident led to the enactment of a statute (Internal Revenue Code, section 5012) which made a very important change in the relationship of the Treasury and Congress on tax matters.

The Revenue Bill supported by the Secretary provided for withholding personal income taxes at the source. The Secretary testified before the House Committee that it was the best available expedient to achieve a more convenient method for the payment of income taxes. Notwithstanding the Secretary's testimony, and without notifying the Secretary of his intention to do so, the Commissioner appeared before the same Committee and testified in very emphatic terms that the provision was administratively unfeasible. The Commissioner gave similar testimony in even more emphatic terms before a Subcommittee of the Senate Committee on Finance, again without obtaining the Secretary's consent.

As a result of this conflicting testimony the Senate Committee proposed an amendment to the bill authorizing the Joint Committee on Internal Revenue Taxation or its chief of staff to obtain any information directly from the Bureau (including the Assistant General Counsel for the Bureau) or directly from any other department or agency. In defending this provision during the debate, Senator Clark of Missouri said:

> "The views of the general headquarters contingent, so to speak, and the 'brain trust' of the Treasury Department, were expressed at great length to the subcommittee, and it was casually said that the Bureau of Internal Revenue was being represented at that time by a young man whom I did not know. I went out and called up the Commissioner of Internal Revenue who had the actual administration of the measure in hand, and asked him to come up and appear before the committee. He told me he could not do it without the permission of the Secretary of the Treasury. I wrote the Secretary of the Treasury and gave the committee views in direct divergence, just as far as they possibly could be, from the views which had been expressed on his behalf by the Treasury officials themselves, and as the result of the information he gave the committee, the committee saw fit to make a very radical change in the proposal, in fact to make a complete divergence." (Cong. Rec., DI, October 9, 1942, p. 8271).

Senator Barkley tried to amend the proposal by requiring the Joint Committee or its chief of staff to secure information through the heads of the departments and agencies but his amendment was defeated by a vote of 74 to 10.

The Act of June 9, 1943 (57 Stat. 150) authorized the President with the consent of the Senate to appoint two Assistant Commissioners in the Bureau of Internal Revenue. This act also abolished the office of Assistant to the Commissioner, which had been created in 1919. The Assistant Commissioners perform such duties as may be prescribed by the Commissioner or required by law.



- 27 -

## VIII. Existing Laws Relating to the Administration of the Bureau.

There has never been any statutory creation of the Bureau of Internal Revenue, although the Bureau is mentioned in several statutes, including statutes relating to the social security taxes (Internal Revenue Code, sections 1420, 1530, and 1605), the provisions relating to the narcotics tax (Internal Revenue Code, sections 2550 and 2605), and those relating to the power of the Joint Committee on Internal Revenue Taxation to obtain information (Internal Revenue Code, section 5012).

### A. Statutory Relationship of the Secretary and the Commissioner.

The Commissioner of Internal Revenue is appointed by the President by and with the advice and consent of the Senate. The office is created in the Department of the Treasury, and the Commissioner is entitled to a salary of $10,000 per year (Internal Revenue Code, section 3900). The next section of the Internal Revenue Code sets forth the powers and duties of the Commissioner. It begins with the phrase "The Commissioner, under the direction of the Secretary---." It is obvious, therefore, that the position of the Commissioner of Internal Revenue is not endowed by legislation with any peculiar attributes which are not attached to a number of other officials of the Department who are responsible to the Secretary of the Treasury, although they are appointed by the President and confirmed by the Senate.

Section 3901 continues with the provision that the Commissioner, under the direction of the Secretary, shall superintend generally the assessment and collection of all taxes providing internal revenue, and he is also to prepare and distribute the instructions, regulations, drafts, forms, blanks, stamps and other matters pertaining to the assessment and collection of internal taxes.

The internal tax laws impose a number of functions and duties upon the Commissioner with respect to the various taxes. In nearly all instances, however, the authority granted him may be exercised only with the approval of the Secretary of the Treasury. There are literally hundreds of references in the Internal Revenue Code to the authority of the Commissioner being exercised only with the approval of the Secretary. This is true of practically all of the functions which involve the exercise of a considerable amount of discretion. An examination has been made of the Internal Revenue Code for the purpose of determining the functions of the Commissioner which he exercises without the specific approval of the Secretary. Several such instances have been found, but they are generally of minor importance, and it should be noted that even in these cases the Commissioner is



- 28 -

probably subject to the direction of the Secretary pursuant to the terms of section 3901 of the Internal Revenue Code.2/ With respect to narcotics and liquor taxes, the Secretary is authorized to transfer duties and functions freely irrespective of the statutes relating to the Commissioner of Internal Revenue.  (Internal Revenue Code, sections 2606 and 3170).

