Carl Roger Davis and Jo Elaine Davis
c/o PO Box 6207
Branson, Missouri [65615]
Ph: (417) 334-1320

Plaintiffs, in *pro se*

RECEIVED

MAR 1 ⊙ 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Carl Roger Davis and Jo Elaine Davis,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES, a Federal corporation; et al.,<br><br>Defendants. | Case No.  1:07-CV-01749-RMU<br><br>**MOVE FOR FAIR AND IMPARTIAL RULINGS, HEARINGS AND/OR TRIAL NOT STEEPED IN JUDICIAL ACTIVISM**<br><br>FRCP, Rule 9 – Special Matters |

COMES NOW Carl Roger Davis and Jo Elaine Davis, Plaintiffs, proceeding on their own behalf, moving for fair and impartial rulings, hearings and/or trial not steeped in judicial activism. Plaintiffs have suffered extreme prejudice proceeding before the court, seeking relief on matters and issues that continue to be ignored and dismissed without opinion and favorable to the United States in the cases *in re Davis v. United States, et al.*, No. 1:05-cv-02474, *Davis v. Strothers*, et al., No. 6:06-cv-3201 and *Davis v. United States, et al.*, No. 6:07-cv-3039, and now this case referenced above. In every case, the Plaintiffs' complaint has fallen on deaf ears and the courts have summarily denied the Plaintiffs access. ***"Due process cannot be satisfied when the state provides a hearing at which the judge is not really listening or before which the decision has already been made."*** See *United States v. Cross,* 128 F.3d 145, n. 2 (3rd Cir. 1997). Nonetheless, ***"Judges themselves must not be lawless; they must follow the substantive laws they are intended to administer."*** Heoflich, M.H. "Regulation of Judicial Misconduct…" *Law and History Review*, Vol. 2, No. 1 (Spring, 1984): 79, 80.

MOVE FOR FAIR AND IMPARTIAL
RULINGS, HEARINGS AND/OR TRIAL
NOT STEEPED IN JUDICIAL ACTIVISM

- 1 of 19 -

Carl Roger Davis and Jo Elaine Davis, Plaintiffs
Exhibits: 23

The Defendants' name calling and labeling of the Plaintiffs and ranting about how the Plaintiffs have historically petitioned the Court for relief are prejudicial and conniving strategies that could result in the Court again denying the Plaintiffs' due process. *"Although a party conniving with a judge to predetermine the outcome of a judicial proceeding may deal with him in his 'judicial capacity,' the other parties expectation of judicial impartiality is actively frustrated by the scheme. It is this antithesis of the 'principled and fearless decision-making' that judicial immunity exists to protect."* Rankin v. Howard, 633 F.2d 84 (9th Cir. 1980) cert. denied, 451 U.S. 939, 101 S. Ct. 2020, 68 L.Ed.2d 326 (1981); Pierson v. Ray, 386 U.S. 547, 544, 87 S.Ct. 1213 (1976); and Gregory v. Thompson, 500 F.2d 59 (9th Cir. 1974). This Court, an instrumentality of the United States, and its officers, employed by the same, must recognize the obvious prejudice that befalls Carl Roger Davis and Jo Elaine Davis. Inasmuch as the officers employed by the United States are presumed to act impartially and without a vested interest, the actions precipitated by this and other Courts assert the other extreme.

Plaintiffs are aware and are reminded of the old adage quoted in *United States v. Benatta*, (W.D.N.Y. 2003) *". . . however, under our Constitution, absent due process, the end cannot justify the means no matter how well or good intentioned the parties may be, for as the old adage teaches, 'the road to hell is paved with good intentions,'"* only to remind this Court that such a doctrine has bilateral applications." This proverbial 'road to hell' is inescapable when we take into consideration the realities of centralized power, conflicts of law, and the discretionary authority of the Court to select which body of law it wishes to observe and which one it will ignore. If we cannot get the judiciary to adhere to the law and rule with indifference – irrespective of the political climate of the day – we are in essence without law.

MOVE FOR FAIR AND IMPARTIAL
RULINGS, HEARINGS AND/OR TRIAL
NOT STEEPED IN JUDICIAL ACTIVISM

- 2 of 19 -

Carl Roger Davis and Jo Elaine Davis, Plaintiffs
Exhibits: 23

## Affidavit of Facts And Summary Of Events

1.      That on or about October 25, 2000 through August 14, 2002, Plaintiffs' Attorney, Milton Baxley, filed multiple administrative claims with the Internal Revenue Service District Director in Oklahoma City, Oklahoma and other fiduciary departments seeking resolution of an ongoing tax liability dispute regarding tax years 1992, 1993, and 1994.

2.      That on or about June 18, 2002, the dispute was escalated by the IRS and an individual identifying himself as Special Agent Timothy E. Noonan contacted the Plaintiff, Roger Davis, and was instructed to contact Plaintiff's Attorney, setting a date of July 1, 2002 to discuss alleged tax years 1999 and 2000; and Attorney Baxley responded to Noonan's offer of a Collection Due Process hearing

3.      That between December 12, 2002 and May 18, 2004, the individuals identifying themselves as Internal Revenue Agent Timothy E. Noonan and Special Agent James "Tony" Strother (sic) issued Third-Party Summonses seeking books and records from entities believed to be in control of the Plaintiffs.

4.      That on or about November 22, 2004, Internal Revenue Special Agent James Strother obtained a Search Warrant in Case # 04-2419-JCE-01 and on or about November 23, 2004 at 6:05 a.m., James A. Strother, Timothy E. Noonan and Ten (10) UNKNOWN AGENTS raided Plaintiffs Roger Carl Davis and Jo Elaine Davis' property known as the "Farmhouse Family Restaurant" located at 119 West Main Street, Branson, Missouri.

5.      Plaintiffs were served with subpoenas to testify on January 19, 2005 before Grand Jury 2004R01281-01, which was investigating possible violations of the internal revenue laws at Title 26 United States Code, Section 7201 – for alleged "willful failure to file federal income taxes"

6.      Plaintiffs have filed several causes of action in the cases *in re Davis v. United States, et al.*, No. 1:05-cv-02474; *Davis v. Strothers*, et al., No. 6:06-cv-3201; *Davis v. United States, et al.*, No. 6:07-cv-3039 and now this instant case; seeking relief on matters and issues that continue to be ignored and dismissed without opinion and favorable to the government. In every case, the Plaintiffs' complaint has fallen on deaf ears and the courts have summarily denied Plaintiffs access.

7.      Plaintiffs are of the conviction that the facts and law speak unambiguously to the matters presented herein and throughout. Nevertheless, having experienced first hand the peril of American Citizens acting as *pro se* litigants, proceeding before a prejudiced and biased judiciary that acts with impunity and favoritism on behalf of the UNITED STATES and its employees regarding these serious life and liberty issues, and having no confidence in the judiciary due to the fear of reprisal and the potential for abuse of process as previously experienced, the Plaintiffs have submitted a copy of their First Amended Verified Complaint to the appropriate fiduciary Congressional authorities to effect the record for the purposes of oversight and review.

## MEMORANDUM OF THE LAW

Plaintiffs Carl Roger Davis and Jo Elaine Davis filed their lawsuits under the fundamental principle that "***The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government.***" See *Chambers v. Baltimore & Ohio Railroad*, 207 U.S. 148. Thus, "***Discretionary choices are not left to a court's inclination, but to its judgment, and its judgment is to be guided by sound legal principles.***" See *United States v. Burr*, 25 F.Cas. 30, 35 (C.C.Va. 1870) (no. 14, 692d) (Marshall, C.J.). The Plaintiffs understand that "***In order to maintain a cause of action based on an allegation of constitution violations, a plaintiff must***

**show that the actions complained of are 'fairly attributable' to the government**." (*Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)), and every cause of action in this Case in chief is directly attributable to officers, agents and employees of the United States Government and its absolute abuse power.

## I.
## Institutionalized Control Within Courts Of The United States Plagued With Judicial Activism Has Resulted In Plaintiffs Being Denied Justice

We begin with the axiomatic fact that the Courts are but of men. The district Courts of the United States, 'courts of men,' are presumed to proceed pursuant to the rule of judicial precedent – the highest authority being that of the United States Supreme Court. With a total of 13 Circuits to choose from, "case law" or "case opinion" is a contact sport spewed out from these Circuits, and thus a powder keg for judicial activism. Judicial activism was recently reviewed in *American Reg of Radiologic Technologists v. Garza*, (S.D.Tex. 3-13-2007), wherein the Court discussed "*. . . how other courts have been engaging in judicial activism . . . to achieve goals that the courts consider desirable, even though the language of the statute will not support the interpretations attributed to it.*"

We are asked to rely on this *stare decisis* "precedent" at this level when interpreting statutes. Here, the same problem that occurs at the district court level –"circuit selection"– is perpetuated. If the judge does not agree with a ruling in the 4th Circuit, he can ignore that precedent and look to rulings from 12 other circuits and the Supreme Court to support his position, policy and political agenda. Thus, the judiciary is ripe for making determinations not predicated on law or the rule of precedent, but decisions that employ judicial activism to keep out issues the courts do not wish to discuss – or in the alternative, interpret the statute in a manner inconsistent with its language and the intent of Congress, ergo, judicial activism. Black's Law Dictionary, Fifth

MOVE FOR FAIR AND IMPARTIAL
RULINGS, HEARINGS AND/OR TRIAL
NOT STEEPED IN JUDICIAL ACTIVISM

- 5 of 19 -

Carl Roger Davis and Jo Elaine Davis, Plaintiffs
Exhibits: 23

Edition, on page 760 defines *judicial activism* as *"Judicial philosophy which motivates judges to depart from strict adherence to judicial precedent in favor of progressive and new social policies which are not always consistent with the restraint expected of appellant judges. It is commonly marked by decisions calling for social engineering and occasionally these decisions represent intrusions into legislative and executive matters."* (See **Exhibit A** attached hereto and incorporated herein by reference.)