It is apparent from an examination of the statutes that Congress has been careful to preserve the power of the Secretary to supervise and direct the activities of the Commissioner.  Any difficulties that have arisen in this connection must, therefore, have been the outgrowth of administrative practices and the laws relating to the appointment and service of other officers of the Bureau.

B.  Relationship of the Collectors to the Commissioner and the Secretary.

The collectors of internal revenue are appointed by the President with the consent of the Senate, but the statutes relating to their appointment and duties do not indicate to whom they are responsible.  Very little has been found which indicates how the existing relationships developed.  It seems clear, however, that the practice is to make the collectors responsible to the Commissioner.  The Internal Revenue Manual (1936) is issued for the information and guidance of collectors and their employees.  It is signed by the Commissioner of Internal Revenue and approved by the Acting Secretary of the Treasury.  In its description of the functions and responsibilities of the collector, it states (section 2) "the collector of internal revenue is under the general administrative direction of, and is responsible to, the Commissioner of Internal Revenue for the administration of the internal revenue service in his district; * * *".  It is apparent,

2/ The Commissioner is authorized to approve certain types of accounts maintained by taxpayers (sec. 41); to allocate income and deductions between corporations having identical ownership (sec. 45); to require bonds when credit is allowed for foreign taxes (sec. 131); to close the taxable year, make assessments and abate them when taxes are in jeopardy or taxpayer is about to leave the United States (secs. 146, 872, 3660); to obtain specified types of information from corporations (sec. 148); to require information concerning deductions and credits allowed to non-resident aliens (sec. 213); to extend time for payment of taxes on unjust enrichment, require bonds and settle claims involving the same tax (secs. 702 and 705); to adjust abnormalities affecting income subject to excess profits taxes (sec. 722); to extend time for payment and require bonds in connection with the estate tax and deficiencies (secs. 822 and 871); to prescribe stamps and the method of affixing and cancelling them (secs. 1809, 1815 and 1816); to prescribe the form of inventories and books under the tobacco taxes (secs. 2017, 2018, 2036, 2037, 2055 and 2056); to issue



- 29 -

therefore, that the Secretary, the Commissioner and the Collectors operate on the basis of direct responsibility of the collectors to the Commissioner.

Whatever power the Secretary may exercise over the actions of the collectors stems from the Secretary's general authority with respect to the Commissioner. As noted in an earlier part of this memorandum, the Commissioner acts "under the direction of the Secretary". In addition the Secretary has authority to suspend collectors but only in cases of fraud, gross neglect of duty, or abuse of power. (Internal Revenue Code, section 3942 and Reorganization Plan No. II, sec. 404).

C.  Existing Laws Relating to Subordinate Positions
    in the Bureau.

In addition to the Commissioner the statutes in effect today provide for the appointment by the President, with the consent of the Senate, of two Assistant Commissioners. The President also has authority, with the consent of the Senate, to appoint a Special Deputy Commissioner. There are five other deputy commissioners employed in the Bureau pursuant to section 3915 of the Internal Revenue Code. The statutes also provide for the appointment by the Secretary of an analytical chemist and a microscopist and the legal staff described above.

Sections 3940 and 3941 of the Internal Revenue Code authorize the President with the consent of the Senate to appoint a collector for each of the 65 internal revenue districts. The President is also authorized to consolidate collection districts. The salaries and allowances for expenses of collectors are determined by the Secretary upon the recommendation of the Commissioner. This control of salaries provides the Secretary of the Treasury with considerable power over the appointment and continuance in office of collectors. In addition to the initial determination of salaries, the Secretary has the right to approve or disapprove regulations prescribed by the Commissioner, readjusting and increasing the salaries of collectors.

---

2/continued.
regulations on bulk sales of tobacco free of tax (sec. 2101); to issue regulations requiring cigar and cigarette labels to show taxes paid (sec. 2111); to issue regulations on the destruction of forfeited tobacco (sec. 2190); to determine margarine substances subject to tax and deleterious to health (sec. 2311); to require persons to file returns, furnish information and keep records (sec. 3603); and to sanction tax suits (sec. 3740).

REPRODUCED AT...
BY NARA DATE 10/8/...