The most recent example of judicial activism involving the tax laws was punctuated in the first discussion of the Sixteenth Amendment in years is found *in re Murphy v. Internal Revenue Service*, 05-5139 (D.C. Cir. 2006), where the Court held: *"At the outset, we reject the Government's breathtakingly expansive claim of congressional power under the Sixteenth Amendment – upon which it founds the more far-reaching arguments it advances here. The Sixteenth Amendment simply does not authorize the Congress to tax as "incomes" every sort of revenue a taxpayer may receive. As the Supreme Court noted long ago, the "Congress cannot make a thing income which is not so in fact."* *Burk-Waggoner Oil Ass'n v. Hopkins,* 269 U.S. 110, 114 (1925). Indeed, because the *"the power to tax involves the power to destroy;"* *McCulloch v. Maryland,* 17 U.S. 316, 431 (1819), *"it would not be consistent with our constitutional government, and the sanctity of property in our system, merely to rely upon the legislature to decide what constitutes income."*

The Court's decision in *Murphy* sent a resounding chill throughout the political community, and this ruling, if not reversed, would gut the federal income tax system as we know it. However, after doing the right thing in *Murphy*, the D.C. Circuit was pressured and forced, by the political, social and judicial powers that be, to ignore the law and Supreme Court precedent, and changed its ruling and its position, and on July 3, 2007, on its own motion, vacated its

original ruling and reinterpreted the case favorably to the IRS – and thus this is the landscape of our so called system of [j]ustice – reeking with injustice.

For these and many other reasons, the current 110th Congress is seeking gut the federal income tax system as we know it and have introduced the **H.R. 25 "FAIR TAX ACT OF 2007"**, a Bill for which the purpose is: ***"To promote freedom, fairness, and economic opportunity by repealing the income tax and other taxes, abolishing the Internal Revenue Service, and enacting a national sales tax to be administered primarily by the States,"*** hence, a confirmation by Congress that the existing tax laws fail to accomplish these fundamental task – making Congress themselves "Tax Protesters" within the meaning of a plethora judicial activist court rulings.

In *United States v. Hicks*, (W.D.Mo. 2005) the court stated, ***"It is not the role of this Court (or any court) to impose its "own judgment" when deciding matters of law, nor should a court base its judicial rulings on policy considerations alone.*** See *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 1221(2005) (Scalia, J., dissenting). ***This is especially true when interpreting statutes. It is highly inappropriate "to read into the relevant statutes that which is not clearly present, since to do so `would involve judicial activism into a political, legislative and/or executive area.'"*** *In re Laub Baking Co.*, 642 F.2d 196, 198-99 (6th Cir. 1981) (quoting *Carlson v. Landon*, 342 U.S. 524 (1952)).

In *Johnson v. North Idaho College*, (Idaho 3-23-2007), the Court stated ***"[w]here a statute is not ambiguous it is the duty of the court to follow the law as enacted and if the statute is unwise, power to correct is legislative not judicial."*** *Id.*; see also *City of Philadelphia v. Lead Indus. Ass'n*, 994 F.2d 112, 123 (3d Cir. 1993), explaining that ***"[i]n a diversity case . . . federal courts may not engage in judicial activism.*** Federalism concerns require that we permit state

courts to decide whether and to what extent they will expand state common law. ***Our role is to apply the current law of the jurisdiction, and leave it undisturbed. . . . Absent some authoritative signal from the legislature*** or the state courts, [there is] no basis for even considering the pros and cons of innovative theories. ***We must apply the law of the forum as we infer it presently to be, not as it might come to be.")***. See also <u>*Sedivy v. City of Boise,*</u> (Idaho 2006).

Counsel for the United States, attempting to take advantage of the prejudice and favoritism it often enjoys with judges that engage in judicial activism, did not get its way in <u>*In Re Application of the United States,*</u> (E.D.N.Y. 2005), where the Court held, "***<u>The government thus asks me to read into the All Writs Act an empowerment of the judiciary to grant the executive branch authority to use investigative techniques either explicitly denied it by the legislative branch, or at a minimum omitted from a far-reaching and detailed statutory scheme that has received the legislature's intensive and repeated consideration</u>. Such a broad reading of the statute invites an exercise of judicial activism that is breathtaking in its scope and fundamentally inconsistent with my understanding of the extent of my authority.***" *Id.* at Page 55.

The district court (where the Plaintiffs must file their action) has acted unfavorably to the law of precedent and blatantly acted as judicial activist and protectionist, issuing rulings adverse to the Plaintiffs and favorable to its United States employer, without explanation, the use of dictum and in the abuse of its discretion. As *pro se* litigants proceeding against the United States, the Plaintiffs rely on Supreme Court precedent to override the prejudicial rulings often employed in the district courts. But, these Supreme Court rulings, if not favorable to the United

States Government's position, can be and often are completely ignored as if they have no relevance.

## II.
## Separation of Power Between The Executive, Legislative And Judicial Branches Of The United States Government Is Merely An Illusion Of Separation

It is no secret that there is no separation of power between Government officials, employed by the United States Federal corporation at 28 U.S.C. § 3002 (15)(A), its instrumentalities and political subdivisions. The illusion that there is a separation of power between the executive, legislative and judicial branches of the United States is just that – an illusion. Because there is no separation of power between the United States, its agencies and instrumentalities, Plaintiffs must proceed with a vote of no confidence in the judiciary or the United States judicial system and, for self-preservation, are compelled to formally move that fairness and impartiality be the cornerstone of this Court's judicial determination. *"Judicial prejudice and/or corruption can violate a criminal defendant's constitutional right to a fair trial, and can be the basis for habeas relief."* See e.g. *Bracy v. Gramley*, 520 U.S. 899, 117 S.Ct. 1793, 1797 (1997), en banc appeal after remand, *Bracy v. Schomig*, 286 F.3d 406, (7th Cir. Mar. 29, 2002). The courts, holding themselves in high esteem, have asserted that *"Judicial prejudice and corruption are rare events, so judges are presumed to be honest and impartial, and this presumption can only be rebutted with specific facts demonstrating judicial impropriety."* See *Bracy*, 117 S.Ct. at 1799; *Aleman v. Judges of Circuit Court of Cook County*, 138 F.3d 302, 307 (7th Cir. 1998); cf. *United States v. LeFevour*, 798 F.2d 977, 984-85 (7th Cir. 1986), but the Plaintiffs have experienced this prejudice and corruption first hand.

MOVE FOR FAIR AND IMPARTIAL
RULINGS, HEARINGS AND/OR TRIAL
NOT STEEPED IN JUDICIAL ACTIVISM

- 9 of 19 -

Carl Roger Davis and Jo Elaine Davis, Plaintiffs
Exhibits: 23

Although ". . . the trial court must not undertake the role of either the prosecutor or the defense counsel," *People v Carlucci,* 23 Cal.3d 249, 258 (1979). Plaintiffs have been judicially flogged, wherein the courts have refused to consider the Plaintiffs' documentary evidence neutrally, if at all. It is the Court's duty to *". . . perform its high function in the best way 'justice must satisfy the appearance of justice.'" Offutt v. United States,* 438 U.S. 11, 14 (75 S. Ct. 11, 99 L. Ed. 11 (1954).

Thus, it is paramount that Carl Roger Davis and Jo Elaine Davis remain vigilant in assuring that all their Rights are observed *nunc pro tunc,* in this forum or in the next. *"Every procedure which would offer a possible temptation to the average demand as a judge to forget the burden of proof required to convict the defendant, or which might lead to him not to hold the balance nice, clear and true between this state and the accused, denies the latter due process of law." Tumey v. Ohio,* 273 U.S. 510, 532 (47 S. Ct. 437, 71 L. Ed. 749 (1927) (Emphasis Added) *"We have expressly recognized that the administration of justice is dependent upon the impartiality, disinterestedness, and fairness on the part of the judge."* quoting *Fuller v. State,* 100 Miss. 811, 57 So. 806, Ann. Cas. 1914A, 98, 39 L. R. A. (N.S.) 242; 14 Am. Jur. 372, Courts, § 171 In *State ex rel. Barnard v. Board of Education,* 19 Wn. 8, 17, 52 P. 317, 67 Am. St. 706, 40 L.R.A. 317, we said: *"The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts;* in fact, the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle which gives credit, or even toleration, to decrees of judicial tribunals. *Actions of courts which disregard this safeguard to litigants would more appropriately be termed the administration of injustice, and their proceedings*

*would be as shocking to our private sense of justice as they would be injurious to the public interest.*"

It is axiomatic that employees working within agencies, instrumentalities and political subdivisions of the United States Federal corporation have a direct and indirect financial interest and derive pecuniary benefits from [t]axpayers who fund the Executive payroll of the United States Department of the Treasury that acts as the hub for the collection and distribution of [taxpayers] sweat equity. Without question, Actors on the payroll include but are not limited to: (1) the United States District Court employees – a United States instrumentality; (2) the United States Department of the Treasury – a United States executive department and instrumentality; (3) the United States Department of Justice – a United States executive department and instrumentality; (4) the United States Supreme Court – an instrumentality of the United States; (5) the United States Court of Appeals – an instrumentality of the United States; (6) the United States Congress – an instrumentality of the United States; and (7) the Internal Revenue Service – an instrumentality of the United States – all having an unprecedented nexus and financial interest in Plaintiffs' real and personal property.

With absolute and institutionalized control of the entire system, the United States claim of sovereign immunity as the law*maker* justifies its sovereign immunity when it is the law*breaker*. Justice Oliver Wendell Holmes Jr., in *Kawananakoa v. Polyblank*, 205 U.S. 249, 27 S.Ct. 526, 51 L. Ed. 834 (1907), explained it best when he clarified that the "*. . . sovereign is exempt from suit, not because of any formal conception of obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends,*" and when applied, this means that one cannot sue the lawmaker, even though he is the breaker of the laws he has made for others to abide, and to which, being the maker, he

himself is immune and suffers no consequences as the breaker of the law he has created to protect its government judge, government persecutor and government defense attorney, acting as the collective privileged elite.

Top officials employed by the UNITED STATES Defendant have historically attested to the perversion of the internal revenue laws, and such is no less prevalent today. The fact that judicial officials are constantly arguing their dissenting opinions and disagreements with other [j]ustices regarding the meaning of a statute provides proof-positive evidence that the law changes based on the judge and the politics of the day.

Plaintiffs Carl Roger Davis and Jo Elaine Davis are fully aware of the countless number of injustices imposed by those who "we the people" have given the authority to administer and uphold the law, presumed to be exercised with fairness and impartiality. The fact that judges have completely shielded themselves under numerous doctrines of immunity has resulted in abuses of discretion that go unchallenged and unchecked. Lord Camden put it best when he said that, "*The discretion of a judge is the law of tyrants: it is always unknown. It is different in different men. It is casual, and depends upon constitution, temper, passion. In the best it is often times caprice; in the worst it is very vice, folly and passion to which human nature is liable.*" *Lord Camden*, L.C.J., Cases of Hindson and Kersey, 8 Howell State Trials 57 (1680), as the abuse of discretion has resulted in the Plaintiffs being denied justice, as such has proved to be perilous to the Plaintiffs when there is no separation between the judge, jury and prosecutor – merely the same people wearing different hats. Thus, although the doors of justice appear to be open for all to enter, the *chateau d'If* exists behind these doors for Citizens like the Davises to be emotionally tortured, discarded and forgotten by a system – not of justice, but of political predators legislating predatory laws by which they themselves do not abide.