- 30 -

Each collector is authorized by section 3990 of the Internal Revenue Code to appoint as many deputies as he thinks proper and to revoke their appointments. These powers were transferred to the Secretary of the Treasury by section 404 of Reorganization Plan No. II, May 3, 1939. Deputy collectors are compensated by such allowances as the Secretary provides upon the recommendation of the Commissioner. If a collector is sick or absent, the senior deputy performs his functions, and if there is a vacancy he discharges the collector's functions until a successor is appointed. All deputies continue to act until a new collector is appointed to fill a vacancy.

The Commissioner has authority under section 4000 of the Internal Revenue Code to appoint internal revenue agents and to assign them to duty under the direction of any officer of the Bureau or such special duties as he deems necessary. The appointment power was transferred to the Secretary in 1939 by Reorganization Plan No. II.

Bonded storekeeper-gaugers are appointed by the Secretary under section 4010 of the Internal Revenue Code. They are paid annual salaries and traveling expenses. One or more must be assigned by the Commissioner to every internal revenue bonded warehouse. Whenever storekeeper-gaugers are not employed upon their regular duties, they may be assigned to such duties as the Commissioner shall designate.

D.  Civil Service Status of Employees.

None of the officials appointed by the President with the advice and consent of the Senate are civil service employees. These include the Commissioner, the two Assistant Commissioners, the Special Deputy Commissioner, the Assistant General Counsel for the Bureau of Internal Revenue and all collectors of internal revenue.

Under the terms of the Overman Act of 1918 deputy collectors of internal revenue were not covered by the civil service laws, and by 1939 practically all of the positions in the offices of the collectors were classified as deputy collectors. Accordingly, there were very few civil service employees on the collectors' staffs. The employees of the internal revenue agents on the other hand are almost entirely civil service employees. In 1934 the Civil Service Commission contended that clerks and other employees in the offices of collectors should not be deputy collectors appointed outside the civil service. The Commissioner argued that the practice of the collectors was authorized by the Overman Act. On September 13, 1934 Mr. Oliphant, then General Counsel of the Treasury, wrote an opinion in which he concluded that it was not the intention of Congress that clerical help in collectors' offices be appointed deputy collectors, and thus be exempted from civil service requirements. It is not known what action resulted from this opinion of the General Counsel.



- 31 -

In 1940 Congress authorized the President to issue executive orders covering into the classified civil service any offices or positions in the Executive Branch of the Government with certain specified exceptions. There were no exceptions affecting the Bureau of Internal Revenue, except that the executive orders could not affect officials appointed by the President with the advice and consent of the Senate.

On April 23, 1941 the President issued Executive Order 8743, which covered into the classified civil service all Government employees not so covered, with certain stated exceptions. Positions excepted from the classified civil service under Schedules A and B of the Civil Service Rules were not covered by the Executive Order. These schedules make only one reference to employees of the Bureau of Internal Revenue, which is as follows:

"* * * special employees for temporary detective work in the field service of the Bureau of Internal Revenue under the appropriation for detecting and bringing to trial and punishment persons violating the internal revenue laws. Appointments under this paragraph shall be limited to persons whose services are required because of individual knowledge of violations of the law, and such appointments shall be continued only so long as the personal knowledge possessed by the appointee of such violation makes his services necessary.* * *"

Accordingly, all positions in the Bureau of Internal Revenue, including deputy collectors, are now covered into the classified civil service with the exception of those officials appointed by the President with the consent of the Senate.

*Arnel O Lunford*
*Richard J. Dunnes*

5b /450/57/16/06
Box 174

**EXHIBIT L**
Letters to Chief Counsel William Smith, and Chief Counsel Preet Bharara of the U.S. Committee
on the Judiciary, and to Senator Christopher S. "Kit" Bond, and Senator Claire McCaskill.
(6 pages)

Certified Mail: <u>7007 0220 0000 6951 6393</u>

Carl Roger Davis and Jo Elaine Davis
c/o PO Box 6207
Branson, Missouri [65615]

December 13, 2007

William Smith, Majority Chief Counsel
Preet Bharara, Minority Chief Counsel
US Committee on the Judiciary
Subcommittee Administrative Oversight/Courts
224 Dirksen Senate Office Building
Washington, D.C. 20510

Dear Chief Counsels William Smith and Preet Bharara:

I/We, Carl Roger Davis and Jo Elaine Davis are seeking assistance regarding the United States Government's perpetual invasion into our lives. Life as we knew it was turned upside down when more than 10 unknown IRS agents conducted an armed raid on the Family Farmhouse Restaurant on November 24, 2004. Thereafter, we were subpoenaed to appear before a Federal Grand Jury and testify on December 15, 2004 and failed to appear because we believed we had a Fifth Amendment right not to witness against ourselves. In response to our misguided attempt to exercise that right, we were arrested and jailed for contempt.