### III.
### Plaintiffs Request This Court Adhere To The Constitution
### And Judicial Canons On Which It Must Rest Its Face

The Constitution of the United States of America at Article III, Section 1 states: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. *__The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour__*, and shall, at stated Times, receive for their Services, a Compensation which shall not be diminished during their Continuance in Office." The Code of Judicial Conduct and the Canons that further support the various violations that may become applicable to the Court in the event the Court violate the very statutes and canons to which the Court is bound. Plaintiffs file this motion seeking that all judicial officers take notice and adhere to 28 U.S.C. §§ 591 through 599 and §§ 601 through 613 of the Act (see **Exhibit B** attached hereto and included herein by reference.)

> 28 U.S.C. § 455. Disqualification of justice, judge, or magistrate judge
> (a) *__Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.__*
>
> (b) He shall also disqualify himself in the following circumstances:
> (1) *__Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding__*;

(See **Exhibit C** attached hereto and included herein by reference.)

Respectfully, this is not intended to be an attack against honest judicial officers, as all judicial officers are not honest, as they are men. "Judge Maloney was one of many dishonest judges exposed and convicted through 'Operation Greylord,' a labyrinthine of federal investigations of judicial corruption in Chicago. See *United States v. Maloney*, 71 F.3d 645 (7th Cir. 1995), one of the most extensive cases of judicial corruption in this nations jurisprudence. In *United States v. Elder*, 309 F.3d 519 (9th Cir. 2002) the Court noted that ". . . *__when the__*

*courtroom prejudice is particularly egregious, it creates 'one of those cases where the prejudice could not be removed by curative instructions,'* United States v. Bland, 908 F.2d 471, 473 (9th Cir. 1990); see also *Hickman*, 592 F.2d at 936; *Nazzaro*, 472 F.2d at 312-13 ("[S]uch admonitions may offset [only] brief or minor departures from strict judicial impartiality.") (internal quotations omitted), as Plaintiffs do not wish such a prejudice to befall their own case in chief.

Without question, one can easily assert that the nature of Man is inherently evil. Great men of wisdom who have come centuries before us – in the days of slavery in its literal sense, and now today's statutory slavery imposed by today's trickery with legalese – warned of the challenges ahead, defining the restricted role by which government public servants, gatekeepers of our Freedoms, Liberty, and Property must conduct themselves. These historical judicial authors of precedent, understanding the abuses of office and power that have erupted in this predatory system of judicial determination, so eloquently espoused:

> *"Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously". [...Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example...] Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that, in the administration of the criminal law, the end justifies the means -- to declare that the Government may commit crimes in order to secure the conviction of a private criminal – would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face."* Olmstead v. United States, 277 U.S. 438 (1928).

The Plaintiffs have referenced the conditions precedent upon which a judicial officer may acquiesce his judicial immunity by violating the Rights of the people that he has been hired to protect. The Supreme Court addressed its concerns in *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), wherein the Court determined that when a judicial officer threatens to deprive a person of

any rights guaranteed and protected under the Constitution for the United States of America, it may constitute a crime.

This Court should agree that *"[A]n unlawful or unauthorized exercise of power does not become legitimate or authorized by reason of habitude."* <u>In re Benny</u>, 29 B.R. 754, 762, (N.D. Cal. 1983), See also <u>Umpleby v. State</u>, 347 N.W.2d 156, 161 (N.D. 1984). With this in mind, a *". . . defendant may be personally involved in constructional deprivation by direct participation, failure to remedy wrongs after learning about it, creation of a policy or custom under which unconstitutional practices occur or gross negligence in managing subordinates who cause violations."* See <u>Gallegos v. Haggerty</u>, 689 F. Supp. 93 (N.D.N.Y. 1988).

Thus, just because it is both policy and custom for employees of the United States, Department of the Treasury, the Internal Revenue Service and the courts to label *pro se* litigants who attempt to exercise their First Amendment right of redress of grievance regarding tax law matters as "frivolous" and "without merit" does not controvert the facts and law of this case– in particular, when the Courts themselves are acting as protectionists on behalf of the IRS or any United States Government agency and ignore the clear language of *stare decisis* Supreme Court rulings that have never been overturned. Therefore, Plaintiffs Carl Roger Davis and Jo Elaine Davis move this Court, among other things, to be fair and impartial [to plaintiffs], to act without prejudice, and to proceed in accordance to the rule of law, as Plaintiffs are entitled to no less than that. Plaintiffs' further demands:

(a)  This Court and its judicial officials honor and respect the Constitution for the United States of America signed on September 17, 1787, including amendments and annotations as referenced therein to date.

(b) That this Court act with absolute impartiality and, at minimum, proceed under the "appearance of fairness" and dispose of all matters of fact and law accordingly.

(c) This Court and its judicial officials honor and respect the United States Supreme Court case authorities, including landmark cases, as they relate to the internal revenue laws and income tax laws that have never been overturned to date.

(d) That this Court and its judicial officials take mandatory judicial notice of the *prima facie* evidence of Internal Revenue Code, the United States Code Annotated, the United States Code Service, the United States Code Supplement as amended in 1939, 1954 and 1986 to date.

(e) That this Court and its judicial officials take mandatory judicial notice of the United States Statutes at Large that were passed and published by the United States Congress regarding the internal revenue laws and income tax laws.

(f) That this Court and its judicial officials take mandatory judicial notice of All Titles of the Code of Federal Regulations (CFR) as amended, including past regulations that may have been deleted, excluded or reserved, but not repealed to date.

(g) That this Court and its judicial officials take mandatory judicial notice of Internal Revenue Manuals, Publications, Forms, Federal Register, Memorandums, System of Records, and all related Government regulatory systems that govern the fair and efficient administration of the internal revenue laws and the income tax laws as amended to date.

(h) That this Court and its judicial officials take mandatory judicial notice of Congressionally Mandated Federal Rules of Civil Procedure (statutes) annotated as amended to date.

(i) That this Court and its judicial officials take mandatory judicial notice of Congressionally Mandated Federal Rules of Evidence (statutes) annotated and as amended to date.

**WHEREFORE**, Plaintiffs Carl Roger Davis and Jo Elaine Davis, pray for relief as follows:

a. That this Court grant the Move for a fair, impartial, non-biased and non-prejudicial rulings, hearing(s) and/or trial;

b. Grant Plaintiffs due process, equal access and equal protection under the law that all pleadings and process filed by Plaintiffs shall be disposed in accordance with the rule of law and applicable court rules.

c. Cause this Court to proceed in the interest of justice as the measuring stick used to adhere to the principled integrity and philosophy upon which the Constitution for the United States of America, the Code of Judicial Conduct, the Ethics in Government Act of 1978, the Judicial Canons and all other Acts, not referenced herein, must rest its face;

d. Any other lawful remedy or process this Court deems lawfully just and proper.

Respectfully Submitted.

## VERIFICATION

I/we, <u>Carl Roger Davis and Jo Elaine Davis</u>, declare under penalty of perjury pursuant to 28 U.S.C. § 1746(1), that I/we believe the above to be true and correct to the best of my/our knowledge, understanding and belief. All Rights retained without recourse.

On this _10th_ day March 2008

Carl Roger Davis, Plaintiff

Jo Elaine Davis, Plaintiff

MOVE FOR FAIR AND IMPARTIAL
RULINGS, HEARINGS AND/OR TRIAL
NOT STEEPED IN JUDICIAL ACTIVISM
- 17 of 19 -
Carl Roger Davis and Jo Elaine Davis, Plaintiffs
Exhibits: 23

**ATTACHMENTS:**

**Exhibit A:** Black's Law Dictionary Fifth Edition, 'Judicial Activism' defined (2 pages)

**Exhibit B:** Chapter I. Code of Conduct for United States Judges (15 pages)

**Exhibit C:** Title 28 United States Code § 455. Disqualification of justice, judge, or magistrate judge (2 pages)

**Exhibit D:** Title 28 United States Code § 41. Number and composition of circuits (4 pages)

## CERTIFICATE OF SERVICE

I, <u>Carl Roger Davis</u>, certify that on this _____ day of March 2008, I served a true copy of

the above Move for Fair and Impartial Rulings, Hearings and/or Trial Not Steeped In Judicial

Activism, Memorandum of Law in support with Exhibits A through D, and Proposed Order by

certified mail addressed as follows:

Daniel John Healy
U.S. Department of Justice
P.O. Box 227
Washington, DC 20044
Certified Mail: _7005 2570 0000 6087 9990_

Carl Roger Davis

**EXHIBIT A**

Black's Law Dictionary Fifth Edition, 'Judicial Activism' defined
(2 pages)

# BLACK'S
# LAW DICTIONARY

Definitions of the Terms and Phrases of
American and English Jurisprudence,
Ancient and Modern

By

## HENRY CAMPBELL BLACK, M. A.

Author of Treatises on Judgments, Tax Titles, Intoxicating Liquors,
Bankruptcy, Mortgages, Constitutional Law, Interpretation
of Laws, Rescission and Cancellation of Contracts, Etc.

## FIFTH EDITION

BY

### THE PUBLISHER'S EDITORIAL STAFF

Contributing Authors

JOSEPH R. NOLAN
Associate Justice, Massachusetts Supreme Judicial Court
and
M. J. CONNOLLY
Associate Professor of Linguistics
and Eastern Languages, Boston College

ST. PAUL MINN.
WEST PUBLISHING CO.
1979

**Judicial act.** An act which involves exercise of discretion or judgment. It is also defined as an act by court or magistrate touching rights of parties or property brought before it or him by voluntary appearance, or by prior action of ministerial officers. An act by member of judicial department in construing law or applying it to a particular state of facts. State ex rel. Tharel v. Board of Com'rs of Creek County, 188 Okl. 184, 107 P.2d 542, 549. An act of administrative board if it goes to determination of some right, protection of which is peculiar office of courts. Belk's Dept. Store v. Guilford County, 222 N.C. 441, 23 S.E.2d 897, 902. An act which imposes burdens or confers privileges according to finding of some person or body whether a general rule is applicable or according to discretionary judgment as to propriety. An act which undertakes to determine a question of right or obligation or of property as foundation on which it proceeds. The action of judge in trying a cause and rendering a decision. Application of Gleit, 178 Misc. 198, 33 N.Y.S.2d 629, 630, 631.