Since then, we have filed lawsuits against the Internal Revenue Service (IRS) agents who unlawfully raided and seized our property and against the United States, seeking damages, and declaratory and injunctive relief on various grounds. One key issue we have raised is that Congress clearly *prohibits the prosecution* of taxpayers for alleged violation of the internal revenue laws (civilly and criminally) at Title 26 U.S.C. § 6213(a), which states in part that "*. . . no . . . proceeding in court . . . shall be . . . prosecuted until such notice (of deficiency) has been mailed to the taxpayer . . .*" yet, the IRS has failed to comply with this mandatory act of Congress, as we have never been issued a notice of deficiency. Thus, we are of the conviction that we should not be prosecuted for this and other reasons.

We are aware that the federal Courts routinely abuse process to their discretion (especially when the United States is a plaintiff or defendant), and we do not wish to be victims of that abuse. For example, in previous litigation, none of which was political (see case #1:05-CV02474-RMC, U.S. District Court for the District of Columbia; case #07-3039-CV-S-RED, U.S. District Court for the Western District of Missouri, Southern Division; and case #6:06-cv-03201-RED, United States District Court for the Western District of Missouri (Springfield)), each of our cases were dismissed without explanation or reason in spite of our efforts to obtain a fair and equitable remedy.

Hence, we have no confidence in the judicial system and are seeking your assistance for oversight of the judiciary so that we might have an equal opportunity to judicially resolve the issues of facts and law raised instead of continually being denied access to the courts. Enclosed,

William Smith, Majority Chief Counsel
Preet Bharara, Minority Chief Counsel
December 11, 2007
Page 2

please find a copy of our First Amended Complaint for your review. If you could take a few moments from your busy schedule to review this case, it would be greatly appreciated – our lives, liberty and property depend on it. Thank you for your kind indulgence and consideration regarding this most serious matter.

Truly Yours,

Carl Roger Davis

Jo Elaine Davis

Enclosure:
First Amended Complaint with Exhibits

**Mail to:**

The Honorable Christopher S. "Kit" Bond
United States Senate
274 Russell Senate Office Bldg
Washington, D.C. 20510-2503
Certified Mail: 7007 0220 0000 6951 6409


The Honorable Claire McCaskill
United States Senate
717 Hart Senate Office Bldg
Washington, D.C. 20510-2504
Certified Mail: 7007 0220 0000 6951 6393

Certified Mail: 7007 0220 0000 6951 6409

Carl Roger Davis and Jo Elaine Davis
c/o PO Box 6207
Branson, Missouri [65615]

December 13, 2007

The Honorable Christopher S. "Kit" Bond
United States Senate
274 Russell Senate Office Bldg
Washington, D.C. 20510-2503

Dear Senator Bond:

I/We, Carl Roger Davis and Jo Elaine Davis are seeking assistance regarding the United States Government's perpetual invasion into our lives. Life as we knew it was turned upside down when more than 10 unknown IRS agents conducted an armed raid on the Family Farmhouse Restaurant on November 24, 2004. Thereafter, we were subpoenaed to appear before a Federal Grand Jury and testify on December 15, 2004 and failed to appear because we believed we had a Fifth Amendment right not to witness against ourselves. In response to our misguided attempt to exercise that right, we were arrested and jailed for contempt.

Since then, we have filed lawsuits against the Internal Revenue Service (IRS) agents who unlawfully raided and seized our property and against the United States, seeking damages, and declaratory and injunctive relief on various grounds. One key issue we have raised is that Congress clearly *prohibits the prosecution* of taxpayers for alleged violation of the internal revenue laws (civilly and criminally) at Title 26 U.S.C. § 6213(a), which states in part that "*. . . no . . . proceeding in court . . . shall be . . . prosecuted until such notice (of deficiency) has been mailed to the taxpayer . . .*" yet, the IRS has failed to comply with this mandatory act of Congress, as we have never been issued a notice of deficiency. Thus, we are of the conviction that we should not be prosecuted for this and other reasons.

We are aware that the federal Courts routinely abuse process to their discretion (especially when the United States is a plaintiff or defendant), and we do not wish to be victims of that abuse. For example, in previous litigation, none of which was political (see case #1:05-CV02474-RMC, U.S. District Court for the District of Columbia; case #07-3039-CV-S-RED, U.S. District Court for the Western District of Missouri, Southern Division; and case #6:06-cv-03201-RED, United States District Court for the Western District of Missouri (Springfield)), each of our cases were dismissed without explanation or reason in spite of our efforts to obtain a fair and equitable remedy.