Rendition or pronouncement of a judgment is a judicial act and entry thereof a ministerial act. Peoples Electric Co-op. v. Broughton, 191 Okl. 229, 127 P.2d 850, 853; O'Brien v. New York Edison Co., D.C.N.Y., 26 F.Supp. 290, 291; Bailer v. Dowd, 219 Ind. 624, 40 N.E.2d 325, 327. But if there are matters requiring exercise of court's discretion, entry of decree is judicial act. Stewart v. Superior Court in and for Los Angeles County, 3 Cal.App.2d 702, 40 P.2d 529.

See also **Decision; Decree; Judgment; Order.**

**Judicial action.** An adjudication upon rights of parties who in general appear or are brought before tribunal by notice or process, and upon whose claims some decision or judgment is rendered. Action of a court upon a cause, by hearing it, and determining what shall be adjudged or decreed between the parties, and with which is the right of the case.

**Judicial activism.** Judicial philosophy which motivates judges to depart from strict adherence to judicial precedent in favor or progressive and new social policies which are not always consistent with the restraint expected of appellate judges. It is commonly made by decisions calling for social engineering and occasionally these decisions represent intrusions into legislative and executive matters.

**Judicial acts.** See **Judiciary Acts.**

**Judicial admission.** See **Admission.**

**Judicial Article.** Article III of the U.S.Const. which creates the U.S. Supreme Court; vests in Congress the right to create inferior courts; provides for life tenure for Federal Court judges; and specifies the powers and jurisdiction of the Federal Courts. See **Judicial branch; Judicial power; Judicial system; Judiciary Acts.**

**Judicial authority.** The power and authority appertaining to the office of a judge. Jurisdiction; the official right to hear and determine questions in controversy.

**Judicial bonds.** Generic term for bonds required by court for appeals, costs, attachment, injunction, etc.

**Judicial branch.** Branch of state and federal government whose function it is to interpret, construe, apply, and generally administer and enforce the laws. This branch, together with the executive and legislative branches forms our tripartite form of federal and state government. See **Judicial Article; Judicial power; Judicial system; Judiciary Acts.**

**Judicial business.** Such as involves the exercise of judicial power, or the application of the mind and authority of a court to some contested matter, or the conduct of judicial proceedings, as distinguished from such ministerial and other acts, incident to the progress of a cause, as may be performed by the parties, counsel, or officers of the court without application to the court or judge. See **Judicial act; Judicial action.**

**Judicial Code.** See **Federal Judicial Code.**

**Judicial cognizance.** Judicial notice, or knowledge upon which a judge is bound to act without having it proved in evidence. See **Judicial notice.**

**Judicial comity.** Principle in accordance with which courts of one state or jurisdiction give effect to laws and judicial decisions of another state out of deference and respect, not obligation. See also **Full faith and credit clause.**

**Judicial council.** Provision is made in 28 U.S.C.A. § 332 for the Chief Judge of each Circuit Court of Appeal to call a council of all the judges of the circuit twice each year. The primary function of the councils is to assure expeditious and effective administration of the business of the courts.

**Judicial cy pres** /jədíshəl siy préy/. Doctrine of "judicial cy pres" is a principle of construction based on a judicial finding of donor's intention as applied to new conditions. Rohlff v. German Old People's Home, 143 Neb. 636, 10 N.W.2d 686, 691. When only minor features of a trust for charity become impossible or impracticable of performance and it cannot properly be said that general scheme of testator has failed, doctrine of "judicial cy pres" operates to avoid failure of charity. Noel v. Olds, 78 U.S.App.D.C. 155, 138 F.2d 581, 586, 587. See also **Cy-pres.**

**Judicial decision.** Application by a court or tribunal exercising judicial authority of competent jurisdiction of the law to a state of facts proved, or admitted to be true, and a declaration of the consequences which follow. In re Knofler's Estate, 73 Ohio App. 383, 52 N.E.2d 667, 668. See also **Decision; Decree; Judgment; Opinion; Order.**

**Judicial declaration of law.** A rule adopted as the basis of decision of issues involved. Trustees of Phillips Exeter Academy v. Exeter, 90 N.H. 472, 27 A.2d 569, 577.

**Judicial department.** See also **Judicial branch.**

**Judicial dictum** /juwdíshəl díktəm/. A dictum made by a court or judge in the course of a judicial decision or opinion. Com. v. Paine, 207 Pa. 45, 56 A. 317. See **Dictum.**

**Judicial discretion.** Term is a broad and elastic one which is equated with sound judgment of court to be

**EXHIBIT B**
Chapter I. Code of Conduct for United States Judges
(15 pages)

uscourts.gov : Newsroom : Code of Conduct

# Chapter I. Code of Conduct for United States Judges
## CONTENTS

Introduction

Canon 1.   A Judge Should Uphold the Integrity and Independence of the Judiciary

Canon 2.   A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities

Canon 3.   A Judge Should Perform the Duties of the Office Impartially and Diligently

Canon 4.   A Judge May Engage in Extra-Judicial Activities To Improve the Law, the Legal System, and the Administration of Justice

Canon 5.   A Judge Should Regulate Extra-Judicial Activities To Minimize the Risk of Conflict with Judicial Duties

Canon 6.   A Judge Should Regularly File Reports of Compensation Received for Law-Related and Extra-Judicial Activities

Canon 7.   A Judge Should Refrain from Political Activity

Compliance with the Code of Conduct

Applicable Date of Compliance

Checklists for Financial and Other Conflicts of Interest (PDF)

---

# CHAPTER I. CODE OF CONDUCT FOR UNITED STATES JUDGES

## Introduction

This Code applies to United States Circuit Judges, District Judges, Court of International Trade Judges, Court of Federal Claims Judges, Bankruptcy Judges, and Magistrate Judges. Certain provisions of this Code apply to special masters and commissioners as indicated in the "Compliance" section. In addition, the Tax Court, Court of Appeals for Veterans Claims, and Court of Appeals for the Armed Forces have adopted this Code. Persons to whom the Code applies must arrange their affairs as soon as reasonably possible to comply with the Code and should do so in any event within one year of appointment. The Judicial Conference has authorized its Committee on Codes of Conduct to render advisory opinions concerning the application and interpretation of this Code only when requested by a judge to whom this Code applies. Requests for opinions and other questions[2] concerning this Code and its applicability should be addressed to the Chairman of the Committee on Codes of Conduct as follows:

Chairman, Committee on Codes of Conduct
c/o General Counsel
Administrative Office of the
United States Courts
One Columbus Circle, N.E.

Washington, D.C. 20544
(202) 502-1100

---

CODE OF CONDUCT FOR UNITED STATES JUDGES[1]

## CANON 1

## A JUDGE SHOULD UPHOLD THE INTEGRITY
## AND INDEPENDENCE OF THE JUDICIARY

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

## COMMENTARY

Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they should comply with the law, as well as the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.

The Canons are rules of reason. They should be applied consistent with constitutional requirements, statutes, other court rules and decisional law, and in the context of all relevant circumstances. The Code is to be construed so as not to impinge on the essential independence of judges in making judicial decisions.

The Code is designed to provide guidance to judges and nominees for judicial office. The Code may also provide standards of conduct for application in proceedings under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 (28 U.S.C. §§ 332(d)(1), 372(c)), although it is not intended that disciplinary action would be appropriate for every violation of its provisions. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable application of the text and should depend on such factors as the seriousness of the violation, the intent of the judge, whether there is a pattern of improper activity, and the effect of the improper activity on others or on the judicial system. Many of the proscriptions in the Code are necessarily cast in general terms, and it is not suggested that disciplinary action is appropriate where reasonable judges might be uncertain as to whether or not the conduct is proscribed. Furthermore, the Code is not designed or intended as a basis for civil liability or criminal prosecution. Finally, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding.

## CANON 2

# A JUDGE SHOULD AVOID
# IMPROPRIETY AND THE APPEARANCE
# OF IMPROPRIETY IN ALL ACTIVITIES

A. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not lend the prestige of the judicial office to advance the private interests of others; nor convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.

C. A judge should not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion, or national origin.

## COMMENTARY

**Canon 2A.** Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly. The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge. Because it is not practicable to list all prohibited acts, the proscription is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules or other specific provisions of this Code. The test for appearance of impropriety is whether the conduct would create in reasonable minds, with knowledge of all the relevant circumstances that a reasonable inquiry would disclose, a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired.

**Canon 2B.** The testimony of a judge as a character witness injects the prestige of the judicial office into the proceeding in which the judge testifies and may be misunderstood to be an official testimonial. This Canon, however, does not afford the judge a privilege against testifying in response to an official summons. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.

A judge should avoid lending the prestige of judicial office for the advancement of the private interests of the judge or others. For example, a judge should not use the judge's judicial position to gain advantage in litigation involving a friend or a member of the judge's family. In contracts for publication of a judge's writings, a judge should retain control over the advertising to avoid exploitation of the judge's office.

A judge should be sensitive to possible abuse of the prestige of office. A judge should not initiate the communication of information to a sentencing judge or a probation or corrections officer but may provide to such persons information in response to a formal request. Judges may participate

**Chapter I. Code of Conduct for United States Judges**                                    - 3 -

in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration, and by responding to official inquiries concerning a person being considered for a judgeship.

**Canon 2C.** Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired. Canon 2C refers to the current practices of the organization. Whether an organization practices invidious discrimination is often a complex question to which judges should be sensitive. The answer cannot be determined from a mere examination of an organization's current membership rolls but rather depends on how the organization selects members and other relevant factors, such as that the organization is dedicated to the preservation of religious, ethnic or cultural values of legitimate common interest to its members, or that it is in fact and effect an intimate, purely private organization whose membership limitations could not be constitutionally prohibited. See New York State Club Ass'n. Inc. v. City of New York, 487 U.S. 1, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988); Board of Directors of Rotary International v. Rotary Club of Duarte, 481 U.S. 537, 107 S. Ct. 1940, 95 L. Ed. 2d 474 (1987); Roberts v. United States Jaycees, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). Other relevant factors include the size and nature of the organization and the diversity of persons in the locale who might reasonably be considered potential members. Thus the mere absence of diverse membership does not by itself demonstrate a violation unless reasonable persons with knowledge of all the relevant circumstances would expect that the membership would be diverse in the absence of invidious discrimination. Absent such factors, an organization is generally said to discriminate invidiously if it arbitrarily excludes from membership on the basis of race, religion, sex, or national origin persons who would otherwise be admitted to membership.