Hence, we have no confidence in the judicial system and are seeking your assistance for oversight of the judiciary so that we might have an equal opportunity to judicially resolve the issues of facts and law raised instead of continually being denied access to the courts. Enclosed,

William Smith, Majority Chief Counsel
Preet Bharara, Minority Chief Counsel
December 11, 2007
Page 2

please find a copy of our First Amended Complaint for your review. If you could take a few moments from your busy schedule to review this case, it would be greatly appreciated – our lives, liberty and property depend on it. Thank you for your kind indulgence and consideration regarding this most serious matter.

Truly Yours,

Carl Roger Davis

Jo Elaine Davis

Enclosure:
First Amended Complaint with Exhibits

**Mail to:**

The Honorable Claire McCaskill
United States Senate
717 Hart Senate Office Bldg
Washington, D.C. 20510-2504
Certified Mail: 7007 0220 0000 6951 6416

William Smith, Majority Chief Counsel
Preet Bharara, Minority Chief Counsel
US Committee on the Judiciary
Subcommittee Administrative Oversight/Courts
224 Dirksen Senate Office Building
Washington, D.C. 20510
Certified Mail: 7007 0220 0000 6951 6393

Certified Mail: <u>7007 0220 0000 6963 6416</u>

Carl Roger Davis and Jo Elaine Davis
c/o PO Box 6207
Branson, Missouri [65615]

December 13, 2007

The Honorable Claire McCaskill
United States Senate
717 Hart Senate Office Bldg
Washington, D.C. 20510-2504

Dear Senator McCaskill:

I/We, Carl Roger Davis and Jo Elaine Davis are seeking assistance regarding the United States Government's perpetual invasion into our lives. Life as we knew it was turned upside down when more than 10 unknown IRS agents conducted an armed raid on the Family Farmhouse Restaurant on November 24, 2004. Thereafter, we were subpoenaed to appear before a Federal Grand Jury and testify on December 15, 2004 and failed to appear because we believed we had a Fifth Amendment right not to witness against ourselves. In response to our misguided attempt to exercise that right, we were arrested and jailed for contempt.

Since then, we have filed lawsuits against the Internal Revenue Service (IRS) agents who unlawfully raided and seized our property and against the United States, seeking damages, and declaratory and injunctive relief on various grounds. One key issue we have raised is that Congress clearly *prohibits the prosecution* of taxpayers for alleged violation of the internal revenue laws (civilly and criminally) at Title 26 U.S.C. § 6213(a), which states in part that "*. . . no . . . proceeding in court . . . shall be . . . prosecuted until such notice (of deficiency) has been mailed to the taxpayer . . .*" yet, the IRS has failed to comply with this mandatory act of Congress, as we have never been issued a notice of deficiency. Thus, we are of the conviction that we should not be prosecuted for this and other reasons.

We are aware that the federal Courts routinely abuse process to their discretion (especially when the United States is a plaintiff or defendant), and we do not wish to be victims of that abuse. For example, in previous litigation, none of which was political (see case #1:05-CV02474-RMC, U.S. District Court for the District of Columbia; case #07-3039-CV-S-RED, U.S. District Court for the Western District of Missouri, Southern Division; and case #6:06-cv-03201-RED, United States District Court for the Western District of Missouri (Springfield)), each of our cases were dismissed without explanation or reason in spite of our efforts to obtain a fair and equitable remedy.

Hence, we have no confidence in the judicial system and are seeking your assistance for oversight of the judiciary so that we might have an equal opportunity to judicially resolve the issues of facts and law raised instead of continually being denied access to the courts. Enclosed,

William Smith, Majority Chief Counsel
Preet Bharara, Minority Chief Counsel
December 11, 2007
Page 2

please find a copy of our First Amended Complaint for your review. If you could take a few moments from your busy schedule to review this case, it would be greatly appreciated – our lives, liberty and property depend on it. Thank you for your kind indulgence and consideration regarding this most serious matter.

Truly Yours,

Carl Roger Davis

Jo Elaine Davis

Enclosure:
First Amended Complaint with Exhibits

**Mail to:**

The Honorable Christopher S. "Kit" Bond
United States Senate
274 Russell Senate Office Bldg
Washington, D.C. 20510-2503
Certified Mail: 7007 0220 0000 6951 6409

William Smith, Majority Chief Counsel
Preet Bharara, Minority Chief Counsel
US Committee on the Judiciary
Subcommittee Administrative Oversight/Courts
224 Dirksen Senate Office Building
Washington, D.C. 20510
Certified Mail: 7007 0220 0000 6951 6393