Although Canon 2C relates only to membership in organizations that invidiously discriminate on the basis of race, sex, religion or national origin, a judge's membership in an organization that engages in any invidiously discriminatory membership practices prohibited by applicable law violates Canons 2 and 2A and gives the appearance of impropriety. In addition, it would be a violation of Canons 2 and 2A for a judge to arrange a meeting at a club that the judge knows practices invidious discrimination on the basis of race, sex, religion, or national origin in its membership or other policies, or for the judge to use such a club regularly. Moreover, public manifestation by a judge of the judge's knowing approval of invidious discrimination on any basis gives the appearance of impropriety under Canon 2 and diminishes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A.

When a judge determines that an organization to which the judge belongs engages in invidious discrimination that would preclude membership under Canon 2C or under Canons 2 and 2A, the judge is permitted, in lieu of resigning, to make immediate and continuous efforts to have the organization discontinue its invidiously discriminatory practices. If the organization fails to discontinue its invidiously discriminatory practices as promptly as possible (and in all events within two years of the judge's first learning of the practices), the judge should resign immediately from the organization.

## CANON 3

# A JUDGE SHOULD PERFORM THE DUTIES
# OF THE OFFICE IMPARTIALLY AND DILIGENTLY

The judicial duties of a judge take precedence over all other activities. In performing the duties prescribed by law, the judge should adhere to the following standards:

A. Adjudicative Responsibilities.

(1) A judge should be faithful to and maintain professional competence in the law, and should not be swayed by partisan interests, public clamor, or fear of criticism.

(2) A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings.

(3) A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process.

(4) A judge should accord to every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte communications on the merits, or procedures affecting the merits, of a pending or impending proceeding. A judge may, however, obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond. A judge may, with consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

(5) A judge should dispose promptly of the business of the court.

(6) A judge should avoid public comment on the merits of a pending or impending action, requiring similar restraint by court personnel subject to the judge's direction and control. This proscription does not extend to public statements made in the course of the judge's official duties, to the explanation of court procedures, or to a scholarly presentation made for purposes of legal education.

B. Administrative Responsibilities.

(1) A judge should diligently discharge the judge's administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.

(2) A judge should require court officials, staff, and others subject to the judge's direction and control, to observe the same standards of fidelity and diligence applicable to the judge.

(3) A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer.

(4) A judge should not make unnecessary appointments and should exercise that power only on the basis of merit, avoiding nepotism and favoritism. A judge should not approve compensation of appointees beyond the fair value of services rendered.

(5) A judge with supervisory authority over other judges should take reasonable measures to assure the timely and effective performance of their duties.

C. Disqualification.

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness;

(c) the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding;

(d) the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; or

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

(e) the judge has served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning the proceeding or has expressed an opinion concerning the merits of the particular case in controversy.

(2) A judge should keep informed about the judge's personal and fiduciary financial interests, and make a reasonable effort to keep informed about the personal financial interests of the judge's spouse and minor children residing in the judge's household.

(3) For the purposes of this section:

(a) the degree of relationship is calculated according to the civil law system; the following relatives are within the third degree of relationship: parent, child, grandparent, grandchild, great grandparent, great grandchild, sister, brother, aunt, uncle, niece and nephew; the listed relatives include whole and half blood relatives and most step relatives;

(b) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(c) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party, except that:

(i) ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) an office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) the proprietary interest of a policy holder in a mutual insurance company, or a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(d) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation.

(4) Notwithstanding the preceding provisions of this Canon, if a judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter,

because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

D. Remittal of Disqualification.

A judge disqualified by the terms of Canon 3C(1), except in the circumstances specifically set out in subsections (a) through (e), may, instead of withdrawing from the proceeding, disclose on the record the basis of disqualification. If the parties and their lawyers after such disclosure and an opportunity to confer outside of the presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

## COMMENTARY

**Canon 3A(3).** The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and businesslike while being patient and deliberate.

The duty under Canon 2 to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary applies to all the judge's activities, including the discharge of the judge's adjudicative and administrative responsibilities. For example, the duty to be respectful of others includes the responsibility to avoid comment or behavior that can reasonably be interpreted as manifesting prejudice or bias towards another on the basis of personal characteristics like race, sex, religion, or national origin.

**Canon 3A(4).** The proscription against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted. It does not preclude a judge from consulting with other judges, or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities. A judge should make reasonable efforts to ensure that this provision is not violated through law clerks or other staff personnel.

An appropriate and often desirable procedure for a court to obtain the advice of a disinterested expert on legal issues is to invite the expert to file a brief amicus curiae.

**Canon 3A(5).** In disposing of matters promptly, efficiently and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays and unnecessary costs. A judge should encourage and seek to facilitate settlement, but parties should not feel coerced into surrendering the right to have their controversy resolved by the courts.

Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to insist that court officials, litigants and their lawyers cooperate with the judge to that end.

**Canon 3A(6).** The admonition against public comment about the merits of a pending or impending action continues until completion of the appellate process. If the public comment involves a case from the judge's own court, particular care should be taken that the comment does not denigrate public confidence in the integrity and impartiality of the judiciary in violation of Canon 2A. This provision does not restrict comments about proceedings in which the judge is a

litigant in a personal capacity, but in mandamus proceedings when the judge is a litigant in an official capacity, the judge should not comment beyond the record.

"Court personnel" does not include the lawyers in a proceeding before a judge. The conduct of lawyers is governed by the rules of professional conduct applicable in the various jurisdictions.

**Canon 3B(3).** Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, and reporting the violation to the appropriate authorities.

**Canon 3B(4).** Appointees of the judge include officials such as referees, commissioners, special masters, receivers, guardians, and personnel such as clerks, secretaries, and bailiffs. Consent by the parties to an appointment or an award of compensation does not relieve the judge of the obligation prescribed by this subsection.

**Canon 3C(1)(d)(ii).** The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that "the judge's impartiality might reasonably be questioned" under Canon 3C(1), or that the lawyer-relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii) may require the judge's disqualification.

*NOTE: In September 1985, the Judicial Conference approved a form developed by the Advisory Committee on Codes of Conduct entitled "Notice Concerning Waiver of Judicial Disqualification" and authorized its distribution for consideration and possible adoption by the courts. The form is reprinted below.*

## NOTICE CONCERNING WAIVER OF JUDICIAL DISQUALIFICATION

FROM:      The Clerk                                    Date_____


TO:      XXXX (Counsel)          XXXX (Counsel)

       XXXX


RE:      ABC v. DEF, Case No.      _____

Canon 3D of the Code of Conduct provides (with exceptions not pertinent to this case) that when a judge is disqualified in a proceeding because "the judge's impartiality might reasonably be questioned", the judge may participate in the proceeding if all the parties and lawyers, after notice of the basis for the disqualification, agree in writing to waive the disqualification under a procedure independent of the judge's participation.

Unless a waiver is obtained from all parties and all counsel, Judge _____ intends to disqualify in this proceeding because of these circumstances:

If you and your client(s) wish to waive the judge's disqualification, letters to that effect from you and from your client(s) must be sent to me within _____ days of the date of this Notice. The letters should not be sent to the judge and copies should not be sent to other counsel. If all parties and all counsel submit such letters, this Notice and all responses will be made part of the record, as required by Canon 3D, and the judge will continue participation in the proceeding. If a waiver is not received from all parties and all counsel, this Notice and any responses will be kept under seal by the clerk and not shown to the judge, nor will the judge be informed of the identity of any party or lawyer who declined to waive the disqualification. If the disqualification is not waived, the case will be reassigned to another judge.

## CANON 4

## A JUDGE MAY ENGAGE

## IN EXTRA-JUDICIAL ACTIVITIES TO IMPROVE THE LAW,

## THE LEGAL SYSTEM, AND THE ADMINISTRATION OF JUSTICE

A judge, subject to the proper performance of judicial duties, may engage in the following law-related activities, if in doing so the judge does not cast reasonable doubt on the capacity to decide impartially any issue that may come before the judge:

A. A judge may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice.

B. A judge may appear at a public hearing before, or otherwise consult with, an executive or legislative body or official on matters concerning the law, the legal system, and the administration of justice to the extent that it would generally be perceived that a judge's judicial experience provides special expertise in the area. A judge acting pro se may also appear before or consult with such officials or bodies in a matter involving the judge or the judge's interest.

C. A judge may serve as a member, officer, or director of an organization or governmental agency devoted to the improvement of the law, the legal system, or the administration of justice. A judge may assist such an organization in planning fund-raising activities and may participate in the management and investment of funds, but should not personally participate in public fund-raising activities. A judge may make recommendations to public and private fund-granting agencies on projects and programs concerning the law, the legal system, and the administration of justice. A judge may solicit funds from other judges over whom the judge does not exercise supervisory or appellate authority. A judge shall not personally participate in membership solicitation if the solicitation might reasonably be perceived as coercive or is essentially a fund-raising mechanism.

D. A judge should not use to any substantial degree judicial chambers, resources, or staff to engage in activities permitted by this Canon.

## COMMENTARY

**Canon 4.** As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice. To the extent that the judge's time permits, the judge is encouraged to do so, either independently or through a bar association, judicial conference, or other organization dedicated to the improvement of the law.

Within the boundaries of applicable law, see, e.g., 18 U.S.C. § 953, a judge may express opposition to the persecution of lawyers and judges anywhere in the world if the judge has ascertained, after reasonable inquiry, that the persecution is occasioned by conflict between the professional responsibilities of the persecuted judge or lawyer and the policies or practices of the relevant government.

**Canon 4C.** Service on the board of a public, as well as private, law school is permissible.

A judge may attend fund-raising activities of a law-related organization although the judge may not be a speaker, guest of honor, or featured on the program of such an event.

## CANON 5

## A JUDGE SHOULD REGULATE

## EXTRA-JUDICIAL ACTIVITIES TO MINIMIZE

## THE RISK OF CONFLICT WITH JUDICIAL DUTIES

A. <u>Avocational Activities</u>. A judge may write, lecture, teach, and speak on non-legal subjects, and engage in the arts, sports, and other social and recreational activities, if such avocational activities do not detract from the dignity of the judge's office or interfere with the performance of the judge's judicial duties.

B. <u>Civic and Charitable Activities</u>. A judge may participate in civic and charitable activities that do not reflect adversely upon the judge's impartiality or interfere with the performance of judicial duties. A judge may serve as an officer, director, trustee, or non-legal advisor of an educational, religious, charitable, fraternal, or civic organization not conducted for the economic or political advantage of its members, subject to the following limitations:

(1) A judge should not serve if it is likely that the organization will be engaged in proceedings that would ordinarily come before the judge or will be regularly engaged in adversary proceedings in any court.

(2) A judge should not solicit funds for any educational, religious, charitable, fraternal, or civic organization, or use or permit the use of the prestige of the judicial office for that purpose, but the judge may be listed as an officer, director, or trustee of such an organization. A judge should not personally participate in membership solicitation if the solicitation might reasonably be perceived as coercive or is essentially a fund-raising mechanism.

(3) A judge should not give investment advice to such an organization, but may serve on its board of directors or trustees even though it has the responsibility for approving investment decisions.

C. <u>Financial Activities</u>.

(1) A judge should refrain from financial and business dealings that tend to reflect adversely on the judge's impartiality, interfere with the proper performance of judicial duties, exploit the judicial position, or involve the judge in frequent transactions with lawyers or other persons likely to come before the court on which the judge serves.

(2) Subject to the requirements of subsection (1), a judge may hold and manage investments, including real estate, and engage in other remunerative activity, but should not serve as an officer, director, active partner, manager, advisor, or employee of any business other than a business closely held and controlled by members of the judge's family. For this purpose, "members of the judge's family" means persons related to the judge or the judge's spouse within the third degree of relationship calculated according to the civil law system, any other relatives with whom the judge or the judge's spouse maintains a close familial relationship, and the spouse of any of the foregoing.

(3) A judge should manage investments and other financial interests to minimize the number of cases in which the judge is disqualified. As soon as the judge can do so without serious financial

detriment, the judge should divest himself or herself of investments and other financial interests that might require frequent disqualification.

(4) A judge should not solicit or accept anything of value from anyone seeking official action from or doing business with the court or other entity served by the judge, or from anyone whose interests may be substantially affected by the performance or nonperformance of official duties; except that a judge may accept a gift as permitted by the Judicial Conference gift regulations. A judge should endeavor to prevent a member of a judge's family residing in the household from soliciting or accepting a gift except to the extent that a judge would be permitted to do so by the Judicial Conference gift regulations.

(5) For the purposes of this section "members of the judge's family residing in the judge's household" means any relative of a judge by blood or marriage, or a person treated by a judge as a member of the judge's family, who resides in the judge's household.

(6) A judge should report the value of any gift, bequest, favor, or loan as required by statute or by the Judicial Conference of the United States.

(7) A judge is not required by this Code to disclose his or her income, debts, or investments, except as provided in this Canon and Canons 3 and 6.

(8) Information acquired by a judge in the judge's judicial capacity should not be used or disclosed by the judge in financial dealings or for any other purpose not related to the judge's judicial duties.

D. Fiduciary Activities. A judge should not serve as the executor, administrator, trustee, guardian, or other fiduciary, except for the estate, trust, or person of a member of the judge's family, and then only if such service will not interfere with the proper performance of judicial duties. "Member of the judge's family" means any relative of a judge by blood, adoption, or marriage or any other person treated by a judge as a member of the judge's family.

As a family fiduciary a judge is subjected to the following restrictions:

(1) The judge should not serve if it is likely that as a fiduciary the judge will be engaged in proceedings that would ordinarily come before the judge or if the estate, trust or ward becomes involved in adversary proceedings in the court on which the judge serves or one under its appellate jurisdiction.

(2) While acting as a fiduciary a judge is subject to the same restrictions on financial activities that apply to the judge in his or her personal capacity.

E. Arbitration. A judge should not act as an arbitrator or mediator or otherwise perform judicial functions in a private capacity unless expressly authorized by law.

F. Practice of Law. A judge should not practice law. Notwithstanding this prohibition, a judge may act pro se and may, without compensation, give legal advice to and draft or review documents for a member of the judge's family.

G. Extra-judicial Appointments. A judge should not accept appointment to a governmental committee, commission, or other position that is concerned with issues of fact or policy on matters other than the improvement of the law, the legal system, or the administration of justice, unless appointment of a judge is required by Act of Congress. A judge should not, in any event, accept such an appointment if the judge's governmental duties would interfere with the performance of judicial duties or tend to undermine the public confidence in the integrity, impartiality, or independence of the judiciary. A judge may represent the judge's country, state, or locality on ceremonial occasions or in connection with historical, educational, and cultural activities.

H. Chambers, Resources, and Staff. A judge should not use judicial chambers, resources, or staff to engage in activities permitted by this Canon, except for uses that are de minimis.

## COMMENTARY

**Canon 5A.** Complete separation of a judge from extra-judicial activities is neither possible nor wise; a judge should not become isolated from the society in which the judge lives.

**Canon 5B(1).** The changing nature of some organizations and of their relationship to the law makes it necessary for a judge regularly to reexamine the activities of each organization with which the judge is affiliated to determine if it is proper for the judge to continue the judge's relationship with it. For example, in many jurisdictions charitable hospitals are now more frequently in court than in the past. Similarly, the boards of some legal aid organizations now make policy decisions that may have political significance or imply commitment to causes that may come before the courts for adjudication.

**Canon 5B(2) and (3).** A judge may attend fund-raising activities of the organization although the judge may not be a speaker, a guest of honor, or featured on the program of such an event. Use of an organization's letterhead for fund-raising or membership solicitation does not violate Canons 5B(2) and (3) provided the letterhead lists only the judge's name and position in the organization, and, if comparable designations are listed for other persons, the judge's judicial designation.

**Canon 5C.** Canon 3 requires a judge to disqualify in any proceeding in which the judge has a financial interest, however small; Canon 5 requires a judge to refrain from engaging in business and from financial activities that might interfere with the impartial performance of the judge's judicial duties; Canon 6 requires a judge to report all compensation received for activities outside the judicial office. A judge has the rights of an ordinary citizen with respect to financial affairs, except for limitations required to safeguard the proper performance of the judge's duties. A judge's participation in a closely held family business, while generally permissible, may be prohibited if it takes too much time or involves misuse of judicial prestige or if the business is likely to come before the judge's court. Owning and receiving income from investments do not as such affect the performance of a judge's duties.

**Canon 5C(4).** Reimbursement or direct payment of travel expenses may be a gift and, if so, its acceptance is governed by Canons 5C(4) and (5). A judge or employee may receive as a gift travel expense reimbursement including the cost of transportation, lodging, and meals, for the judge and a relative incident to the judge's attendance at a bar-related function or at an activity devoted to the improvement of the law, the legal system, or the administration of justice.

**Canon 5D.** Mere residence in the household of a judge is insufficient for a person to be considered a member of the judge's family for purposes of this Canon. The person must be treated by the judge as a member of the judge's family.

**Canon 5D(1).** The Applicable Date of Compliance provision of this Code qualifies this subsection with regard to a judge who is an executor, administrator, trustee, or other fiduciary at the time this Code becomes effective.

**Canon 5D(2).** A judge's obligation under this Code and the judge's obligation as a fiduciary may come into conflict. For example, a judge should resign as trustee if it would result in detriment to the trust to divest it of holdings whose retention would place the judge in violation of Canon 5C(3).

**Canon 5F.** This prohibition refers to the practice of law in a representative capacity and not in a pro se capacity. A judge may act for himself or herself in all legal matters, including matters involving litigation and matters involving appearances before or other dealings with legislative and other governmental bodies. However, in so doing, a judge must not abuse the prestige of office to advance the interests of the judge or the judge's family.

**Canon 5G.** Valuable services have been rendered in the past to the states and the nation by judges appointed by the executive to undertake important extra-judicial assignments. The appropriateness of conferring these assignments on judges must be reassessed, however, in light of the demands on judicial resources created by today's crowded dockets and the need to protect the courts from involvement in extra-judicial matters that may prove to be controversial. Judges should not be expected or permitted to

accept governmental appointments that could interfere with the effectiveness and independence of the judiciary.

The dangers attendant upon acceptance of extra-judicial governmental assignments are ordinarily less serious where the appointment of a judge is required by legislation. Such assignments ordinarily do not involve excessive commitments of time, and they typically do not pose a serious threat to the independence of the judiciary.

A code of conduct ought not compel judges to refuse, without regard to the circumstances, tasks Congress has seen fit to authorize as appropriate in the public interest. Although legislatively prescribed extra-judicial assignments should be discouraged, where Congress requires the appointment of a judge to perform extra-judicial duties, the judge may accept the appointment provided that the judge's services would not interfere with the performance of the judge's judicial responsibilities or tend to undermine public confidence in the judiciary.

## CANON 6

### A JUDGE SHOULD REGULARLY FILE

### REPORTS OF COMPENSATION RECEIVED

### FOR LAW-RELATED AND EXTRA-JUDICIAL ACTIVITIES

A judge may receive compensation and reimbursement of expenses for the law-related and extra-judicial activities permitted by this Code, if the source of such payments does not give the appearance of influencing the judge in the judge's judicial duties or otherwise give the appearance of impropriety, subject to the following restrictions:

A. Compensation. Compensation should not exceed a reasonable amount nor should it exceed what a person who is not a judge would receive for the same activity.

B. Expense Reimbursement. Expense reimbursement should be limited to the actual costs of travel, food, and lodging reasonably incurred by the judge and, where appropriate to the occasion, by the judge's spouse or relative. Any payment in excess of such an amount is compensation.

C. Public Reports. A judge should make required financial disclosures in compliance with applicable statutes and Judicial Conference regulations and directives.

### COMMENTARY

Additional restrictions on the receipt of compensation by judges are imposed by the Ethics Reform Act of 1989 and regulations promulgated by the Judicial Conference thereunder. That Act and those regulations should be consulted before a judge enters into any arrangement involving the receipt of compensation. The restrictions so imposed include, but are not limited to: (1) a prohibition against receiving "honoraria" (defined as anything of value received for a speech, appearance, or article), (2) a prohibition against receiving compensation for service as a director, trustee, or officer of a profit or nonprofit organization, (3) a requirement that compensated teaching activities receive prior approval, and (4) a 15% limitation on the receipt of "outside earned income."

### CANON 7

# A JUDGE SHOULD REFRAIN FROM

## POLITICAL ACTIVITY

A. A judge should not:

(1) act as a leader or hold any office in a political organization;

(2) make speeches for a political organization or candidate or publicly endorse or oppose a candidate for public office;

(3) solicit funds for or pay an assessment or make a contribution to a political organization or candidate, attend political gatherings, or purchase tickets for political party dinners, or other functions.

B. A judge should resign the judicial office when the judge becomes a candidate either in a primary or in a general election for any office.

C. A judge should not engage in any other political activity; provided, however, this should not prevent a judge from engaging in the activities described in Canon 4.

## COMPLIANCE WITH THE CODE OF CONDUCT

Anyone who is an officer of the federal judicial system authorized to perform judicial functions is a judge for the purpose of this Code. All judges should comply with this Code except as provided below.

A. Part-time Judge. A part-time judge is a judge who serves on a continuing or periodic basis, but is permitted by law to devote time to some other profession or occupation and whose compensation for that reason is less than that of a full-time judge. A part-time judge:

(1) is not required to comply with Canons 5C(2), D, E, F, and G, and Canon 6C;

(2) except as provided in the Conflict-of-Interest Rules for Part-time Magistrate Judges, should not practice law in the court on which the judge serves or in any court subject to the appellate jurisdiction of the court on which the judge serves, or act as a lawyer in a proceeding in which the judge has served as a judge or in any other proceeding related thereto.

B. Judge Pro Tempore. A judge pro tempore A judge pro tempore is a person who is appointed to act temporarily as a judge or as a special master.

(1) While acting as such, a judge pro tempore is not required to comply with Canons 5C(2), (3), D, E, F, and G, and Canon 6C; further, one who acts solely as a special master is not required to comply with Canons 4C, 5B (except the first sentence thereof), 5C(4), and 7.

(2) A person who has been a judge pro tempore should not act as a lawyer in a proceeding in which the judge has served as a judge or in any other proceeding related thereto.

C. Retired Judge. A retired judge who is retired under 28 U.S.C. §§ 371(b) or 372(a), or who is recalled to judicial service, should comply with all the provisions of this Code except Canon 5G, but the judge should refrain from judicial service during the period of an extra-judicial appointment not sanctioned by Canon 5G. All other retired judges who are eligible for recall to judicial service (except those in Territories and Possessions) should comply with the provisions of this Code governing part-time judges. A senior judge in the Territories and Possessions must comply with this Code as prescribed by 28 U.S.C. § 373(c)(5) and (d).

## APPLICABLE DATE OF COMPLIANCE

Persons to whom this Code becomes applicable should arrange their affairs as soon as reasonably possible to comply with it and should do so in any event within the period of one year following appointment. If, however, the demands on the person's time and the possibility of conflicts of interest are not substantial, such a person may continue to act, without compensation, as an executor, administrator, trustee, or other fiduciary for the estate or person of one who is not a member of the person's family, if terminating such relationship would unnecessarily jeopardize any substantial interest of the estate or person and the judicial council of the circuit approves.

---

1. The Code of Conduct for United States Judges was initially adopted by the Judicial Conference on April 5, 1973, and was known as the "Code of Judicial Conduct for United States Judges." At its March 1987 session, the Judicial Conference deleted the word "Judicial" from the name of the Code. Substantial revisions to the Code were adopted by the Judicial Conference at its September 1992 session. Section C. of the Compliance section, following the code, was revised at the March 1996 Judicial Conference. Canons 3C(3)(a) and 5C(4) were revised at the September 1996 Judicial Conference. Canon 3C(1)(c) was revised at the September 1999 Judicial Conference. The Compliance Section was clarified at the September 2000 Judicial Conference.

2. Procedural questions may be addressed to: Office of the General Counsel, Administrative Office of the United States Courts, Thurgood Marshall Federal Judiciary Building, Washington, D.C., 20544, (202-502-1100).

3. This Code governs the conduct of United States Circuit Judges, District Judges, Court of International Trade Judges, Court of Federal Claims Judges, Bankruptcy Judges, and Magistrate Judges. In addition, certain provisions of this Code apply to special masters and commissioners as indicated in the "Compliance" section.

**EXHIBIT C**
Title 28 United States Code § 455. Disqualification of justice, judge, or magistrate judge
(2 pages)

*28 USC 455*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

## TITLE 28 - JUDICIARY AND JUDICIAL PROCEDURE
### PART I - ORGANIZATION OF COURTS
#### CHAPTER 21 - GENERAL PROVISIONS APPLICABLE TO COURTS AND JUDGES

### § 455. Disqualification of justice, judge, or magistrate judge

**(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

**(b)** He shall also disqualify himself in the following circumstances:

**(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

**(2)** Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

**(3)** Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

**(4)** He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

**(5)** He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

**(i)** Is a party to the proceeding, or an officer, director, or trustee of a party;

**(ii)** Is acting as a lawyer in the proceeding;

**(iii)** Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

**(iv)** Is to the judge's knowledge likely to be a material witness in the proceeding.

**(c)** A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

**(d)** For the purposes of this section the following words or phrases shall have the meaning indicated:

**(1)** "proceeding" includes pretrial, trial, appellate review, or other stages of litigation;

**(2)** the degree of relationship is calculated according to the civil law system;

**(3)** "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

**(4)** "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:

**(i)** Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

**(ii)** An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

**(iii)** The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

**(iv)** Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

**(e)** No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

**(f)** Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the justice, judge, magistrate judge, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

(June 25, 1948, ch. 646, 62 Stat. 908; Pub. L. 93–512, § 1, Dec. 5, 1974, 88 Stat. 1609; Pub. L. 95–598, title II, § 214(a), (b), Nov. 6, 1978, 92 Stat. 2661; Pub. L. 100–702, title X, § 1007, Nov. 19, 1988, 102 Stat. 4667; Pub. L. 101–650, title III, § 321, Dec. 1, 1990, 104 Stat. 5117.)

### Historical and Revision Notes

Based on title 28, U.S.C., 1940 ed., § 24 (Mar. 3, 1911, ch. 231, § 20, 36 Stat. 1090).

Section 24 of title 28, U.S.C., 1940 ed., applied only to district judges. The revised section is made applicable to all justices and judges of the United States.

The phrase "in which he has a substantial interest" was substituted for "concerned in interest in any suit."

The provision of section 24 of title 28, U.S.C., 1940 ed., as to giving notice of disqualification to the "senior circuit judge," and words "and thereupon such proceedings shall be had as are provided in sections 17 and 18 of this title," were omitted as unnecessary and covered by section 291 et seq. of this title relating to designation and assignment of judges. Such provision is not made by statute in case of disqualification or incapacity, for other cause. See sections 140, 143, and 144 of this title. If a judge or clerk of court is remiss in failing to notify the chief judge of the district or circuit, the judicial council of the circuit has ample power under section 332 of this title to apply a remedy.

Relationship to a party's attorney is included in the revised section as a basis of disqualification in conformity with the views of judges cognizant of the grave possibility of undesirable consequences resulting from a less inclusive rule.

Changes were made in phraseology.

### Amendments

1988—Subsec. (f). Pub. L. 100–702 added subsec. (f).

1978—Pub. L. 95–598 struck out references to referees in bankruptcy in section catchline and in subsecs. (a) and (e).

1974—Pub. L. 93–512 substituted "Disqualification of justice, judge, magistrate, or referee in bankruptcy" for "Interest of justice or judge" in section catchline, reorganized structure of provisions, and expanded applicability to include magistrates and referees in bankruptcy and grounds for which disqualification may be based, and inserted provisions relating to waiver of disqualification.

### Change of Name

Words "magistrate judge" substituted for "magistrate" in section catchline and wherever appearing in subsecs. (a), (e), and (f) pursuant to section 321 of Pub. L. 101–650, set out as a note under section 631 of this title.

### Effective Date of 1978 Amendment

Amendment by Pub. L. 95–598 effective Oct. 1, 1979, see section 402(c) of Pub. L. 95–598, set out as an Effective Date note preceding section 101 of Title 11, Bankruptcy. For procedures relating to Bankruptcy matters during transition period see note preceding section 151 of this title.

### Effective Date of 1974 Amendment

Section 3 of Pub. L. 93–512 provided that: "This Act [amending this section] shall not apply to the trial of any proceeding commenced prior to the date of this Act [Dec. 5, 1974], nor to appellate review of any proceeding which was fully submitted to the reviewing court prior to the date of this Act."

**EXHIBIT D**
Title 28 United States Code § 41. Number and composition of circuits
(4 pages)

28 USC 41

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

## TITLE 28 - JUDICIARY AND JUDICIAL PROCEDURE
### PART I - ORGANIZATION OF COURTS
#### CHAPTER 3 - COURTS OF APPEALS

### § 41. Number and composition of circuits

The thirteen judicial circuits of the United States are constituted as follows:

| Circuits | Composition |
|---|---|
| District of Columbia | District of Columbia. |
| First | Maine, Massachusetts, New Hampshire, Puerto Rico, Rhode Island. |
| Second | Connecticut, New York, Vermont. |
| Third | Delaware, New Jersey, Pennsylvania, Virgin Islands. |
| Fourth | Maryland, North Carolina, South Carolina, Virginia, West Virginia. |
| Fifth | District of the Canal Zone, Louisiana, Mississippi, Texas. |
| Sixth | Kentucky, Michigan, Ohio, Tennessee. |
| Seventh | Illinois, Indiana, Wisconsin. |
| Eighth | Arkansas, Iowa, Minnesota, Missouri, Nebraska, North Dakota, South Dakota. |
| Ninth | Alaska, Arizona, California, Idaho, Montana, Nevada, Oregon, Washington, Guam, Hawaii. |
| Tenth | Colorado, Kansas, New Mexico, Oklahoma, Utah, Wyoming. |
| Eleventh | Alabama, Florida, Georgia. |
| Federal | All Federal judicial districts. |

(June 25, 1948, ch. 646, 62 Stat. 870; Oct. 31, 1951, ch. 655, § 34, 65 Stat. 723; Pub. L. 96–452, § 2, Oct. 14, 1980, 94 Stat. 1994; Pub. L. 97–164, title I, § 101, Apr. 2, 1982, 96 Stat. 25.)

### Historical and Revision Notes

Based on title 28, U.S.C. 1940 ed., § 211, and section 864 of title 48, U.S.C., 1940 ed., Territories and Insular Possessions (Apr. 12, 1900, ch. 191, § 35, 31 Stat. 85; Mar. 3, 1911, ch. 231, § 116, 36 Stat. 1131; Jan. 28, 1915, ch. 22, §§ 1, 2, 38 Stat. 803; Mar. 2, 1917, ch. 145, § 42, 39 Stat. 966; Feb. 13, 1925, ch. 229, §§ 1, 13, 43 Stat. 936, 942; Jan. 31, 1928, ch. 14, § 1, 45 Stat. 54; Feb. 28, 1929, ch. 363, § 1, 45 Stat. 1346; May 17, 1932, ch. 190, 47 Stat. 158).

Form of section was simplified.

The District of Columbia was added as a separate circuit. This is in accord with the decision of the Supreme Court of the United States which held the Court of Appeals for the District of Columbia to be a circuit court of appeals within the Transfer Act of Sept. 14, 1922, ch. 305, 42 Stat. 837, incorporated in the Judicial Code as § 238(a), but repealed by act Feb. 13, 1925, ch. 229, § 13, 43 Stat. 942. (See Swift and Co. v. U.S., 1928, 48 S.Ct. 311, 276 U.S. 311, 72 L.Ed. 587.)

In recognizing the District of Columbia as a separate circuit, the Supreme Court recently used this language: "* * * the eleven circuits forming the single federal judicature * * *". Comm'r. v. Bedford's Estate, 65 S.Ct. 1157, at page 1160, 325 U.S. 283, 89 L.Ed. 611.

See section 17 of title 28, U.S.C., 1940 ed., providing, "For the purposes of sections 17–23 of this title, the District of Columbia shall be deemed to be a judicial circuit * * *", and act Dec. 23, 1944, ch. 724, 58 Stat. 925, which amended section 215 of title 28, U.S.C., 1940 ed., incorporated in section 42 of this title. Such amendment provided that for the purposes of said section 215 "the District of Columbia shall be deemed to be a judicial circuit."

Many other acts of Congress have recognized the District of Columbia as a separate circuit. (See the following acts; Aug. 24, 1937, ch. 754, 50 Stat. 751; Feb. 11, 1938, ch. 25, 52 Stat. 28; Aug. 5, 1939, ch. 433, 53 Stat. 1204; Aug. 7, 1939, ch. 501, 53 Stat. 1223; Dec. 29, 1942, ch. 835, 56 Stat. 1094; May 11, 1944, ch. 192, 58 Stat. 218; Dec. 23, 1944, ch. 724, 58 Stat. 925.)

*28 USC 41*

NB: *This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

See also the following acts recognizing the Court of Appeals for the District of Columbia as a circuit court of appeals: Aug. 15, 1921, ch. 64, 42 Stat. 162; July 5, 1935, ch. 372, 49 Stat. 454; Aug. 24, 1937, ch. 754, 50 Stat. 751; Apr. 6, 1942, ch. 210, 56 Stat. 198; May 9, 1942, ch. 295, 56 Stat. 271. See also Rule 81 (d) Federal Rules of Civil Procedure.

In the following cases the Supreme Court of the United States has recognized the status of the Court of Appeals of the District of Columbia as a permanent establishment within the federal judicial system: O'Donoghue v. United States, 1933, 53 S.Ct. 740, 289 U.S. 516, 77 L.Ed. 1356; Federal Trade Commission v. Klesner, 1927, 47 S.Ct. 557, 274 U.S. 145, 71 L.Ed. 972; Claiborne-Annapolis Ferry v. United States, 1932, 52 S.Ct. 440, 285 U.S. 382, 76 L.Ed. 808; United States v. California Canneries, 1929, 49 S.Ct. 423, 279 U.S. 553, 73 L.Ed. 838.

Alaska, Canal Zone, and Virgin Islands were added to the 9th, 5th, and 3rd Circuits, respectively, to conform to section 1294 of this title.

Some of the provisions of section 864 of title 48, U.S.C., 1940 ed., have been retained in said title. For those which were incorporated in other sections of this revised title, see Distribution Table.

## Amendments

1982—Pub. L. 97–164 increased number of judicial circuits from twelve to thirteen through addition of Federal circuit composed of all Federal judicial districts.

1980—Pub. L. 96–452 substituted "twelve" for "eleven" in text preceding table, substituted "District of the Canal Zone" for "Alabama, Canal Zone, Florida, Georgia" in item relating to fifth circuit, and added new item relating to eleventh circuit.

1951—Act Oct. 31, 1951, inserted reference to Guam in that part relating to composition of Ninth judicial circuit.

## Effective Date of 1982 Amendment

Amendment by Pub. L. 97–164 effective Oct. 1, 1982, see section 402 of Pub. L. 97–164, set out as a note under section 171 of this title.

## Effective Date of 1980 Amendment

Section 12 of Pub. L. 96–452 provided that: "This Act and the amendments made by this Act [amending this section and sections 44 and 48 of this title, and enacting provisions set out as notes under this section] shall take effect on October 1, 1981."

## Termination of United States District Court for the District of the Canal Zone

For termination of the United States District Court for the District of the Canal Zone at end of the "transition period", being the 30-month period beginning Oct. 1, 1979, and ending midnight Mar. 31, 1982, see Paragraph 5 of Article XI of the Panama Canal Treaty of 1977 and sections 2101 and 2201 to 2203 of Pub. L. 96–70, title II, Sept. 27, 1979, 93 Stat. 493, formerly classified to sections 3831 and 3841 to 3843, respectively, of Title 22, Foreign Relations and Intercourse.

## Commission on Structural Alternatives for the Federal Courts of Appeals

Pub. L. 105–119, title III, § 305, Nov. 26, 1997, 111 Stat. 2491, established Commission on Structural Alternatives for the Federal Courts of Appeals, directed Commission to study division of United States into judicial circuits, study structure and alignment of Federal Court of Appeals system, and report to President and Congress its recommendations of changes needed to expeditiously and effectively dispose of caseload of Federal Courts of Appeals, consistent with fundamental concepts of fairness and due process, provided for Commission's membership and compensation of members and staff, authorized appropriations, and provided for termination of Commission 90 days after submission of its report.

## Assignment of Judges and Procedure for Administration of Pending Cases With Regard to Reorganization of the Fifth Circuit Court of Appeals

Sections 5 to 10 of Pub. L. 96–452 provided that:

"Sec. 5. Each circuit judge in regular active service of the former fifth circuit whose official station on the day before the effective date of this Act [Oct. 1, 1981]—

"(1) is in Louisiana, Mississippi, or Texas is assigned as a circuit judge of the new fifth circuit; and

"(2) is in Alabama, Florida, or Georgia is assigned as a circuit judge of the eleventh circuit.

"Sec. 6. Each judge who is a senior judge of the former fifth circuit on the day before the effective date of this Act [Oct. 1, 1981] may elect to be assigned to the new fifth circuit or to the eleventh circuit and shall notify the Director of the Administrative Office of the United States Courts of such election.

*28 USC 41*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).

"Sec. 7. The seniority of each judge—

"(1) who is assigned under section 5 of this Act; or

"(2) who elects to be assigned under section 6 of this Act;

shall run from the date of commission of such judge as a judge of the former fifth circuit.

"Sec. 8. The eleventh circuit is authorized to hold terms or sessions of court at New Orleans, Louisiana, until such time as adequate facilities for such court are provided in Atlanta, Georgia.

"Sec. 9. The provisions of the following paragraphs of this section apply to any case in which, on the day before the effective date of this Act [Oct. 1, 1981], an appeal or other proceeding has been filed with the former fifth circuit:

"(1) If the matter has been submitted for decision, further proceedings in respect of the matter shall be had in the same manner and with the same effect as if this Act [amending sections 41, 44, and 48 of this title, and enacting provisions set out as notes under this section] had not been enacted.

"(2) If the matter has not been submitted for decision, the appeal or proceeding, together with the original papers, printed records, and record entries duly certified, shall, by appropriate orders, be transferred to the court to which it would have gone had this Act been in full force and effect at the time such appeal was taken or other proceeding commenced, and further proceedings in respect of the case shall be had in the same manner and with the same effect as if the appeal or other proceeding had been filed in such court.

"(3) A petition for rehearing or a petition for rehearing en banc in a matter decided before the effective date of this Act [Oct. 1, 1981], or submitted before the effective date of this Act and decided on or after the effective date as provided in paragraph (1) of this section, shall be treated in the same manner and with the same effect as though this Act had not been enacted. If a petition for rehearing en banc is granted, the matter shall be reheard by a court comprised as though this Act had not been enacted.

"Sec. 10. As used in sections 5, 6, 7, 8, and 9 of this Act, the term—

"(1) 'former fifth circuit' means the fifth judicial circuit of the United States as in existence on the day before the effective date of this Act [Oct. 1, 1981];

"(2) the term 'new fifth circuit' means the fifth judicial circuit of the United States established by the amendment made by section 2(2) of this Act [amending item relating to the fifth circuit in this section]; and

"(3) the term 'eleventh circuit' means the eleventh judicial circuit of the United States established by the amendment made by section 2(3) of this Act [adding item relating to the eleventh circuit in this section]."

## Administrative Action by Fifth Circuit Court of Appeals; Termination of Court

Section 11 of Pub. L. 96–452 provided that: "The court of appeals for the fifth circuit as constituted on the day before the effective date of this Act [Oct. 1, 1981] may take such administrative action as may be required to carry out this Act [amending sections 41, 44, and 48 of this title, and enacting provisions set out as notes under this section]. Such court shall cease to exist for administrative purposes on July 1, 1984."

## Appeals Court Administrative Units

Pub. L. 95–486, § 6, Oct. 20, 1978, 92 Stat. 1633, provided that: "Any court of appeals having more than 15 active judges may constitute itself into administrative units complete with such facilities and staff as may be prescribed by the Administrative Office of the United States Courts, and may perform its en banc function by such number of members of its en banc courts as may be prescribed by rule of the court of appeals."

## Northern Mariana Islands

Pub. L. 95–157, § 1(a), Nov. 8, 1977, 91 Stat. 1265, provided that the Northern Mariana Islands be part of the same judicial circuit as Guam, i.e., the Ninth Circuit. See section 1694 (a) of Title 48, Territories and Insular Possessions.

## Commission on Revision of the Federal Appellate System

Pub. L. 92–489, Oct. 13, 1972, 86 Stat. 807, as amended by Pub. L. 93–420, Sept. 19, 1974, 88 Stat. 1153, provided for the establishment, membership, travel expenses, personnel, experts and consultants, administrative and research services, cooperation of other governmental agencies, and appropriations of not to exceed $606,000 of a Commission on Revision of the Federal Court Appellate System which Commission was to study the geographical division of the judicial circuits and the structure and internal procedures of the appellate court system and to report to the President, Congress, and the Chief Justice its recommendations for changes in the geographical boundaries of the circuits to expedite disposition of judicial business and for changes in the appellate court structure to expedite disposition of the appellate courts caseload in a manner consistent with fundamental concepts of fairness and due process. The

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 2, 2006 (see http://www.law.cornell.edu/uscode/uscprint.html).*

Commission was to cease existence ninety days after submission of its final report, which report was submitted June 20, 1975.

## Continuation of Organization of Court

Section 2(b) of act June 25, 1948, ch. 646, 62 Stat. 985, provided in part that the provisions of this title as set out in section 1 of act June 25, 1948, with respect to the organization of each of the several courts therein provided, shall be construed as continuations of existing law, and the tenure of the judges, officers, and employees thereof and of the United States attorneys and marshals and their deputies and assistants, in office on Sept. 1, 1948, shall not be affected by its enactment, but each of them shall continue to serve in the same capacity under the appropriate provisions of this title, pursuant to his prior appointment.